UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,    CASE NO. 16-20549-CR-LENARD

    *Plaintiff*,

vs.

PHILIP ESFORMES, *et al.*,

    *Defendant*s.
_____/

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE [DE 120] TO DEFENDANT'S DECLARATIONS REGARDING ASSET TRANSFER DOCUMENTS**

    In response to the three Declarations of counsel filed by Mr. Esformes explaining that he did not orchestrate a covert dissipation of assets, DE 114 (Descalzo), 115 (Kuntz), 116 (Tettlebaum), the Government filed no sworn declarations or affidavits. Instead, it argues that "***it appears*** that the Defendant attempted to create a windfall for himself and his family through a jailhouse transfer of assets. Nothing in the Declarations provided by counsel indicate that they were aware of the ways in which the Defendant stood to profit from this transaction, the existence of which was withheld from the government and this Court until after its consummation." DE 120 at 4 (emphasis added). In Reply, Mr. Esformes has filed four additional declarations under penalty of perjury. DE 121 (Tettlebaum), 122 (Rosenberg), 123 (Descalzo), and 125 (Noller).

    Attorney Harvey Tettlebaum, who collaborated with other attorneys at the law firm of Husch Blackwell LLP in drafting the document at issue, assures the court that the document was not designed to effect a covert dissipation of Mr. Esformes's interests. To

the contrary, attorney Tettlebaum quotes from specific language in the Resignation, Withdrawal and Transfer of Ownership, which provides:

> Philip Esformes and Philip Esformes Revocable Trust (collectively, "Philip") waive any rights under any agreements or with to the named facilities wherein he would receive any payments, profits or funds from the operation, liquidation or sale of the Facility Corporations.

DE 121 at 3 (paragraph 6). Attorney Tettlebaum then states:

> The government, had it asked, would have been told that this language was designed to and does cover any funds that would otherwise flow to Defendant as a result of any lease payments and management fees since these constitute "payments, profits or funds from the operation . . . of the Facility Corporations."  This paragraph adequately protected the government's interests in any of the landlord corporations in which Philip Esformes had an interest."

With regard to the Government's assertion of a planned 'windfall' to the Esformes family, attorney Tettlebaum sets forth "four other reasons why this claim by the government is impossible." DE 121-1 at 4-5. Attorney Tettlebaum acknowledges that "[i]n retrospect the Intervenors should have given the government prior notice of the activities subsequently disclosed on August 17, 2016," DE 121-1 at 6, but he assures the Court that none of the attorneys "believe[d] that taking action to preserve assets which were threatened by governmental action would be viewed as a dissipation of assets or a 'circumvention of court orders'." *Id* at 7.   The "governmental action" to which he refers is that of the Centers for Medicare and Medicaid Services (CMS) and the Florida Agency for HealthCare Administration (AHCA) withholding government third party payments or threatening to do so. It bears repeating here that in his first declaration, attorney Tettlebaum

assured the court that Philip Esformes had no "role in the development of the document," and executed it only after it was reviewed and presented to him by counsel. DE 116-1 at 4.

Attorney Lisa M. Noller, a former AUSA who was aware of the restraining order, has declared that she represents Greystone Healthcare Management Corp. and has never spoken to Morris Esformes. DE 125-1 at 1. In her capacity as the attorney for Greystone, attorney Noller "called [AUSA] Young *to inform her* that Greystone was considering entering into a transaction with Morris Esformes to lease the real estate of these four facilities. I explained that if negotiations progressed toward a deal, I intended to work with DOJ prior to closing." *Id*. at 1. Far from any effort to *conceal*, attorney Noller's declaration reflects an intention by the parties to *reveal* the ongoing negotiations.[1]

---

[1] At the status conference of September 6, 2016, the Government mistakenly proffered that it learned about a proposed transaction when the prosecutor

> was contacted personally by an attorney out of Chicago [Lisa Noller] on August 9th, 2016. She represented to me that the ***Defendant's father, Morris Esformes, had contacted her*** on behalf of a third party named ***Brookstone***, a company that has done business with the Esformeses before, that they were looking to ***purchase*** the same entities that were transferred, the same entities that was the subject of the indictment.

DE 118 at 38-39 (emphasis added). As attorney Noller's declaration makes clear, she has never had any contact with Morris Esformes, she represents Greystone (not Brookstone), Greystone contemplated a lease, and Greystone always intended to work with the DOJ in the event the parties reached agreement.

3

The owner of Greystone, Stephen Rosenberg, has likewise declared that "Greystone had no intent to proceed with any transaction with Morris Esformes without first informing DOJ and every other appropriate government agency. Morris did not mention or suggest that a transaction be done behind the back of any person or agency." DE 122-1 at 1. In fact, Morris Esformes was pursuing a potential lease deal with Greystone, with the blessing of counsel, believing it to be one of the "options that could appropriately be taken to prevent closure of the facilities and the consequent harm to the over 1500 residents if they had to be transferred to another facility . . . Had Greystone indicated an interest in either arrangement, the government would have been notified before anything was done to consummate the transaction." DE 121-1 at 2-3 (Tettlebaum).

Finally, attorney Marissel Descalzo has declared that the Government agreed in late July or early August 2016 that the checks payable to Philip Esformes would be held in a locked drawer by Chicago attorney Norman Knopf, pursuant to an agreement reached with AUSA Torres. She refutes the suggestion that payments to Mr. Esformes, like the two checks referenced in footnote 3 of the Government's Response [DE 120], were being concealed from the Government.

## CONCLUSION

The four declarations confirm that neither Philip nor Morris Esformes initiated or directed any transactions to circumvent a restraining order or obtain any windfall through a jailhouse transfer. They acted at the direction and with the guidance of counsel, who believed that the actions were appropriate to preserve the value of the businesses, protect

4

the government's interests and insure the continued care of patients. None of these activities should deprive defendant Esformes of pretrial release. He requests that he be admitted to bail under conditions deemed appropriate by the court.

        Respectfully submitted,

        BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.
        201 South Biscayne Boulevard, Suite 1300
        Miami, Florida 33131
        Tel   (305) 371-6421
        E-mail: HSrebnick@RoyBlack.com

        /s/    Howard Srebnick
        HOWARD SREBNICK, ESQ.
        Florida Bar No. 919063

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been filed and emailed to all counsel of record via CM/ECF System on the date stamped on the top of this document.

        /s/    Howard Srebnick
        HOWARD SREBNICK, ESQ.
        Florida Bar No. 919063

        *Limited Appearance for Philip Esformes*