UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-20549-CR-LENARD

UNITED STATES OF AMERICA,

v.

PHILIP ESFORMES,

    Defendant.
_____/

### ORDER DENYING IN PART DEFENDANT'S MOTION TO STRIKE SURPLUSAGE (D.E. 97) AND RESERVING ON WHETHER REFERENCES TO THE TERM "ESCORT" SHOULD BE STRICKEN FROM THE INDICTMENT

**THIS MATTER** is before the Court on Philip Esformes' (hereinafter, "Defendant") Motion to Strike Prejudicial Surplusage (D.E. 97), filed on September 2, 2016. The Government filed a Response in Opposition on September 23, 2016.[1] (D.E 131.) Defendant did not reply. Having reviewed the Defendant's Motion and the Government's Response, the Court finds as follows.

The Defendant's Motion asks the Court to strike paragraphs 1–15 of the "General Allegations" section of the Indictment and paragraphs 15–16 of Count One because they contain "statements of law that are immaterial and prejudicial." (D.E. 97.) The Defendant also requests that any reference to the following terms be stricken from the

---

[1] The Government filed a consolidated Response to the Defendant's Motion to Dismiss Various Counts of the Indictment (D.E. 109) and Motion to Strike Surplusage (D.E. 97).

1

Indictment: "Esformes Network," "escorts," and "basketball coach." Id. In response, the Government argues that the Defendant's Motion is meritless, because: (1) the purported "statements of law" are mere descriptions of the Medicare system and how it works which helps explain why the Defendant's conduct was illegal, and (2) references to the "Esformes Network," "escorts," and "basketball coach" are descriptive terms that are relevant to the purported scheme or, at least, certain aspects of it. (D.E. 137 at 20–21.)

Federal Rule of Criminal Procedure 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." The Eleventh Circuit has advised that:

> [a] motion to strike surplusage from an indictment should not be granted 'unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . . [T]his is a most exacting standard.' Therefore, it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language.

United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (citing United States v. Huppert, 917 F.2d 507, 511 (11th Cir.1990)) (additional citations and brackets omitted); see also United States v. Brye, 318 Fed. App'x 878, 880 (11th Cir. 2009) (affirming district court's denial of a motion to strike from the indictment all references to the defendant's prior convictions). "[T]o prevail on a motion to strike surplusage, a defendant must show, first, that the contested portions of the indictment are irrelevant to the charged crimes, and, second, that the challenged language is unfairly prejudicial or inflammatory." United States v. Anyanwu, No. 1:12-CR-190-TWT-ECS, 2013 WL 1558712, at *4 (N.D. Ga. Mar. 12, 2013), report and recommendation adopted, No. 1:12-

CR-190-TWT, 2013 WL 1561011 (N.D. Ga. Apr. 12, 2013) (citing Awan, 966 F.2d 1415 at 1426).

The information contained in paragraphs 1–15 of the General Allegations section of the Indictment is relevant to the charged crimes. These paragraphs describe the Medicare system and how it is intended to operate. The Defendant has failed to demonstrate how he would be prejudiced from these general descriptions of the Medicare system and its functioning. Accordingly, he has not met the exacting standard to strike paragraphs 1–15 of the General Allegations section.

Likewise, the Defendant has failed to show that the terms "Esformes Network" and "basketball coach" are irrelevant and prejudicial. The term "Esformes Network" is a descriptive term utilized by the Government to describe the eighteen skilled and assisted living facilities controlled, owned and operated by the Defendant. The Court fails to see how it is irrelevant or prejudicial. Similarly, references in the Indictment to kickbacks being paid to the Defendant in the form of remuneration to his son's basketball coach are relevant and the Court does not find the use of the term "basketball coach" to be prejudicial.

The Defendant also argues that the allegations in the Indictment that one billion dollars in claims were fraudulently billed to Medicare and Medicaid, and Medicare paid $464 million of fraudulent claims are inflammatory and prejudicial. At the status conference held on November 2, 2016, the Court asked the Government whether it "intend[ed] to introduce into evidence at trial the $1 billion billed to Medicare and Medicaid and the receipt of $464 million from Medicare." (Tr. Hr'g Nov. 2, 2016 at 65:

7–10.) The Government unequivocally answered, "Yes." (Id. at 65:11.) Because the Government intends to prove these amounts at trial, it would be inappropriate to strike the references to these amounts from the Indictment. United States v. Thomas, 875 F.2d 559, 562 n. 2 (6th Cir. 1989)) ("[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).").

However, the Court finds that, prior to the evidence being introduced at trial, the Indictment's use of the term "escort" may be: (1) irrelevant, or (2) prejudicial or inflammatory. While the term "escort" has several innocuous definitions,[2] it sometimes may be associated with high-end prostitutes or prostitution.[3] The Government alleges in its Response that the term "escort" describes "women who had relations with the Defendant" and "is a neutral term to describe the individuals involved in this conspiracy." (D.E. 131 at 2, n.4.) The Court finds that context of the usage of this term is not clearly set forth in the Indictment and the Government's assertion does not provide more clarity.

---

[2] Merriam Webster Dicitionary defines "escort" as: "(1) a person or group of persons accompanying another to give protection or as a courtesy (2) [a] man who goes on a date with a woman." See http://www.merriam-webster.com/dictionary/escort.

Oxford English Dictionary defines "escort" as: (1) A person, vehicle, or group accompanying another for protection or as a mark of rank; (2) A man who accompanies a woman to a particular social event; and (3) A person who may be hired to accompany someone to a social event." See https://en.oxforddictionaries.com/definition/escort.

[3] Urban Dictionary defines "escort" as: "[A] term for a woman paid by the hour, not the act, but usually for sex. A prostitute . . . [o]ften, higher quality and cost . . . ." See http://www.urbandictionary.com/define.php?term=escort.

Freedictionary.com alternatively defines "escort" as: "A person, often a prostitute, who is hired to spend time with another as a companion. See http://www.thefreedictionary.com/escort.

Therefore, the Court will reserve ruling on this issue until it hears the Government's evidence at trial

To protect the Defendant's interest in a fair trial and to not unduly lengthen the voir dire process, the Court will not read the Indictment to the jury as part of voir dire. Instead, the Court will read a summary of the allegations and charged counts set forth in the Indictment to be submitted jointly by the parties. The joint summary should exclude reference to the term "escorts" and must be submitted by the parties at least four weeks before trial.[4] This procedure will allow the Court to hear the Government's evidence, as presented at trial, and then make a decision as to whether the references in the Indictment to "escorts" should remain or be stricken as surplusage.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendant's Motion to Strike Prejudicial Surplusage (D.E. 97), filed on September 2, 2016, is **DENIED IN PART**; and

(2) The Court **RESERVES** on the question of whether the term "escort" should be stricken as surplusage consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 4th day of November, 2016.

                                                                       JOAN A. LENARD
                                                                       **UNITED STATES DISTRICT JUDGE**

---

[4] The Eleventh Circuit has endorsed this procedure. See Brye, 318 F. App'x at 880 (citing Awan, 966 F.2d. at 1426).

5