UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-20549-CR-LENARD

UNITED STATES OF AMERICA,

v.

PHILIP ESFORMES,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNTS 1–3, 6 AND 10–25 OF THE INDICTMENT (D.E. 109)

**THIS MATTER** is before the Court on Philip Esformes' (hereinafter, "Defendant") Motion to Dismiss Counts One through Three, Six and Ten through Twenty-Five of the Indictment (D.E. 109), filed on September 6, 2016. The Government filed its Response in Opposition on September 23, 2016.[1] (D.E. 131.) Defendant did not reply. Having reviewed the Defendant's Motion and the Government's Response, the Court finds as follows.

### I.  Background

The Government alleges the Defendant was the primary architect of a massive scheme to defraud Medicare:

> Defendant engaged in a long-running fraudulent scheme involving a complex array of corrupt relationships between the Esformes Network and various physicians,

---

[1] The Government filed a consolidated Response to the Defendant's Motion to Dismiss Various Counts of the Indictment (D.E. 109) and Motion to Strike Surplusage (D.E. 97).

hospitals, and other healthcare providers who paid for access to thousands of Medicare and Medicaid beneficiaries under Defendant's control.  Analysis of Medicare claims data revealed that there are more than 14,000 beneficiaries in the Esformes Network, having resided in an ALF or SNF owned or controlled by Defendant, during the conspiracy period.  Through his control of the Esformes Network, Defendant and his co-conspirators cycled Medicare and Medicaid beneficiaries through SNFs, hospitals, and ALFs and – without regard to the beneficiaries' medical needs – to maximize Defendant's financial benefit.  And Defendant, by retaining tight control over access to the Esformes Network, ensured that these beneficiaries received services not from providers who the beneficiaries chose, but from any provider willing to pay Defendant kickbacks.

Defendants' fraudulent scheme had two primary aspects designed to allow Defendant to profit both through direct billing to Medicare and Medicaid and from kickbacks paid by other subscribers for access to the Esformes Network beneficiaries.  First, by controlling access to Esformes Network beneficiaries and paying kickbacks to physicians and physician assistants, Defendant maintained a pipeline of beneficiaries in Esformes Network SNFs, allowing the SNFs to bill Medicare for Defendant's financial benefit.  In particular, because Medicare would cover SNF services only after a three-day hospitalization and after a doctor certifies the medical need for the services, Defendant and his co-conspirators paid kickbacks to physicians and PAs to induce them to admit beneficiaries to the hospital and to refer beneficiaries for skilled nursing or rehabilitation services that were not medically necessary.  Through this scheme, after a beneficiary spent three days in the hospital, the beneficiary would not go to a SNF of his or her choice, but instead the physician or PA would refer the beneficiary to a SNF within the Esformes Network.  At or around the end of the 100-day benefit period, the beneficiary would be discharged and moved to an Esformes Network ALF.  After the required 60-day waiting period between consecutive admissions to an SNF, a physician or physician assistant would readmit the beneficiary to the hospital, re-initiating the cycle.

> Second, Defendant monetized Esformes Network beneficiaries in ALFs – which could not bill Medicare directly – by providing access to Esformes Network beneficiaries to any health care provider willing to pay a kickback. Defendants' co-conspirators, particularly his "lieutenants" Guillermo and Gabriel Delgado (collectively, the "Delgado Brothers"), entered into kickback arrangements with a number of Medicare providers, including pharmacies, home health agencies, partial hospitalization programs, laboratories, and diagnostic companies (the "Kickback Providers"). Physicians and PAs to whom Defendant paid kickbacks referred Esformes Network beneficiaries to the Kickback Providers, which in turn, billed Medicare for services purportedly provides to the beneficiaries. Many of these services, however, were not medically necessary or were never provided. The Delgado Brothers paid Defendant half of the proceeds from the arrangements with the Kickback Providers.

(D.E. 9 at 4 – 6.) The Defendant was indicted on July 21, 2016 (D.E. 3); and arrested on July 22, 2016 (D.E. 12).

He is charged in the Indictment with one count of conspiracy to commit health care and wire fraud in violation of 18 U.S.C. § 1349, two counts of health care fraud in violation of 18 U.S.C. § 1347, two counts of making false statements related to health care matters in violation of 18 U.S.C. § 1035(a)(2), one count of conspiracy to defraud the United States and pay and receive health care kickbacks in violation of 18 U.S.C. § 371, three counts of receipt of kickbacks in connection with a federal healthcare program in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), six counts of payment of kickbacks in connection with a federal healthcare program in violation of 42 U.S.C. § 1320a-7b(b)(2)(A), one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), eight counts of money laundering in violation of 18 U.S.C. §

1956(a)(1)(B)(i) and two counts of obstruction of justice.  (D.E. 3.)   On September 6, 2016, the Defendant moved to dismiss the following counts of the Indictment:

- Counts One, Two and Three: arguing they are duplicitous and unconstitutionally vague;
- Count Six: arguing it is multiplicitous;
- Counts Ten through Fifteen: arguing they fail to state a criminal offense; and
- Counts Sixteen through Twenty-Five: arguing that if Counts One, Six and Seven through Fifteen are dismissed, there would be no "specified unlawful activity" to support the conspiracy to commit money laundering or money laundering charges.

(D.E. 109.)

The Government filed its response, opposing Defendant's motion.  (D.E. 131.) The Government asserts that the Defendant was the master-mind of a unified scheme to defraud Medicare and assist others in defrauding Medicare in exchange for bribes and kickbacks.  It contends that Count One clearly charges the Defendant with knowledge of the entire scope and purpose of the overarching scheme to defraud Medicare.  (Id. at 4–7.)  Because it believes Count One properly alleges a single scheme – rather than multiple individual conspiracies – it argues that the Defendant's Motion to Dismiss Count One of the Indictment should be denied.  With regard to Counts Two and Three, the Government argues that the each count charges a single instance of health care fraud and therefore is neither duplicitous nor impermissibly vague.  The Government asserts that Count Six is

not multiplicitous because it requires proof of an overt act – while Count One does not. (Id. at 12.)  It also notes that the object of the conspiracy alleged in Count Six was the paying and receiving of illegal healthcare bribes and that the object of the conspiracy in Count One was to commit healthcare and wire fraud.  (Id.)   With regards to Counts Ten through Fifteen, the Government asserts that each count "tracks the language of the statutory offense and provides details as to the specific payments made."  (Id. at 15.)  And finally, the Government contends that Defendant's arguments regarding Counts Sixteen through Twenty-Five are moot because Counts One and Six through Fifteen constitute the "specified unlawful activities," that support the money laundering charges. (Id. at 15–17.)

    **II.   Discussion**

        **A.  Count One**

The Defendant asserts that Count One the Indictment should be dismissed because it is duplicitous and unconstitutionally vague.

"The error of duplicity is present where more than a single crime is charged in one count of an indictment."  United States v. Ramos, 666 F.2d 469, 473 (11th Cir. 1982); see also United States v. Seher, 562 F.3d 1344, 1360 (11th Cir. 2009) (quoting United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997)) ("'A count in an indictment is duplicitous if it charges two or more separate and distinct offenses.'").  "A duplicitous count poses three dangers: '(1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence.'"

5

Schlei, 122 F.3d at 977 (citation omitted). When determining whether a single conspiracy has been pled, courts consider: "'(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants.'" United States v. Richardson, 532 F.3d 1279, 1284 (11th Cir. 2008) (citation omitted).[2]

The Defendant contends that "Count One as drafted impermissibly charges several conspiracies and not one unitary conspiracy." (D.E. 109 at 1.) Specifically, he asserts that Count One:

> [A]lleges numerous separate and different schemes, including but not limited to, a scheme to submit false and fraudulent claims to Medicare, a scheme to bill Medicare for medically unnecessary services, a scheme to bill Medicare for services that were not provides, a scheme to offer and pay kickbacks and bribes for referral of Medicare beneficiaries, a scheme to conceal the submission of false and fraudulent claims to Medicare, a scheme to divert the proceeds of fraud for personal use, and a scheme to create false and fraudulent invoices.

(D.E. 109 at 4.) Defendant's argument invokes the hub-and-spoke doctrine which was first articulated by the Supreme Court in Kotteakos v. United States, 328 U.S. 750 (1946). A "hub-and-spoke" conspiracy occurs where "a central core of conspirators recruits separate groups of co-conspirators to carry out the various functions of the illegal enterprise," and "[t]he core conspirators move from spoke to spoke, directing the functions of the conspiracy." United States v. Huff, 609 F.3d 1240, 1243–44 (11th Cir.

---

[2] A pretrial determination as to the sufficiency of the indictment is limited only to consideration of the face of the indictment and inferences reasonably drawn from those facts in support of the charges as pled. See United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006); United States v. Edouard, 485 F.3d 1324, 1347 (11th Cir. 2007) (citation omitted) ("'[T]he jury makes the initial determination of whether the evidence [introduced at trial] supports a single conspiracy....'").

6

2010) (quoting United States v. Chandler, 388 F.3d 796, 807 (11th Cir. 2004)) (citation omitted). There is a single conspiracy when "the various spokes are aware of each other and of their common aim." Id. However, "where the 'spokes' of a conspiracy have no knowledge of or connection with any other, dealing independently with the hub conspirator, there is not a single conspiracy, but rather as many conspiracies as there are spokes." Id. The Defendant asserts that Count One contains allegations of multiple conspiracies or "spokes" and therefore runs the risk that the jury could return a guilty verdict without unanimously agreeing on which conspiracy, if any, he joined.

The fatal flaw in the Defendant's argument is that he is the alleged hub of the conspiracy – not a spoke. The Eleventh Circuit has been clear that where the "defendant was the key man or hub, a jury may properly conclude that a single conspiracy was proved at his trial, even where the spokes had no knowledge of each other." United States v. Barsoum, 763 F.3d 1321, 1330 (11th Cir. 2014) (citing United States v. Richardson, 532 F.3d 1279, 1284–85 (11th Cir. 2008)). "'It is irrelevant that particular conspirators may not have known other conspirators,' because when a 'key man directs and coordinates the activities and individual efforts of various combinations of people,' the hub may be properly convicted of a single conspiracy." Id. Here, Count One alleges that Philip Esformes orchestrated a wide-spread, complex and unitary scheme to defraud Medicare. The Court can assume for the purposes of this Order that some of the "spokes" did not participate in or understand the full breadth of the conspiracy; nevertheless, the Government has alleged that Philip Esformes not only knew the full extent of the conspiracy, but was its primary architect.

7

Furthermore, the Government has alleged that: (1) the conspirators shared the common goal of defrauding Medicare; (2) each underlying facet of the conspiracy was designed to accomplish this goal; and (3) the conspirators overlapped when performing their functions in furtherance of the conspiracy. In United States v. Darby, 744 F.2d 1508, 1542 (11th Cir. 1984), the Eleventh Circuit held:

> It is not crucial to the existence of a conspiracy that each conspirator participate in every phase of the criminal venture. . . . The plan does not become several plans simply because some members were cast in more vital roles than others or because certain members performed only a single function. And while not all of the conspirators were mutually acquainted, it is not necessary for each conspirator to have knowledge of the identity and role of each of his coconspirators. The evidence in this case reveals the very hallmarks of a single conspiracy: a regularized pattern of activity involving a significant continuity of membership and directed toward a common goal.

(Internal citations and quotations omitted.)

In this case, Count 1 alleges, in relevant part, that:

> Philip Esformes and Arnaldo Carmouze did willfully, that is with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Guillermo Delgado, Gabriel Delgado Nelson Salazar, Jose Carlos Morales, each other, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:
>
> a. To knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce . . . that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the

>    delivery of and payment for health care benefits items, and services in violation of Title 18, U.S.C. 1347; and
>
>    b. To knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, U.S.C., Section 1343.

(D.E. 3 at 8.) Ultimately, whether "a scheme is one conspiracy or several is a question for the jury,"[3] United States v. Michel, 588 F.2d 986, 995 (5th Cir. 1979) (citation omitted), and the Court need only determine whether the Indictment is legally deficient on its face. Here, the allegations in Count One sufficiently allege a single, overarching conspiracy; and that is all that is required at this stage. Consequently, Count One – as alleged – is not duplicitous.

The Defendant also argues that Count One is unconstitutionally vague. This argument is meritless. The Indictment "contains the elements of the offense charged and fairly informs [the Defendant] of the charge against which he must defend, and [] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Ramos, 666 F.2d 469, 474 ( 11th Cir. 1982) (quoting Hamling v. United States, 418 U.S. 87, 94 (1942)). Count One gives the Defendant fair warning of the charges against him and is therefore not impermissibly vague.

---

[3] See also Darby, 744 F.2d at 1542 (holding it is the jury's role to determine whether one or multiple conspiracies exist).

9

### B. Counts Two and Three

The Defendant also alleges Counts Two and Three are duplicitous and impermissibly vague. They are not. Counts Two and Three allege that the defendants violated 18 U.S.C. § 1347 by committing the following discrete acts: (1) submitting a fraudulent healthcare claim to Medicare on September 1, 2011 (claim number 598312167120160); and (2) submitting a fraudulent healthcare claim to Medicare on September 14, 2011 (claim number 3000095837550819301930356). Because each count identifies a specific instance of alleged healthcare fraud by date, description, claim number and approximate amount billed to Medicare, these counts are not duplicitous or impermissibly vague.

### C. Count Six

The Defendant claims that Count Six must be dismissed because it alleges the same offense alleged in Count One and is therefore multiplicitous.

"An indictment is multiplicitous if it charges a single offense in more than one count." United States v. Williams, 527 F.3d 1235, 1241 (11th Cir. 2008) (citing Ward v. United States, 694 F.2d 654, 660-61 (11th Cir. 1983) (quoting United States v. De La Torre, 634 F.2d 792, 794 (5th Cir.1981)). A multiplicitous indictment runs the risk that the defendant will receive numerous sentences for one offense and also "prejudice[s] the defendant and confuse[s] the jury by suggesting that not one but several crimes have been committed." Id. (citing United States v. Hearod, 499 F.2d 1003, 1005 (5th Cir. 1974)). Because a multiplicitous indictment "violates the principles of double jeopardy . . . [by] giv[ing] the jury numerous opportunities to convict the defendant for the same offense,"

10

courts utilize the well-established Blockburger test to determine whether an indictment is multiplicitous. Id.

Under Blockburger, a defendant may not be punished under separate statutes for the same act or transaction unless "each [statutory] provision requires proof of an additional fact which the other does not." United States v. Hassoun, 476 F.3d 1181, 1185 (11th Cir. 2007) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)). Courts in the Eleventh Circuit apply this test with a "focus on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Id.

In this case, Count One charges the Defendant with violating 18 U.S.C. § 1349 and Count Six charges him with violating 18 U.S.C. § 371. Section 1349 provides that: "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 18 U.S.C. § 1349. In contrast, Section 371 states, in relevant part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371 (emphasis added). As revealed by the statutory language, Section 371 "requires proof of an overt act taken by one of the conspirators in furtherance of the

conspiracy," United States v. Lanier, 920 F.2d 887, 893 (11th Cir. 1991), while Section 1349 does not, United States v. Eason, 579 F. App'x 807, 810 (11th Cir. 2014) ("[A]n overt act is not required for a violation of § 1349."). Because Section 371 requires proof of an element that Section 1349 does not, Counts One and Six satisfy the Blockburger test and are not multiplicitious.[4]

### D.  Counts Ten through Fifteen

The Defendant argues that Counts Ten through Fifteen fail to allege a violation of 42 U.S.C. 1320a-7b(b)(2)(A).

An indictment must set forth the essential elements of a criminal offense. See Seher, 562 F.3d at 1344 (citing United States v. Gayles, 967 F.2d 483, 485 (11th Cir. 1992) (en banc)). "'[I]f the facts alleged in the indictment warrant an inference that the jury found probable cause to support all the necessary elements of the charge,' the indictment satisfies the Fifth Amendment." Id. (citing United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998).

A violation of 1320a-7b(b)(2)(A) occurs when the defendant (1) knowingly and willfully, (2) pays money, directly or indirectly, to a person, (3) to induce said person to refer individuals to the defendants for the furnishing of medical services, (4) paid for by a Federal health care program. See United States v. Vernon, 723 F.3d 1234, 1252 (11th Cir. 2013)). Counts Ten through Fifteen of the Indictment allege that:

---

[4] In Lanier, the Eleventh Circuit upheld separate convictions under two different conspiracy statutes, holding that "because each offense required proof of an element the other did not, the Blockburger test mandated [affirmance]." Hassoun, 476 F.3d at 1186 (citing Lanier, 930 F.2d at 893 – 95).

> Philip Esformes and Odette Barcha, did knowingly and willfully offer and pay renumeration, that is kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a federal health care program, that is Medicare. . .

(D.E. 3 at 21.) The Indictment then sets forth specific factual allegations as to each Count – including checks that were written "to be paid to physicians" or were deposited in "A.H.'s bank account."[5] Because Counts Ten through Fifteen of the Indictment recite the elements of the offense and provide specific allegations to support each charge, they sufficiently state offenses to satisfy the Fifth Amendment.

### E.  Counts Sixteen through Twenty-Five

The Defendant argues that Counts Sixteen through Twenty-Five must be dismissed because the Indictment – after Count One, Six and Seven through Fifteen are dismissed – contains no specified unlawful activity that can support the money laundering charges. (D.E. 109 at 16.) Specifically, the Defendant "submits that the money-laundering charges depend on the validity of the charges in Counts One, Six and Seven through Fifteen of the Indictment [and that] [if] those Counts are dismissed, these money-laundering charges cannot stand." Id. at 17. Because the Court declined to dismiss Counts One, Six and Seven through Fifteen, the Defendant's argument regarding Counts Sixteen through Twenty-Five is now moot.

---

[5] Counts Ten through Fifteen each contain specific allegations regarding the particular checks and bank accounts that were used to pay healthcare providers to induce them to refer individuals to the defendants for the purpose of furnishing a payment from Medicare.

13

### III. Conclusion

For the reasons set for above, it is **ORDERED AND ADJUDGED** that:

(1) Motion to Dismiss Counts One through Three, Six and Ten through Twenty-Five of the Indictment (D.E. 109), filed on September 6, 2016, is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 4th day of November, 2016.

*Joan A. Lenard*

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**