UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CR-20549-LENARD/OTAZO-REYES (s)(s)

UNITED STATES OF AMERICA

vs.

PHILIP ESFORMES,
ODETTE BARCHA, and
ARNALDO CARMOUZE,

        **Defendants.**
_____/

## MOTION FOR APPROVAL OF FILTER PROCESS

The government is in possession of evidence seized pursuant to a lawfully executed search warrant at corporate offices located in the Eden Gardens assisted living facility ("Eden Gardens"), and the government respectfully moves this Court for a ruling permitting a designated group of Department of Justice attorneys (the "Filter Team") to review these seized documents. The government further seeks leave to apply the filter process described *infra*, and to transmit any non-privileged documents from the Filter Team to the agents and attorneys prosecuting this case for the United States (the "Prosecution Team").

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On July 21, 2016, a grand jury returned an indictment (hereinafter the "Indictment," D.E. 3) charging three defendants—including Philip Esformes ("Defendant")—with: conspiracy to commit health care fraud and wire fraud; health care fraud; false statements relating to health care matters; conspiracy to defraud the United States and pay and receive health care kickbacks; receipt of kickbacks in connection with a federal health care program; payment of kickbacks in connection with a federal health care program; conspiracy to commit money laundering; and several

1

substantive money laundering and obstruction charges.[1] The government's case, laid out over 27 pages of the Indictment, alleges a sprawling scheme taking place at more than a dozen facilities in the greater Miami area. The Indictment further alleges a massive money laundering operation involving a byzantine network of pass-throughs, strawmen and sham entities. Eden Gardens was the command center for the extensive criminal enterprise directed by Philip Esformes.

A. **The Search Warrant Affidavit**

The assisted living facility at Eden Gardens was owned by Defendant and others and used to churn the patients he controlled through the facilities he owned, as well as through a coterie of other providers willing to pay him kickbacks (the "Esformes Network"). In addition to the assisted living facility at Eden Gardens, there were also offices in the building that operated as the "corporate headquarters" for the Esformes Network. On July 21, 2016, a day before Defendant was arrested, Magistrate Judge Chris M. McAilley signed a search warrant authorizing the search of the office suite. (16-mj-03008.) As the search warrant affidavit described, the Eden Gardens office appeared to be little more than a mailbox for Defendant's intricate web of shell companies designed to bilk the Medicare program while concealing Defendant's involvement. In fact, Eden Gardens was the mailing address Defendant provided to Medicare and Medicaid for several of Defendant's fraudulent health care facilities, as well as a number of shell companies used to launder money. On the Florida Department of Corporations' website alone, there are 36 companies associated with the Eden Gardens address. Many of the vehicles driven by Defendant and his co-conspirators were registered to shell companies that had addresses at the Eden Gardens "corporate headquarters."

---

[1] A grand jury returned a Second Superseding Indictment on February 14, 2017, which included additional money laundering charges and a federal program bribery count.

2

The government knew of only a handful of employees who routinely worked at Eden Gardens, despite the multitude of companies registered to the address; specifically, Norman Ginsparg, who was a part-owner of certain facilities controlled by Defendant, and Jacob Bengio, who is believed to have served a bookkeeping function for the Esformes Network.

The search warrant enumerated a number of categories of documents that the government was permitted to seize from these offices, including, *inter alia*, routine business records, tax records, financial documents, and correspondence related to Defendant's illicit scheme. The warrant was limited in scope to the corporate offices, and did not seek to seize items from the adjacent medical facility.

### B. The Execution Of The Search Warrant At Eden Gardens

On July 22, 2016, law enforcement agents arrived at Eden Gardens at around 7:30 am to prepare to execute the search warrant. The search team was advised that to the extent any even *potentially* privileged, relevant documents were identified during the search, those documents should be segregated into a clearly marked "taint" box.[2] The agents were not instructed to perform a substantive privilege review of any documents during the search.

As the search began, Norman Ginsparg unlocked the corporate offices at Eden Gardens for the search agents and was allowed to access the offices with the search team. After entering the offices, Ginsparg identified a number of materials in his office that he asserted were privileged and unrelated to his business dealings with the Defendant. As a result of Ginsparg's statement, agents did not seize or otherwise inspect those items. Marissel Descalzo, an attorney for Defendant, was also present during the search.

---

[2] Norman Ginsparg was known to have graduated from law school. Ginsparg, however, is not licensed to practice in Florida and the government had no reason to believe that he served as a lawyer for the Defendant. Instead, the government believes he was involved in operating several of Defendant's businesses. He is listed as an owner of several of Defendant's companies on Medicare enrollment forms.

3

By early afternoon, the agents completed their search and departed Eden Gardens. Before leaving, however, they provided Ginsparg with a list of the property seized, which included a description of the contents of each of the boxes seized. One of the boxes on the list was labeled "taint."

### C. The Search Warrant Materials

By midafternoon on July 22, 2016, the documents seized from Eden Gardens were stored at the Miramar Health Care Fraud Facility (the "Miramar Facility"). Beginning on or about August 4, 2016, certain members of the Prosecution Team engaged in a cursory review of documents from a handful of boxes. The Prosecution Team did not review the "taint" box. During this cursory review, the Prosecution Team did not encounter any materials that appeared to contain attorney-client privilege or work production information.

On August 17, 2016, the government sent Defendant's counsel of record a letter informing them that the documents seized from Eden Gardens were available for inspection.[3] In late August 2016, the government began sending a number of the boxes seized at Eden Gardens out to a third-party vendor for electronic scanning.

On December 7, 2016, after the bulk of the documents were scanned by the vendor, a member of the prosecution team performed a preliminary review of the scanned Eden Gardens documents and observed a document that may have implicated the attorney-client privilege. At this point, the review stopped and the entire Prosecution Team was instructed not to access any of the documents from Eden Gardens. The Prosecution Team has followed this instruction. Consistent with its ethical obligations, the Prosecution Team requested a filter review to ensure

---

[3] Defense counsel, however, did not request to view the Eden Garden materials until January 2017.

that it would not be exposed to any potentially privileged materials. On January 25, 2017, two Criminal Division, Fraud Section attorneys were assigned to serve as the Filter Team.

On January 13, 2017, for the first time, counsel for defendant (specifically, detention and conflict counsel ("Temporary Counsel")) requested access to the Eden Garden materials. The Prosecution Team produced electronic copies of the Eden Garden materials that had been scanned, and a Trial Attorney from the Criminal Division, Fraud Section, who was not involved in the prosecution, produced an electronic scanned copy of the "taint box." On February 10, 2017, Temporary Counsel advised the Prosecution Team that they found what they believed were privileged documents among the Eden Garden materials that were not segregated into the taint box during the search. Specifically, Temporary Counsel identified three boxes seized in the search warrant. The Prosecution Team referred defense counsel to the Filter Team that was already in place.

Temporary Counsel and the Filter Team conferred regarding an appropriate review protocol. The Filter Team requested, *inter alia*, that defense counsel identify examples of the documents they believe to be subject to the attorney-client privilege. To date, defense counsel has provided three such examples: (1) a spreadsheet and notes handwritten by Jacob Bengio; (2) a published article from the Journal of Taxation Investments; and (3) a financial statement of Defendant. While the Prosecution Team has seen these documents, there is nothing on the face of these documents that would in any way indicate that they are attorney work product or otherwise privileged materials. To ensure that the Prosecution Team is not exposed to privileged or protected information, the government proposes implementing a filter process to review the Eden Garden documents to ensure that the Prosecution Team is not exposed to privileged information.

5

Temporary Counsel objected to this proposed process and asserts any review of the Eden Garden materials should be performed by a special master.

For a variety of reasons, including the fact that the exhibit deadline for the government has passed and because Temporary Counsel objected, the Filter Team had not yet begun its review of the Eden Gardens materials. The Filter Team will not begin its review of the Eden Gardens materials until, at the very earliest, the Court approves a procedure that respects any valid privileges and allows the government to identify relevant evidence.

## II.     ARGUMENT

### A. Filter Reviews Are Widely Accepted Practices to Protect Privileged Information.

Courts across the country have long held that a filter team, *i.e.* a team consisting of attorneys and investigators who are not members of the prosecution team, is an appropriate mechanism through which to separate potentially privileged and non-privileged materials obtained by law enforcement. *See, e.g.*, *In re Ingram*, 915 F. Supp. 2d 761, 764 (E.D. La. 2012); *In re Search of 5444 Westheimer Road*, 2006 WL 1881370, at *3 (S.D. Tex. July 6, 2006); *United States v. Sutton*, 2009 WL 481411, at *9 (M.D. Ga. Feb. 25, 2009); *United States v. Grant*, No. 04 CR 207BSJ, 2004 WL 1171258, at *3 (S.D.N.Y. May 25, 2004).

Indeed, courts have specifically deemed use of a filter team appropriate under circumstances such as these, when, after the execution of a search warrant, during preliminary review of seized materials, the government discovers potentially privileged items among the collection of documents held in its possession. *See, e.g.*, *In re Grand Jury Subpoenas*, 454 F.3d 511, 522–23 (6th Cir. 2006) (observing that, in cases where "government officials have already obtained the physical control of potentially-privileged documents through the exercise of a search warrant[,] . . . the potentially-privileged documents are already in the government's possession,

and so the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege."); *Ingram*, 915 F. Supp. 2d at 764-65 (granting government's motion to approve use of post-search warrant filter team).

Temporary Counsel asserts that the Eden Garden documents could only be appropriately reviewed for privilege by a special master. This costly and inefficient approach, however, is disfavored. *See Black v. United States*, 172 F.R.D. 511 (S.D. Fla. 1997) (rejecting approach of appointing special master proposed by court in *United States v. Abbell*, 914 F. Supp. 519 (S.D. Fla. 1995), as too time consuming and costly in case where government had urgent need for information); *accord Grant*, 2004 WL 1171258, at *3 (finding that "[p]ermitting the Government's privilege team to conduct an initial review of the documents will narrow the disputes to be adjudicated and eliminate the time required to review the rulings of the special master or magistrate judge, thus reducing the possibility of delay in the criminal proceedings."). Indeed, in *Black*, the court observed that, in *Abbell* a special master delayed a criminal trial over two and a half years, in addition to incurring significant costs, when denying a request for a special master. *Black*, 172 F.R.D. at 514.

### B.  The Government's Proposed Filter Process

The government respectfully submits that a filter team is entitled to access the documents that it lawfully seized. The Filter Team will comprise of the two Criminal Division, Fraud Section attorneys described *supra*, as well as a paralegal employed by the Fraud Section who has not assisted the Prosecution Team in this matter. Federal Bureau of Investigation agents who are not on the Prosecution Team will maintain the materials seized from Eden Gardens. The Prosecution Team will not access them.

The government proposes the following filter protocol to prevent the Prosecution Team from reviewing any privileged information:

STEP 1    The Filter Team will run search terms provided by the Prosecution Team on the Eden Garden documents loaded on the electronic database to limit the universe of documents to potentially relevant documents.

STEP 2    The Filter Team will run search terms negotiated with defense counsel to capture potentially privileged documents (*e.g.* "attorney," "confidential" and attorney names) on the potentially relevant documents captured by STEP 1.

STEP 3    The Filter Team will review all documents captured by the search run during STEP 2 for privilege and segregate any documents it believes are privileged from the Prosecution Team.

STEP 4    The Filter Team will identify to defense counsel any documents reviewed in STEP 3 that it believes are relevant and not privileged to obtain their position.

STEP 5    If defense counsel agrees that the documents described at STEP 4 are not privileged, they will be provided to the Prosecution Team.

STEP 6    If defense counsel asserts any privileges with regard to documents described in STEP 4, the documents will be submitted to the Court for *in camera* inspection.

At no time will any materials in STEP 2 be turned over to the Prosecution Team until either: (a) Defense counsel agrees that the documents are not privileged; or (b) the Court orders that they may be turned over to the Prosecution Team.

### III.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant its Motion For Approval Of Filter Process.

### CERTIFICATION PURSUANT TO LOCAL RULE 88.9

Pursuant to Local Rule 88.9, in a good faith effort to resolve the issues raised in the instant motion, the United States obtained the position of defense counsel on March 10, 2017.  Defendant opposes the motion.

        Respectfully submitted,

        BENJAMIN G. GREENBERG
        ACTING UNITED STATES ATTORNEY

By:   /s/ Elizabeth Young
      Elizabeth W. Young
      Trial Attorney
      Court ID No. A5501858
      Drew Bradylyons
      Trial Attorney
      United States Department of Justice
      Criminal Division, Fraud Section
      1400 New York Avenue, N.W.
      Washington, D.C.  20005
      Tel:  (202) 262-7650
      Elizabeth.Young@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 10, 2017, I will serve copies of this electronically on ECF.

/s/Drew Bradylyons  
Drew Bradylyons  
Trial Attorney  
United States Department of Justice  
Criminal Division, Fraud Section