UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20549-CR-SCOLA/OTAZO-REYES

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

PHILIP ESFORMES,
ODETTE BARCHA, and
ARNALDO CARMOUZE,

        Defendants.
_____/

## BRIEF OF AMICUS CURIAE
## FEDERAL PUBLIC DEFENDER

By leave of the Court, the Federal Public Defender hereby submits this Brief as *amicus curiae* regarding whether monitored email and telephone communications between Bureau of Prison inmates and their attorneys are privileged and protected from disclosure. *See* [DE 470:3 & n.2].

## I.   INTRODUCTION

As recited in his Motion to Participate as Amicus Curiae, approximately 65% of the criminal defendants charged in this district are represented by the Federal Public Defender ("FPD"). The majority of the FPD's clients are not released to bond and are held in custody

1

pursuant to a court order. The attempt by Defendant Esformes, who is represented by a number of privately retained attorneys, to obtain through subpoena the telephone and email communications between another defendant and his attorney, if permitted, would violate the Constitution and laws of the United States and have a significant impact on the FPD's ability to provide constitutionally effective representation for our clients.

## II. METHODS OF COMMUNICATING WITH DETAINED CLIENTS

The Bureau of Prisons ("BOP") permits three methods of confidential communications with detained clients: postal mail, pre-arranged unmonitored telephone calls, and in-person visits. Communicating confidentially through these traditional channels is grossly inefficient and imposes substantial burdens on attorneys and the taxpayer.

For example, a letter sent by an attorney through the postal service may take two weeks or more for an inmate to receive, and additional time for the attorney to receive an inmate's response. Similarly, unmonitored telephone calls are procedurally difficult and time-consuming to arrange. In-person visits are time-consuming, because attorneys often must wait several hours for their client to be

produced by the facility, in addition to time spent traveling to and from the facility and clearing security.

In contrast, the BOP email and telephone systems allow attorneys and their detained clients to communicate at their convenience. Unlike traditional legal mail, emails are delivered to the recipient's inbox almost instantaneously. Moreover, unlike unmonitored telephone calls and in-person visits, inmates and their attorneys do not have to rely on BOP staff to coordinate a specific time and place for the emails to be sent. Lastly, the email system reduces the number of in-person visits attorneys are required to make, saving attorneys countless hours (and CJA funds) traveling to and from prisons and waiting for their clients to be produced once they arrive at the prison.

### III. THE ATTORNEY-CLIENT PRIVILEGE

Tuning to the substantive issue at stake in this case, the attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). The attorney-client privilege developed upon two assumptions: (1) good legal assistance requires full disclosure of a client's legal problems; and (2) a client will only reveal the details required for proper representation if her confidences are protected. *See*

3

*Fisher v. United States*, 425 U.S. 391, 403 (1976). The privilege therefore is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn*, 449 U.S. at 389.

### A. Failure to Promptly Communicate With A Client Is Grounds for Bar Discipline.

An attorney's failure to communicate promptly with a client may lead to discipline by The Florida Bar. Rule 4-1.4 of the Rules Regulating the Florida Bar provides:

RULE 4-1.4 COMMUNICATION

(a) Informing Client of Status of Representation. A lawyer shall:

(1) *promptly* inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in terminology, is required by these rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) *promptly* comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows or reasonably should know that the client expects assistance not

4

>permitted by the Rules of Professional Conduct or other law.
>
>(b) Duty to Explain Matters to Client. A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The ordinary meaning of the word "promptly" is "performed readily or immediately." Merriam-Webster's Collegiate Dictionary 931 (10th ed. 2002). As the Federal Defender, the undersigned requires that all AFPDs adhere to the Rules of the Florida Bar. Similarly, all CJA lawyers are required to be members of the Florida Bar and therefore must comply with Rule 4-1.4 when representing indigent defendants in this district.

Therefore, both FPD and CJA attorneys have an ethical duty to communicate promptly with their clients about case related matters. As described above, this ethical duty cannot be fulfilled using postal mail and unmonitored telephone calls. In-person visits may satisfy this duty but will not always be practical or efficient given the FPD's caseload and this district's "rocket docket." Email and telephone calls that are subject to monitoring by the BOP remain the most timely and efficient method to communicate case-related information to clients.

### B. Communication Between A Criminal Defense Lawyer and His Client Is Required By The First, Fifth, and Sixth Amendments.

Communications between a criminal defense lawyer and his or her client also have a constitutional dimension. "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel" and is a bedrock principle of our justice system. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). And, the right to effective counsel encompasses the right to confer with one's lawyer. *Geders v. United States*, 425 U.S. 80 (1976). Indeed, it has long been recognized that "the essence of the Sixth Amendment right is . . . privacy of communication with counsel." *Weatherford v. Bursey,* 429 U.S. 545, 563 (1977); *see also Strickland v. Washington,* 466 U.S. 668, 688 (1984) ("From counsel's function as assistant to the defendant derives the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."). The right to privately confer with counsel is nearly sacrosanct. *See Adams v. Carlson,* 488 F.2d 619, 631 (7th Cir.1973); *see also Weatherford v. Bursey,*29 U.S. 545, 554 n. 4(1977)("One threat to

6

effective assistance of counsel posed by . . . interception of attorney-client communications lies in the inhibition of free exchanges between defendant and counsel because of the fear of being overheard.").

The right to consult with an attorney also is protected by the First Amendment's guarantees of freedom of speech, association and petition. *Denius v. Dunlap,* 209 F.3d 944, 953 (7th Cir.2000) (*citing DeLoach v. Bevers,* 922 F.2d 618, 620 (10th Cir.1990) ("The right to retain and consult an attorney . . . implicates not only the Sixth Amendment but also clearly established First Amendment rights of association and free speech."). Contact with an attorney and the opportunity to communicate privately also is a vital ingredient to the constitutional guarantee of access to the courts. *Adams v. Carlson*, 488 F.2d 619, 631 (7th Cir. 1973)( recognizing that "the effective protection of access to counsel requires that the traditional privacy of the lawyer-client relationship be implemented in the prison context.").

### C. Elements Of The Attorney-Client Privilege.

To invoke this privilege, the claimant must establish the following:

    (1)    the asserted holder of the privilege is or ought to become a client;

    (2)    the person to whom the communication was made (a) is [the] member of a bar of a court,

>   or his subordinate and (b) in connection with this communication is acting as a lawyer;
>
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
>
> (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990). A communication between an attorney and his client will be protected if it is: "(1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential." *United States v. Bell,* 776 F.2d 965, 971 (11th Cir.1985)(emphasis in original) (quoting *United States v. Melvin,* 650 F.2d 641, 645 (5th Cir. Unit B 1981)).

Virtually all types of communications or exchanges between a client and attorney may be covered by the attorney-client privilege. Privileged communications include essentially any expression undertaken to convey information in confidence for the purpose of seeking or rendering legal advice. *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) (privilege extends to verbal statements, documents

8

and tangible objects conveyed in confidence for the purpose of legal advice).

### 1. The attorney-client privilege is not waived through the use of Trulincs because the Bureau of Prisons is indispensible in assisting a detained client obtain legal services.

The representation of a client in a federal criminal case is a team sport. Both the lawyer and client typically will have communicating agents. These agents enable the lawyer and client to communicate effectively. The most common examples of communicating agents are employees such as couriers, secretaries, paralegals, and investigators. *See United States v. Kovel*, 296 F.2d 918, 921-22 (2d Cir. 1961) (necessary secretaries, paralegals, legal assistants, stenographers or clerks are privileged agents).

Citing language from *Kovel*, courts have extended the privilege to agents where the agent is "necessary, or at least highly useful for the effective consultation between the client and the lawyer." *Cavallaro v. United States*, 284 F.3d 236, 247-48 (1st Cir. 2002). This approach to the "agency exception" is in agreement with Florida law. Florida Statutes § 90.502(c)(2) provides:

(c) A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:

1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.

2. Those reasonably necessary for the transmission of the communication.

Read together, these provisions are "intended to protect communications with any party who assists the client in obtaining legal services." *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 834 (Bankr. S.D. Fla. 2016).

When a criminal defendant is detained at a Bureau of Prisons facility and wants to communicate with his attorney, he can wait for a personal visit, mail a letter, arrange for an unmonitored telephone call, make a telephone call that is subject to monitoring by the BOP, or send an email that is subject to monitoring by the BOP.

With regard to email communications, BOP offers inmates limited email access through the Trust Fund Limited Inmate Computer System ("Trulincs"). To use Trulincs, inmates must acknowledge that all of their emails, including emails between an inmate and his or her attorney are monitored by the BOP, and consent to the monitoring.

Similarly, an inmate may seek to obtain telephone privileges from BOP but must submit a list for approval. The inmate is told that he may place his attorney's name on the list but any call to his attorney is subject to monitoring. Importantly, inmates are not informed that email and telephone communications with their attorneys will be disclosed or revealed to prosecutors or other defense counsel.

The BOP is not "reasonably necessary" or "useful" in facilitating email and telephone communications between an inmate and his attorney; the BOP is indispensable. The FPD cannot communicate by email or telephone with his clients without the BOP's assistance. And, because of the complexity and fast-paced nature of the practice in this district, the FPD cannot provide effective representation or comply with the Rules of the Florida Bar without using Trulincs or accepting telephone calls that are subject to monitoring from our clients.

2. **Telephone and email communications that are "subject to monitoring" but not actually monitored are privileged. In addition, any "consent" to monitoring is coerced and therefore not valid.**

Confidentiality is not destroyed because a non-privileged person knows a communication was made or independently knows the contents of the communication. *николNCK Org., Ltd. v. Bregman*, 542 F.2d 128, 133 (2d Cir. 1976) (noting, in dictum, that the privilege is not

11

destroyed because the information in the privileged communication is known by an adversary). There is no evidence that BOP actually reviews email and telephone calls between attorneys and their detained clients. In the absence of this type of evidence, an inmate may have a reasonable expectation of privacy in his Trulincs emails and recorded telephone calls to his attorney. *See Convertino v. U.S. Dep't of Justice*, 674 F. Supp. 2d 97, 109-10 (D. D.C. 2009) (holding that emails sent by AUSA to his personal counsel on his work computer remained privileged despite DOJ having access to personal emails sent through AUSAs' accounts); *see also Curto v. Med. World Commc'ns, Inc.*, No. 03CV6327 (DRH)(MLO), 2006 WL 1318387, at *3-8 (E.D.N.Y. May 15, 2006)(holding Plaintiff's use of her employer-owned laptop did not waive attorney-client privilege where the lack of enforcement by defendant-employer of its computer usage policy created a "false sense of security" that "'lull[ed]' employees into believing that the policy would not be enforced.").

Furthermore, any waiver of privilege through the use of BOP's email and telephone systems has been coerced. S*ee Regents of Univ. of Cal. v. Super. Court*, 81 Cal. Rptr. 3d 186, 194 (Cal. Ct. App. 2008)(applying California law, the court held that disclosure of privileged information to federal agencies investigating defendants for

criminal wrongdoing was involuntary and did not waive privilege in subsequent litigation). Detained FPD clients are placed in an impossible dilemma by being forced to waive privilege to obtain legal services.

IV. **THIS COURT HAS THE POWER AND AUTHORITY TO PREVENT CO-DEFENDANTS (AND THE GOVERNMENT) FROM OBTAINING ATTORNEY-CLIENT COMMUNICA-TIONS. THE COURT SHOULD EXERCISE THISPOWER TO PREVENT A CONSTITUTIONAL VIOLATION.**

There can be no dispute that federal courts have broad powers to control their proceedings, including over matters related to discovery. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (Federal court's inherent powers arise from "'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (citation omitted); *see also Geders v. United States*, 425 U.S. 80, 86 (1976) ("Our cases have consistently recognized the important role the trial judge plays in the federal system of criminal justice . . . . The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process.") (citation omitted). The Court's inherent powers are even broader in criminal matters, *see Crawford v. United States*, 212 U.S. 183, 194 (1909), and may be invoked to protect a party's legal rights. *See Shipp v. Todd*, 568 F.2d

133, 134 (9th Cir. 1978) (federal courts have inherent power to expunge criminal records "'when necessary to preserve basic legal rights.'") (citations omitted).

Two district judges who have addressed this issue have stopped prosecutors from reviewing Trulincs emails between attorneys and their clients. In one case, the court stated that attorney-client Trulincs emails are subject to the same Sixth Amendment protections as traditional communications:

> You don't have the right to eavesdrop on an attorney-client meeting in a prison or out of a prison, and it seems to me that you don't have the right to open up mail between counsel and an inmate or an inmate and counsel . . . I don't see why it should make a difference whether the mode of communication is more modern or more traditional.

Transcript of Conference, *United States v. Saade*, No. 11-CR-111, at 10:8-12 (NRB) (S.D.N.Y. September 26, 2011). In the other case, the district court ordered the government to employ taint teams to remove all attorney-client Trulincs emails before producing the remainder of the defendant's emails to the prosecuting U.S. Attorney. Transcript of Conference, *United States v. Ahmed*, No. 1:14-cr-00277, at 20:18-25 (E.D.N.Y. June 27, 2014).

The stakes here are substantial. The FPD and the detained clients of the FPD cannot communicate at all without the assistance of the BOP. Detained clients cannot receive effective assistance of counsel if a third-party, either another criminal defendant or the government, can obtain attorney-client emails or recorded telephone conversations. The Court should conclude that despite the BOP's warning that email and telephone communications are subject to monitoring, attorney-client communications are privileged and not obtainable by a third-party. In the alternative, this Court should hold that a third-party's attempt to obtain BOP attorney-client emails or recorded telephone conversations would violate the First, Fifth, and Sixth Amendments.

If the Court permits this practice, the FPD immediately will cease allowing any email or monitored telephone communications with clients. This will negatively impact the number of clients the FPD will be able to represent. Consequently, the number of cases that the CJA Panel will have to handle will increase. And, CJA Panel lawyers will have to cease communicating by email and telephone with their clients with attendant delays in representation and increases in CJA costs.

## CONCLUSION

The Federal Public Defender respectfully submits the foregoing to aid the Court in reaching a decision on this significant issue. The Federal Public Defender is available to participate in any oral arguments as the Court deems appropriate.

**Respectfully submitted,**

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By: *Michael Caruso*
Florida Bar No. 051993
150 West Flagler, Suite 1500
Miami, Florida 33130-1555
Tel: (305) 536-6900
Fax: (305) 536-4559
E-mail: michael_caruso@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on August 29, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Michael Caruso*
Michael Caruso