UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20549-CR-SCOLA/OTAZO-REYES(s)(s)


UNITED STATES OF AMERICA,

     *Plaintiff,*

PHILIP ESFORMES, *et al.,*

     *Defendants*.

_____/


**DEFENDANT'S OPPOSITION TO NON-PARTY DELGADOS'
MOTION FOR A PROTECTIVE ORDER**

The non-party Delgado Brothers move this Court for a protective order barring the
Government from disclosing to the defense telephone recordings and emails in the possession of
the Government based upon allegations of attorney-client privilege.  The disputed material is
listed on a privilege log as 12 recorded phone calls and 17 emails recorded by the government
during 2016 and 2017 while the Delgados were incarcerated in South Carolina.  Movants'
privilege log confirms that the recorded conversations are about the sentencing benefits that
Movants hope to achieve for their cooperation with the prosecution.  The Movants acknowledge
that, if the attorney-client privilege is inapplicable to these prison communications, there is no
need for this Court to review them.  Motion, ¶ 1.  For his part, the amicus Federal Public Defender
raises the specter of ethical dilemmas for indigent counsel along with infringements of the Sixth
Amendment rights of cooperating witnesses like the Delgados, imperiling the indigent defense
system in this District.  The motion for a protective order should be denied.

The Delgados were sentenced in December, 2015 based upon a plea agreement executed
in early June 2015 under which they assumed obligations to cooperate in the prosecution's

criminal investigation of Defendant Esformes.  Early in that service, the Delgados clandestinely recorded conversations between themselves and Defendant Esformes and his counsel in June 2015, notwithstanding a written Joint Defense Agreement in existence since January 2015.   The Delgados have not appealed their sentences, and hence the sentences are now final.   Under Eleventh Circuit precedent, sentenced defendants lack a constitutional or statutory right to appointed counsel.  *United States v. Webb*, 565 F.3d 789, 794 (11th Cir. 2009).

But as early as 2014, when the Delgados were pretrial detainees in their own case, and the Sixth Amendment unquestionably applied to them, they knew that their prison calls with their counsel (the Moscowitzes) were being recorded.  The prosecution has produced to Esformes the recorded 2014 prison calls between Delgados and their counsel.  The Delgados have entered guilty pleas, waived their constitutional rights, and promised not to withhold anything from the Government for its use against Esformes in exchange for a discretionary prosecutorial motion to reduce their prison, restitution, and forfeiture sentences – an explicit waiver of confidentiality in return for the prospect of a Rule 35 motion.

Now invoking the Sixth Amendment they waived for their sentencing deal, and citing the Florida Bar ethical rules, Movants seek to conceal from the Esformes defense and the jury their Bureau of Prisons-recorded conversations about the sentencing benefits they are pursuing with the prosecution.

Since their incarceration in December, 2015, the Delgados have been subject to conditions placed upon inmates by the Bureau of Prisons which include the monitoring and recording of their phone calls and retention of their email communications. By regulation, the BOP provides inmates with proper means to conduce confidential attorney-client communications.  *United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011) (citing 28 C.F.R. §§ 540.18, 540.19, 540.102).   Movants

have not claimed that the BOP denied them access to any such available means, or that they unsuccessfully made any such request.

Defendants Esformes subpoenaed these government documents for purposes of a scheduled pretrial hearing and for trial. The Respondent Bureau of Prisons did not object to the production of its records, but asked this Court to issue a Privacy Act order so as to eliminate any issue under that Act regarding the Government's authority to produce all of the subpoenaed material. At the hearing on July 19, 2017, this Court granted the Government's motion for a Privacy Act order. While acknowledging that a question exists as to whether any privilege applies to the previously recorded BOP material, this Court granted leave to the Delgado Brothers to review the responsive material for purposes of submitting a privilege log or claim to the Court.

At the July 19th hearing, Mr. Mendez, counsel for the Delgados, speculated that there would be more legal calls from his co-counsel Moscowitzes, and undertook to notify them of the opportunity to raise privilege issues. Hearing Transcript, at 36 ("I will certainly enlist the assistance of Norman and Jane Moscowitz so they can go through their conversations, which I think are in greater number than me."). No claim of privilege has since been forthcoming from the Moscowitzes.

On August 23rd, Mr. Mendez filed a public privilege log, and moved for a protective order on behalf of the Delgados regarding the 28 disputed calls and emails. Based upon the descriptions in the privilege, almost every call or email communication involved discussions about the re-sentencing of the Delgados, including discussions about restitution, forfeiture, and Rule 35 issues.

But the only opportunity available to the Delgados for re-sentencing lies in a Rule 35 motion by the prosecution based upon its evaluation of the benefit of the Delgados' cooperation in the prosecution of Defendant Esformes. Any such discussion about a government witness's

expectation of leniency--in the possession of the prosecution--would fall well within the scope of *Brady-Giglio-Bagley[1]* material that the due process clause requires the prosecution to disclose to the defense. *Wearry v. Cain*, 136 S. Ct. 1002, 1007 (2016) (due process required government disclosure of inmate's seeking reduction of his sentence): *Williams v. Williams*, 232 F. Supp.3d 1318, 1325 (N.D. Ga. 2017) (citing *Wearry*, government witness's mere attempt to get a deal is disclosable). Indeed, courts have enforced subpoenas for recorded BOP calls of cooperating witnesses for evidence of inducements to testify. *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008). Neither Movants nor the Federal Public Defender address, or account for, the Defendant's *Brady* due process and discovery rights for exculpatory information in the possession of the Government.

The Delgados admit that it is their burden to establish a privilege,[2] and that showing requires proof of confidentiality. Motion, ¶ 3. Further, Movants concede that the government's monitoring of their calls and emails "may have caused the communications to shed their confidentiality." Motion, ¶ 3. Nonetheless, the Delgados argue that this Court should prevent the Government from producing these particular responsive subpoenaed documents because:

(i)      their consent to the government recordings was not "valid" (Motion, ¶ 5 );

(ii)     Movants took "affirmative steps"--such as claiming that in two out of the twelve recorded calls, a participant allegedly announced that the attorney-client privilege applied--to maintain the privilege (*id.* ¶ 5), although they identify no effort taken with the recording government officials to actually protect any privileged

---

[1] *See Brady v. Maryland*, 373 U.S. 83 (1963) (exculpatory information to guilt or sentencing); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (leniency*); United States v. Bagley*, 473 U.S. 667 (1985) (witness inducements).

[2] *See, e.g., United States v. Schattenbrand*, 930 F.2d 1554, 1662 (11th Cir. 1991).

communication; and,

(iii)    Defendant has allegedly not presented any evidence of Movants' waiver of the

privilege. *Id*. ¶ 4.

 The Delgados make no claim that they were denied the ability to make privileged calls or

communications with counsel, but instead suggest that such avenues for communication were

inconvenient to their Miami-based counsel.

### 1.    Movants Consented to the Recordings.

The Delgados' vaguely raised issue about the validity of their consent should be rejected.

Pervasive precedent establishes that the Delgados consented to the recording of their calls to

counsel, and neither they nor the Federal Defender cite any contrary precedent.

Initially, consent may be express or implied, but it must be actual consent and cannot be

"constructive consent implied by operation of law. *United States v. Verdin-Gercia*, 518 F.3d 884,

894 (10th Cir. 20080 (citing cases); *In re Phamratak, Inc.,* 329 F.3d 9, 19 (1st Cir. 2003).

Implied consent is established "from the surrounding circumstances indicating that the defendant

knowingly agreed to the surveillance".  *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir.

1996) (cited *in In re Google Inc. Gmail Litigation*, 2014 WL 11026660, *14 (N.D. Cal. March

18, 2014)).  Here, both express and implied consent are evident, with the facts sufficient to imply

consent essentially admitted by the Movants.

 The Bureau of Prisons requires inmates expressly to consent to such monitoring and

recording.  *See, e.g*., *United States v. Valencia*, 711 F. Supp. 608, 608 (S.D. Fl. 1989) (describing

process at MCC-Miami of requiring inmates to sign consent forms prior to phone use) (cited in

*United States v. Robinson*, 2008 WL 5381824, *14 (S.D. Fl. Dec. 19, 2008) (notices near phone

sufficient to establish consent), adopted, 2009 WL 33307 (S.D. Fl. Jan. 9, 2009); *United States v.

Noriega*, 764 F. Supp. 1480, 1485 (S.D. Fl. 1991) (describing consent form and phone sticker

5

notice in use at MCC-Miami).   *See generally* www.bop.gov/inmates/communicationsjsp, ("A notice is placed next to each telephone advising inmates that calls are monitored."). *Accord, United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996) (citing *United States v. Amen*, 831 F.3d 373. 379 (2d Cir.1987) (Oakes, J.) (inmate obtains notice from regulations, orientation, handbook, consent form that inmate refused to sign).

The Delgados have neither disclosed nor challenged the written consent they gave to the BOP, at the commencement of their incarceration, at the time of the recordings, or at the time the recordings were produced by the BOP in response to the instant subpoena.  For its part, the BOP has not questioned the validity of the Delgados' consent either when it recorded, or later produced, this material.  If the Delgados have a grievance about the validity of the express consent they previously gave to the BOP, they should have taken that dispute to the prosecution. They do not claim to have done so.

Neither Movants nor the BOP has provided this Court with Movants' executed consent forms from their place of incarceration in FCI Estill, South Carolina.  To secure this evidence, Defendant served a subpoena on the BOP.  The BOP has responded with a protective order motion seeking a Privacy Act order based upon the alleged privacy interests of the Delgados associated with their signed BOP consent forms for the recordings and other routine evidence regularly secured by the BOP confirming the giving of notice to each inmate of government recordings of their communications. *See* Docket No. 545, ¶ 5 (BOP seeking Privacy Act order because subpoenaed documents "might include confidential information concerning Guillermo Delgado and Gabriel Delgado in which no release authorization has been provided" by the Delgados.). Apparently, the Delgados have not authorized the BOP to disclose their express consent to the BOP recordings of their communications.

On July 19, 2017, this Court previously granted the BOP's prior protective order motion for a protective order as to the recorded communications, finding that a Privacy Act order was justified for the BOP to produce the recordings at issue. The same conclusion should apply to the signed Delgado BOP consent forms and related material now under subpoena to confirm the express consent of the Delgados to the BOP for these recordings.

If this Court deems it necessary, however, Defendant would ask that the BOP's second protective order motion be set for a hearing at which the BOP and the Delgados could be examined regarding the express consent of the Delgados.

The format of these BOP consent forms is public information, however, because the BOP has published the "Inmate Agreement" that the BOP requires inmates to sign to use the email system, which includes as one of its "Conditions of Participation," the inmate's agreement that:

> I am notified of, acknowledge, and voluntarily consent that this provision applies to messages both to and from my attorney or other legal representative, and that such messages will not be treated as privileged communications.

https://www.bop.gov/policy/forms/BP_A0934.pdf ("Inmate Agreement for Participation in the TRULINCS Electronic Messaging Program").

Thus, the BOP requires inmates to "'consent to monitoring prior to using the [email] system,'" known as TRULINCS (Trust Fund Limited Inmate Computer Systems), *United States v. Walla*, 2014 WL 3734522, *16 (E.D.N.Y. July 25, 2014) (quoting Federal Bureau of Prisons email (July 22, 2014), http: www.bop.gov/inmates/communicationsjsp, ("Inmates and their contacts must consent to monitoring prior to using the system")). "Thus, all users of TRULINCS are aware that their communications are monitored by the BOP." *Id.* The amicus Federal Public Defender similarly acknowledges that all inmates using the BOP email TRULINCS service "must acknowledge that all of their emails, including emails between his or her attorney are monitored by

the BOP, and consent to the monitoring." Amicus, at 10.

Movants also admit that each of the disputed phone calls was preceded by an announcement that the call was being "recorded and is subject to monitoring." Motion, ¶ 4 (admitting announcement). *See. e.g.*, *United States v. Mitchell*, 2013 WL 3808152, *11 (M.D. Fl. July 22, 2013) (call announcement that all calls are recorded "demonstrates Defendant's consent to being recorded," citing numerous cases, including *United States v. Novak*, 531 F.3d 99, 101 (1st Cir. 2008) (O'Connor, J., sitting by designation).[3]

Under *Mitchell* and similar precedent from this Court, this is fatal to Movants' claim of lack of consent. *United States v. Freeman*, 2010 WL 989227 (S.D. Fla. March 16, 2010) (consent where phone in area with notice that calls recorded). *Accord*, *United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011) (joining several circuits and holding that, "where an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege.").

For that matter, this Court has consistently noted that: "Numerous courts presented with this precise issue have held as a matter of law that there is no reasonable expectation of privacy in outgoing telephone calls from a prison, *even if there is no actual notice that the calls will be intercepted*." *United States v. Robinson*, 2008 WL 5381824, *14 (S.D. Fl. Dec. 19, 2008) (Hopkins, J.)  (emphasis added, citing cases), *adopted,* 2009 WL 33307 (S.D. Fl. Jan. 9, 2009); *United States v. Freeman,* 2010 WL 989227, *9 (S.D. Fl. March 16, 2010 ((Hopkins, J.) (same sentence, citing cases), *adopted*, 2010 WL 1169783 (S.D. Fl. Mar. 24, 2010), *aff'd on other grounds*, 438 Fed. Appx. 864 (11th Cir. 2011).  Here, actual notice is conceded by Movants, and

---

[3]  *See FTC v. National Urological Group, Inc.*, 2012 WL 171621, *1 (N.D. Ga. Jan. 20, 2012) (inmate consents to BOP monitoring of his emails under TRULINCS).  *See also United States v. Verdin- Garcia*, 516 F.3d 884, 894-95 (10th Cir. 2008) (consent implied from inmate's use of phone when informed of recording).

evidence thereof is present on each recorded call which warns of the recording.

To be sure, in the Eleventh Circuit, consent to record calls is "not to be cavalierly implied." *Watkins v. L.M. Berry & Co*., 704 F.2d 577, 581 (11th Cir. 1983).  In *Watkins*, the Eleventh Circuit held that "knowledge of the *capability* of monitoring alone cannot be considered implied consent." *Id*. (emphasis in the original).  Instead, *Watkin*s endorsed the position of those courts finding consent where the caller knew or should know that his calls were constantly being recorded by law enforcement, and failed to resort to a known alternative available line of unmonitored communication, which was not the situation in the case before it. *Id.* (citing cases).   Here, Movants make no claim that they lacked knowledge that their calls were constantly being monitored and recorded, or that they lacked any available unmonitored channel of communication.

Defendant agrees with the Movants' general claims that the Eleventh Circuit has not banished the Fourth Amendment from prison, Motion, ¶ 5, nor has the Eleventh Circuit expressly addressed the viability of a privilege claim for inmates and their counsel who knowingly use recorded channels of prison communications.  Motion, ¶ 6.  *See, e.g*., *United States v. Noriega*, 917 F.2d 1543, 1551 (11th Cir. 1999) (identifying, but not deciding, issue of whether privilege applies to calls for which inmate consents to recording).

The other Circuits are uniform in holding that the knowing use of a monitored prison phone defeats a claim of privilege,[4] as are numerous district court opinions within this Circuit, *United States v. Mitchell*, 2013 WL 3808152, *11 (M.D. Fl. July 22, 2013) and in Florida state court. *Black v. State*, 920 So.2d 668, 670 (Fl. Ct. App. 5th 2006) (inmate cannot establish the existence of

---

[4]  *See, e.g., United States v. Mejia,* 655 F.3d 126, 133-34 (2nd Cir. 2011) (while inmate retains privilege, communication must be made and maintained in confidence; knowing use of monitored phone bars confidentiality essential to privilege) ( citing *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003); *United States v. Madoch*, 149 F.3d 596, 601 (7th Cir. 1998)). *Accord, United States v. Hammond*, 286 F.3d 189 192 (4th Circ. 2002); *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000).

the confidential character of a prison call if he knew, or should have known, that the call was being "overheard").

Movants have not claimed that they lacked knowledge that their calls were being overheard. Nor have Movants cited any applicable legal authority that could justify a reasonable belief that their knowing use of a recorded government call is consistent with maintaining the confidentiality essential to the maintenance of an attorney-client privilege.[5]

The Eleventh Circuit has held that the constitutionally-protected expectation of privacy that attaches to attorney-client communications is greater for those who are not incarcerated than for those who are. *Gennusa v. Canova*, 748 F.3d 1103, 1112 (11th Cir. 2014) (clandestine recording of attorney-client communication in sheriff's office violated Fourth Amendment). Here, the calls were all made while Defendants were incarcerated, with each call preceded by oral notice that they were being recorded. Motion, ¶ 4. Defendant carries no water for the BOP, but if every recorded inmate attorney-client privileged communication violates the Fourth and Sixth Amendments, there will be a rising tide of such claims.

Part and parcel of the burden to establish that communications are "confidential" is a showing that the privilege holder took sufficient precautions to protect the confidential nature of the communication. *United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011) (the risk of insufficient precautions must rest with the party claiming the privilege'") (quoting *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973)). Knowledge that the calls are being recorded has been considered sufficient by courts to demonstrate a lack of sufficient precaution to claim confidentiality. *Mejia*,

---

[5] *Compare United States v. Cannon*, 2012 WL 664490, *3 (D.S.C. Dec. 10, 2012) (citing Fourth Circuit precedent, South Carolina federal inmate's recorded calls not subject to spousal privilege because not confidential); *United States v. Rivera*, 292 F.Supp.2d 838, 844 (E.D. Va. 2003) (citing Fourth Circuit precedent, defendant "plainly consented to the recording and monitoring of his telephone calls a both facilities because he used the telephone after receiving notice that his calls would be recorded and monitored.").

655 F.3d at 133 (based upon undisputed fact that inmate knew call was recorded by BOP, the communications were not made in confidence).

Because Movants do not dispute that they knew their calls and emails were being recorded and saved by the BOP, they cannot prove that they exercised sufficient caution to preserve the confidentiality of their communications. *United States v. Mitchell*, 2013 WL 3808152, *11 (M.D. Fl. July, 22, 2013). *Accord, Meija*, 655 F.2d at 133-34.

The affirmative steps Movants allegedly took to preserve the privilege (e.g., mentioning privilege on 2 of 12 phone calls, and on 15 of 17 emails) are wholly inadequate to overcome the Delgados' own knowledge and continuing consent to the recordings for a period of year and a half without protest. As the *Mitchell* opinion made clear in 2013: "Inmate calls made to outside attorneys frequently lose the protection of the attorney client privilege due to routine recording of such calls, unless measures to protect the attorney-client confidentiality are taken." *Mitchell,* 2013 WL 3808132, at * 25.

### 2. Movants' Cannot Meet Their Burden of Establishing That Communications Over Monitored Prison Phones are Privileged.

Several courts have held that the disclosed fact that prison communications are being recorded is sufficient to render the attorney-client privilege inapplicable because the recording device is the legal equivalent of a third party defeating the confidentiality necessary for the privilege to attach. *See. e.g.*, *United States v. Mitchell*, 2013 WL 3808152, * 11 (M.D. Fl. July 22, 2013) (citing cases, holding inmate cannot prove privilege because that attorney-client privilege cannot attach to recorded inmate calls).

According to this well-established line of precedent, the known "presence of the recording device was the functional equivalent of the presence of a third party." *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003); *Mitchell*, at *12 (citing *Hatcher*). *Accord*, *Mejia*, 655 F.3d at

134 (citing *Hatcher*; "The fact that the call was being recorded amounts essentially to the presence of an unsympathetic third party—BOP—listening in.").   Movants were expressly reminded of the recording device in every call under dispute.

The privilege log identifies five emails in which the Delgados' wives were alleged participants, and although the privilege log does not purport to raise any issue of spousal privilege, it would be unavailing here.   The same lack of confidence that undermines the attorney-client privilege for inmate calls applies equally to invalidate spousal privilege claims. *United States v. Tartaglione*, 228 F. Supp.3d 402, 407 (E.D. Pa. 2017) ("the law is clear that, when one spouse is imprisoned, communications between the married couple on prison telephones are not made in confidence") (citing *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998));  *United States v. Cannon*, 2012 WL 664490, *3 (D.S.C. Dec. 10, 2012) (citing Fourth Circuit precedent, South Carolina federal inmate's recorded calls not subject to spousal privilege because not confidential).

Furthermore, although Movants do not assert any privilege associated with their negotiations with the prosecution, at least one withheld email (dated April 27, 2017) is identified as an email between Movants' counsel and the prosecution.  Such documents are not privileged. *See, e.g.*, *Jane Doe No. 1 v. United States*, 749 F.3d 999, 1009 (11th Cir. 2014) (relationship between prosecution and target of investigation is neither confidential nor privileged).

Defendant understands that the Movant is withdrawing any claim of privilege for this specific document.

### 3.        The Government-Possessed-and-Produced Recordings Are Evidence of Waiver.

Assuming incorrectly that the burden of establishing a waiver falls upon Defendant, Movants claim that the Defendant has failed to produce any evidence of Movants' waiver of the privilege. Motion, ¶ 4.   But as the alleged privilege holder, it is Movants' burden to explain how

their allegedly privileged communications have always been kept confidential. This cannot be established when it is undisputed that these same communications are known at all times by Defendants to be in the possession of the government and have been copied for production to Defendant. *Hatcher*, 323 F.3d at 674 ("The very existence of the tapes, which were made by and are now in the custody of the United States, was factually sufficient to demonstrate that the co-conspirators waived the attorney-client privilege.").

### 4.    Movants' Claim of Attorney Inconvenience Does Not State a Privilege Violation.

Movants and Amicus argue that the BOP's routine, disclosed, recording of inmate calls and emails with counsel violates the Sixth Amendment's guarantee of effective representation, and the Florida Bar ethical rules. Motion, ¶ 8; Amicus, at 11 ("the FPD cannot provide effective representation or comply with the Rules of the Florida Bar without using Trulincs or accepting telephone calls that are subject to monitoring from our clients.").

Defendant agrees with Movant and Amicus that government recording of attorney-client communications is highly prejudicial to the effective representation of defense counsel and constitutes unethical conduct under the Florida bar rules.

But Movants had alternative confidential communication channels available to them, as the Amicus admits. Amicus, at 2 (describing unmonitored procedures). Furthermore, Movants have taken no step to challenge the party who engaged in the recording of allegedly privileged communications—the Government. Perhaps such a challenge would run afoul of Movants' cooperation obligations. In any event, Movants negotiated a plea agreement with the prosecution that provided no express protection against the recording of Movants' conversations with their counsel.

Movants suggest that their incarceration in South Carolina made it too inconvenient for

them to arrange for in-person communications with their Miami-based counsel in order to protect them from being recorded.  Motion, ¶ 8.  Adding to this grievance, Movants complain that such problems would not beset wealthy inmates, thereby creating a "two-tiered" justice system in which they have been relegated to the diminished rights available to those assigned to the less economically fortunate tier.  Movants pled guilty to fraudulently obtaining millions of dollars from the federal government, but have yet to make any appreciable payment toward their restitution and forfeiture obligations.  Movants still have private counsel two years after being sentenced.

Other than making an unsubstantiated suggestion of personal poverty, Movants offer no evidence of any alleged attorney inconvenience that prevented communications in a protected setting.  Courts have consistently rejected inmate claims of a privilege violation or related Sixth Amendment violations for recordings absent some proof that the inmate had no other means of communicating with counsel.  *See, e.g.*, *Groenow v. Williams*, 2014 WL 941276, *6 (S.D.N.Y. March 11, 2014) (citing cases).   Movants make no claim that they were stripped of any opportunity to engage in privileged communications in private.   Instead, their argument is based upon the alleged inconvenience of counsel in doing so.

### 5.      The *Salcedo* Order Does Not Aid Movants.

Movants suggest that the avalanche of adverse precedent can be ignored because an unpublished Order in *United States v. Salcedo*, Case No. 14-20286 (S.D. Fl.) contains language memorializing an agreement reached in open court among the parties that subpoenaed BOP records would be produced "with the exception of any records protected or prohibited from being disclosed by any privilege." Order, at ¶ 1, quoted in Motion, ¶ 7.  To state the obvious, there is no such agreement in this case.  Furthermore, on its face this Order does not purport to approve any particular privilege claim, but rather merely leaves the parties to their own agreement.

6.      **The Amicus Federal Public Defenders' Concerns Are Misdirected.**

Defendant respectfully agrees with the amicus Federal Public Defender that the Bureau of Prisons can, and should, take greater steps to facilitate unmonitored and unrecorded channels for attorney-client communications for all inmates in order to promote their effective representation. Part of that effective representation, however, is securing exculpatory evidence in the possession of the Government, which includes government-recorded conversations about a cooperating witness's aspirations regarding obtaining leniency in exchange for assisting the prosecution.

Like undersigned defense counsel, the Federal Public Defender's office is charged with the responsibility of securing impeachment evidence about cooperating government witnesses to protect vulnerable defendants from the loss of precious liberty through inexpensive lies.

The Federal PDs' quarrel, therefore, is not with defense counsel, but rather with the BOP, and its routine practices in this District and all others.   None of those BOP practices will be altered by denying Defendant access in this case to exculpatory information in the possession of the Government.

The Federal PD claims that it cannot "provide effective representation or comply with the Rules of the Florida Bar without using Trulincs or accepting phone calls that are subject to monitoring from our clients." Amicus, at 11.  Amicus asserts that "Detained PD clients are placed in an impossible dilemma by being forced to waive privilege to obtain legal services." *Id.* at 13.

Such a dilemma would be troubling, but it is not present in this case, or similar cases involving sentenced cooperating witnesses such as the Delgados.   Both Movants and Defendant are represented by private counsel.  No appointed counsel are involved in the subpoena at issue. Any issue regarding the convenience of Movants' counsel is presumably leavened by the prospect of his being paid.

15

Indeed, Movants would not qualify for appointed counsel under the holding of the Eleventh Circuit that the Sixth Amendment and related statutory rights to counsel are inapplicable to post-sentence, sentencing reduction proceedings. *United States v. Webb*, 565 F.3d 789, 794 (11th Cir. 2009).   Accordingly, without questioning that the BOP procedures can be burdensome to appointed counsel, none will be burdened here, and here should be few, if any, appointed counsel laboring under such a burden in others cases.

Citing the "substantial stakes" in this litigation, the Federal PD urges this Court to use its supervisory power to prevent the BOP from recording attorney-client communications.  Amicus, at 13.  Even conceding that this would be a salutary result, the subpoena at issue would not provide a compelling basis for such relief, given that Movants have waived their Sixth Amendment rights, including the right to appointed counsel.

Courts are not powerless to address ongoing government violations of the Sixth Amendment by recording inmate attorney-client conversations.   In *United States v. Black*, 2017 WL 2151861 (D. Kansas May 17, 2017), a district court appointed a Special Master to investigate the government practice of recording inmate-attorney calls, with input from the Federal Public Defender  *Id*. at *1 (describing three phase Special Master investigation).  With the Delgados having thoroughly bargained away their constitutional rights, this is not a suitable case in which to launch such an inquiry.  Instead, this motion can be denied based upon the traditional legal principles applicable to the extensive prison regime that the Delgados have knowingly accepted.

## CONCLUSION

For the foregoing reasons, the protective order motion should be denied.  As the perpetrators of illegal clandestine recordings of attorney-client communications at the request of the prosecution, Movants are not the most sympathetic champions of the sanctity of the privilege.  Having failed to protect themselves against the consequences of the known government recording

16

of their own attorney communications, Movants have failed to meet their burden of proving any

privilege existed or was preserved.

## CERTIFICATE OF SERVICE

On the date stamped above, we served all counsel of record using CM/ECF.

Respectfully submitted,

**CARLTON FIELDS**
100 S.E. 2nd Street, 4200 Miami Tower
Miami, Florida 33131-2114
Telephone: (305) 530-0050


By: ___ s/Michael Pasano
        **MICHAEL PASANO**
        Florida Bar No. 0475947


**TACHE, BRONIS, CHRISTIANSON**
 **&** DESCALZO**, P.A.**
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Tel: (305) 537-9565


By: ___ s/Marissel Descalzo
        **MARISSEL DESCALZO, ESQ.**
        Fla. Bar. No 669318

*Permanent Appearances for Philip Esformes*

**BLACK, SREBNICK, KORNSPAN
& STUMPF, P.A.**
201 **SOUTH** Biscayne Boulevard, Suite 1300
Miami, FL  33131
Tel: (305) 371-6421


By:    */s/Howard Srebnick*
       **ROY BLACK, ESQ**.
       Fla. Bar No. 126088
       **HOWARD SREBNICK, ESQ**.
       Fla. Bar No. 919063
       **JACKIE PERCZEK, ESQ**.
       Fla. Bar No. 0042201

*Limited Appearances for Philip Esformes*