UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-20549-CR-SCOLA/OTAZO-REYES

UNITED STATES OF AMERICA,

v.

PHILIP ESFORMES,

    Defendant.
_____/

## REPORT AND RECOMMENDATION AND ORDER

THIS CAUSE came before the Court upon Defendant Philip Esformes' ("Defendant" or "Esformes") Motion to Suppress Evidence of Warrantless Seizures (hereafter, "Motion to Suppress") [D.E. 261]. This matter was referred to the undersigned by the prior presiding District Judge, the Honorable Joan A. Lenard [D.E. 289]. The undersigned held an evidentiary hearing on this matter on May 15, 2017 [D.E. 353]. The parties filed post-hearing briefs on June 2 and June 8, 2017 [D.E. 379, 381, 392, 393]. On July 21, 2017, Defendant filed a Motion to Stay Ruling and Re-Open Evidentiary Hearing on the Motion to Suppress ("Motion to Stay and Reopen") [D.E. 475]. This matter was referred to the undersigned by the current presiding District Judge, the Honorable Robert N. Scola, Jr. [D.E. 476]. Having considered the testimonial and documentary evidence presented at the May 15th evidentiary hearing on the Motion to Suppress, and the parties' original and post-hearing briefs, the undersigned respectfully recommends that Defendant's Motion to Suppress be DENIED. Having considered the matters presented in connection with the Motion to Stay and Reopen, the undersigned concludes that they do not alter the foregoing recommendation and therefore DENIES that motion as moot.

## PROCEDURAL BACKGROUND

Esformes has been charged in twenty-eight counts with various conspiracy and substantive offenses relating to health care fraud, as well as two counts of obstruction of justice. See Second Superseding Indictment [D.E. 200]. Esformes was arrested at his home on July 22, 2016 pursuant to an arrest warrant [D.E. 4, 53]. At the time of the arrest, federal agents seized three cellular phones, a black workbook and a note pad, all of which were in Esformes' home office. The government subsequently obtained a search warrant for the contents of the three cell phones and the workbook, which were explicitly referenced in its application, and contends that the note pad was part of the workbook. See Search Warrant, Def.'s Ex. 4.[1]

Defendant argues that the items seized at the time of his arrest should be suppressed because their seizure does not fit within any of the exceptions to the Fourth Amendment's warrant requirement. The government argues that the seizure was permissible because the items were in plain view at the time of Esformes' arrest, or, alternatively, due to the existence of exigent circumstances.

## WARRANTLESS SEIZURES

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Mincey v Arizona, 437 U.S. 385, 390 (1978) (citations omitted).

For the plain view doctrine to apply, "[i]t is, of course, an essential predicate to any valid

---

[1] Defendant has made arguments in connection with the Motion to Suppress that appear to be an attack on the validity of the post-seizure search warrant, which was not issued by the undersigned. As stated at the May 15th evidentiary hearing and reaffirmed herein, any such challenge that Defendant may be trying to make is not within the scope of the Motion to Suppress and is not being considered herein.

2

warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be 'immediately apparent.'" Horton v. California, 496 U.S. 128, 136 (1990) (citations omitted).

Another exception to the warrant requirement, exigent circumstances, arises when there is a "need to prevent the imminent destruction of evidence." Kentucky v. King, 563 U.S. 452, 460 (2011) (citations omitted).

## FINDINGS OF FACT

A. **Testimonial and documentary evidence**

1. The only witness who testified at the May 15, 2017 evidentiary hearing was FBI Special Agent Mark Myers ("Agent Myers"). The undersigned found the testimony of Agent Myers to be credible.

2. The following documents were admitted into evidence: Government Exhibits 1-3; and Defendant's Exhibits 1-4.

B. **Facts**

3. Agent Myers had been involved in the investigation of Esformes and participated in his arrest at his home in the early morning hours of July 22, 2016, along with other agents.

4. To effectuate the arrest, Agent Myers, together with FBI Special Agent Terrence Riley ("Agent Riley") initially went to the security office of the building located at 16047 Collins Avenue. There, the agents obtained confirmation from the security guard that Esformes lived in the building and were given Apartment 2904 as his residence. The security guard then led the agents to an elevator which led right up to Esformes' apartment.

3

5.  The agents then knocked on the door of Esformes' apartment and identified themselves as FBI agents looking for Esformes.

6.  Both Esformes and a woman by the name of Mrs. Delgado came to the door. At that point, Esformes was taken into custody without resistance.

7.  Given his cooperative conduct, Esformes was given the opportunity to change his clothes.

8.  To that end, Agent Myers and Agent Riley walked into the residence and followed Esformes to a room with a closet.

9.  After changing clothes, Esformes asked to use the bathroom and brush his teeth, which he was allowed to do.

10. Esformes then asked for permission to get his medications and led the agents to another room to obtain them.

11. In that room, which appeared to be an office, Agent Myers observed a desk, on top of which were papers, a workbook and three cell phones.

12. A photograph of the desk taken at the time by Agent Riley shows an open black workbook, a note pad on top of the workbook, and two cell phones. See Gov't Ex. 2; Def.'s Ex. 2.[2]

13. Although the workbook appeared to be a calendar and to have writing on it, it was partially covered by the two cell phones, the note pad and a religious book. Id.

14. Another photograph taken by Agent Riley shows the workbook with the two cell phones and the religious book removed. See Def.'s Ex. 3.

15. With regard to the black workbook, Esformes stated to the agents that it was his

---

[2] According to Agent Myers, the third cell phone, which does not appear in the photograph, was six to twelve inches away from the workbook.

workbook and that the agents would not let him take it.

16. In the course of conducting surveillance of Esformes prior to his arrest, Agent Myers had observed him carrying a black workbook.

17. Additionally, Agent Myers had learned from a cooperating witness, Gabriel Delgado ("G. Delgado"), that Esformes did not use computers and carried a black workbook with him every day to track patient referrals and maintain kickback logs.

18. Agent Myers also knew, based on his experience, that it is common in healthcare fraud for individuals to keep track of their kickbacks with logs for money that is owed or that they need to pay or receive.

19. There was also a duffel bag lying on the floor of the office that contained a large quantity of pills in plastic bags. Because the pills were not labeled Agent Myers informed Esformes that he would not be allowed to take them.

20. During this exchange, Agent Myers learned from one of the other agents that a text message had come in on two of the cell phones from someone named "Sugar." An extraction report shows that a text from Steve Sugar ("Sugar") came in at 6:22 a.m. to the cell phone with the telephone number ending in 1966. See Gov't Ex. 1.

21. Agent Myers had information that Sugar was a patient recruiter for Esformes who was receiving kickbacks and he was aware of a complaint made against Sugar. See Gov't Ex. 3.

22. Agent Myers also had information that G. Delgado had made calls to Esformes' cell phone and those calls had been documented and recorded by the government.

23. Agent Myers had also previously examined toll records for telephone numbers ending in 2700 and 1966 showing that Esformes had made and received calls from co-defendants Arnaldo Carmouze ("Carmouze") and Odette Barcha ("Barcha"), and G. Delgado.

24. Agent Myers relied on this specific information, as well as his general knowledge that it is common for people in healthcare fraud to have their phone calls done on cell phones, to conclude that there might be evidence of criminal activity on the cell phones located on top of the desk in Esformes' office.

25. At the time of Esformes' arrest, Agent Myers was aware of Mrs. Delgado's presence in the residence and the agents did not know if anyone else had access to the place.

26. The agents also had a concern that the cell phones could be accessed remotely and their memories wiped out.

27. Another concern was that the cell phones could be thrown in the ocean by other individuals, given the location of the apartment on Collins Avenue, which is near the water.

28. Another concern was that evidence might be destroyed due to Esformes being charged with obstruction of justice in the case.

29. When Esformes was removed from his home to FBI headquarters, the agents seized the cell phones, the black workbook, and the note pad and placed them in a bag along with the religious book.

30. According to Agent Myers, the note pad was taken as part of the workbook. However, Agent Myers acknowledged that the note pad bore the legend Peninsula Hotel, Beverly Hills, and that he did not know where the black workbook was from.

31. Agent Myers estimates that Esformes was arrested sometime between 6:00 and 6:30 a.m; that it took approximately 20 minutes for Esformes to get dressed; and that the drive to FBI headquarters took approximately 40 minutes, arriving there between 7:30 and 8:00 a.m.

32. At FBI headquarters, Esformes was allowed to use the cell phones and the agents took the opportunity to observe the codes used to unlock them.

33. Esformes called his son and his attorney while being monitored by the agents.

34. Afterwards, Agent Riley turned the phones off and removed the SIM cards from them. Agent Myers was unable to give the exact time when that occurred.

35. The phones were then placed in the FBI's evidence room.

36. According to a log for one of the cell phones, text messages came into that phone on July 22, 2016 at 8:24, 8:50, 9:49 a.m. and 12:04 p.m. See Def.'s Ex. 1.

37. On August 12, 2016, a search warrant was obtained for the cell phones and the workbook. See Def.'s Ex. 4.

## CONCLUSIONS OF LAW

Based on the foregoing factual findings and legal authorities, the undersigned concludes that the seizure of the cell phones and workbook, but not the note pad, was reasonable under the plain view doctrine.

As noted above, three requirements must be satisfied for a seizure to be reasonable under the plain view doctrine: (1) Agent Myers and the other FBI agents did not violate the Fourth Amendment in arriving at Esformes' apartment; (2) the workbook and three cell phones were in plain view; and (3) their incriminating character was immediately apparent. Horton, 496 U.S. at 136. All three of these requirements are met with regard to the black workbook and the three cell phones.

First, the agents came to Esformes' apartment lawfully with an arrest warrant; they knocked on the door of the apartment; and they were allowed to come in by Esformes after he asked for permission to change his clothes.

Second, Esformes led the agents to his office to obtain his medications and the three cell phones and the open black workbook were on top of the desk in the office in plain view.

7

Although the open black workbook was partially covered by the two cell phones, the note pad and a religious book, it was still in plain view.

Third,

As to the black workbook, its incriminating character was made immediately apparent by: Esformes' acknowledgment that it was his workbook; the fact that the color of the workbook (black) matched Agent Myers' observation in the course of surveillance; the information provided by G. Delgado that Esformes did not use computers and carried a black workbook with him every day to track patient referrals and maintain kickback logs; Agent Myers' general knowledge, based on his experience, that it is common in healthcare fraud for individuals to keep track of their kickbacks with logs for money that is owed or that they need to pay or receive.

As to the three cell phones, their incriminating character was made immediately apparent by: the text message that came in on two of the cell phones from Sugar, who Agent Myers knew to be a patient recruiter for Esformes who was receiving kickbacks and against whom a complaint had been made; Agent Myers' knowledge of G. Delgado having made calls to Esformes' cell phone, which had been documented and recorded by the government; toll records examined by Agent Myers showing calls between Esformes' cell phones and co-defendants Carmouze and Barcha and cooperating witness G. Delgado; and Agent Myers' general knowledge that it is common for people in healthcare fraud to have their phone calls done on cell phones.

As to the note pad, there are insufficient indicia of its incriminating character. The note pad was merely lying on top of the black workbook and cannot be considered part of it, given that it bore the legend Peninsula Hotel, Beverly Hills, and that Agent Myers did not know where the black workbook was from.

8

Because the warrantless seizure of the black workbook and the three cell phones was reasonable under the plain view doctrine, the undersigned need not address the government's contention that the seizure of these four items was also reasonable based on exigent circumstances. However, that exception does justify seizure of the note pad to prevent its imminent destruction, King, 563 U.S. at 460, given the presence of another person in the apartment, namely, Mrs. Delgado, and Esformes being charged with obstruction of justice in the case.

## **RECOMMENDATION**

In accordance with the foregoing, the undersigned respectfully recommends that Esformes' Motion to Suppress be DENIED as to the black workbook and the three cell phones, based on the plain view doctrine; and as to the note pad, based on exigent circumstances. Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Robert N. Scola, Jr. Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

## **ORDER**

In his Motion to Stay and Reopen, Defendant challenges Agent Myers' testimony that the cell phones were turned off and the SIM cards removed after their seizure, based on expert testimony that one of the cell phones was turned on and active on August 3, 2016, prior to the issuance of the search warrant on August 12, 2016. See Motion to Stay and Reopen [D.E. 475 at

3]. This portion of Agent Myers' testimony was only in support of the government's contention that exigent circumstances supported the warrantless seizure of the cell phones, to prevent them from being remotely wiped off. In light of the undersigned's recommendation that the Motion to Suppress be denied as to the cell phones solely on the basis of the plain view doctrine, the undersigned had no need to consider this aspect of Agent Myers' testimony in conducting her legal analysis. For this reason, there is no need to reopen the evidentiary hearing to consider Defendant's expert's testimony regarding the status of one of the cell phones after the seizure and before issuance of the search warrant. Therefore, it is

ORDERED AND ADJUDGED that the Motion to Stay and Reopen is DENIED as moot.

RESPECTFULLY SUBMITTED AND DONE AND ORDERED in Miami, Florida this 25th day of September, 2017.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:  United States District Robert N. Scola, Jr.
     Counsel of Record