**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. <u>16-CR-20549-SCOLA(s)(s)(s)</u>
18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 1035
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)(A)
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 666
18 U.S.C. § 1343
18 U.S.C. § 1346
18 U.S.C. § 1503
18 U.S.C. § 2
18 U.S.C. § 981
18 U.S.C. § 982



FILED by _____ D.C.

JUL 19 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

UNITED STATES OF AMERICA

vs.

**PHILIP ESFORMES,**
**ODETTE BARCHA, and**
**ARNALDO CARMOUZE,**

**Defendants.**
_____/

<u>**THIRD SUPERSEDING INDICTMENT**</u>

The Grand Jury charges that:

<u>**GENERAL ALLEGATIONS**</u>

At all times relevant to this Third Superseding Indictment,

<u>**The Health Insurance Programs**</u>

1.      The Medicare Program ("Medicare") was a federal health care program providing

benefits to persons who were 65 or older or disabled.  Medicare was administered by the United

States Department of Health and Human Services ("HHS") through its agency, the Centers for

Medicare & Medicaid Services ("CMS").  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     The Florida Medicaid Program ("Medicaid") provided benefits to certain low-income individuals and families in Florida.  Medicaid was administered by CMS and the Agency for Health Care Administration ("AHCA").  Medicare and Medicaid were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "federal health care program," as defined by Title 42, United States Code, Section 1320(a)-7(b)-f.

3.     The Medicare program was divided into four "parts" that cover different services. Medicare Part A generally covers inpatient hospital services, home health and hospice care, and skilled nursing and rehabilitation care.

4.     Subject to certain conditions, Medicare Part A covered up to 100 days of skilled nursing and rehabilitation care for a benefit period (*i.e.*, spell of illness) following a qualifying hospital stay of at least three consecutive days.  42 U.S.C. § 1395d(a)(2)(A); 42 C.F.R. § 409.61(b), (c).

5.     The conditions that Medicare imposed on its Part A skilled nursing facility ("SNF") benefit included:  (1) that the patient required skilled nursing care or skilled rehabilitation services (or both) on a daily basis, (2) that the daily skilled services must be services that, as a practical matter, could only be provided in a skilled nursing facility on an inpatient basis, and (3) that the services were provided to address a condition for which the patient received treatment during a qualifying hospital stay or that arose while the patient was receiving care in a skilled nursing facility (for a condition treated during the hospital stay).  42 U.S.C. § 1395f(a)(2)(B); 42 C.F.R. § 409.31(b).

6.      Medicare required that a physician or certain other practitioners certify that these conditions were met at the time of a patient's admission to the nursing facility and to re-certify to the patient's continued need for skilled rehabilitation therapy services at regular intervals thereafter. *See* 42 U.S.C. § 1395f(a)(2)(B); Medicare General Information, Eligibility, and Entitlement Manual, Ch. 4, § 40.3.

7.      To assist in the administration of Medicare Part A, CMS contracted with "fiscal intermediaries." 42 U.S.C. § 1395h. Fiscal intermediaries, typically insurance companies, were responsible for processing and paying claims and cost reports.

8.      Beginning in or around November 2006, Medicare Administrative Contractors began replacing both the carriers and fiscal intermediaries. *See* Fed. Reg. 67960, 68181 (Nov. 2006). The MACs generally acted on behalf of CMS to process and pay Part A (as well as Medicare Part B) claims and perform administrative functions on a regional level. *See* 42 § C.F.R. 421.5(b).

9.      In Florida, First Coast Service Options, Inc. ("First Coast") served as the fiscal intermediary and carrier until September 2008, at which time it was awarded a contract to serve as the MAC for the Florida region.

10.     Providers who wished to be eligible to participate in Medicare Part A were requested to periodically sign an application form, CMS Form 855A. The application, which was required to be signed by an authorized representative of the provider, contained a certification that stated:

> I agree to abide by the Medicare laws, regulations, and program instructions that apply to this provider. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program

instructions (including, but not limited to, the federal anti-kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicare.

11.    CMS Form 855A contained additional certifications that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

12.    Every SNF cost report contained a "Certification" that must be signed by the chief administrator of the provider or a responsible designee of the administrator.

13.    SNFs submitted the CMS-1450 electronically under Medicare Part A to their local fiscal intermediary or MAC, which in this case was First Coast.  First Coast, on behalf of CMS, processed and paid the Medicare Part A claims.

14.    In addition to the services covered under Medicare Part A, Medicare Part B provided coverage for, among other things, certain physician office and home visits, and other health care benefits, items, and services.  The physician services at issue in this Third Superseding Indictment were covered by Part B.

15.    An "Assisted Living Facility" or "ALF" was a facility licensed by AHCA, whether operated for profit or not, which undertook through its ownership or management, to provide housing, meals, and one or more personal services for a period exceeding 24 hours to one or more adults who were not relatives of the owner or administrator.  Medicaid covered a portion of certain costs associated with ALF stays.

16.    In Florida, AHCA was responsible for administering the Medicaid program, and was tasked with regulating and licensing health care facilities in Florida, including SNFs and ALFs.  AHCA was funded by both the state and federal governments.  AHCA received benefits in

excess of $10,000 each year from the federal government at all times relevant to the Third Superseding Indictment.

17.     AHCA's Division of Health Quality Assurance investigated patient complaints and conducted unannounced inspections of a wide range of health care facilities in the state of Florida, including ALFs and SNFs.   In connection with these duties, AHCA surveyors entered and inspected health care facilities to review clinical records, interview patients, and interview staff, among other things, to ensure that the providers were complying with applicable state and federal statutes in a manner that protected the health and safety of the patients.

18.     If AHCA surveyors identified deficiencies or fraud during their inspections, they could fine or, ultimately, revoke the operating license of the facility.  The surveyors also notified the Florida Medicaid Fraud Control Unit at the Florida Attorney General's Office if they observed evidence of fraud.

### The Defendants, Related Companies and Individuals

19.     Defendant **PHILIP ESFORMES**, a resident of Miami-Dade County, controlled, owned, or operated the following SNFs and ALFs (collectively referred to as the "Esformes Network"), located throughout Miami-Dade County, in the Southern District of Florida, and elsewhere:

| Facility Name | Type of Facility |
|---|---|
| ADME Investment Partners LTD dba Oceanside Extended Care | SNF |
| Almovea Associates LLC dba North Dade Nursing and Rehabilitation Center | SNF |
| Ayintove Associates LLC dba Harmony Health Center | SNF |
| Courtyard Manor Retirement Living, Inc. | ALF |
| Eden Gardens LLC | ALF |
| Fair Havens Holding LLC/Fair Havens Center LLC | SNF/ALF |
| Flamingo Park Manor LLC/The Pointe | ALF |

| Facility Name | Type of Facility |
|---|---|
| La Covadonga | ALF |
| Lake Erswin LLC dba South Hialeah Manor/Interamerican | ALF |
| Kabirhu Associates LLC dba Golden Glades Nursing and Rehabilitation Center | SNF |
| Lauderhill Manor LLC | ALF |
| La Serena Retirement Living LLC/La Hacienda Gardens/Rainbow | ALF |
| Jene's Retirement Living, Inc./Jene's Retirement Investors Ltd dba North Miami Retirement Living | ALF |
| Sefardik Associates, LLC dba The Nursing Center at Mercy | SNF |
| Takifhu Associates LLC dba South Dade Nursing and Rehabilitation Center | SNF |
| Williamsburg Retirement Living | ALF |

20.     Defendant **PHILIP ESFORMES** also owned, controlled, and/or managed a number of companies that purportedly managed the Esformes Network, including: Adirhu Associates LLC, ALF Holdings, Inc., La Covadonga Retirement Living, Inc., Family Rest Management, Morsey LC, and Morphil Corporation (collectively referred to as the "Esformes Management Companies"), located throughout Miami-Dade County, in the Southern District of Florida, and elsewhere.

21.     Defendant **ODETTE BARCHA**, a resident of Miami-Dade County, was the registered agent and director of Barcha Consulting, Inc. ("Barcha Consulting"), a Florida corporation, and was the Director of Outreach Programs at Hospital 1.

22.     Defendant **ARNALDO CARMOUZE**, a resident of Miami-Dade County, was a physician's assistant ("PA") licensed in the State of Florida.

23.     Guillermo Delgado was a resident of Miami-Dade County.

24.     Gabriel Delgado was a resident of Miami-Dade County.

25.     Diversified Investment Group of Miami, Inc., Diversified Medical Group, La Covadonga Management Group LLC, and Preferred Providers Group, Inc., were Florida

corporations owned and controlled by Guillermo and Gabriel Delgado.

26.     Guillermo Delgado and Gabriel Delgado owned, controlled and/or operated Tender Touch Home Health LLC ("Tender Touch") and St. Jude Health Care, Inc. ("St. Jude"), Florida corporations.

27.     Nelson Salazar, a resident of Miami-Dade County, was the owner of Nursing Unlimited 2000, Inc. ("Nursing Unlimited"), a Florida corporation.

28.     Jose Carlos Morales, a resident of Miami-Dade County, was the owner of Pharmovisa, Inc. and Pharmovisa, MD, Inc. (collectively "Pharmovisa"), Florida corporations.

29.     Pharmacy 1, Pharmacy 2, and Pharmacy 3 were pharmacies in Miami-Dade County.

30.     American Therapeutic Corporation and Greater Miami Behavioral Health Care Center, Inc. ("Greater Miami") were partial hospitalization programs in Miami-Dade County.

31.     Diagnostic Company 1, Diagnostic Company 2, Diagnostic Company 3, Diagnostic Company 4, and Diagnostic Company 5, were diagnostic companies in Miami-Dade and Broward Counties.

32.     Hospital 2 was a hospital in Miami-Dade County.

33.     Laboratory 1 was a laboratory in Miami-Dade County.

34.     Physician Vision Group 1 was a group of vision physicians in Miami-Dade County.

35.     Physician 1 was a resident of Miami-Dade County and worked with **ARNALDO CARMOUZE**.

36.     Female Companion 1 was a resident of Miami-Dade County.

37.     Female Companion 2 was a resident of Miami-Dade County.

38.     Female Companion 3 was a resident of Broward County.

39.     Female Companion 4 was a resident of Miami-Dade County.

40.     Female Companion 5 was a resident of Miami-Dade County.

41.     Personal Assistant 1 was a resident of Miami-Dade County.

42.     Basketball Coach 1 was a resident of Houston, Texas, in Harris County.

43.     Basketball Coach 2, a resident of Philadelphia, Pennsylvania, in Pennsylvania County, was employed as the head men's basketball coach at University 1 between approximately December 1, 2009 and March 31, 2015.

44.     Individual 1 was a resident of Miami-Dade County.

45.     University 1 was a university in Philadelphia, Pennsylvania, in Pennsylvania County, that received federal benefits in excess of $10,000 within a one-year period under a Federal program involving a grant, contract, subsidy, or other form of Federal assistance at all times relevant to the Third Superseding Indictment.

46.     Nursing Home Administrator 1 was a resident of Miami-Dade County.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 40, 42, and 46 of the General Allegations section of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around January 1998, and continuing through in or around July 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILIP ESFORMES,**
**ODETTE BARCHA,**
and
**ARNALDO CARMOUZE,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Guillermo Delgado, Gabriel Delgado, Nelson Salazar, Jose Carlos Morales, each other, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

    a.  to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347; and

    b.  to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## **Purpose of the Conspiracy**

3.  It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare and Medicaid for claims based on kickbacks and bribes; (b) submitting and causing the submission of false and fraudulent claims to Medicare and Medicaid for services that were medically unnecessary, that were not eligible for Medicare and Medicaid reimbursement, and that were never provided; (c) concealing the submission of false and fraudulent claims to Medicare and

Medicaid; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators in the form of compensation and other remuneration.

**<u>Manner and Means</u>**

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

4. **PHILIP ESFORMES** owned and operated the Esformes Network, which gave him access to thousands of Medicare and Medicaid beneficiaries.

5. **PHILIP ESFORMES** and co-conspirators negotiated and paid kickbacks to **ARNALDO CARMOUZE, ODETTE BARCHA** and certain medical professionals in exchange for referrals to the Esformes Network and co-conspirators.

6. **PHILIP ESFORMES**, through a shell company owned and/or controlled by Gabriel Delgado, caused the payment of kickbacks to **ODETTE BARCHA**.

7. **PHILIP ESFORMES, ODETTE BARCHA, ARNALDO CARMOUZE**, and others caused patients to be admitted into the Esformes Network, regardless of whether or not the patients actually needed the services.

8. **PHILIP ESFORMES, ODETTE BARCHA, ARNALDO CARMOUZE**, and others recruited patients from a number of facilities owned or operated by **ESFORMES** in Miami-Dade, Osceola and Orange Counties, including: Terrace of Kissimmee, Terrace of St. Cloud, Hobe Sound and Fountain Manor.

9. Some of the able-bodied patients that **PHILIP ESFORMES, ODETTE BARCHA, ARNALDO CARMOUZE,** Nursing Home Administrator 1, and others caused to be admitted to Esformes Network SNFs who did not need skilled nursing services suffered from psychiatric conditions that made them dangerous to elderly patients also residing in these facilities.

This led to incidents where physical violence was committed against elderly patients at Esformes Network SNFs. Even after these acts of violence occurred, **ESFORMES, BARCHA, CARMOUZE,** Nursing Home Administrator 1, and others continued to cause patients with psychiatric conditions who did not need skilled nursing services to be admitted to Esformes Network SNFs.

10.     **PHILIP ESFORMES, ODETTE BARCHA, ARNALDO CARMOUZE,** and others caused Medicare to be billed for purported physician and physician assistant visits and services rendered in the Esformes Network SNFs and ALFs that did not take place, including services that were purportedly provided to Medicare beneficiaries after they had died.

11.     **PHILIP ESFORMES,** Nelson Salazar, Guillermo Delgado, Gabriel Delgado, and others created and caused to be created false and fraudulent invoices for durable medical equipment, which were submitted to Diversified Medical Group for payment, and used the funds to pay kickbacks and bribes to physicians and other medical professionals in exchange for referrals to the Esformes Network and co-conspirators.

12.     On or about June 15, 2004, **ARNALDO CARMOUZE** certified to Medicare that he would comply with all Medicare rules and regulations, including that he would refrain from violating the federal Anti-Kickback statute.

13.     On or about October 18, 2006, **PHILIP ESFORMES** signed a civil settlement agreement with the United States Department of Justice, resolving allegations in the Civil Lawsuit that he, and others, paid kickbacks to a physician to admit Medicare and Medicaid patients from the Esformes Network into Hospital 1 where they received unnecessary services, without acknowledging the validity of the claims alleged by the United States or admitting liability.

14.     On or about September 28, 2009, and again on or about January 1, 2012, **PHILIP**

**ESFORMES** certified to Medicare that Harmony Health Center SNF would comply with all Medicare rules and regulations, including that he and Harmony Health Center SNF would refrain from violating the federal Anti-Kickback statute.

15.     On or about February 2, 2011, and again on or about March 22, 2011, **PHILIP ESFORMES** certified to Medicare that Fair Havens SNF would comply with all Medicare rules and regulations, including that he and Fair Havens SNF would refrain from violating the federal Anti-Kickback statute.  On or about July 10, 2006, June 25, 2010, May 22, 2012 and June 30, 2015, **ESFORMES** certified to Medicaid that Fair Havens SNF would comply with all Medicaid rules and regulations, including that he and Fair Havens SNF would refrain from violating federal laws.

16.     On or about January 24, 2014, and again on or about April 3, 2014, **PHILIP ESFORMES** certified to Medicare that The Nursing Center at Mercy SNF would comply with all Medicare rules and regulations, including that he and The Nursing Center at Mercy SNF would refrain from violating the federal Anti-Kickback statute.  On or about February 22, 2012, **ESFORMES** certified to Medicaid that The Nursing Home at Mercy SNF would comply with all Medicaid rules and regulations, including that he and the Nursing Home at Mercy SNF would refrain from violating federal laws.

17.     On or about December 5, 2011, and again on September 15, 2014, **PHILIP ESFORMES** certified to Medicaid that Oceanside Extended Care SNF would comply with all Medicaid rules and regulations, including that he and Oceanside Extended Care SNF would refrain from violating federal laws.

18.     On or about November 6, 2014, **PHILIP ESFORMES** certified to Medicaid that North Dade Nursing and Rehabilitation Center SNF would comply with all Medicaid rules and

regulations, including that he and North Dade Nursing and Rehabilitation Center SNF would refrain from violating federal laws.

19.     On or about August 24, 2010, and again on or about July 19, 2013, **PHILIP ESFORMES** certified to Medicaid that Courtyard Manor ALF would comply with all Medicaid rules and regulations, including that he and Courtyard Manor ALF would refrain from violating federal laws.

20.     On or about September 1, 2009, and again on or about June 12, 2012, and August 10, 2015, **PHILIP ESFORMES** certified to Medicaid that Flamingo Park Manor ALF would comply with all Medicaid rules and regulations, including that he and Flamingo Park Manor ALF would refrain from violating federal laws.

21.     On or about September 1, 2009, and again on or about July 18, 2012, **PHILIP ESFORMES** certified to Medicaid that La Hacienda Gardens ALF would comply with all Medicaid rules and regulations, including that he and La Hacienda Gardens ALF would refrain from violating federal laws.

22.     On or about December 10, 2013, **PHILIP ESFORMES** certified to Medicaid that Lauderhill Manor ALF would comply with all Medicaid rules and regulations, including that he and Lauderhill Manor ALF would refrain from violating federal laws.

23.     Prior to, and after, signing each of these certifications to Medicare and Medicaid, **PHILIP ESFORMES** paid kickbacks to physicians in exchange for their referral of Medicare and Medicaid beneficiaries to be placed at Harmony Health Center, Fair Havens, the Nursing Center at Mercy, Oceanside Extended Care, and other SNFs. **ESFORMES** also received kickbacks prior to, and after, signing each of these certifications for access to patients residing in those SNFs, Courtyard Manor, Lauderhill Manor, Flamingo Park Manor, La Hacienda Gardens, and other

facilities in the Esformes Network.

24.     **PHILIP ESFORMES** caused Harmony Health Center, Fair Havens, The Nursing Center at Mercy and other SNFs under his control to file claims to Medicare and Medicaid for skilled nursing services for patients that were obtained through the payment of kickbacks to physicians.

25.     Co-conspirators paid **PHILIP ESFORMES** kickbacks, bribes, and other inducements, often through Guillermo and Gabriel Delgado, in exchange for referrals of Medicare and Medicaid beneficiaries that were part of the Esformes Network.    These co-conspirator providers included:   Tender Touch, St. Jude, Nursing Unlimited, Pharmovisa, Pharmacy 1, Pharmacy 2, Pharmacy 3, American Therapeutic Corporation, Greater Miami, Diagnostic Company 1, Diagnostic Company 2, Diagnostic Company 3, Diagnostic Company 4, and Diagnostic Company 5, Laboratory 1, Physician Vision Group 1, and other providers.

26.     **PHILIP ESFORMES** received the kickbacks and bribes from the co-conspirators which were disguised as: a) cash payments; b) payments to Female Companion 1, Female Companion 2, Female Companion 3, Female Companion 4, and Female Companion 5; c) charitable donations; d) payments to Basketball Coach 1 for coaching Individual 1; e) lease payments to the Esformes Management Companies; and f) limousine services for himself and others, including Basketball Coach 2.

27.     **PHILIP ESFORMES, ODETTE BARCHA, ARNALDO CARMOUZE,** Nursing Home Administrator 1, and their co-conspirators falsified, fabricated and altered, and caused the falsification, fabrication, and alteration of medical records to support services purportedly rendered at Hospital 1, the Esformes Network, and other health care providers operated by co-conspirators.

28.     **ARNALDO CARMOUZE** signed what he knew to be falsified, fabricated, and altered prescriptions and medical records, including home health referrals, admissions at Hospital 1, discharge paperwork at Hospital 1, and office visit notes without proper supervision of a physician and, in many instances, without ever meeting with the Esformes Network beneficiary. **CARMOUZE** also prescribed medically unnecessary narcotics, including Oxycodone, without a license, to Esformes Network beneficiaries.

29.     **PHILIP ESFORMES**, through AHCA Intermediary 1, AHCA Intermediary 2, Gabriel Delgado, Guillermo Delgado, and other co-conspirators, bribed AHCA Employee 1 for non-public schedules providing advance notice of unannounced AHCA inspections and patient complaints at the SNFs and ALFs.

30.     **PHILIP ESFORMES, ODETTE BARCHA, ARNALDO CARMOUZE**, and their co-conspirators used these schedules of the unannounced inspections and patient complaints to evade detection by AHCA of administrative violations which could lead to the termination of Esformes Network facilities from Medicare and Medicaid.

31.     In or around January 2016, **PHILIP ESFORMES** purchased the psychiatric wing of Hospital 2, and used, or attempted to use, Hospital 2 to cycle Medicare and Medicaid patients throughout the Esformes Network.  **ESFORMES** concealed his ownership interest in Hospital 2 to CMS on Medicare enrollment documents.

32.     **PHILIP ESFORMES, ODETTE BARCHA, ARNALDO CARMOUZE**, and others, through the use of interstate wires, caused Medicare to make payments for services that were medically unnecessary, never provided, and procured through the payment of kickbacks and bribes.

All in violation of Title 18, United States Code, Section 1349.

<u>**COUNTS 2-3**</u>
**Health Care Fraud**
**(18 U.S.C. § 1347)**

1.      Paragraphs 1 through 19 and 22 through 35 of the General Allegations section of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2009, and continuing through in or around June 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILIP ESFORMES**
and
**ARNALDO CARMOUZE,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit programs.

<u>**Purpose of the Scheme and Artifice**</u>

3.      It was a purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) creating fake medical documentation for services that were not rendered, not necessary, or not provided under the proper supervision of a physician; (b) submitting and causing the submission of false and fraudulent claims to Medicare and Medicaid; and (c) concealing the submission of false and fraudulent claims to Medicare and Medicaid.

<u>**The Scheme and Artifice**</u>

4.     The allegations contained in paragraphs 4 through 32 of the Manner and Means section of Count 1 of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice only as those allegations relate to **ARNALDO CARMOUZE** and **PHILIP ESFORMES**.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

5.     On or about the dates set forth as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILIP ESFORMES**
and
**ARNALDO CARMOUZE,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit programs, that is, the defendants submitted and caused the submission of false and fraudulent claims to Medicare, as listed below:

| Count | Beneficiary Name | Approx. Claim Receipt Date | Services Claimed | Approximate Amount Billed to Medicare | Claim Number |
|---|---|---|---|---|---|
| 2 | S.J. | 9/1/11 | Office Visit in ALF | $95 | 598312167120160 |
| 3 | S.J. | 9/14/11 | OXYCODONE HCL Prescription | $62 | 30000958375508 19301930356 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 4-5
### False Statements Relating to Health Care Matters
### (18 U.S.C. § 1035(a)(2))

1.      Paragraphs 1 through 19 and 32 through 35 of the General Allegations section of the Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### ARNALDO CARMOUZE,

in any matter involving a health care benefit program, knowingly and willfully made any materially false, fictitious, and fraudulent statements and representations, and made and used any materially false writing and document knowing the same to contain any materially false, fictitious and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services, that is, the defendant signed prescriptions and  physician visit treatment notes and other documents certifying that the defendant and Physician 1 provided services on the dates enumerated below, when in truth and in fact, and as the defendant then and there well knew, the defendant and Physician 1 did not provide those services on those dates:

| Count | Beneficiary Name | Approx. Claim Receipt Date | Services Claimed | Approximate Amount Billed to Medicare | Claim Number |
|---|---|---|---|---|---|
| 4 | S.J. | 9/1/11 | Office Visit in ALF | $95 | 598312167120160 |
| 5 | S.J. | 9/14/11 | OXYCODONE HCL Prescription | $62 | 30000958375508 19301930356 |

In violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## COUNT 6
### Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 40, 42, and 46 of the General Allegations and 4 through 32 of the manner and means section of Count 1 of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2002, and continuing through in or around July 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILIP ESFORMES,**
**ODETTE BARCHA,**
and
**ARNALDO CARMOUZE,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with Guillermo Delgado, Gabriel Delgado, Nelson Salazar, Jose Carlos Morales, each other, and others known and unknown to the Grand Jury:

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare and Medicaid programs, in violation of Title 18, United States Code, Section 371, and to commit certain offenses against the United States, that is:

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a federal health care program, that is, Medicare and Medicaid;

c.      to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a federal health care program, that is, Medicare and Medicaid; and

d.      to violate Title 42, United States Code, 1320a-7b(b)(1)(B), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering and arranging for and recommending purchasing, leasing, and ordering any good, facility, and service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare and Medicaid.

### Purpose of the Conspiracy

3.      It was a purpose of the conspiracy for **PHILIP ESFORMES, ODETTE BARCHA, ARNALDO CARMOUZE**, and their co-conspirators, to unlawfully enrich themselves by:  (1) offering, paying, soliciting, and receiving kickbacks and bribes to ensure that Medicare and Medicaid beneficiaries would serve as patients in the Esformes Network and co-conspirator providers; and (2) submitting and causing the submission of claims to Medicare and Medicaid for medical items and services purportedly provided to these recruited beneficiaries.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

4.      **PHILIP ESFORMES** paid and caused the payment of kickbacks and bribes to

physicians in exchange for their referrals to the Esformes Network.

5.      **PHILIP ESFORMES**, Nelson Salazar, Guillermo Delgado, Gabriel Delgado, and other created and caused to be created false and fraudulent invoices for durable medical equipment, which were submitted to Diversified Medical Group for payment, and used the funds to pay kickbacks and bribes to physicians and other medical professionals in exchange for referrals to the Esformes Network and co-conspirators.

6.      **PHILIP ESFORMES**, through shell companies owned and controlled by Guillermo and Gabriel Delgado, caused the payment of kickbacks and bribes to **ARNALDO CARMOUZE** in exchange for patient referrals to the Esformes Network and co-conspirators.  In order to conceal these kickback payments, Guillermo and Gabriel Delgado, at **ESFORMES'** direction, signed checks made payable to **CARMOUZE**'s girlfriend.

7.      **PHILIP ESFORMES**, through a shell company owned and/or controlled by Gabriel Delgado, caused the payment of kickbacks to **ODETTE BARCHA** via cash or checks made payable to "Barcha Consulting" or her boyfriend.

8.      **ODETTE BARCHA** cashed checks from Gabriel Delgado and then used the cash to pay physicians for referrals to the Esformes Network.

9.      **ODETTE BARCHA** recruited physicians who worked at Hospital 1 and paid those physicians to refer patients to **PHILIP ESFORMES'** SNFs.

10.     The co-conspirators paid **PHILIP ESFORMES** kickbacks, bribes, and other inducements, often through Guillermo and Gabriel Delgado, in exchange for referrals of Medicare and Medicaid beneficiaries that were part of the Esformes Network.   These co-conspirator providers included:   Tender Touch, St. Jude, Nursing Unlimited, Pharmovisa, Pharmacy 1, Pharmacy 2, Pharmacy 3, American Therapeutic Corporation, Greater Miami, Diagnostic

Company 1, Diagnostic Company 2, Diagnostic Company 3, Diagnostic Company 4, and Diagnostic Company 5, Laboratory 1, and Physician Vision Group 1.

11.     **PHILIP ESFORMES** received the kickbacks and bribes from the co-conspirators which were disguised as: a) cash payments; b) payments to Female Companion 1, Female Companion 2, Female Companion 3, Female Companion 4, and Female Companion 5; c) charitable donations; d) payments to Basketball Coach 1 for coaching Individual 1; e) lease payments to the Esformes Management Companies; and f) limousine services for himself and others, including Basketball Coach 2.

12.     Medicare and Medicaid made payments to the Esformes Network and co-conspirators based upon claims for medical items and services purportedly provided to Medicare and Medicaid beneficiaries.

**<u>Overt Acts</u>**

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in Miami-Dade County, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.     On or about July 7, 2010, **PHILIP ESFORMES** caused check number 9457 from Diversified Medical Group's bank account ending in x5606, in the approximate amount of $1,500, to be deposited into Charity 1's bank account for the benefit of **ESFORMES'** father.

2.     On or about November 12, 2011, **ARNALDO CARMOUZE** caused check number 3001 from Diversified Investment Group of Miami, Inc. bank account ending in x6837, in the approximate amount of $1,250, to be deposited into his girlfriend's bank account for his benefit.

3.      On or about April 2, 2012, **PHILIP ESFORMES** caused check number 1464 from the Fair Havens SNF bank account ending in x7170, in the approximate amount of $11,988, to be deposited into Diversified Medical Group bank account ending in x0205.

4.      On or about April 2, 2012, **PHILIP ESFORMES** caused check number 23919 from the Oceanside Extended Care SNF bank account ending in x3409, in the approximate amount of $11,514, to be deposited into the Diversified Medical Group bank account ending in x0205.

5.      On or about April 2, 2012, **PHILIP ESFORMES** caused check number 1255 from the Harmony Health SNF bank account ending in x0102, in the approximate amount of $28,382, to be deposited into the Diversified Medical Group bank account ending in x5605.

6.      On or about April 2, 2012, **PHILIP ESFORMES** caused check number 17661 from The Nursing Center at Mercy SNF bank account ending in x1238, in the approximate amount of $17,877, to be deposited into the Diversified Medical Group bank account ending in x0205.

7.      On or about June 5, 2012, **ODETTE BARCHA** caused check number 1065 from Preferred Providers Group, Inc.'s bank account ending in x4668, in the approximate amount of $3,500, to be deposited into her boyfriend's account for her benefit.

8.      On or about August 1, 2012, **ODETTE BARCHA** caused check number 1219 from Diversified Medical Group's bank account ending in x4668, in the approximate amount of $1,500, to be deposited into her boyfriend's bank account for her benefit.

9.      On or about February 2, 2014, **PHILIP ESFORMES** reserved hotel room 1401 for himself at the Ritz-Carlton in Orlando, Florida.

10.     On or about February 2, 2014, Gabriel Delgado paid and arranged for Female Companion 1 to be picked up in a limousine at her residence in Miami, Florida, transported to Miami International Airport, flown to Orlando on an American Airlines flight, picked up in a

limousine at the Orlando airport, and transported to Room 1454 at the Ritz-Carlton in Orlando, Florida.

11.     On or about February 2, 2014, **PHILIP ESFORMES** met with Female Companion 1 at the Ritz-Carlton in Orlando.

12.     On or about February 2, 2014, **PHILIP ESFORMES** funded the travel and transportation for Female Companion 1 with bribes and kickbacks he received from co-conspirators.

13.     On or about February 5, 2014, **PHILIP ESFORMES** caused Female Companion 1 to cash check number 1314, in the approximate amount of $500, from Preferred Providers Group, Inc.'s bank account ending x4668.

14.     On or about February 13, 2014, **PHILIP ESFORMES** reserved Room 1401 for himself at the Ritz-Carlton in Orlando, Florida.

15.     On or about February 13, 2014, Gabriel Delgado paid and arranged for Female Companion 2 to be flown to Orlando, Florida on an American Airlines flight, picked up in a limousine at the Orlando airport, and transported to Room 1445 at the Ritz-Carlton in Orlando, Florida.

16.     On or about February 13, 2014, **PHILIP ESFORMES** met with Female Companion 2 at the Ritz-Carlton in Orlando.

17.     On or about February 13, 2014, **PHILIP ESFORMES** funded the travel and transportation for Female Companion 2 with bribes and kickbacks he received from co-conspirators.

18.     On or about May 6, 2014, **PHILIP ESFORMES** caused check number 1356 from Preferred Providers Group, Inc.'s bank account ending in x4668, in the approximate amount of

$3,500, to be deposited into Basketball Coach 1's bank account.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 7-9
### Receipt of Kickbacks in Connection with a
### Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1.      Paragraphs 1 through 40, 42, and 46 of the General Allegations section of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### PHILIP ESFORMES
### and
### ARNALDO CARMOUZE,

did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a federal health care program, that is, Medicare and Medicaid, as set forth below:

| Count | Defendant | Approximate Date of Payment | Approximate Amount | Description |
|-------|-----------|------------------------------|--------------------|-------------|
| 7 | ARNALDO CARMOUZE | November 12, 2011 | $1,250 | Diversified Investment Group of Miami, Inc. Check number 3001 |
| 8 | PHILIP ESFORMES | February 5, 2014 | $500 | Check number 1314 from Preferred Providers Group, Inc. bank account ending in x4668 made payable to Female Companion 1 |
| 9 | PHILIP ESFORMES | May 6, 2014 | $3,500 | Preferred Providers Group, Inc. check number 1356 made payable to Basketball Coach 1 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

## COUNTS 10-15
**Payment of Kickbacks in Connection with a Federal Health Care Program**
**(42 U.S.C. § 1320a-7b(b)(2)(A))**

1. Paragraphs 1 through 40, 42, and 46 of the General Allegations section of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates enumerated below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILIP ESFORMES**
and
**ODETTE BARCHA,**

did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a federal health care program, that is, Medicare and Medicaid, as set forth below:

| Count | Defendant | Approximate Date of Payment | Approximate Amount | Description |
|-------|-----------|------------------------------|---------------------|-------------|
| 10 | **PHILIP ESFORMES** | April 2, 2012 | $11,988 | Fair Havens SNF check number 1464 from bank account ending in x7170 deposited into the Diversified Medical Group bank account to be paid to physicians |
| 11 | **PHILIP ESFORMES** | April 2, 2012 | $11,514 | Check number 23919 from the Oceanside Extended Care SNF bank account ending in x3409 deposited into the Diversified Medical Group bank account to be paid to physicians |

| Count | Defendant | Approximate Date of Payment | Approximate Amount | Description |
|---|---|---|---|---|
| 12 | PHILIP ESFORMES | April 2, 2012 | $28,382 | Check number 1255 from the Harmony Health SNF bank account ending in x0102 deposited into the Diversified Medical Group bank account to be paid to physicians |
| 13 | PHILIP ESFORMES | April 2, 2012 | $17,877 | Check number 17661 from The Nursing Center at Mercy bank account ending in x1238 deposited into the Diversified Medical Group bank account to be paid to physicians |
| 14 | PHILIP ESFORMES and ODETTE BARCHA | June 5, 2012 | $3,500 | Check number 1065 from Preferred Providers Group, Inc. account ending in x4668 deposited into A.H.'s bank account |
| 15 | PHILIP ESFORMES and ODETTE BARCHA | August 1, 2012 | $1,500 | Check number 1219 from Diversified Medical Group account ending in x4668 deposited into A.H.'s bank account |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNT 16
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 46 of the General Allegations section of the Third Superseding Indictment and Counts 17-30, are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2002, to in or around June 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILIP ESFORMES,**
**ODETTE BARCHA,**
and
**ARNALDO CARMOUZE,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activities are the receipt of kickbacks in connection with a federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A), health care fraud, in violation of Title 18, United States Code, Section 1347, and conspiracy to commit wire fraud and health care fraud, in violation of Title 18, United States Code, Section 1349.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 17-30
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**PHILIP ESFORMES,**
**ODETTE BARCHA,**
and
**ARNALDO CARMOUZE,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful

activity, knowing that the property involved in the financial transaction represented the proceeds

of some form of unlawful activity, and knowing that the transaction was designed, in whole and

in part, to conceal and disguise the nature, the location, the source, the ownership, and the control

of the proceeds of specified unlawful activity, as set forth below:

| Count | Defendant | Approximate Date of Payment | Approximate Amount | Description |
|-------|-----------|----------------------------|--------------------|-------------|
| 17 | PHILIP ESFORMES and ARNALDO CARMOUZE | November 12, 2011 | $1,250 | Diversified Investment Group of Miami, Inc. Check #3001 made payable to E.M. |
| 18 | PHILIP ESFORMES | April 2, 2012 | $11,988 | Fair Havens SNF check #1464 from bank account ending in x7170 deposited into the Diversified Medical Group bank account |
| 19 | PHILIP ESFORMES | April 2, 2012 | $11,514 | Check number 23919 from the Oceanside Extended Care SNF bank account ending in x3409 deposited into the Diversified Medical Group bank account |
| 20 | PHILIP ESFORMES | April 2, 2012 | $28,382 | Check number 1255 from the Harmony Health SNF bank account ending in x0102 deposited into the Diversified Medical Group bank account |
| 21 | PHILIP ESFORMES | April 2, 2012 | $17,877 | Check number 17661 from The Nursing Center at Mercy bank account ending in x1238 deposited into the Diversified Medical Group bank account |
| 22 | PHILIP ESFORMES and ODETTE BARCHA | June 5, 2012 | $3,500 | Check number 1065 from Preferred Providers Group, Inc. account ending in x4668 made payable to A.H. |
| 23 | PHILIP ESFORMES and ODETTE BARCHA | August 1, 2012 | $1,500 | Check number 1219 from Diversified Medical Group account ending in x4668 made payable to A.H. |

| Count | Defendant | Approximate Date of Payment | Approximate Amount | Description |
|---|---|---|---|---|
| 24 | **PHILIP ESFORMES** | November 12, 2013 | $360,000 | Check 2459 from bank account ending in x2747 for the purchase of **PHILIP ESFORMES'** Gruebel Forsey watch |
| 25 | **PHILIP ESFORMES** | February 5, 2014 | $500 | Check number 1314 from Preferred Providers Group, Inc. bank account ending in x4668 made payable to Female Companion 1 |
| 26 | **PHILIP ESFORMES** | May 6, 2014 | $3,500 | Preferred Providers Group, Inc. check number 1356 made payable to Basketball Coach 1 |
| 27 | **PHILIP ESFORMES** | July 8, 2015 | $75,000 | Mahair Investments LLC Check 1000 from bank account ending in x3124 for the purchase of **PHILIP ESFORMES'** Ferrari Aperta |
| 28 | **PHILIP ESFORMES** | December 1, 2014 | $18,000 | Wire from bank account x8607 in the name of Nursing Home Administrator 1 to Basketball Coach 2 to provide a benefit for Individual 1 |
| 29 | **PHILIP ESFORMES** | October 29, 2015 | $25,000 | Check 196 from bank account ending in x5594 to Saks Fifth Avenue for the purchase of clothing for **PHILIP ESFORMES** |
| 30 | **PHILIP ESFORMES** | February 29, 2016 | $20,000 | Check 205 from bank account x6212 to **PHILIP ESFORMES'** personal assistant |

It is further alleged that the specified unlawful activities are receipt of kickbacks in connection with a federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A), health care fraud, in violation of Title 18, United States Code, Section 1347, and conspiracy to commit wire fraud and health care fraud, in violation of Title 18, United States Code, Section 1349.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

<u>**COUNT 31**</u>
**Conspiracy To Commit Federal Program Bribery**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 40 and 42 of the General Allegations section of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      In or around January 2013, and continuing through in or around August 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**PHILIP ESFORMES,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with others known and unknown to the grand jury, to corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of an organization and of a State, local, and Indian tribal government, and any agency thereof, in connection with any business, transaction, and series of transactions of such organization, government, and agency involving anything of value of $5,000, within a one year period, and that said organization, government, and agency received more than $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2).

### Purpose of the Conspiracy

3.      It was the purpose of the conspiracy for **PHILIP ESFORMES** and his co-conspirators to unlawfully enrich themselves by offering, paying, and soliciting bribes to obtain patient complaints and unannounced inspection schedules from AHCA.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

1.      **PHILIP ESFORMES**, through co-conspirators, bribed an employee of AHCA for non-public schedules providing advance notice of unannounced AHCA inspections and patient complaints at the SNFs and ALFs.

2.      **PHILIP ESFORMES** and his co-conspirators used these schedules of the unannounced inspections and patient complaints to evade detection by AHCA of administrative violations which could lead to additional scrutiny by AHCA, civil penalties and/or the termination of Esformes Network facilities from Medicare and Medicaid.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in Miami-Dade County, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.      On or about June 5, 2015, in the Southern District of Florida, **PHILIP ESFORMES** took possession of an AHCA inspection schedule from Gabriel Delgado in the closet of his home.

2.      On or about June 9, 2015, Gabriel Delgado, purchased an AHCA unannounced inspection from a co-conspirator, documenting a patient complaint from patient B.K. at **PHILIP ESFORMES'** Fair Havens SNF.  B.K. informed AHCA that, among other things, he did not receive adequate physical therapy services at Fair Havens SNF.

3.      **PHILIP ESFORMES** billed Medicare and Medicaid for services purportedly provided to B.K. at his Fair Havens SNF between approximately July 2, 2014, until May 26, 2015.

All in violation of Title 18, United States Code, Section 371.

### COUNT 32
**Conspiracy To Commit Federal Program Bribery
and Honest Services Wire Fraud
(18 U.S.C. § 371)**

1.     Paragraphs 1 through 40, 42 and 43 through 46 of the General Allegations section of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     Individual 1 applied for admission to the University 1 on or about September 1, 2014.

3.     As the head men's basketball coach at University 1, Basketball Coach 2 owed University 1 the intangible right of honest services.

4.     Basketball Coach 2 was entrusted by University 1 with the authority to support the candidacy of prospective qualified student-athletes by flagging certain candidates as "recruited basketball players" with the University 1 Admissions Department, increasing their chance of admission.

5.     On or about March 1, 2013, and continuing through on or about December 1, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**PHILIP ESFORMES,**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the grand jury, to

a.     knowingly and with intent to defraud, devise, and intend to devise a scheme and artifice to deprive University 1 and its employees of their intangible right to honest services by an employee through kickbacks and bribes and transmitting and causing to be transmitted certain wire communications in interstate commerce for the purposes of executing the scheme or artifice, in violation of Title 18, United States Code, Sections 1343 and 1346; and

b.     corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of an organization and of a State, local, and Indian tribal

government, and any agency thereof, in connection with any business, transaction, and series of transactions of such organization, government, and agency involving anything of value of $5,000, within a one year period and that said organization, government, and agency received more than $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2).

### Purpose of the Conspiracy

6.      It was the purpose of the conspiracy for **PHILIP ESFORMES** and his co-conspirators to use kickbacks and bribes to obtain admission for Individual 1 to University 1.

### Manner and Means

The manner and means by which **PHILIP ESFORMES** and his co-conspirators sought to accomplish the object of the conspiracy included, among others, the following:

1.      On several occasions, **PHILIP ESFORMES** paid for Basketball Coach 2 to travel to Miami, Florida and to stay in expensive hotels, even though Basketball Coach 2 was not permitted by University 1 to accept funding of this sort in connection with athlete recruitment. **ESFORMES** used the lavish weekends to convince Basketball Coach 2 to accept kickbacks and bribes in return for designating Individual 1 as a "recruited basketball player" at University 1.

2.      **PHILIP ESFORMES** thereafter paid kickbacks and bribes to Basketball Coach 2, in order to induce Basketball Coach 2 to place Individual 1 on the "recruited basketball player" list reported to the University 1 Admissions Department.

3.      **PHILIP ESFORMES** made kickback and bribe payments to Basketball Coach 2, through various concealed methods, such as directing Nursing Home Administrator 1 to execute wire transfers using accounts that were not maintained in the name of **ESFORMES** as well as personally making cash payments to Basketball Coach 2.

4.      **PHILIP ESFORMES** directed that certain money owed to him by Gabriel Delgado be paid in the form of limousine services, including limousine rides for the benefit of Basketball Coach 2 in Miami, Florida.

5.      As a result of these bribe and kickback payments from **PHILIP ESFORMES**, Basketball Coach 2 falsely represented to the University 1 Admissions Department that Individual 1 was a "recruited basketball player" at University 1, when, in truth, Individual 1 would not have been designated as a "recruited basketball player" had it not been for the kickback and bribe payments.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects, at least one of the co-conspirators committed and caused to be committed in Miami-Dade County, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.      On or about May 31, 2013, **PHILIP ESFORMES** paid and arranged for Basketball Coach 2 to fly from Philadelphia, Pennsylvania, to Miami International Airport, where he was picked up in a limousine paid for by Gabriel Delgado and transported to the Fountainebleau Hotel in Miami, Florida.

2.      On or about May 31, 2013, **PHILIP ESFORMES** rented the basketball court at the JW Marriott Marquis in order to give Basketball Coach 2 the opportunity to watch Individual 1 play basketball.

3.      On or about June 1, 2013, **PHILIP ESFORMES** arranged for Gabriel Delgado to pay for a limousine to pick Basketball Coach 2 up at the Fontainebleau Hotel and transport him to the JW Marriott Marquis in Miami, Florida, to watch Individual 1, at that time a high school student, play basketball.

4.      On or about June 2, 2013, **PHILIP ESFORMES** arranged for Gabriel Delgado to pay for a limousine to pick Basketball Coach 2 up at the Fontainebleau Hotel, and transport Basketball Coach 2 to **ESFORMES'** residence at 5077 N. Bay Road, Miami Beach, Florida 33140.

5.      On or about June 2, 2013, **PHILIP ESFORMES** arranged for Gabriel Delgado to pay for a limousine to transport Basketball Coach 2 from his residence at 5077 N. Bay Road, Miami Beach, Florida 33140, to Miami International Airport, for a flight back to Philadelphia, Pennsylvania.

6.      Between on or about May 31, 2013, and on or about June 2, 2013, **PHILIP ESFORMES** directed that all payments for Basketball Coach 2's stay at the Fontainebleau Hotel, totaling $2,008.72, be put on **ESFORMES'** credit card ending in x5253.

7.      On or about July 3, 2014, **PHILIP ESFORMES** caused Basketball Coach 2 to receive a wire for approximately $15,000 from a bank account controlled by **ESFORMES** ending in x8607 in the name of Nursing Home Administrator 1.

8.      On or about October 6, 2014, **PHILIP ESFORMES** caused Basketball Coach 2 to receive a wire for approximately $20,000 from a bank account controlled by **ESFORMES** ending in x8607 in the name of Nursing Home Administrator 1 .

9.      On or about December 1, 2014, **PHILIP ESFORMES** caused Basketball Coach 2 to receive a wire for approximately $18,000 from a bank account ending in x8607 in the name of Nursing Home Administrator 1.

10.      On or about March 24, 2015, **PHILIP ESFORMES** paid approximately $19,549.56 for a private jet to fly from Philadelphia, Pennsylvania, where University 1 was located, to Miami, Florida, carrying **ESFORMES**, Individual 1, and Basketball Coach 2.

All in violation of Title 18, United States Code, Section 371.

## COUNT 33
### Federal Program Bribery
### (18 U.S.C. § 666(a)(2))

1.       Paragraphs 1 through 40, 42 and 43 through 46 of the General Allegations section of this Third Superseding Indictment and Paragraphs 2 through 5 of Count 32 of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about March 1, 2013, and continuing through on or about December 1, 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**PHILIP ESFORMES,**

did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of an organization and of a State, local, and Indian tribal government, and any agency thereof, in connection with any business, transaction, and series of transactions of such organization, government, and agency involving anything of value of $5,000, within a one year period and that said organization, government, and agency received more than $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

In violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## COUNT 34
### Obstruction of Justice
### (18 U.S.C. § 1503)

In or around June 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**PHILIP ESFORMES,**

did corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede, the due administration of justice by funding Guillermo Delgado's flight from the United States to avoid trial in *United States v. Guillermo Delgado et. al*, Case No. 14-CR-20359-Martinez.

In violation of Title 18, United States Code, Sections 1503 and 2.

**COUNT 35**
**Conspiracy To Make a False Statement Relating to Health Care Matters**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 40 and 42 of the General Allegations section of this Third Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      In or around January 2016, and continuing through in or around September 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**PHILIP ESFORMES,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others known and unknown to the Grand Jury:

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare and Medicaid programs, in violation of Title 18, United States Code, Section 371, and to commit certain offenses against the United States, that is:

b.      to violate Title 18, United States Code, Section 1035(a)(1), by knowingly and willfully falsifying, concealing, or covering up by any trick, scheme, or artifice, a material fact, in connection with the delivery of and payment for health care benefits, items, and services; and

c.      to violate Title 18, United States Code, Section 1035(a)(2), by knowingly and willfully making any materially false, fictitious, and fraudulent statements and representations, and make and use any materially false writing and document knowing the same to contain any materially false, fictitious and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Conspiracy

3.      It was the purpose of the conspiracy for **PHILIP ESFORMES** and his co-conspirators to unlawfully enrich themselves by concealing **ESFORMES'** ownership interest in Hospital 2 from CMS on a Medicare Enrollment Application, also known as Form CMS-855A, in order to avoid scrutiny and investigation by the United States Department of Health and Human Services and the United States Department of Justice.

## Manner and Means

The manner and means by which **PHILIP ESFORMES** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

1.      On or about May 19, 2016, **PHILIP ESFORMES**, through co-conspirators, submitted a Form CMS-855A Medicare Enrollment application for Hospital 2, located in the Southern District of Florida, concealing the fact that **ESFORMES** was an owner of Hospital 2.

2.      Between May 2016, and July 2016, **PHILIP ESFORMES** and his co-conspirators used Hospital 2 to cycle Medicare and Medicaid patients between Hospital 2 and the Esformes Network and bill the Medicare and Medicaid programs.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in Miami-Dade County, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.      On or about May 18, 2016, **PHILIP ESFORMES** signed an operating agreement for Negbah LLC, a Florida Limited Liability Company that indirectly owned over fifty percent of Hospital 2.

2.      On or about May 18, 2016, **PHILIP ESFORMES** signed an operating agreement for PSNW Real Estate LLC, a Florida Limited Liability Company, that owned the real estate on which Hospital 2 was located in Hialeah, Florida.

3.      On or about May 19, 2016, **PHILIP ESFORMES** submitted, or caused the submission of, a Form CMS-855A Medicare Enrollment application for Hospital 2, concealing the fact that **ESFORMES** was also an owner of Hospital 2.

4.      On or about June 1, 2016, **PHILIP ESFORMES** signed a guarantee of payment and performance agreement with the Private Bank, promising to personally guarantee the $12 million dollar loan from the Private Bank that **ESFORMES** used to purchase Hospital 2.

All in violation of Title 18, United States Code, Section 371.

### COUNT 36
### Obstruction of Justice
### (18 U.S.C. § 1503)

In or around June 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ODETTE BARCHA,**

did corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede, the due administration of justice by creating sham medical director contracts for Hospital 1, to conceal the fact that **ODETTE BARCHA** paid physicians kickbacks for referrals to Hospital 1, and providing those sham medical director contracts to the Department of Justice in response to a Grand Jury subpoena.

In violation of Title 18, United States Code, Sections 1503 and 2.

## FORFEITURE
### (18 U.S.C. §§ 981 and 982)

1.    The allegations of this Third Superseding Indictment, including the General Allegations section, are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which one or more of the defendants, **PHILIP ESFORMES, ODETTE BARCHA,** and **ARNALDO CARMOUZE,** have an interest.

2.    Upon conviction of a violation of, or a criminal conspiracy to violate, Title 18, United States Code, Sections 666, 1035, 1343, 1347, 1349, and/or Title 42, United States Code, Section 1320a-7b(b), as alleged in this Third Superseding Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

3.    Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Third Superseding Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, that is involved in the offense, or any property traceable to such property.

4.      Upon conviction of a violation of Title 18, United States Code, Section 1503, as alleged in this Third Superseding Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of such offense.

5.      The property which is subject to forfeiture includes, but is not limited to, the following:

(a)      Forfeiture Money Judgments ("MJ"): A sum of money equal in value to the following, for which the United States will seek entry as a forfeiture money judgment against the defendants, where applicable, as part of their respective sentences:

(MJ1)  All property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to a violation of, or a criminal conspiracy to violate, Title 18, United States Code, Sections 666, 1035, 1343, 1347, 1349, and/or Title 42, United States Code, Section 1320a-7b(b), as alleged in this Third Superseding Indictment;

(MJ2)  All property, real or personal, involved in a violation of Title 18, United States Code, Section 1956, as alleged in this Third Superseding Indictment, or any property traceable to such property; and

(MJ3)  All property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to a violation of Title 18, United States Code, Section 1503, as alleged in this Third Superseding Indictment.

(b)      Bank Accounts ("BA"): All principal, deposits, interest, dividends, and/or any other funds credited to the following bank accounts:

(BA1) Account number 898049003513 held at Bank of America, N.A. in the name of Sherri Beth Esformes and Philip Esformes;

(BA2) Account number 003676209546 held at Bank of America, N.A. in the name of Philip Esformes and Julie Betancourt;

(BA3) Account number 102747 held at 1st Equity Bank, N.A. in the name of Sherri Esformes, Jason Tennenbaum, and Philip Esformes;

(BA4) Account number 311901 held at 1st Equity Bank, N.A. in the name of Sherri Esformes and Philip Esformes;

(BA5) Account number 204735 held at 1st Equity Bank, N.A. in the name of Philip Esformes Inc. (c/o Norman Knopf);

(BA6) Account number 503456 held at 1st Equity Bank, N.A. in the name of Sherri Esformes and Philip Esformes (Special Account Tax Escrow);

(BA7) Account number 209882 held at 1st Equity Bank, N.A. in the name of Philip Esformes Inc. (c/o Norman Knopf);

(BA8) Account number 312320 held at 1st Equity Bank, N.A. in the name of Philip Esformes Inc. Pension Plan & Trust;

(BA9) Account number 606212 held at 1st Equity Bank, N.A. in the name of Philip Esformes, Sherri Esformes, and Alvin Norman Knopf (f/b/o Sherri Esformes and Philip Esformes);

(BA10) Account number 454362 held at 1st Equity Bank, N.A. in the name of Philip Esformes Inc. Pension Plan & Trust;

(BA11) Account number 507858 held at 1st Equity Bank, N.A. in the name of Philip Esformes and Julie Betancourt - Charity Account;

(BA12) Account number 505872 held at 1st Equity Bank, N.A. in the name of Philip Esformes and Sherri Esformes;

(BA13) Account number 606296 held at 1st Equity Bank, N.A. in the name of Philip Esformes (c/o Alvin Norman Knopf);

(BA14) Account number 1560024295 held at MB Financial Bank, N.A. in the name of Philip Esformes or Alvin Norman Knopf;

(BA15) Account number 800642176 held at MB Financial Bank, N.A. in the name of Philip Esformes or Alvin Norman Knopf;

(BA16) Account number 1560025577 held at MB Financial Bank, N.A. in the name of Philip Esformes, Inc.;

(BA17) Account number 1560024473 held at MB Financial Bank in the name of Alvin Norman Knopf or Philip Esformes;

(BA18) Account number 16021230 held at National Securities Bank, N.A. in the name of Philip Esformes Inc. Pension;

(BA19) Account number 0002369785 held at The Private Bank, N.A. in the name of Adirhu Associates LLC;

(c)     Business Interests ("BI"):  All interest held by, on behalf of, or for the benefit of defendant Philip Esformes in the following business entities and their assets, including, but not limited to, real property and financial accounts, or the remaining share of the net seller proceeds from any interlocutory sale of such assets ordered by the Court:

*Oceanside Extended Care Center*

(BI1A) A.D.M.E. Investment Partners LTD (operating company);

(BI1B) A.D.M.E. Real Estate LLC (property company), which is the titled

owner of real property located at 550 9th Street, Miami Beach, Florida 33139;

*North Dade Nursing and Rehabilitation Center*

      (BI2A) Almovea Associates LLC (operating company);

      (BI2B) 1255 LLC (property company), which is the titled owner of real property located at 1235 N.E. 135th Street, North Miami, Florida 33161;

*Harmony Health Center*

      (BI3A) Ayintove Associates, LLC (operating company);

      (BI3B) GBRE Associates LLC (property company), which is the titled owner of real property located at 9820 N. Kendall Drive, Miami, Florida 33176;

*Courtyard Manor*

      (BI4A) Courtyard Manor Retirement Living, Inc. (operating company);

      (BI4B) Courtyard Manor Retirement Investors Ltd. (property company), which is the titled owner of real properties located at 130, 140, 150 and 160 W. 28th Street and 141 W. 27th Street, Hialeah, Florida 33010;

*Eden Gardens*

      (BI5A) Eden Gardens, LLC (operating company);

      (BI5B) Adar Associates LLC (property company), which is the titled owner of real property located at 12221 W. Dixie Highway, Miami, Florida 33161;

*Fair Havens Center*

      (BI6A) Fair Havens Center, LLC (operating company);

      (BI6B) Fair Havens Real Estate, LLC (property company), which is the titled owner of real property located at 201 Curtiss Parkway, Miami, Florida 33166;

*Flamingo Park Manor*

(BI7A) Flamingo Park Manor LLC (operating company);

(BI7B) The Pointe Retirement Investors Ltd. (property company), which is the titled owner of real property located at 3051 E. 4th Avenue, Hialeah, Florida 33010;

*South Hialeah Manor*

(BI8A) Lake Erswin LLC (operating company);

(BI8B) Morsey LC (property company), which is the titled owner of real properties located at 240, 250 and 260 E. 5th Street, Hialeah, Florida 33010;

*Golden Glades Nursing and Rehabilitation Center*

(BI9A) Kabirhu Associates LLC (operating company);

(BI9B) 220 Sierra LLC (property company), which is the titled owner of real property located at 220 Sierra Drive, Miami, Florida 33179;

*Lauderhill Manor*

(BI10A) Lauderhill Manor, LLC (operating company);

(BI10B) 2801 Holdings LLC (property company), which was the titled owner of real property located at 2801 N.W. 55th Avenue, Lauderhill, Florida 33313;

*La Serena Retirement Living, formerly known as La Hacienda Gardens*

(BI11A) La Hacienda Gardens LLC (operating company);

(BI11B) Rainbow Retirement Investors Ltd. (property company), which is the titled owner of real properties located at 59, 67, and 75 E. 7th Street, Hialeah, Florida 33010;

*The Nursing Center at Mercy*

(BI12A) Sefardik Associates, LLC (operating company);

*South Dade Nursing and Rehabilitation Center*

(BI13A) Takifhu Associates LLC (operating company);

(BI13B) 17475 LLC (property company), which is the titled owner of real property located at 17475 S. Dixie Highway, Miami, Florida 33157;

*North Miami Retirement Living*

(BI14A) Jene's Retirement Living, Inc. (operating company);

(BI14B) Jene's Retirement Investors Ltd. (property company), which is the titled owner of real property located at 1595 N.E. 145th Street, Miami, Florida 33161;

*Southern Winds Health*

(BI15A) Southern Winds Health, LLC (operating company);

(BI15B) 4225 LLC (property company), which is the titled owner of real property located at 4225 W. 20th Avenue, Hialeah, Florida 33012;

(d)     Other Real Property ("RP"): Real property, together with all appurtenances, improvements, fixtures, easements and attachments, therein and/or thereon, which are known and numbered as follows, or the remaining share of the net seller proceeds from any interlocutory sale of such assets ordered by the Court:

(RP1)   5077 N. Bay Road, Miami Beach, Florida 33140;

(RP2)   5069 N. Bay Road, Miami Beach, Florida 33140;

(RP3)   980 W. 48th Street, Miami Beach, Florida 33140;

(RP4)   180 E. Pearson, Unit 7201, Chicago, Illinois 60611;

(RP5)   6849-50 S. Clyde Avenue, Chicago, Illinois 60649; and

(RP6)   9427 Sawyer Street, Los Angeles, California 90035;

(e)     Miscellaneous Personal Effects ("M"):

(M1)   One (1) Greubel Forsey Technique timepiece (ALDC No. 14); and

    (M2) One (1) red Hermes Birkin purse from Golden Age Jewelry.

  6.  If any of the property subject to forfeiture, as a result of any act or omission of a

defendant:

    (1)  cannot be located upon the exercise of due diligence;

    (2)  has been transferred or sold to, or deposited with, a third party;

    (3)  has been placed beyond the jurisdiction of the court;

    (4)  has been substantially diminished in value; or

    (5)  has been commingled with other property which cannot be divided without

      difficulty,

the United States shall be entitled to the forfeiture of substitute property of the defendant, pursuant

to Title 21, United States Code, Section 853(p).  The property subject to forfeiture as substitute

property includes, but is not limited to, the following:

    (a)  <u>Substitute Personal Property ("SPP")</u>:

      (SPP1) One (1) 1968 Silver Ford (VIN 8R02S116990); and

      (SPP2) One (1) 2014 Black Piaggio (VIN ZAPM459L0E5802248).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and (a)(7),

and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title

18, United States Code, Section 982(b) and by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
RANDY A. HUMMEL
ATTORNEY FOR THE UNITED STATES
ACTING UNDER AUTHORITY CONFERRED
BY 28 U.S.C. § 515

_____
DANIEL BERNSTEIN
ASSISTANT UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

_____
JOSEPH BEEMSTERBOER, DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
ALLAN MEDINA, ASSISTANT CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
DREW BRADYLYONS, TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
ELIZABETH YOUNG, TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA | **CASE NO.** ___16-CR-20549-SCOLA(s)(s)(s)___ |
| vs. | |
| | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| PHILIP ESFORMES, et al. | |
| **Defendants.** / | **Superseding Case Information:** |

**Court Division:** (Select One)

|  | | |
|---|---|---|
| __X__ Miami | ____ Key West | |
| ____ FTL | ____ WPB | ____ FTP |

New Defendant(s)      Yes ____   No __X__
Number of New Defendants      ___0___
Total number of counts      ___35___

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:      (Yes or No)      ___No___
     List language and/or dialect      ___No___

4.   This case will take   __15__   days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

(Check only one)                                          (Check only one)

| | | | | | | |
|---|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | | Petty | _____ | |
| II | 6 to 10 days | _____ | | Minor | _____ | |
| II | 11 to 20 days | __X__ | | Misdem. | _____ | |
| IV | 21 to 60 days | _____ | | Felony | __X__ | |
| V | 61 days and over | _____ | | | | |

6.   Has this case been previously filed in this District Court?   (Yes or No)      ___YES___
If yes:
Judge:   ___Scola (s)(s)___                Case No. ___16-CR-20549___
(Attach copy of dispositive order)
Has a complaint been filed in this matter?      (Yes or No)      ___No___
If yes:
Magistrate Case No.
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of   ___PHILIP ESFORMES, 01/22/16___
Defendant(s) in state custody as of   _____
Rule 20 from the _____   District of _____

Is this a potential death penalty case? (Yes or No)      ___No___

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?      Yes _____      No __x__

ELIZABETH YOUNG
DOJ TRIAL ATTORNEY
Court No. A5501858

\*Penalty Sheet(s) attached

REV 5/3/17

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   PHILIP ESFORMES

**Case No:**   16-CR-20549-SCOLA(s)(s)(s)

Count #:   1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\*Max Penalty**:   Twenty (20) years' imprisonment

Counts #:   2 - 3

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max Penalty**:   Ten (10) years' imprisonment as to each count

Count #:   6

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max Penalty**:   Five (5) years' imprisonment

Counts #:   8 - 9

Receipt of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

\*Max Penalty:   Five (5) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:**     **PHILIP ESFORMES**

**Case No:**              **16-CR-20549-SCOLA(s)(s)(s)**

Counts #:    10 – 15

Payment of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(2)(A)

*Max Penalty:        Five (5) years' imprisonment as to each count

Count #:   16

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max Penalty:**       Twenty (20) years' imprisonment

Counts #: 17 – 30

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\*Max Penalty:**       Twenty (20) years' imprisonment as to each count

Counts #:   31

Conspiracy to Commit Federal Program Bribery

Title 18, United States Code, Section 371

**\*Max Penalty:**     Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**      **PHILIP ESFORMES**

**Case No:**            **16-CR-20549-SCOLA(s)(s)(s)**

Count #:   32

Conspiracy to Commit Federal Program Bribery and Honest Services Wire Fraud

Title 18, United States Code, Section 371

**\*Max Penalty:**      Five (5) years' imprisonment

Count #:   33

Federal Program Bribery

Title 18, United States Code, Section 666

**\*Max Penalty:**      Ten (10) years' imprisonment

Count #:   34

Obstruction of Justice

Title 18, United States Code, Section 1503

**\*Max Penalty:**      Ten (10) years' imprisonment as to each count

Counts #:   35

Conspiracy to Make a False Statement Relating to Health Care Matters

Title 18, United States Code, Section 371

**\*Max Penalty:**      Five (5) years' imprisonment


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**     __ODETTE BARCHA__

**Case No:**     __16-CR-20549-SCOLA(s)(s)(s)__

Count #:   1

   Conspiracy to Commit Health Care Fraud and Wire Fraud

   Title 18, United States Code, Section 1349

**\*Max Penalty**:     Twenty (20) years' imprisonment

Count #:   6

   Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

   Title 18, United States Code, Section 371

**\*Max Penalty**:     Five (5) years' imprisonment

Counts #:   14 - 15

   Payment of Kickbacks in Connection with a Federal Health Care Program

   Title 42, United States Code, Section 1320a-7b(b)(2)(A)

**\*Max Penalty**:     Five (5) years' imprisonment as to each count

Count #:   16

   Conspiracy to Commit Money Laundering

   Title 18, United States Code, Section 1956(h)

**\*Max Penalty**:     Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**      **ODETTE BARCHA**

**Case No:**               **16-CR-20549-SCOLA(s)(s)(s)**

Counts #:    22 - 23

    Money Laundering

    Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\*Max Penalty:**        Twenty (20) years' imprisonment as to each count

Count #:    36

    Obstruction of Justice

    Title 18, United States Code, Section 1503

**\*Max Penalty:**        Ten (10) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name:**     __**ARNALDO CARMOUZE**__

**Case No:** _____**16-CR-20549-SCOLA(s)(s)(s)**_____

Count #:   1

___Conspiracy to Commit Health Care Fraud and Wire Fraud___

___Title 18, United States Code, Section 1349___

**\*Max Penalty:**     Twenty (20) years' imprisonment

Counts #:   2 – 3

___Health Care Fraud___

___Title 18, United States Code, Section 1347___

**\*Max Penalty:**     Ten (10) years' imprisonment as to each count

Counts #:   4 – 5

___False Statements Relating to Health Care Matters___

___Title 18, United States Code, Section 1035(a)(2)___

**\*Max Penalty:**     Five (5) years' imprisonment as to each count

Count #:   6

___Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks___

___Title 18, United States Code, Section 371___

**\*Max Penalty:**     Five (5) years' imprisonment.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**     **ARNALDO CARMOUZE**

**Case No:**     **16-CR-20549-SCOLA(s)(s)(s)**

Count #:   7

Receipt of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

**\*Max Penalty:**     Five (5) years' imprisonment

Count #:   16

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max Penalty**:     Twenty (20) years' imprisonment

Count #:   17

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\*Max Penalty**:     Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**