**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 16-20549-SCOLA/OTAZO-REYES (s)(s)(s)**

**UNITED STATES OF AMERICA**
**vs.**
**PHILIP ESFORMES,**
                    **Defendant.**
_____/

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR MISTRIAL

The United States hereby opposes Defendant Esformes's Motion For A Mistrial, Failing Which, To Strike Dr. Cifu's Testimony.  [D.E. 1181].  Defendant's Motion ignores the expert discovery provided by the Government; far in excess of its Rule 16 obligations and noted by this Court to be the most fulsome it has seen in its career as a jurist.  Defendant feigns surprise that Dr. Cifu's expert testimony—noticed repeatedly in ongoing expert disclosures beginning in April 2017—would cover conduct charged in the Third Superseding Indictment.  In addition, Esformes's Motion grossly mischaracterizes both the nature of the Government's expert disclosure, and Dr. Cifu's expert testimony at trial.  Incredibly, Defendant argues he had no notice that Dr. Cifu would discuss Chapter 8 of the Medicare Manual (admitted as GX 108), even though his initial January 2019 motion to exclude Dr. Cifu included this exact same Medicare Manual section as an exhibit, compared it to Dr. Cifu's noticed testimony, and complained that Dr. Cifu's notice simply recited it.  Further, Defendant's Motion elides over the fact that this Court consistently overruled his objections and, more importantly, his numerous mistrial motions <u>during</u> Dr. Cifu's testimony.[1] Finally, Esformes requests the drastic remedies of a mistrial or striking testimony; the standards for which he comes nowhere close to establishing.  Both kinds of requested relief are wholly unwarranted.  Esformes's Motion should be denied.

---

[1] Indeed, Defendant's Motion repeatedly brings up subjects he failed to cross-examine Dr. Cifu on, or that one of his noticed experts can address in upcoming his case-in-chief.

## **LEGAL STANDARD**

A mistrial is a drastic remedy.  It is available only in the face of egregious circumstances when the testimony is legally improper, and the defendant's substantial rights are prejudiced.  As this Court has noted:

> "The decision to grant a mistrial lies within the sound discretion of the trial judge since he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Blakey, 960 F.2d 996, 1000 (11th Cir.1992).  A mistrial is appropriate only where the Defendant's "substantial rights are prejudicially affected,"—i.e, "there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different." United States v. Emmanuel, 565 F.3d 1324, 1334 (11th Cir. 2009) (citation omitted). The harmless error standard applies to motions for mistrial.  See United States v. Suarez, 162 F. App'x 897, 902 (11th Cir. 2006).

United States v. Jorge Macli, et al., 2012 WL 3637149, at *1 (S.D. Fl., Aug. 22, 2012)(Scola, J.)[2]

A mistrial is unwarranted here, because there was no improper questioning, no improper testimony, no sponsoring of improper testimony by Dr. Cifu nor baseless conclusions (legal or otherwise) in his testimony, and no failure of the government to comply with its Rule 16 expert disclosure obligations. In addition, the Court overruled the defendant's numerous objections to the expert's testimony during direct examination, and his mistrial motions.  The Government did nothing here that would merit a mistrial; none of the expert testimony itself warranted a mistrial.

As for Defendant's Motion in the alternative to strike, which essentially argues that Dr. Cifu should not have been admitted under Daubert and its progeny, there is no basis under Daubert or otherwise to strike Dr. Cifu's testimony.  Under Daubert, a trial court must consider whether:

---

[2] In Macli, this Court, applying this standard, declined to grant a mistrial where the undersigned prosecutor made an inadvertent reference to the defendant's invocation of his right to silence while questioning an agent on the stand.  Because the reference was brief, fleeting, and insignificant in the context of the trial as a whole, and because the Government presented overwhelming evidence of defendant's guilt, a mistrial was not warranted. Id. (affirmed, United States v. Moran, 778 F.3d 942, 967-68 (11th Cir. 2015).

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998).  And as this very Court has noted, despite its gatekeeping function, it is not the trial court's role to "make conclusions about the persuasiveness of the expert's opinions."  Begualg Inv. Mgmt. v. Four Seasons Hotel Ltd., 2013 WL 836807, at *6 (S.D. Fla. Mar. 6, 2013)(Scola, J.)  Instead, "vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. (citing Daubert, 509 U.S. at 596).  This is the very remedy Defendant can exercise in this case; he was able to cross-examine Dr. Cifu, and now he can present his own experts in his case-in-chief.

Dr. Cifu testified as an expert based on his training and experience as a Medical Director and physician working with SNFs.  Scientific training or education is not the only basis for qualifying an expert; "experience in a field may offer another path to expert status."  United States v. Frazier, 387 F.3d 1244, 1260-61 (11th Cir. 2004).  Dr. Cifu's plainly does.  If a witness is relying solely or primarily on experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed.R.Evid. 702 advisory committee's note (2000 amends.).  Dr. Cifu did just that.  Trial judges have "considerable leeway" in deciding whether nonscientific expert testimony passes muster.  American Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1338 (11th Cir. 2009).[3]

---

[3] United States v. Jennings, 599 F.3d 1241 (11th Cir. 2010), illustrates the operation of these principles.  In that case, a prosecution for a fraudulent scheme to sell workers compensation policies, the district court

Dr. Cifu testified based on his experience as a Medical Director at a facility with a SNF component and over 30 years of experience. All Dr. Cifu did was to explain to the jury the standards of care and practice at a SNF, and how the Medicare Manual informs and guides these standards (but is not the end of the discussion). Dr. Cifu explained to the jury what kinds of patients and services are eligible for a SNF under Medicare's standards and his own opinions, and answer hypothetical questions expressly tied to the facts of this case, and testimony and evidence already heard by the jury. Dr. Cifu's testimony was proper. It should not be stricken, either in whole or in part.

## **ARGUMENT**

### I. **The Government Has Met Its Expert Disclosure Obligations Under Rule 16; Defendant Mischaracterizes The Expert Disclosure Provided By The Government For Dr. Cifu, And Ignores The Court's Assessment Of It.**

Esformes's Motion grossly mischaracterizes the state of expert discovery in this case. The Defendant has provided next to nothing in this regard. By contrast, in addition to its initial Expert Notice of April 17, 2017, the Government supplemented its expert disclosure for Dr. Cifu by letter on January 8, 2019 [see D.E. 1162 at Exhs. 1 & 3], and provided further expert disclosure in its Opposition [D.E. 1098, 02/08/2019], and Sur-Reply in Opposition [D.E. 1107, 02/11/2018], to Defendant's Motion to Exclude the Government's Experts, [D.E. 1062]. Further, on March 2, 2019, the Government provided a detailed Supplemental Notice of Expert Testimony [D.E. 1156], updating its expert notice to address subjects that came up in testimony to date, which outlined

---

properly admitted the testimony of an expert who opined about "the substantive requirements of state workers' compensation law and the general knowledge in the industry of those requirements." Id. at 1248. The expert had extensive qualifications in the field of workers' compensation, and testified "on the basis of this experience and conversations over her career with workers' compensation professionals." Id. at 1249. It was proper for the expert to rely on her years of working with professionals in the industry and familiarity with the "regulatory environment" to express an opinion about what people in the field would consider legitimate business practices.

topics of testimony and enumerated the admitted exhibits Dr. Cifu might be relying on (which were hardly voluminous and included GX 108 and 116); this Supplemental Notice actually quoted specific portions of the Medicare Manual in Section in GX 108 that Dr. Cifu testified about.[4] Finally, the Government provided the Defendant with Dr. Cifu's deposition transcripts and his expert report in a civil case involving SNFs.

As the Court noted from the bench on the morning of March 6, 2019, when it denied an earlier Motion to Exclude Dr. Cifu's Testimony [D.E. 1159], the Government in this case provided more expert disclosure "<u>before</u> a trial" than the Court had ever seen in "[its] career."  [March 6, 2019, Rough Transcript, pp 3:23-4:2] (emphasis added).  In addition, before denying Defendant's March 5, 2019 Motion, the Court reviewed the Government's April 2017 initial disclosure, and stated flatly that Defendant's March 5 Motion completely mischaracterized the Government's initial April 2017 expert disclosure.  The Court remarked that Defendant's characterization of the Government's initial expert notice made it seem like Dr. Cifu was "never going to testify about skilled nursing[;]" after reviewing the Government's Notice, the Court noted that the Government's April 2017 disclosure listed a "whole bunch of things" that Dr. Cifu was going to say about skilled nursing care.  The same is true here.  Defendant's current Motion completely misstates the Government's disclosure.  There is simply no question that the Government's initial expert disclosure, and every supplemental disclosure after it (albeit in greater detail), stated that Dr. Cifu would testify about the type of patients appropriate for SNF care and the appropriateness of treating psychiatric patients in a SNF.

Having already been exposed for incorrectly arguing that the Government's initial April 2017 expert disclosure somehow neglected to mention that Dr. Cifu would be testifying about

---

[4] The Government also disclosed the documents Dr. Cifu would be relying on in a separate e-mail, including GX 108.

Skilled Nursing Facilities ('SNFs")—an absurd argument on its face as the Court noted—
Defendant does something similar in his current Motion.  Defendant's basic problem with the
Government's initial expert notice <u>this</u> time around is that it does not explicitly mention that Dr.
Cifu would be testifying about Medicare regulations.  But this was no secret.  The Government's
expert notice mentioned the topics Dr. Cifu would be testifying about in three-pages of detailed
single-spaced bullet-points, including the standards for SNF care, the types of patients and services
which qualified for a SNF, the need for a qualifying hospital stay, and whether/how psychiatric
patients could be treated at a SNF.   [<u>See</u> D.E. 1098, Ex. 1, at pp. 2-3, Government's 04/11/2017
Expert Letter Disclosure].  Defendant absolutely knew that the SNF standards Dr. Cifu intended
to address were derived from the Medicare Manuals and regulations (and Dr. Cifu's own
experience).[5]  Defendant's first Motion to Exclude Dr. Cifu's testimony, filed on January 26, 2019
[D.E. 1062], leaves no doubt this is the case; in fact, it actually includes the relevant section of the
Medicare Manual admitted as GX 108 <u>as an exhibit</u>.  Finally the Third Superseding Indictment
alleged violations of Medicare Rules and Regulations, noting that Defendant signed certifications
to abide by such rules, and further that housing psychiatric patients at a SNF intermingled with
elderly patients could be dangerous.  [D.E. 869, Count 1, pp. 8-14, Manner and Means at ¶ 9, 14-
24].  And the Certifications themselves are in evidence at GX 47.

In his initial Motion to Exclude Dr. Cifu, Esformes argued that Dr. Cifu's noticed testimony
in bullet points were somehow deficient because all they did was "recite the Medicare regulations;"

_____

[5] By way of additional notice, the Government included the relevant Medicare Manuals, including GX 108,
in its initial exhibit list filed on January 4, 2019.  [D.E. 1018]; these exhibits were provide electronically to
the Defendant by Government counsel via a thumb-drive on or about December 22, 2016.  Thus,
Defendant's argument that "no pretrial disclosure was made of the [Medicare Manual] sections or exhibits"
is patently false.  [D.E. 1181, at 6].  Defendant <u>knew</u> these Medicare Manual sections were a trial exhibit,
and <u>knew</u> Dr. Cifu and Mr. Quindoza would testify about them.  It is that simple.

in fact, Defendant argued that five of the bullet points in this Disclosure simply were a "verbatim recitation of the Medicare regulations in Chapter 8 of the Medicare Benefit Policy Manual." [D.E. 1062, at 18-19]. GX 108, the document Dr. Cifu went over in his direct testimony, is this very same Medicare Manual section. Defendant's initial Motion to exclude Dr. Cifu contained this very section as an Exhibit (id., at Exhs. 6 & 9), and provided detailed charts as exhibits comparing sections of the Medicare Manual to Dr. Cifu's proposed expert testimony, [id. at Exhs. 7-8]. But now, Defendant argues that he somehow lacked notice that these subjects, and that this portion (or any portion) of the Medicare Manual would come up in Dr. Cifu's testimony. This strains credulity to the breaking point.[6] He did. His own January 2019 Motion to exclude Dr. Cifu's as an expert shows that he did beyond any shadow of a doubt. And this shows that the Government's Notice was sufficient.

## II.     The Defendant Mischaracterizes Dr. Cifu's Expert Testimony.

Defendant states that Dr. Cifu incorrectly testified that the Medicare Manual precluded the admissibility of patients with a primary diagnosis of psychiatric illness to a SNF;[7] this is false. All Dr. Cifu did was to read or comment upon two sections of the Medicare Manual that discussed the admission of psychiatric patients to a SNF, and the fact that Medicare generally does not cover such services; Dr. Cifu noted that while a psychiatric patient could be admitted to a SNF, they commonly are not, based on his experience. [Final Transcript, March 7, 2018, 108:22 – 113:25].

---

[6] The Defendant cannot plausibly claim any surprise in Dr. Cifu looking to Medicare Rules and Regulations to inform his opinion on the standard of care: Government expert Stephen Quindoza already identified these standards applicable to SNFs set forth in those Rules and Regulations, and the defense did the same in Quindoza's cross-examination. All Dr. Cifu did in his expert testimony was to incorporate those standards in his opinions about how SNFs should operate in the real world based on his experience.

[7] Defendant's record citations that purportedly contain such testimony by Dr. Cifu are based off of the rough transcript. [D.E. 1181, at 8]. The Government citations are to the final transcript.

Dr. Cifu did not say such patients could "never" be admitted to a SNF; he noted upon questioning from the Government that exceptions for a psychiatric patient <u>could</u> exist, and that a patient with a psychiatric condition <u>and</u> a physical problem in need of skilled care <u>could</u> be admitted to a SNF, just as Section 30.2.3.2 contemplates.[8] [<u>Id</u>., at 112:5 – 113:25].  This section, which itself notes that exceptions exist, was read into evidence several times.  It is simply baseless to claim that Dr. Cifu opined that psychiatric patients are <u>never</u> admissible to a SNF.[9]  Dr. Cifu did opine that, as the Medicare Manual stated, a SNF that admitted such patients would require a staff with the training necessary to handle such difficult patients.[10]

Dr. Cifu did not make absolute conclusions about whether a psychiatric patient could or should be admitted to a SNF; he simply said in his experience such admissions were rare, and that if he saw a pattern of such admissions this would signal to him that the SNF was admitting patients inappropriately.  Dr. Cifu did not make any absolute conclusions about whether patients who could walk or who needed medication management belonged in a SNF; he said such cases <u>could</u> exist but generally such patients do not belong in a SNF in his expert opinion, and that if he saw a pattern of such admissions rather than isolated such cases (which he allowed for), that this would signal to him that the SNF was admitting patients inappropriately.  And when Dr. Cifu so testified, he

---

[8] <u>See</u> GX 108, Sections 30.2.3.2 (Bates-page 0091).

[9] By the Government's count—and this is by no means an exhaustive list—Dr. Cifu, either on his own or as a result of Government questions, noted there were "exceptions" and/or psychiatric patients who <u>could</u> be admitted to a SNF as long as they also had a physical problem requiring skilled care, at least six separate times.  <u>See</u> <u>Id</u>., at 71:5-15; 79:1-9; 110:3-113:25; 123:4-12; see also Final Transcript, March 11, 2019, 128:2-131:22; 149:21-150:5.

[10] Dr. Cifu also noted that while medication management might be a basis for a short term admission into a SNF, such admissions were rare and not generally accepted, but there were "exceptions."  [Final Transcript, March 7, 2019, 127:14-22].  Dr. Cifu also noted—while commenting on the Medicare Manual that covered such situations—that patients whom could independently walk, or whom were taking oral medications and needed medication management, generally did not belong in a SNF, but there were "exceptions." [<u>Id</u>., 128:7-23].

referred to specific sections of the Medicare Manual, noticed to the defense months and even years ago, that said the exact same thing.  [See GX 108, Sections 30.2.3.2 (Bates-page 091), and 30.2.4 (Bates-page 092)].  Dr. Cifu's testimony was proper and supported by the applicable standards promulgated by Medicare.  The testimony was relevant and helpful to the jury.

Defendant argues that because Dr. Cifu is not a psychiatrist, his testimony should be stricken under Daubert.  This is wrong. Defendant had the opportunity to cross-examine him on this subject, and can present his own psychiatric expert to refute him.  Defendant argues that Dr. Cifu, buy only commenting on a synopsis of two patients billing records, provided an improper statistical extrapolation.  But Dr. Cifu was asked what he would say if he saw a pattern of younger patients with psychiatric issues who could walk independently admitted to a SNF, and was asked what he would say if 20 or 30 out of 200 patients met this description.  [Final Transcript, March 11, 2019, 149:21-151:13].  Dr. Cifu relied that this would amount to 5, 10, or 15 percent of the patients at that particular SNF, and that this would suggest a pattern of inappropriate admissions. [Id., at 151:7-13].  Such a percentage is not a statistically insignificant sample. [D.E> 1181 at 20]. Defendant's protestations otherwise are wrong.

More importantly, when asked about patterns of inappropriate admissions in hypotheticals, Dr. Cifu did not say "that would be health care fraud under Sections 1347 and 1349."  He did not say what would constitute a kickback violation, he just said, on several occasions, that kickbacks could be used to explain such a pattern of admissions.  [Id., at 156:4-14].  Dr. Cifu was asked hypothetical questions based on evidence in the case, and he answered them as an expert.  There was nothing improper about this, under Daubert or otherwise.  His testimony was helpful to the trier of fact and should not be stricken.

### III.   The Defendant Mischaracterizes Dr. Cifu's Proposed Admission As An Expert Under <u>Daubert</u>.

Defendant argues that since Dr. Cifu was proposed as an expert under FRE 702 "in the field of physical medicine and rehabilitation, specifically skilled nursing facilities and ALFs" [Final Transcript, March 7, 2019, 31:14-17], he could not be admitted as an expert on Medicare Rules and Regulations,  [D.E. 1181, at 5].  But Defendant's argument ignores the prior 28 pages of testimony elicited by the Government outlining Dr. Cifu's qualifications, including the fact that his expert testimony was based on not only his experience as a doctor and Medical Director working with SNFs, but also the "applicable rules, regulations, and Medicare manuals covering some of the services [<u>i.e.</u>, SNFs]" that he had been and was going to testify about.  [Final Transcript, March 7, 2019, at 29:16-18].

In short, Dr. Cifu explained to the jury how, in his experience, the Medicare Manuals on SNFs were to be used as guidelines, and that if a SNF wanted to get paid by Medicare for covered services, they needed to follow them, and they were an overview to make sure SNF criteria were being met [<u>id.</u>, at 29:16-31:1], and he added that they "were not the full standards of care because they're just guidelines, but certainly they're the minimum standard[,]" [<u>id.</u>, at 30: 20-22].  Plainly, Dr. Cifu was conditionally admitted and testified as an expert on Physical Medicine and rehabilitation, SNFs and ALFs, and how the Medicare manuals inform and delineate the standards of practice and care for a SNF.  Defendant's arguments to the contrary are unavailing.

### IV.   Dr. Cifu Did Not Broaden The Charges In The Indictment, Nor Did He Offer Any Impermissible Legal Opinions.

The issue of psychiatric patients being admitted to the Esformes Network's facilities who did not belong in a SNF, thus presenting dangers to other patients, is contained in the Third Superseding Indictment.  [D.E. 869 at 10-11, ¶9].  And the notion that a fraud case involving a

SNF, which bills for room and board, cannot contain allegations of sub-standard care and services never provided, such as here, is unavailing for the reasons in prior oppositions filed by the Government. [See D.E. 1096]. The Government will not re-cap such arguments here, other than to notice that such issues are squarely in the ambit of the charged conduct.

Defendant continues to misrepresent the role of Medicare Manuals and guidance documents in this case.  The Government is not arguing that a violation of the Medicare Manuals and the guidance they provide constitutes a crime, and neither did Dr. Cifu.  The crime charged in the Third Superseding Indictment is conspiracy to commit health care fraud and wire fraud.  A defendant can commit fraud by submitting or causing the submission of billing for SNF services for people who don't qualify for them.  How do you know whether people qualify?  An expert testifies based on his experience and expertise.  What informs or underlies that expertise?  Many things, including Medicare guidance as contained in the Medicare Manuals, and Medicare Rules and Regulations as expressed in the Medicare Manuals that articulate standards for patients in SNFs, including psychiatric patients (as Mr. Quindoza testified, the Medicare Manuals incorporate the Medicare Rules and Regulations, thus disposing of Defendant's contention that Dr. Cifu cited to no Medicare "regulation" or "rule.")  In other words, the Medicare Manuals help form the basis of an expert's opinion, such as Dr. Cifu's, as he testified.  Nobody has ever said violation of these rules is fraudulent or otherwise criminal by itself. The Defendant's argument [D.E. 1181 at 12-16] otherwise is precluded by United States v. Gold, 743 F.2d 800, 815-6 (11th Cir. 1984), which expressly allowed such evidence.

Further, Defendant effectively waived any argument that reliance on the Medicare Manuals to inform the standards of care and SNF criterion was improper when he crossed Dr. Cifu extensively on the Medicare Manuals themselves, including the same passages he complains about

now.  This is not true only with Dr. Cifu.  The Government notes that the particular section of the Medicare Manual dealing with psychiatric patients that Defendant now argues against was first asked about by the <u>defense</u> in their cross-examination of Stephen Quindoza, who had him read it. [<u>See</u> Rough Draft, Transcript of 2/12/2019, Pg. 219, 7-18, Cross-Examination of Stephen Quindoza by Ms. Arteaga-Gomez].  In addition, it is impossible to believe that Defendant's experts will somehow contradict the Medicare Manual's guidance on SNFs admissions, and say they somehow don't apply.  Indeed, defense experts will likely be in "heated agreement," to coin a phrase that has come up in this trial, with what Dr. Cifu outlined based on these Manuals and the applicable standards they help inform.  Further, it is likely that these defense experts will testify about the same Medicare Manuals themselves.

Finally, any danger of Defendant's violation of Medicare Rules and Regulations being taken as a crime in and of itself can be readily cured by an instruction, such as the one proposed by the Government.  In order for the jury to properly evaluate Esformes' intent to defraud, it is highly relevant for the government: (a) to be able to present the Medicare guidelines that Esformes and the facilities he ran in an extremely hands-on manner agreed to follow, and (b) to show that he violated them.  The admission of similar evidence (such as Local Coverage Determinations) to show what Medicare would and would not pay, in combination with a limiting instruction, has been upheld in Medicare fraud trials in this district before Your Honor involving partial hospitalization programs (PHPs).  <u>United States v. Macli, et al</u>., Case No. 11-20587-CR-SCOLA.

The other "legal" conclusions Defendant complains about in his Motion that were purportedly offered by Dr. Cifu are nothing of the kind.  Dr. Cifu opined that the owner of a facility was responsible, in the end, for setting up the clinical team that admits patients into a SNF, and ensures that the services billed are medically necessary and actually rendered.  GX 47 contains all

of the Medicare certifications signed by the Defendant attesting to exactly that.  This is simply a fact.  Dr. Cifu admitted that mistakes could happen, but opined that a pattern of improper admissions would suggest inappropriate practice.  As for Defendant's contention that a licensed administrator is responsible for ensuring such compliance, Dr. Cifu testified to the same, noting that under a SNFs organizational structure, there is "a chief medical nursing and administrative officer[], whose job it is to make sure that staffing is appropriate, the training is right, that care is being provided appropriately, that nothing inappropriate or unethical is occurring."   [Final Transcript, March 11, 2019, at 156:20-24].  All Dr. Cifu did was to add that typically at a SNF, the person above such people is going to be "whoever pays their check" [i.e., the owner of the SNF], and that a SNF owner could sometimes sign Medicare certifications, as occurred in this case. These are facts, not legal conclusions.  They just happen to be facts Defendant does not like.

## CONCLUSION

For the reasons stated above, the Defendant's motion should be denied.

Dated: March 14, 2019

Respectfully submitted,

ROBERT ZINK, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

By: /s/ James V. Hayes
James V. Hayes (FL Bar # A5501717)
James.Hayes@usdoj.gov
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., NW
Washington, DC 20005
Tel: (786) 447-9563

<u>**CERTIFICATE OF SERVICE**</u>

I, hereby certify that, on March 14, 2019, a true and correct copy of the foregoing was filed and served on all counsel via the CM/ECF system.

_/s/ James V. Hayes_____
James V. Hayes