UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CR-20549 SCOLA/OTAZO-REYES (s)(s)(s)

UNITED STATES OF AMERICA

v.

PHILIP ESFORMES,

        Defendant.

_____/

### GOVERNMENT'S OPPOSITION TO DEFENDANT PHILIP ESFORMES'S MOTION TO DISMISS AND FOR A MISTRIAL BASED ON *TEXAS V. UNITED STATES*

The United States, by and through undersigned counsel, the Acting Chief of the Fraud Section of the Criminal Division of the United States Department of Justice and the United States Attorney for the Southern District of Florida, hereby respectfully submits this response to Defendant Philip Esformes's ("Defendant") Motion To Dismiss and for a Mistrial Based on *Texas v. United States*. *See* D.E. 1206. As explained more fully below, Defendant's motion should be denied in its entirety. As an initial matter, Defendant's motion, filed seven weeks into trial in this case and over three months after the decision in *Texas v. United States*, 340 F. Supp. 3d 579 (N.D. Tex. Dec. 14, 2019), *pending appeal*, 5th Cir. No. 19-10011, is untimely and should be denied on that basis alone. Moreover, Defendant's motion lacks merit as neither the district court's decision in *Texas v. United States*, nor the Government's decision to defend that decision before the United States Court of Appeals for the Fifth Circuit, affects this criminal prosecution. That is because the Third Superseding Indictment charges the Defendant with violations of law occurring prior to January 1, 2019, the effective date of the Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, 131 Stat. 2054, which eliminated the tax penalty for failing to comply with the "individual mandate" within the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat.

1

119. Finally, even assuming the invalidation of the ACA applies retroactively to events prior to January 1, 2019, the criminal statutes amended by the ACA that Defendant is charged with violating, 18 U.S.C. § 1347 and 42 U.S.C. § 1320a-7b, were both in force long before the ACA was passed, and the amendments to those statutes made by that law have no effect on the continued viability of Defendant's prosecution. Defendant's motion should be denied.

**FACTUAL BACKGROUND**

**I.    The Charges Against Defendant**

On July 21, 2016, a federal grand jury sitting in the Southern District of Florida, returned a 28-count indictment in this case charging Defendant in 24 counts, including conspiracy, health care fraud, violations of the Anti-Kickback Statute, money laundering, and obstruction of justice. The Third Superseding Indictment, the operative charging instrument in this case, charges the Defendant with one count of conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349, two counts of health care fraud, in violation of 18 U.S.C. § 1347, one count of conspiracy to defraud the United States and pay and receive health care bribes and kickbacks, in violation of 18 U.S.C. § 371, two counts of receipt of kickbacks in connection with a federal health care program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), six counts of payment of kickbacks in connection with a federal health care program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A), one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), fourteen counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), one count of conspiracy to commit federal program bribery, in violation of 18 U.S.C. § 371, one count of conspiracy to commit federal program bribery and honest services wire fraud, in violation of 18 U.S.C. § 371, one count of federal program bribery, in violation of 18 U.S.C. § 666, one count of obstruction of justice, in violation of 18 U.S.C. § 1503, and one count of conspiracy to make a false statement relating to health care matters, in violation of 18 U.S.C. § 371.

Trial in this case commenced on February 11, 2019. *See* D.E. 1110. At the conclusion of the Government's case-in-chief, this Court granted Defendant's motion for a judgment of acquittal as to Counts 2-3, 17, 24, and 35, *see* D.E. 1184, and granted the Defendant's renewed motion for a judgment of acquittal at the close of the evidence as to Count 29, *see* D.E. 1209. In addition, in connection with the submission of the parties' joint revised jury instructions, the Government informed the Court that it was no longer pursuing, and would not seek an instruction as to, the honest services wire fraud object of the conspiracy charged in Count 32. *See* Tr. Mar. 27, 2019 at 166; Tr. Mar. 28, 2019 at 155. Thus, on March 29, 2019, the following counts of the Third Superseding Indictment were submitted to the jury for an adjudication of guilt: Count 1 (conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349); Count 6 (conspiracy to defraud the United States and pay and receive health care bribes and kickbacks, in violation of 18 U.S.C. § 371); Counts 8-9 (receipt of kickbacks in connection with a federal health care program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A)); Counts 10-15 (payment of kickbacks in connection with a federal health care program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A)); Count 16 (conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h)); Counts 18-23, 25-28, and 30 (money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i)); Count 31 (federal program bribery, in violation of 18 U.S.C. § 666); Counts 32 and 33 (conspiracy to commit federal program bribery, in violation of 18 U.S.C. § 371); and Count 34 (obstruction of justice, in violation of 18 U.S.C. § 1503).

## II.   The Patient Protection and Affordable Care Act Litigation

On March 23, 2010, President Barack Obama signed the ACA into law. *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (Mar. 23, 2010). As the Supreme Court explained, one of the "key provisions" of the ACA was the "individual mandate," which required most Americans to maintain "minimum essential" health insurance coverage for

themselves and their dependents or pay a tax penalty. *Nat'l Fed'n of Indep. Bus. v. Sebelius (NFIB)*, 567 U.S. 519, 539 (2012). In *NFIB*, the Supreme Court determined that the individual mandate was a valid exercise of Congress's taxation power. *Id*. at 574. In 2017, however, Congress eliminated the tax penalty for failing to comply with the individual mandate, effective January 1, 2019. *See* Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, 131 Stat. 2054. In December of last year, the United States District Court for the Northern District of Texas held in a civil case that the ACA's individual mandate is unconstitutional in light of that change. *See Texas*, 340 F. Supp. 3d at 605. The district court has also ruled that, because Congress intended the health insurance provisions of the ACA to work together, the individual mandate provision is "inseverable from the entire ACA," rendering the ACA invalid. *Texas*, 340 F. Supp. 3d at 613-15 (capitalization altered). On December 30, 2019, the district court stayed enforcement of its order throughout the pendency of appellate proceedings. *See Texas v. United States*, 352 F. Supp. 3d 665, 689 (N.D. Tex. 2018).

On January 3, 2019, the Intervenor-Defendants in *Texas v. United States*, the District of Columbia, State of California, State of Connecticut, State of Delaware, State of Hawaii, State of Illinois, Commonwealth of Kentucky, Commonwealth of Massachusetts, State of Minnesota, State of New Jersey, State of New York, State of North Carolina, State of Oregon, State of Rhode Island, State of Vermont, Commonwealth of Virginia, and State of Washington, appealed the district court's order to the Fifth Circuit. The following day, the United States of America, the U.S. Department of Health & Human Services, Alex Azar, in his official capacity as Secretary of HHS, the U.S. Internal Revenue Service, and Charles P. Rettig, in his official capacity as Commissioner of the Internal Revenue Service (collectively referred to as the "Federal Defendants" in the district court proceeding) filed a separate notice of appeal. On March 25, 2019, the Civil Division of the United States Department of Justice sent a letter to the Fifth Circuit stating: "The Department of

4

Justice has determined that the district court's judgment should be affirmed. Because the United States is not urging that any portion of the district court's judgment be reversed, the government intends to file a brief on the appellees' schedule."

On March 27, 2019, Defendant filed the instant motion to dismiss and for a mistrial, contending that the decision in *Texas*, although not a "binding judicial determination," rendered "every health care statute cited in the indictment" unconstitutional. D.E. 1206 at 3, 6. In addition, Defendant asserted that in light of the Department of Justice's representation to the Fifth Circuit that the district court's decision should be affirmed and that the United States would not argue that any portion of the decision should be reversed, "the Due Process Clause [would] not permit the Justice Department to prosecute the Defendant based upon alleged violations of statutes and regulations that they have independently deemed and declared to be unconstitutional." *Id*. at 6. The same day the Defendant filed his motion, the Government responded on the record during a conference outside the presence of the jury, urging that the motion be denied on the basis that the motion was both untimely and without merit. The Government specifically stated that the unconstitutionality of the ACA did not "affect the current viability" of either "the [A]nti[-K]ickback [S]tatute [or] the health care fraud statute" because both had "been on the books long before" the enactment of the ACA. *See* Tr. Mar. 27, 2019 at 117-118. The Court ordered the Government to file a written response to Defendant's motion by 3:00 p.m. on Monday, April 1, 2019. *Id*. at 119.

## ARGUMENT

I. **Defendant's Motion to Dismiss is Untimely and He Cannot Demonstrate Good Cause to Excuse his Failure to File the Motion Prior to the Commencement of Trial**

Federal Rule of Criminal Procedure 12 states that a motion to dismiss based on "a defect in the indictment" including "failure to state an offense" *must be raised by pretrial motion* if the

5

basis for the motion is then reasonably available and the motion can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(3). "The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional." *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973); *see also United States v. Brown*, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010) ("An indictment is defective if it alleges a violation of an unconstitutional statute.").[1]

Throughout the extensive pretrial litigation in this case, which spanned some 32 months, Defendant filed no less than ten motions for relief under Rule 12, including three pretrial motions to dismiss all or part of the indictment, *see* D.E. 109, 278, 938, three pretrial motions to suppress evidence, *see* D.E. 261, 278, 475, three motions for Rule 16 discovery, *see* D.E. 95, 277, 816, and one motion for severance, *see* D.E. 278. *See* F. R. Cr. P. 12(b)(3)(B), (C), (D), and (E).[2] Yet Defendant waited until last week, after the jury had been sworn and heard evidence for over seven weeks, to file the instant motion to dismiss. This is despite the fact that the *Texas* decision was issued on December 14, 2018, almost two months before trial commenced in this case on February 11, 2019, and the fact that the legislation eliminating the tax penalty associated with the individual

---

[1] At times it appears as though Defendant's motion is premised on an argument that certain of the statutes charged in the Third Superseding Indictment are unconstitutional. *See* D.E. 1206 at 3 ("As a result of the District Court's judgment, numerous statutes have been held to be unconstitutional, including statutes invoked by the prosecution in this case."). At other times, he appears to be making a constitutional argument based on principles of estoppel in light of the Department of Justice's letter to the Fifth Circuit. *See id.* at 5 ("[T]he Due Process Clause will not permit the Justice Department to prosecute the Defendant based upon alleged violations of statutes and regulations that they have independently deemed and declared to be unconstitutional."). To the extent Defendant's motion is based on the former, it is clearly untimely as set forth above. To the extent is relies solely on the latter argument, it fails on the merits for all the reasons discussed herein. *See*, Parts II and III, *infra*.

[2] This is, of course, in addition to a whole host of other pretrial motions, bringing the total number to nearly thirty. *See* D.E. 95, 96, 97, 109, 261, 272, 275, 277, 278, 279, 339, 347, 348, 475, 671, 809, 816, 818, 863, 938, 986, 1038, 1090, 1101, 1159, 1164, 1166, 1181.

mandate, which provided the basis for the district court's holding, was enacted on December 22, 2017, and went into effect on January 1, 2019. "These facts demonstrate inexcusable delay and last-minute motion filing." *United States v. Milian-Rodriguez*, 828 F.2d 679, 683 (11th Cir. 1987) (affirming decision to deny motion to suppress as untimely under prior version of Rule 12 where motion was filed after district court's filing deadline and five months after the Eleventh Circuit denied rehearing en banc in the opinion that provided the basis for motion to suppress). "Nothing require[s] [a] district court to consider [an] untimely motion," and this Court should exercise its discretion to deny Defendant's motion on that ground alone. *See United States v. Brandon*, 636 F. App'x 542, 547 (11th Cir. 2016) (affirming district court's decision to deny motion to suppress as untimely).

To be sure, Rule 12 does allow a court to excuse an untimely filing "if the party shows good cause." Fed. R. Crim. P. 12(c)(3). However, in interpreting a prior version of Rule 12, the Eleventh Circuit has explained that "[g]ood cause is not shown where the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date." *United States v. Seher*, 562 F.3d 1344, 1359 n.15 (11th Cir. 2009); *see also Brandon*, 636 F. App'x at 547 ("Failure or inadvertence of counsel to timely file a motion to suppress does not constitute good cause."). Defendant's argument that the statutes charged in the indictment were rendered invalid as a result of Congress's elimination of the tax penalty was ripe, if not upon passage of that legislation in 2017, at least by January 1, 2019, when it went into effect. Defendant has offered no reason why he could not have filed the current motion before trial began, as required by Rule 12.[3]

---

[3] Even one were to consider the issuance of the district court's decision in *Texas* to be the point at which Defendant "had all the information necessary to bring a Rule 12(b) motion," *Seher*, 562 F.3d at 1359 n.15, his motion should still be considered untimely because he had almost two

The fact that the Department of Justice only filed its letter with the Fifth Circuit on March 25, 2019, stating that it was in agreement with the district court's decision in *Texas*, is of no moment. Nothing entitles a criminal defendant to wait to raise a legal challenge until the Government offers its position on the issue, particularly when the legal argument available to the defendant is widely known. For example, the Tenth Circuit rejected a defendant's argument that good cause existed to his untimely filing of a motion to suppress evidence of his location obtained from a global-positioning-system ("GPS") tracking device because the Supreme Court did not decide *United States v. Jones*, 565 U.S. 400 (2012), until after he was sentenced. *See United States v. Baker*, 713 F.3d 558, 560 (10th Cir. 2013); *see also Jones*, 565 U.S. at 404 (holding that attachment of a GPS tracking device to monitor movement of a suspect's car constitutes a "search" under the Fourth Amendment). The Tenth Circuit held that "[d]efendants need not, and often do not, await a Supreme Court precedent directly in point before raising a constitutional challenge to a search or seizure. Indeed, the very argument unpressed by Defendant had been raised in other circuits before his trial and, most notably, had prevailed in the D.C. Circuit." *Baker*, 713 F.3d at 561. By the same token, Defendant's failure to file a pretrial motion to dismiss based on the invalidation of the ACA cannot be excused by the subsequently filed letter setting forth the Department of Justice's litigating position. Once Congress eliminated the tax penalty, Defendant "had all the information necessary to bring a Rule 12(b) motion." *Seher*, 562 F.3d at 1359 n.15. There is no good cause for his failure to do so.

Most critically, the Eleventh Circuit has repeatedly emphasized that, when examining whether good cause exists to permit a district court to consider an untimely filed Rule 12 motion, "competing considerations of prejudice to the government must be taken into account." *United*

---

months before trial to raise his claim. *See Milian-Rodriguez*, 828 F.2d at 683 (evaluating timeliness of motion based on issuance of judicial decision).

*States v. Taylor*, 792 F.2d 1019, 1025 (11th Cir. 1986). In the suppression context, for example, "[o]nce a jury has been sworn and jeopardy attaches, the government loses its right to appeal an adverse ruling." *Id.* (citing 18 U.S.C. § 3731). Because of this drastic consequence, the Eleventh Circuit has held that "[t]he scope of a court's discretion to consider a [motion under Rule 12] on the merits after jeopardy has attached is limited by this factor." *Id.* (concluding that the district court did not abuse its discretion when it denied suppression motion as untimely). Just as the Eleventh Circuit held in another case, "[n]othing in this case warranted waiting until after opening statements to raise this defense; [Defendant] merely waited to gain a strategic advantage by raising the defense after jeopardy attached. This tactic is precisely what Rule 12 was designed to prevent." *United States v. Ramirez*, 324 F.3d 1225, 1228 (11th Cir. 2003) (footnote omitted) (quoting with approval district court's statement that the defendants "decided to withhold [their motion to dismiss] in order to seek a strategic advantage by waiting until jeopardy attached upon the swearing in of the jury"). Because Defendant could have, but did not, file his motion to dismiss pretrial, as required by Rule 12, he is not entitled to relief.[4]

## II.     The Invalidation of the ACA Is Inapplicable to this Case Because Defendant's Criminal Conduct Occurred Prior to January 1, 2019

As it represented to the Fifth Circuit, the Department of Justice will defend the district court's decision in *Texas v. United States*. However, that does not entitle Defendant to the relief he seeks. The Government's position is that the ACA was rendered invalid *as of January 1, 2019*, when Congress zeroed out the tax penalty for individuals who fail to comply with the statute's

---

[4] Defendant's motion also invokes Federal Rule of Criminal Procedure 29, seeking a judgment of acquittal. For the same reasons the indictment should not be dismissed, *see* Parts II and III, *infra*, Defendant is not entitled to a judgment of acquittal. But in any event, even were the court inclined to grant such a motion, the Government respectfully requests that the Court reserve decision until after the jury returns its verdict. *See* Fed. R. Crim. P. 29(b). Doing so fully preserves both parties' appellate rights, which is in the interests of justice under the circumstances.

9

individual mandate and thus eliminated the only constitutional basis for the individual mandate. Up until that date, however, there is no dispute that the entirety of the ACA was a valid exercise of Congress's tax power under the Supreme Court's decision in *NFIB*. Thus, the decision of the United States to defend the district court's decision in *Texas* has no effect on criminal prosecutions for conduct that occurred before January 1, 2019, including the prosecution of Defendant.

This conclusion logically flows from Congress's enactment of the federal saving statute, 1 U.S.C. § 109, which provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute." At common law, the general principle was "that a court was to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711, (1974). However, in 1871 Congress enacted the federal saving statute in an effort "to abolish this common-law presumption that the repeal of a criminal statute resulted in the abatement of all prosecutions which had not reached final disposition in the highest court authorized to review them." *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660 (1974) (defendant convicted before statutory change broadening parole eligibility remained ineligible for parole) (internal quotation marks and citation omitted). Since the enactment of the federal saving statute, courts have held that it applies not only when a statute is repealed, but also when it is legislatively amended, *see Martin v. United States*, 989 F.2d 271, 274 (8th Cir. 1993), or expires pursuant to a sunset provision, *see United States v. Mullins*, 356 F. Supp. 2d 617, 619-620 (W.D. Va. 2005) (defendant may be convicted under the assault weapons ban after it expired because his conduct was illegal at the time).

The district court's decision in *Texas*, upon which Defendant relies, was based on Congress's enactment of the Tax Cuts and Jobs Act of 2017, which eliminated the tax penalty for

failing to comply with the individual mandate. Congress's decision to eliminate the tax penalty, particularly given that it did so following the Supreme Court's widely-publicized decision in *NFIB* that the ACA was constitutional under Congress's taxing authority, is tantamount to a legislative "amendment" of the ACA. And even though Congress did not specifically legislatively repeal the ACA, the purpose behind the passage of the federal saving statute compels its application here. As the Fifth Circuit noted, the general language employed in the saving statute "provides evidence of a strong congressional antipathy towards what might be called (for want of a better term) amnesty by expiration or inadvertent repeal." *United States v. Uni Oil, Inc.*, 710 F.2d 1078, 1083 n.3 (5th Cir. 1983); *see also United States v. Smith*, 433 F.2d 341, 342 (4th Cir. 1970) ("The stated purpose of that section was to allow prosecutions for previously incurred criminal liability to be continued.").[5]

Thus, given the history of, and purpose behind, the enactment of the federal saving statute, it is clear that neither the district court's decision in *Texas*, nor the Government's recently-announced determination to defend that ruling on appeal, provides any basis to dismiss the charges against Defendant or grant a mistrial. The invalidation of the ACA by the district court in *Texas* has no effect on criminal prosecutions for conduct that occurred before January 1, 2019, the effective date of the statute eliminating the constitutional basis for the individual mandate. Because all of the conduct charged in the Third Superseding Indictment occurred prior to that date, Defendant's motion should be denied.

---

[5] Neither *United States v. Chambers*, 291 U.S. 217 (1934), nor *Hamm v. City of Rock Hill*, 379 U.S. 306 (1964), compels a different conclusion here. While in both cases the Supreme Court determined that prosecutions for conduct that occurred before a change in law could not continue once the change occurred, notwithstanding the federal saving statute, each presented specific facts not present here—namely a constitutional amendment or federal legislation conferring new affirmative rights on individuals and specifically condoning conduct that had previously been criminal.

### III. Defendant Remains Subject to Conviction Under the Health Care Fraud Statutes as Written Prior to the ACA's Enactment

Even if the district court's decision in *Texas* holding the individual mandate unconstitutional and unseverable from the rest of the ACA could be deemed to retroactively apply to Defendant's unlawful conduct prior to the repeal of the ACA's tax penalty, which for the reasons explained above it cannot, Defendant would still not be entitled to either dismissal of the charges against him or a mistrial. That is because his entire motion proceeds from a faulty premise: "that the health care offenses at issue in this trial are unconstitutional." D.E. 1206 at 1. That is incorrect as a matter of law. *Texas* held that a portion of the ACA was unconstitutional and, because that portion of the law was not severable from the remainder, the entire law was unenforceable. Contrary to Defendant's assertion, a legal determination that the ACA is no longer enforceable is fully distinct from a conclusion that every already-existing statute referenced within the ACA is unconstitutional.[6] The ACA did not *enact* either of the health care fraud offenses charged in the Third Superseding Indictment; indeed, both had been on the books for years before the ACA was enacted. The health care fraud statute, 18 U.S.C. § 1347, was first enacted in 1996 as part of the Health Insurance Portability and Accountability Act, Pub. Law No.104–191, 110 Stat. 1936 (August 21, 1996). Similarly, the Anti-Kickback Statute also long predated the ACA, having been originally enacted by Congress in 1972, and subsequently amended over the past several decades

---

[6] Defendant's sole authority for the proposition that "every health care statute cited in the Indictment has been identified as among those ruled unconstitutional in the *Texas* case," is the fact that they are flagged as unconstitutional by Westlaw. *See* D.E. 1206 at 3. While most attorneys practicing today would agree that the advent of electronic legal databases has revolutionized the practice of law, *see, e.g.*, *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 497 (D.N.J. 1998) ("The use of Lexis [or Westlaw] allows for quicker research and access to the most recent case law, therefore, it allows for more efficient use of an attorney's time."), "the case-history system provided by Westlaw, a commercial database of legal authorities, carries no legal significance in the face of clear Eleventh Circuit precedent . . . ," *Dunn v. Citigroup Glob. Markets, Inc.*, No. 10-81469-CIV, 2011 WL 13227889, at *5 (S.D. Fla. July 15, 2011).

to broaden the statute and enhance its penalties. *See* Social Security Amendments of 1972, Pub. L. No. § 242(b)-(c), 86 Stat. 1329, 1419-20 (Oct. 30, 1972).

The fact that both the health care fraud statute and Anti-Kickback Statute were lawfully enacted prior to the passage of the ACA, and are not themselves subject to constitutional challenge, is fatal to Defendant's argument under Supreme Court precedent dating back almost one hundred years. In *Frost v. Corporation Commission*, 278 U.S. 515, 526-27 (1929), the Supreme Court considered what effect a legislative amendment that had been deemed unconstitutional had on the continued viability of the original statute. The Court held:

> Here it is conceded that the statute, before the amendment, was entirely valid. When passed, it expressed the will of the Legislature which enacted it. Without an express repeal, a different Legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent.

*Id*.; *see also Truax v. Corrigan*, 257 U.S. 312, 342 (1921) ("The exception introduced by amendment to paragraph 1456 proving invalid, the original law stands without the amendatory exception."); *United States v. Silverman*, 129 F. Supp. 496, 507 (D. Conn. 1955) (applying this doctrine in a criminal case and concluding that "the invalidity of [a statutory] amendment on constitutional grounds would make the amendment a nullity and would leave the validity of the Smith Act, as it stood on [on the date of the indictment], unimpaired").

Accordingly, under the Supreme Court's holdings in *Frost* and *Truax*, the only provisions that could have been rendered invalid by the decision in Texas are the *amendments* to 18 U.S.C. § 1347 and 42 U.S.C. § 1320a-7b set forth in the ACA; the statutes as they existed prior to the ACA's enactment remain enforceable. "If the original act is constitutional, and no serious claim is made that it is not, its validity could not be impaired by the subsequent adoption of what was in form an amendment—even though in legal effect a nullity." *Shore v. Cross*, 7 F. Supp. 70, 75 (D. Conn.

13

1934) (citing *Eberle v. Michigan*, 232 U.S. 700, 704 (1914)). And, as explained below, none of the ACA amendments to either statute undermine the charges against Defendant currently under consideration by the jury.[7]

*First*, the ACA added new mens rea provisions to both the health care fraud statute and the Anti-Kickback Statute that clarified that the requirement in both statutes that the defendant act "willfully" did not require the Government to prove that the defendant knew of the existence of, or intended to violate, those specific statutes. *See* 18 U.S.C. § 1347(b) ("With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section."); 42 U.S.C. § 1320a-7b(h) ("With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section."). The remainder of both statutes, including the description of the elements of each offense were unchanged by the ACA.[8]

---

[7] As explained, the elimination of the ACA's tax penalty has rendered the individual mandate unconstitutional. Insofar as the ACA has been deemed not severable, the invalidation of part of the statute means that other provisions of the Act—including the amendments to the health care fraud and Anti-Kickback statutes—are unenforceable on a prospective basis. But that fact does not call into question the *constitutionality* of the criminal provisions. It is well established that Congress's initial enactment of 18 U.S.C. § 1347 and 42 U.S.C. § 1320a-7b was a valid exercise of its authority under the commerce clause. *See, e.g.*, *United States v. Ogba*, 526 F.3d 214, 239 (5th Cir. 2008) ("Congress had the power to enact the Health Care Fraud and Illegal Remuneration statutes under the Commerce Clause of the Constitution, and offenses charged under these statutes do not fall outside of Congress's constitutionally-granted powers."). The amendments to these criminal statutes contained within the ACA are likewise constitutional under the commerce clause.

[8] The ACA also added a new section (g) to Section 1230a–7b to clarify that a claim submitted to a federal health care program that was procured by kickbacks in violation of the Anti-Kickback Statute constituted "a false or fraudulent claim" for purposes of the False Claims Act, 31 U.S.C. § 3729 *et seq*. *See* 42 U.S.C. § 1320a–7b(g) ("In addition to the penalties provided for in this section or section 1320a–7a of this title, a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of subchapter III of chapter 37 of Title 31.") That provision has no applicability to this criminal health care fraud prosecution, and, even if it did, the change simply codified already existing Eleventh Circuit law. *See McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259-60 (11th Cir. 2005)

This amended mens rea language is of no moment. The mens rea language the ACA added to the health care fraud statute and the Anti-Kickback Statute merely codified already existing Eleventh Circuit precedent that the Government need not prove that the defendant knew he was violating a specific statute to secure a conviction under either statute, *see Bryan v. United States*, 524 U.S. 184, 193 (1998) (to prove a violation of a statute employing the word "willfully" the jury "must find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful" except for "highly technical statutes that present[] the danger of ensnaring individuals engaged in apparently innocent conduct" which require that the defendant have knowledge of the law being violated); *United States v. Starks*, 157 F.3d 833, 838-39 & n.8 (11th Cir. 1998) (applying the willfulness standard from *Bryan* to 42 U.S.C. § 1320a-7b). *Contra Hanlester Network v. Shalala*, 51 F.3d 1390, 1400 (9th Cir. 1995) (holding that proof of specific intent was required to violate 42 U.S.C. § 1320a-7b(b)(2)).[9]

---

(holding that a violation of the Anti–Kickback Statute can form the basis for a *qui tam* action under the False Claims Act).

[9] Although the Government is of the view that the mens rea standard set forth in the ACA represents an accurate statement of the law and can be applied to prosecutions for criminal conduct committed prior to January 1, 2019, during the charge conference in this case the Government withdrew its request to include that language in the jury instructions for 18 U.S.C. § 1347 and 42 U.S.C. § 1320a-7b and chose to rely only on the standard willfulness instruction set forth in the Eleventh Circuit Pattern Jury Instructions. *See* Tr. Mar. 28, 2019 at 76; *see also* Eleventh Circuit Pattern Jury Instructions – Criminal (2019), Basic Instruction No. 9.1A. The Government's decision to do so in this case was a result of the fact that, at the very time the charge conference was occurring, the prosecution team was awaiting guidance from the Department of Justice concerning whether alterations should be made to the Government's proposed jury instructions in light of the Defendant's recently-filed motion to dismiss. As explained above, the Government's position is that it would have been lawful and appropriate to instruct the jury on the mens rea language included in the ACA with respect to the health care fraud statute and Anti-Kickback Statute. The Government's discretionary decision to request that the Court not do so here, which was made out of an abundance of caution and inures to the benefit of the defendant, is a second, independent reason why the revised mens rea language included in the ACA poses no obstacle to the conviction of Defendant.

*Second*, the ACA redefined the term "federal health care offense" set forth in 18 U.S.C. § 24 to include violations of the Anti-Kickback Statute. *See* 18 U.S.C. § 24(a) ("As used in this title, the term 'Federal health care offense' means a violation of, or a criminal conspiracy to violate—(1) section 669, 1035, 1347, or 1518 of this title or section 1128B of the Social Security Act (42 U.S.C. 1320a-7b)). For purposes of this case, that change is relevant because it made violations of the Anti-Kickback Statute a specified unlawful activity under the money laundering statute. *See* 18 U.S.C. § 1956(c)(7)(F) (defining specified unlawful activity as, *inter alia*, "any act or activity constituting an offense involving a Federal health care offense").

Although receipt of kickbacks is one of the three types of specified unlawful activity charged in the money laundering counts in the Third Superseding Indictment, the jury instructions given in this case, when accompanied with the special verdict form proposed by the Government, ensure that, even if the amended definition of "Federal health care offense" in 18 U.S.C. § 24(a) could not be applied in this case, Defendant will suffer no prejudice if convicted of the money laundering charges. By requiring the jury to specify which of the three forms of specified unlawful activity generated the proceeds used in the unlawful transactions, the Government, Defendant, and the Court will be in a position to know, once the jury renders its verdict, whether it is necessary to consider if the amended definition of "Federal health care offense" can be applied to this case.

*Third*, as Defendant correctly notes, the ACA also led to the promulgation of a variety of regulations and policies. *See* D.E. 1206 at 3, 5. Much like the ACA's enactment of the statutory amendments to the health care fraud and Anti-Kickback Statute, *see* n.5, *supra*, there is no question that the issuance of these regulations and policies was lawful under the ACA at the time they were promulgated and throughout Defendant's unlawful scheme as alleged in the Third Superseding Indictment. But even were that not so, the instructions provided to the jury in this case render it unnecessary to decide whether or not those regulations and policies are deemed invalid as to

16

conduct prior to January 1, 2019. The jury was instructed that "[e]vidence of a violation of a guideline or regulation, standing alone, is insufficient to establish the commission of a crime." And although the jury may consider evidence of such regulations to evaluate Defendant's knowledge, his state of mind, or whether he acted with criminal intent, whether or not they became invalid years after the conduct alleged in the Third Superseding Indictment says nothing about his knowledge or intent at the time he acted.[10]

Thus, as explained above, even though the Government's position is that the invalidation of the ACA has no application here when the charged conduct predated the repeal of the individual mandate's tax penalty, even if that were not the case, none of the amendments the ACA made to the statutes at issue in this prosecution undermine the charges against the Defendant currently under consideration by the jury.[11]

---

[10] For similar reasons, Defendant's vagueness challenge lacks merit. D.E. 1206 at 6, 7. The fact that the United States now agrees that the ACA is invalid does not in any way suggest that regulations that were lawful and in force before January 1, 2019, were standardless or failed to give Defendant (or anyone else) fair warning that his conduct was unlawful.

[11] In addition to the changes noted above, certain provisions of the ACA may affect the sentences of individuals convicted of federal health care fraud offenses. For one, the ACA required the United States Sentencing Commission to amend the United States Sentencing Guidelines to include certain enhancements for health care fraud offense that are now set forth in U.S.S.G. § 2B1.1. *See* U.S.S.G. § 2B1.1(b)(7) (providing for a 2, 3, or 4-level increase to the base offense level for a defendant was "convicted of a Federal health care offense involving a Government health care program" when the loss to the Government health care program was more than $1,000,000, $7,000,000, or $20,000,000, respectively). In addition, the ACA's amendment to the definition of "federal health care offense" in 18 U.S.C. § 24 also rendered the proceeds of violations of the Anti-Kickback Statute subject to criminal forfeiture. *See* 18 U.S.C. § 982(a)(7) ("The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense."). Although the Government's primary contention is that the invalidation of the ACA does not apply retroactively to the Defendant because he is charged with conduct that predated January 1, 2019, *see* Part II, *supra*, this Court need not consider the implication of the ACA's changes relevant to sentencing now, but can wait to address that issue at sentencing, if Defendant is convicted of any of the health care offenses charged in the Third Superseding Indictment.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motion be denied.

Dated: April 1, 2019                                             Respectfully submitted,

                                                                              ROBERT ZINK, ACTING CHIEF
                                                                              CRIMINAL DIVISION, FRAUD SECTION
                                                                              U.S. DEPARTMENT OF JUSTICE

                                                                              ARIANA FAJARDO ORSHAN
                                                                              UNITED STATES ATTORNEY
                                                                              SOUTHERN DISTRICT OF FLORIDA

                                             By:        */s/ Jeremy R. Sanders*
                                                                              JEREMY R. SANDERS
                                                                              (Florida Special Bar No. A5502214)
                                                                              JAMES V. HAYES
                                                                              ELIZABETH YOUNG
                                                                              Trial Attorneys
                                                                              ALLAN MEDINA
                                                                              Assistant Chief
                                                                              United States Department of Justice
                                                                              Criminal Division, Fraud Section
                                                                              1400 New York Avenue, N.W.
                                                                              Washington, D.C. 20005
                                                                              Telephone: (202) 616-2650
                                                                              jeremy.sanders@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Jeremy R. Sanders, hereby certify that on April 1, 2019, the foregoing document was served on all attorneys of record in the above-captioned case, via the CM/ECF electronic filing system.

/s/ *Jeremy R. Sanders*
Jeremy R. Sanders
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section