**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 16-CR-20549-CR-SCOLA(s)(s)(s)

UNITED STATES OF AMERICA,

vs.

PHILIP ESFORMES,

        Defendant.
_____/

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO ACQUIT ON THE FORFEITURE VERDICTS [ECF NO. 1325]**

THE UNITED STATES OF AMERICA (hereinafter, the "United States" or the "Government"), by and through its undersigned counsel, hereby responds in opposition to the Defendant's Motion to Acquit on the Forfeiture Verdicts [ECF No. 1325] (hereinafter, the "Motion to Acquit Forfeiture") and respectfully submits that the Defendant merely reiterates the same or substantially similar flawed arguments and analysis he made at the conclusion of the Government's case in the bifurcated forfeiture proceeding, which the Court has already considered and rejected. The evidence presented during the Defendant's trial and the bifurcated forfeiture proceeding clearly shows that the subject property was involved in the Defendant's money laundering offenses and therefore must be forfeited pursuant to 18 U.S.C. § 982(a)(1). Accordingly, the Court should affirm its previous ruling denying the same requested relief. The United States provides the following points and authority in opposition to the Motion to Acquit Forfeiture.

## **BRIEF PROCEDURAL BACKGROUND**

**I. Jury's Verdict**

On April 5, 2019, the petit jury (hereinafter, the "Jury") empaneled in this case returned its Verdict [ECF No. 1245] finding Defendant Philip Esformes (the "Defendant") guilty of the offenses charged in the following counts of the Third Superseding Indictment [ECF No. 869]: **Count 6** (18 U.S.C. § 371, Conspiracy to Defraud the United States and Pay and Receive Healthcare Kickbacks), **Counts 8 and 9** (42 U.S.C. § 1320a-7b(b)(1)(A), Receipt of Kickbacks in Connection with a Federal Health Care Program), **Counts 10 through 13** (42 U.S.C. § 1320a-7b(b)(2)(A), Payment of Kickbacks in Connection with a Federal Health Care Program), **Count 16** (18 U.S.C. § 1956(h), Conspiracy to Commit Money Laundering), **Counts 18 through 21**, **Counts 25 through 28**, **and Count 30** (18 U.S.C. § 1956(a)(1)(B)(i), Money Laundering), **Counts 31 and 32** (18 U.S.C. § 371, Conspiracy to Commit Federal Program Bribery) and **Count 34** (18 U.S.C. § 1503, Obstruction of Justice).[1] Verdict, ECF No. 1245.

**II. Jury's Special Verdict**

The Court conducted a bifurcated forfeiture proceeding following the Verdict after which the Jury, which was retained at the Defendant's request pursuant to Fed. R. Crim. P. 32.2(b)(3), returned its Special Verdict [ECF No. 1263] and unanimously found the following with respect to all interests held by, or on behalf of, the Defendant, in the facilities listed below and their associated business entities (collectively hereinafter, the "Operating Companies"):

---

[1] The Jury did not make a finding, either Guilty or Not Guilty, for the remaining Counts of the Third Superseding Indictment. Verdict, ECF No. 1245; 3d Superseding Indictment, ECF No. 869.

(A)     (BI1A)[2] ***Oceanside Extended Care Center's*** (hereinafter "Oceanside['s])" operating company, A.D.M.E. Investment Partners LTD, was involved in the money laundering offenses charged in **Counts 16, 19, or 30** of the Third Superseding Indictment;

(B)     (B12A) ***North Dade Nursing and Rehabilitation Center's*** (hereinafter "North Dade['s]") operating company, Almovea Associates LLC, was involved in the money laundering offenses charged in **Counts 16 or 27** of the Third Superseding Indictment;

(C)     (B13A) ***Harmony Health Center's*** (hereinafter "Harmony['s]") operating company, Ayintove Associates, LLC, was involved in the money laundering offenses charged in **Counts 16 or 20** of the Third Superseding Indictment;

(D)     (BI5A) ***Eden Gardens'*** operating company, Eden Gardens, LLC, was involved in the money laundering offenses charged in **Counts 16 or 28** of the Third Superseding Indictment;

(E)     (BI6A) ***Fair Havens Center's*** (hereinafter "Fair Havens[']") operating company, Fair Havens Center, LLC, was involved in the money laundering offenses charged in **Counts 16, 18, or 30** of the Third Superseding Indictment;

(F)     (BI7A) ***Flamingo Park Manor's*** (hereinafter "Flamingo Park['s]) operating company, Flamingo Park Manor LLC, was involved in the money laundering offenses charged in **Counts 16 or 28** of the Third Superseding Indictment; and

(G)     (BI12A) ***The Nursing Center at Mercy's*** (hereinafter "Mercy['s]) operating company, Sefardik Associates, LLC, was involved in the money laundering offenses charged in **Counts 16 or 30** of the Third Superseding Indictment.

Special Verdict, ECF No. 1263.

---

[2] The Government's numbering in parenthesis corresponds to the numbering for the Operating Companies in the Special Verdict.

3

## GOVERNMENT'S RESPONSIVE ARGUMENT IN OPPOSITION TO THE MOTION TO ACQUIT FORFEITURE

**I.  Forfeiture of the Defendant's Interests in the Operating Companies is Statutorily Authorized and Proven**

Contrary to the Defendant's assertions, criminal forfeiture of the Defendant's interests in the Operating Companies is certainly authorized by 18 U.S.C. § 982(a)(1), and the Government provided the Jury with more than sufficient evidence to prove that the Operating Companies were involved in the Defendant's money laundering offenses of which it found him guilty.

    **A.  Forfeiture of the Defendant's Interests in the Operating Companies is Authorized Pursuant to 18 U.S.C. § 982(a)(1), and 21 U.S.C. § 853(a) is Inapplicable in this Case**

Specifically, criminal forfeiture of the Operating Companies is statutorily authorized upon conviction of a federal money laundering offense pursuant to 18 U.S.C. § 982(a)(1), which is the criminal forfeiture statute that the United States has cited, and that the Court has applied, without objection, consistently and throughout this case. *See* 3d Superseding Indictment, Forfeiture Allegations, ECF No. 869 at 41; U.S.'s Bench Mem. Regarding Crim. Forf., ECF No. 1191 at 13; U.S.'s Prop. Forf. Jury Instr. No. 1, n 8, ECF No. 1214-4; *see also* Forf. Jury Instr., ECF No. 1265 at 2. Section 982(a)(1) provides, in pertinent part, that the "[C]ourt, in imposing sentence on a person convicted of an offense in violation of [18 U.S.C. § 1956], shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1).

The Defendant's contrary assertion regarding 21 U.S.C. § 853(a)'s applicability and his belief that his "interests" in property may only be forfeited upon conviction under the Racketeering Influenced Corrupt Organizations (RICO) statute (18 U.S.C. § 1961, *et seq*.) and the Continuing Criminal Enterprise (CCE) statute (21 U.S.C. § 848) is fatally flawed in at least two respects. *See*

4

Def. Mot. to Acquit on Forf. Verdicts, ECF No. 1325 at 2-8.  First, the Defendant's argument that § 853(a) applies in this case is belied by the express and clear statutory language of the section itself. By its terms § 853(a) applies only to a "person convicted of a violation of [21 U.S.C. §§ 801, *et seq.*)] . . . ." 21 U.S.C. § 853(a). In this case, the Defendant was neither charged with, nor found guilty of, a drug crime under Title 21. In fact, the Defendant does not, because he cannot, cite a single case where a defendant criminally forfeited property to the United States pursuant to 21 U.S.C. § 853(a) when he was not convicted of a drug crime under Title 21. This is because § 853(a) simply does not apply unless a defendant is convicted of a drug crime, which the Defendant in this case was not.  The Court should not look beyond the clear language of the statute and apply § 853(a), as the Defendant requests, to the Defendant's money laundering crimes.[3] *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992) ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished.").

Second, the Defendant's contention that criminal forfeiture of a defendant's interests in property is limited to only those circumstances where a defendant is convicted under the RICO or the CCE disregards the essential nature and purpose of criminal forfeiture, which the Eleventh Circuit has squarely held "acts *in personam* as a punishment against the party who committed the criminal act[ ]." *United States v. Elbeblawy,* 899 F.3d 925, 940 (11th Cir. 2018) (quoting *United States v. Fleet,* 498 F.23d 1225, 1231 (11th Cir. 2007) (internal quotation marks omitted). Put

---

[3] The Government acknowledges that criminal forfeiture *procedure* in this case shall be governed by 21 U.S.C. § 853, except for subparagraph (d). See 3d Superseding Indictment, Forfeiture, ECF No. 869 at 49 ("All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and (a)(7), and the *procedures* set forth at Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b) and by Title 28, United States Code, Section 2461(c)."(emphasis added)); *see also* 21 U.S.C. § 982(b).

5

another way, each time a court imposes criminal forfeiture as part of a defendant's sentence, regardless of the applicable forfeiture statute, it punishes the defendant by divesting him of his interests in property ordered forfeited. *See United States v. Gilbert*, 244 F.3d 888, 919-920 (11th Cir. 2001) (In criminal forfeiture the defendant's interests in the property is forfeited).[4]

### B. The Operating Companies were "Involved In" the Defendant's Money Laundering

The Defendant's contention that his interests in the Operating Companies (i.e., "the proverbial stock certificates") cannot be forfeited because they literally were not involved in his money laundering crimes misapprehends the requirements and procedure for criminally forfeiting property. The Government is not required to allege or prove that a defendant's interest in property subject to forfeiture was connected to his crimes, but rather only that the property itself, irrespective of ownership interest, was connected to his crimes. *See* Fed. R. Crim. P. 32.2(b)(1)(A) ("If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense."); *see United States v. Davenport*, 668 F.3d 1316, 1320 (11th Cir. 2012). Once this determination has been made, the court must enter a preliminary order of forfeiture without regard to any third party's interest in the property. *See Davenport*, 668 F.3d at 1320 (citing Fed. R. Crim. P. 32.2(b)(2)). The preliminary order then becomes final as the defendant at the time of sentence, but remains preliminary as to any third parties until an ancillary proceeding is concluded. *See* Fed. R. Crim. P. 32.2(b)(4)(A). Essentially, a defendant's ownership interests in property subject to forfeiture is only addressed after it has been determined that the property was connected to his crimes, and only then to the extent that the court divests him of such ownership interests as a result of that connection.

---

[4] While *Gilbert* involved a forfeiture under the RICO statute, it noted that forfeiture under 21 U.S.C. § 853 was substantially identical" and the case law has been applied interchangeably. *Gilbert,* 244 F.3d at 907 n. 47.

In this case, the Government alleged and proved during the bifurcated forfeiture trial that the Operating Companies were property involved in the Defendant's money laundering offenses because they facilitated the prohibited conduct by making it less difficult or more or less free from obstruction or hindrance. *See United States v. Seher*, 562 F.3d 1344, 1368 (11th Cir. 2009) ("Property eligible for forfeiture under 18 U.S.C. § 982(a)(1) includes that money or property which was actually laundered ("the corpus"), along with any commissions or fees paid to the launderer[ ] and any property used to facilitate the laundering offense. Property would facilitate an offense if it makes the prohibited conduct less difficult or more or less free from obstruction or hindrance.") (internal quotation marks and citation omitted)[5]; Forf. Jury Instr., ECF No. 1265; Special Verdict, ECF No. 1263.

## II. There was Ample Evidence to Permit a Reasonable Jury to Conclude that the Government Proved, by a Preponderance of the Evidence, that the Operating Companies were Involved in the Defendant's Money Laundering Activity

Rule 29 of the Federal Rules of Criminal Procedure requires, in pertinent part, that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rule 29 also provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). Because criminal forfeiture is a mandatory part of the Defendant's sentence, the United States was required to establish the requisite nexus between the Operating Companies and the Defendant's money

---

[5] The Defendant misstates the *Seher* court's definition of "facilitates" in this context by erroneously stating it defined facilitating property as "property that is used to conceal or to disguise the underlying transaction." Def. Mot. to Acquit on Forf. Verdicts, ECF No. 1325 at 5 (citing *Seher*, 562 F.3d at 369 [sic]). However, the *Seher* court did nothing of the kind. Rather, the *Seher* court merely found that cash that was deposited in a company's bank account further facilitated the defendant's laundering activity *by* disguising the source of the funds. *Seher*, 562 F.3d at 369.

7

laundering offenses of which he was guilty by a preponderance of the evidence. *See United States v. Cabeza*, 258 F.3d 1256, 1257-58 (11th Cir. 2001) (internal citations omitted); *Libretti v. United States*, 516 U.S. 29, 38-41 (1995) (holding that criminal forfeiture is part of the sentencing process); *see also* Forf. Jury Instr., ECF No. 1265 at 2; Special Verdict, ECF No. 1263 at 1. Therefore, when a court is asked to set aside a jury's forfeiture verdict, the question before it "is whether the evidence was sufficient to permit a reasonable jury to conclude that the Government has proven, by a preponderance of the evidence, that the property is subject to forfeiture." *United States v. Armstrong*, 2007 WL 809508, *2 (E.D. La. Mar. 14, 2007)(internal citations omitted).

In this case, the Jury found that the Operating Companies were "involved in" the Defendant's money laundering offenses, which means, among other things, that they facilitated the money laundering offenses by "mak[ing] the [Defendant's] prohibited conduct less difficult or more or less free from obstruction or hindrance." Forf. Jury Instr., ECF No. 1265 at 2. Although there must be more than an incidental connection between the Operating Companies and the Defendant's money laundering offenses, the connection did not have to be essential to the Defendant committing his money laundering offenses, nor did the Operating Companies have to be used exclusively in the commission of the Defendant's money laundering offenses. *See id*. at 3.

The evidence presented to the Jury in this case clearly established the requisite nexus between the Operating Companies and the Defendant's money laundering offenses, and the Court should deny the Defendant's motion.

### A. <u>Oceanside, Fair Havens, and Mercy</u>

With respect to these Operating Companies, the Jury found that Oceanside, Fair Havens, and Mercy were involved in the Defendant's money laundering offense charged in Count 30 of the Third Superseding Indictment. *See* Special Verdict, ECF No. 1263.

As set forth in Count 30, the Defendant, on or about February 29, 2016, committed money laundering by delivering, or causing to be delivered, to his personal assistant, Ken Duffy, check number 205 in the amount of $20,000 (US) drawn from his joint bank account ending 6212 held by he and his spouse at 1st Equity Bank (hereinafter "1st Equity 6212"). *See* 3d Superseding Indictment, ECF No. 869 at 30; Verdict, ECF No. 1245 at 11. The evidence presented showed that check number 205 was funded through wire fund transfers from bank accounts held by Oceanside, Fair Havens, and Mercy. Specifically, the evidence established that check number 205 was funded through six wire transfers, of which the amount transferred containing fraud proceeds totaled $137,000 (US), that were made on February 25, 2016, to 1st Equity 6212 from Oceanside's Bank of America ("BOA") account number ending 3409, Fair Haven's BOA account number ending 7170, and Mercy's MB Financial Bank ( "MB"), account number ending 1283. *See* GX 30E, ECF No. 1300-3.

Additionally, the Jury found the Defendant guilty of the money laundering offenses charged in Counts 18, 19, and 21, and thus guilty of using Fair Havens, Oceanside, and Mercy bank accounts to send funds to Diversified Medical Group to fund illegal kickback payments to physicians for patient referrals. *See* 3d Superseding Indictment at 29; Verdict, ECF No. 1245 at 5-7; *see also* GX 6F, ECF No. 1293-16.

B. North Dade

The Jury found that North Dade was involved in the Defendant's money laundering offense charged in Count 27, which convicted the Defendant of money laundering on July 8, 2015, by causing a wire transfer of $75,000 (US) from Mahair Investment, LLC's BOA account ending 3124 ( "BOA 3124") to the Fort Lauderdale Collection for the lease of a Ferrari Asperta. *See* 3d

Superseding Indictment, ECF No. 869 at 30; Verdict, ECF No. 1245 at 10. The evidence presented at trial and the bifurcated forfeiture proceeding traced funds used for this wire transfer to North Dade's operating company, Almovea Associates LLC. Specifically, the Jury was provided evidence establishing that Almovea Associates LLC wired more than $128,000 (US) in proceeds between April 7 and May 8, 2015, to the Defendant's personal bank account at MB ending 4295 ("MB 4295"), and that MB 4295 subsequently made five (5) different payments, of which $128,373 (US) constituted fraud proceeds, to another of the Defendant's personal bank accounts at MB, which then transferred funds to BOA 3124 that were used in the financial transaction alleged in Count 27. *See* GX 27D, ECF No. 1300-1

### C. Harmony

Similar to the Defendant's money laundering offenses involving Oceanside, Fair Havens and Mercy, the Defendant was found guilty of the money laundering offense charged in Count 20, in which he used Harmony's operating company, Ayintove Associates, LLC, and its bank account, BOA account number ending 0102, to send $28,382 (US) in health care fraud proceeds to Diversified Medical Group, which were then used to fund illegal kickback payments to physicians for patient referrals. *See* 3d Superseding Indictment at 30; GX 6F, ECF No. 1293-16; GX 16, Gov't Ex. List, ECF No. 1293.[6]

### D. Eden Gardens and Flamingo Park

The Jury found the Defendant guilty of the money laundering offense charged in Count 28, which involved the Defendant on December 1, 2014, wiring, or causing to be wired, $18,000 (US) in health care fraud proceeds from Julie Betancourt's BOA account ending 8607 ("BOA 8607") to Jerome Allen's bank account at Citizens Bank ending 1365 ("Citizens 1365") for the benefit of

---

[6] The Government did not electronically file GX 16 in CM/ECF, but instead filed it hard copy with the Clerk of the Court.

the Defendant's son in gaining admission to college. *See* 3d Superseding Indictment, ECF No. 869 at 30; Verdict, ECF No. 1245 at 10.

Additionally, the evidence presented at trial showed that Flamingo Park's bank account at Executive National Bank ("Executive") ending 4783 and Eden Gardens bank account at Executive ending 2118 wired a combined total of more than $18,000 (US) in health care fraud proceeds to BOA 8607 on November 19, 2014, which was then used to fund the payment to Mr. Allen. *See* GX 28B, ECF No. 1300-2.

## CONCLUSION

For the reasons set forth herein, the United States respectfully submits that the Court should affirm its previous ruling denying the Defendant's motion for relief under Fed. R. Crim. P. 29 regarding the Special Verdict supporting criminal forfeiture of the Operating Companies.

        Respectfully submitted,

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY

By:   *s/Daren Grove*
        Daren Grove (Court No. A5501243)
        Assistant United States Attorney
        E-mail: daren.grove@usdoj.gov
        99 NE 4th Street - 7th Floor
        Miami, Florida 33132
        Telephone: (305) 961-9294
        Facsimile:  (305) 536-7599

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 7, 2019, I electronically file the foregoing document with the Clerk of the Court using CM/ECF.

*s/Daren Grove*
_____
Daren Grove
Assistant United States Attorney