UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20549-CR-SCOLA

UNITED STATES OF AMERICA,

    v.

PHILIP ESFORMES, *et al.*,
_____/

**PRELIMINARY OBJECTIONS TO THE PRESENTENCE REPORT**

Defendant Philip Esformes, through undersigned counsel, respectfully submits objections to the presentence investigation report ("PSI" or "Report") and states:

1. <u>Chapter Two Guideline Calculation Objections</u>

Defendant Esformes objects to the statement of bases for guideline application in paragraphs 14 to 118 of the Report describing offense conduct. Notably, the factual allegations from which it is taken—specifically, the August 2016 affidavit of FBI Agent Riley and the allegations of the Indictment—were tested, and in relevant areas unconfirmed, by the trial evidence. The evidence on which the jury based its verdict pertained to general allegations of referral payments to or from the defendant in violation of Medicare requirements. As to the money laundering counts of conviction as well, the conduct at issue revolved around alleged payments for patient referrals. Indeed, the sole alleged basis for the

money laundering testimony of summary witness Petron was his alleged tracing of Medicare and Medicaid proceeds through various bank accounts subsequent to periods in which alleged kickbacks took place. Most importantly, the defendant's case parallels the paradigm set out in *United States v. Medina*, 485 F.3d 1291, 1298 (11th Cir. 2007), in which the evidence and convictions were not founded on proof of any lack of medical necessity or any overbilling, much less any such conduct by defendant Esformes. *See id*. at 1304 ("Indeed, upon our review of the record, there is not sufficient evidence that any of the prescriptions were not medically necessary, or were not delivered to the patients.").

The PSI (paragraph 129) reverts to U.S.S.G. § 2B1.1. Under *Medina*, if § 2B1.1 intended loss concepts were applied to this case, the correct guideline loss calculation would result in no loss enhancement at all. This is because, as the Eleventh Circuit explained in its decision on appeal following the remand in *Medina,* if the government proves kickbacks, but not overbilling, there is no actual or intended loss. *See United States v. Guerra*, 307 Fed.Appx. 283, 285 (11th Cir. 2009) ("We reasoned [in *Medina*] that ... the government had presented no evidence that any of the claims were medically unnecessary or that any of the prescriptions and products were not delivered to the patients in question [and] because the evidence did not show that the claims were illegitimate, it appeared

that Medicare had not suffered any actual or intended loss.") (citing *Medina*, 485 F.3d at 1298–99, 1304).

But according to a more recent Eleventh Circuit case, the relevant applicable kickback guideline is U.S.S.G. § 2B4.1 ("Commercial Bribery and Kickbacks"), under which any "intended loss" is not the relevant factor. Addressing this precise issue, the Eleventh Circuit held in *United States v. Valladare*s, 544 F.3d 1257, 1266 (11th Cir. 2008), that the "Commercial Bribery and Kickbacks" table (§ 2B4.1(b)(1)) is the applicable table for conspiracies to obtain Medicare patient referrals by kickbacks to doctors or health professionals. *See id*. at 1266 (citing *United States v. Starks*, 157 F.3d 833, 841 (11th Cir. 1998)).

In *United States v. Hill*, 745 Fed. Appx. 806, 817 (11th Cir. 2018), the Eleventh Circuit, applying *Valladares*, held that a sentencing court committed plain error in applying an intended loss figure as the basis for increasing a sentence for conspiracy to commit, and commission of, health care kickbacks. *Id.* Applying § 2B4.1(b)(1), the Eleventh Circuit held that intended loss was not the appropriate criteria for health care kickback cases, and instead held that the relevant sentencing calculation was the "net economic benefit" to the defendant from the kickbacks. *Id*. (citing Application Note 2 to § 2B4.1(b)(1)).

With regard to paragraphs 121 to 152 of the Report, the defendant agrees with the separation of groups of counts of conviction for Group One, as to

healthcare matters, and Group Two, as to payments to a college basketball coach,[1] in that the prosecution relating to efforts to obtain college admission for the defendant's son are clearly distinct from the core allegations of a healthcare kickback conspiracy. The defendant also agrees with the guideline calculation for Group Two (paragraphs 136 to 142), with the exception of the two-level multiple bribe enhancement (paragraph 137) in that the series of payments at issue related to the same course of action sought in exchange for the payments promised and conveyed. Further, the defendant agrees with the Report's conclusion in paragraphs 143 to 146 and paragraph 148 that no multiple count adjustment or enhancement is applicable in this case.

Nevertheless, the defendant objects to the offense level calculations in paragraphs 129 to 131 and paragraphs 133, 134, 135, 147, 149, and 152 of the PSI. Those calculations relate principally to the application in this case of the money laundering guideline, U.S.S.G. § 2S1.1, and particularly the interplay between convictions for money laundering and convictions relating to kickbacks.

As the Report notes, in order to determine whether to apply the money laundering guideline, the Court must first determine whether that guideline yields an offense level that is higher than that produced by direct application of the

---

[1] The coach involved was recently sentenced to a 4-year probationary term. *See United States v. Jerome Allen*, S.D. Fla. No. 18-cr-20773-KMW (July 1, 2019).

guideline for the underlying offense conduct to which the laundering offense relates. *See* PSI ¶ 128. And to determine whether the § 2S1.1(a)(1) cross-reference to an underlying offense applies in the money laundering guideline calculation, the first question is whether an accurate calculation of the guidelines for the underlying offense can be calculated without undue speculation. Under U.S.S.G. § 2S1.1(a)(2), no cross-reference to an underlying offense should be made where the guidelines for the underlying offense conduct are not readily subject to calculation. In that circumstance, which the defendant submits applies to this case, § 2S1.1(a)(2) provides for a base offense level of 8, increased by the number of levels corresponding to the *value of the laundered funds*, according to the § 2B1.1(b)(1) table.

Using this baseline § 2S1.1(a)(2) calculation, the offense level in this case would start at base offense level 8. Looking only to the substantive counts of conviction for money laundering, the total amount of funds involved in the transactions was $186,761.[2] That would add ten (10) levels under 2B1.1(b)(1)(F) ("More than $150,000"), assuming the value of the *transacted* funds was equal to the value of the *laundered* funds), yielding an adjusted base offense level of eighteen (18). In *United States v. Paley*, 442 F.3d 1273, 1278 (11th Cir. 2006), the

---

[2] The total amount of laundered monies in the counts for which this Court acquitted defendant, or the jury hung, was a separate $390,000, almost all of which is related to $360,000 payment for a purse as to which this Court entered a judgment of acquittal.

Eleventh Circuit recognized that following a 2001 guideline amendment, the value of laundered funds refers to the value of the criminally-derived funds that were laundered).[3]

Added to that calculation would be a 2-level enhancement for conviction under 18 U.S.C. § 1956, *see* § 2S1.1(b)(2)(B), bringing the offense level to twenty (20). If a two-level enhancement for sophisticated laundering (U.S.S.G. § 2S1.1(b)(3)) were applicable in this context (and the defendant explains below why it is not applicable), the total offense level attributable to the baseline calculation under the money laundering guideline (before any Chapter 3 enhancement) would be no greater than level 22.

If, alternatively, the Court were to find that the guideline calculation for the underlying kickback offense is readily subject to calculation, the defendant submits that the application of the cross-reference would yield no greater resulting

---

[3] And the issue then is whether the trial evidence showing of the defendant's commission of "the underlying offense from which the laundered funds were derived" warrants a specific finding as to the amount of laundered funds *derived from his commission* of such offense. The government never sought to show that all the funds used for payments in this case derived from the defendant's commission of kickback violations. Instead, the government's theory was that *some* of the funds necessarily were attributable to benefits derived from kickbacks. The defendant has previously presented his argument under *United States v. Christo*, 129 F.3d 578, 580 (11th Cir. 1997), that the government failed to prove that any kickback *proceeds* were involved in the kickback payments and that the "monetary transaction ... was separate from and in addition to the underlying [kickback] activity." *Id*. But putting aside that categorical argument, the government made no reliable estimation of the total *percentage* of the funds used for kickback payments that had previously been obtained as a result of the kickback conspiracy.

guideline offense level. Here is how it would work: Using § 2S1.1(a)(1)'s cross-reference to the underlying offense of conviction from which the laundered funds derived would again require that the Court address the appropriate guideline calculations for the non-money laundering counts of conviction, all of which turn on kickback allegations. As to those counts, the Court should apply the guideline most applicable to the offenses of conviction: the kickback guideline and table (U.S.S.G. § 2B4.1(b)(1)), which also starts with a base offense level of eight (8). *See Hill*, 745 Fed. Appx. at 817 (plain error for trial court not to correctly apply § 2B4.1(b)(1) to health care kickback conspiracy and substantive offense convictions; citing *Valladares*).

Rather than attempt to determine loss to Medicare—which as the Eleventh Circuit explained in *Medina*, 485 F.3d at 1304, can be challenging if not infeasible in kickback cases in which the defendant was not found to have engaged in overbilling or providing medically unnecessary care—the Court in applying the kickback guideline determines whether the government has established the net economic benefit of the kickback (just that benefit and no other).

The total amount of alleged kickbacks involved in the substantive kickback offenses of conviction is $73,761 (Counts 8, 9, 10, 11, 12, 13). Neither the PSI, nor the prosecution, has made any effort to date to identify or to calculate a net economic benefit caused by these alleged kickbacks.

It is significant that the jury did ***not*** convict Esformes of a kickback conspiracy, *see* Verdict Form re Count 6, DE:1245:6. Rather, he was convicted of conspiring to "defraud" by interfering with the administration of HHS, which, according to the jury instructions, did not require proof of any ***financial*** injury at all. Thus, the verdict on Count 6 does not constitute an endorsement by the jury of the testimony of the Delgados that they paid Esformes cash kickbacks approximating $3 million; nor is it an endorsement of Baldwin's testimony that the Covandonga and Family Rest leases concealed kickbacks to Esformes.

The § 2B4.1 calculation should proceeds follows: Base offense level 8, plus 6 levels for "[m]ore than $40,000," U.S.S.G. § 2B1.1(b)(1)(D), equals a total offense level of 14 (before consideration of any money-laundering or Chapter 3 enhancements). Added to that calculation would be a 2-level enhancement for conviction under 18 U.S.C. § 1956. *See* § 2S1.1(b)(2)(B), bringing the offense level to 16. If an enhancement for sophisticated laundering (U.S.S.G. § 2S1.1(b)(3)) were applicable in this context (and the defendant explains below why it is not), the total offense level under § 2S1.1(a)(1), before any Chapter 3 enhancement, would be no greater than level 18.

The PSI in this case does not presently account for this issue because it relies on § 2B1.1, rather than § 2B4.1. Thus, the assertion in paragraph 129 of the

Report that the "defendant is accountable for an intended loss of $72,381,555,"[4] is wrong. The Report, at paragraph 129, erroneously characterizes the underlying offense as health care fraud and asserts that using the fraud guideline and a loss of over $72 million yields an offense level of 32 prior to consideration of specific offense characteristics. PSI ¶ 129 ("Because the intended loss was more than $65,000,000 but not more $150,000,000 the offense level is increased by 24 levels, § 2B1.1(b)(1)(M). Because the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, the offense level is increased by two levels, § 2B1.1(b)(10)(C). Therefore, the total base offense level is 32."). But in fact, neither loss nor intended loss is at issue in a guideline kickback computation under § 2B4.1 (and, as noted above, under *Medina* and *Guerra*, would result in no loss enhancement at all).

The government has not offered a formula or calculation consistent with the demands of the plain error reversal in *Hill* to account for a net economic benefit resulting from the kickbacks in this case. And there are several reasons why such a calculation should therefore not exceed the actual amounts of any such kickbacks in this case. First, testimony presented during the trial established that patients treated at the Esformes facilities were in need of the services provided, and there is

---

[4] This loss figure alone accounts for a 24-level increase, which for sentencing purposes, generates decades of additional punishment under the range suggested by the Report.

no indication how much, if any, profit was actually made on patients that were the subject of kickbacks. Second, as discussed below, the amounts billed by the kickback-paying entities resulted in approximately only a 50% payment, and it is unclear whether any bill was fully paid as to any of the patients referred. The speculative nature of the possible benefit from the referred patients makes the net benefit calculation unreliable in this case.

But even if the Court were to accept the testimony of the Delgados regarding cash to Esformes and/or Baldwin's testimony regarding the Covadonga and Family Rest leases to estimate the net benefit of kickbacks paid to Esformes, then the § 2B4.1 calculation proceeds as follows: Base offense level 8, plus 16 levels for "[m]ore than $1.5 million," *see* U.S.S.G. § 2B1.1(b)(1)(I), equals a total offense level of 24 (before consideration of any money-laundering or Chapter 3 enhancements). Added to that calculation would be a 2-level enhancement for conviction under 18 U.S.C. § 1956, *see* § 2S1.1(b)(2)(B), bringing the offense level to 26. If an enhancement for sophisticated laundering (U.S.S.G. § 2S1.1(b)(3)) were applicable in this context (and the defendant explains below why it is not), the total offense level under § 2S1.1(a)(1), before any Chapter 3 enhancement, would be no greater than level 28.

As a result, the calculation in paragraph 129 of the Report cannot be sustained. The applicable cross-reference guideline is § 2B4.1. And prior to

application of Chapter 3 enhancements, the adjusted guideline range is no higher than level 28 if, contrary to the defendant's position, sophisticated laundering by the defendant were shown, and level 26 otherwise.[5] Further, as explained above, under *Medina*, *Guerra*, *Valladares*, and *Hill*, the kickback conduct in this case did not make the defendant responsible under the guidelines for other providers' health care fraud conspiracies of which he was not charged, convicted, or even shown to be aware. Instead, the defendant's relevant conduct for kickback conspiracy relates to the violation of the Medicare prohibition on such referral payments, not any overbilling or failure to provide needed services by other persons.[6] *See Valladares*, 544 F.3d at 1266; *Hill*, 745 Fed. Appx. at 817.

---

[5] The additional Chapter Two enhancement proposed in the PSI likewise is inapplicable. *See* PSI ¶ 129 (imposing enhancements for sophisticated means under § 2B1.1(b)(10)(C)). Under § 2B4.1, no enhancement for sophisticated means applies.

[6] For this reason, as well as due to analytical errors in the document itself, the trial exhibit cited in the Report—GX 6H (Petron accounting exhibit)—does not convey the appropriate calculation of relevant economic benefit or loss arising from specific patients. Indeed, summary witness Petron did not even contend that the patients he selected were linked to any kickbacks or even a direct overlap in time when patients were associated with the defendant's facilities. According to Petron, the claim numbers in GX 6H reflect every patient he "deemed as a[n] Esformes patient" who also had Medicare or Medicaid claims with health care providers that had any billing-related fraud. This is not, on its face, evidence that any patient, prescription, or service was the result of a kickback, much less that it resulted in an intended loss to CMS or a net benefit. The Delgados did not identify specific billings, Medicare/Medicaid claims, or patients connected to kickbacks. The inadequacy of GX 6H to address net economic benefit is apparent. The use of gross billing, for example, is an acknowledgment of a failure to trace improper benefits to actionable conduct by the defendant.

2. <u>Objection to sophisticated laundering enhancement</u>

Defendant objects to paragraph 131 of the Report which attributes to him a sophisticated money laundering enhancement under § 2S1.1(b)(3). First, under the Report's calculation (which uses § 2B1.1, rather than § 2B4.1), a sophisticated laundering enhancement is inapplicable for the reasons explained in U.S.S.G. § 2S1.1, comment. (n. 5(B)): "Non-Applicability of Enhancement.—If subsection (b)(3) applies, and the conduct that forms the basis for an enhancement under the guideline applicable to the underlying offense is the only conduct that forms the basis for application of subsection (b)(3) of this guideline, do not apply subsection (b)(3) of this guideline." The government, which in this case, charged the *same* transactions as both kickbacks and money laundering, does not appear to contest that the kickback/bribe conduct is the money laundering conduct.[7]

Second, and most importantly, given that the governing guideline for the underlying conduct is § 2B4.1 (which contains no sophisticated means

---

[7] U.S.S.G. § 2B1.1, comment. (n. 9(B)), explains the sophisticated means enhancement under § 2B1.1(B)(10(C):

> Sophisticated Means Enhancement under Subsection (b)(10)(C).—For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution *or concealment* of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

*Id*. (emphasis added).

enhancement), any laundering conduct of which this defendant was convicted was either not in itself sophisticated and not even well concealed or otherwise not intended or directed by the defendant to be conducted in a sophisticated manner, as the evidentiary presentation by the government made clear at trial. In fact, of the nine money laundering counts of conviction, five related to personal expenditures. And significantly, no such enhancement was applied as to defendants Carmouze and the Delgados.

3.  <u>Objection to 4-level role-in-the-offense enhancement</u>

With regard to the enhancement for role in the offense, *see* PSI ¶ 133, the defendant objects on two grounds. First, to the extent that the PSI relies on the theory of an organizer role of five persons involved in the underlying kickback offense, the Eleventh Circuit's holding in *United States v. Salgado*, 745 F.3d 1135, 1138 (11th Cir. 2014), bars the enhancement on that ground. Under *Salgado*, the relevant conduct for a role enhancement under the money laundering guideline is whether the defendant was an organizer or leader of the laundering violations, not the offense that produced the laundered proceeds. *See id*. ("When the district court calculated Salgado's offense level under § 2S1.1(a)(1), it could base a role enhancement on his conduct in the money laundering conspiracy but not on his conduct in the underlying drug conspiracy."). Thus, only the criminal participants

in the laundering conduct itself are factored in for purposes of determining a role enhancement.

In this case, the evidence repeatedly showed that the Delgados took the leadership role in concealment and use of purported shell entities. As Petron acknowledged at trial, the tracing of transactions engaged in by the defendant—the subject matter of his money laundering convictions—left only marginal concealment problems at most for the investigating agents and did not successfully produce a sophisticated launder of any sort. In this case, the evidence showed a combination of players in the kickback scheme but reflected no showing that the Defendant organized any effort at concealment, as opposed to engaging in group conduct.

4.  <u>Objection to § 3C1.1 enhancement</u>

In paragraph 134, the Report recommends a two-level enhancement for conduct pertaining to the criminal case of Gabriel Delgado, who was himself involved in multiple episodes of obstruction. Insofar as the government successfully argued to the Delgado sentencing judge that an obstruction enhancement should not apply, the defendant objects to application of the enhancement in this case.

## Conclusion

Depending upon the court's resolution of these preliminary objections to the proposed guideline computations, Defendant may have additional objections, including as to the Chapter 3 grouping analysis.

Respectfully submitted,

**BLACK, SREBNICK, KORNSPAN
 & STUMPF, P.A.**
201 South Biscayne Boulevard, Suite 1300
Miami, FL  33131
Tel: (305) 371-6421

By:   */s/ Howard Srebnick*
    **HOWARD SREBNICK, ESQ**.
     Fla. Bar No. 919063
     HSrebnick@RoyBlack.com