UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20549-CR-SCOLA/Otazo-Reyes (s)(s)(s)

UNITED STATES OF AMERICA

vs.

PHILIP ESFORMES,

     Defendant.

_____/

## GOVERNMENT'S RESPONSE TO ESFORMES' PRELIMINARY OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

The United States of America respectfully responds to Defendant Philip Esformes' Preliminary Objections to the Presentence Investigation Report ("PSR"), in advance of the hearing scheduled for August 12, 2019. DE1355.

It is axiomatic that defendants like Esformes should be held accountable for the most serious offense conduct supported by the record, as determined by a preponderance of the evidence. Therefore, the Government believes Probation has correctly applied the Sentencing Guidelines ("U.S.S.G." or "Guidelines") for Esformes' money laundering conviction by calculating his loss amount and offense levels pursuant Section 2B1.1 because the most serious underlying offense is health care fraud. DE1335 at ¶ 29. Esformes incorrectly claims that his laundering of kickback proceeds should guide the Court's guideline analysis under Section 2B4.1. This claim is directly contrary to the express language in the Guidelines, as well as Eleventh Circuit law. Moreover, his objections to the PSR ignore: the role he played as the leader and organizer of this massive fraud; the sophisticated cover-up that allowed his criminal enterprise to go undetected for nearly a decade; and his role in obstructing justice (for which he was convicted by the jury). For the reasons set forth below, this Court should reject each of Esformes' objections to the PSR.

## **ARGUMENT**

I.     **Esformes' Guidelines Range Should Be Calculated Pursuant to Section 2B1.1 Based Upon His Conviction for Conspiracy to Launder the Proceeds of Health Care Fraud.**

In the PSR, Probation determined that Esformes' most serious (or highest) offense was conspiracy to launder the proceeds of health care fraud.  Probation therefore applied the Guideline for that offense in calculating Esformes' advisory Guidelines range.  DE1335 at ¶ 129 (citing U.S.S.G. §§ 2S1.1(a)(1) and 2B1.1)).  In contrast, Esformes contends that his numerous convictions for money laundering and conspiracy to commit money laundering were based on the underlying offense of receipt of health care kickbacks.  His position is contradicted by the jury's verdict and the express language set forth in the commentary to the Guidelines.

A.     **Esformes' Conviction for Conspiracy to Launder the Proceeds of Health Care Fraud Is the Most Serious Offense.**

1.     **Legal Standard**

Where a defendant has been convicted of multiple counts, the district court must group together all counts involving substantially the same harm. U.S.S.G. § 3D1.2(b). The applicable offense level for groups of closely related counts is the "highest offense level of the counts in the Group." U.S.S.G. § 3D1.3(a); *United States v. Cabrera*, 635 F. App'x 801, 805 (11th Cir. 2015).

2.     **Application of Grouping Rules to Esformes' Counts of Conviction**

The PSR correctly calculated Esformes' Guidelines range by grouping together all closely-related counts, as required by U.S.S.G. § 3D1.2.  The PSR grouped all the fraud and kickback counts with all the money laundering counts because Esformes' money laundering convictions all involved illicit funds derived from Esformes' unlawful scheme to commit health care fraud and pay and receive health care kickbacks.  The PSR then calculated the most serious offense level associated with those convictions and determined that it was the offense level resulting from the

laundering of the proceeds of health care fraud (DE1335 at ¶129). As explained further below, Probation's conclusion is correct, as the laundering of the proceeds of health care fraud produces the highest offense level among the group of closely-related counts.

Esformes argues that his Guidelines range should be calculated either based upon the value of the laundered funds, or by using an underlying offense of kickbacks—not health care fraud—because those Guidelines are, in his words, "most applicable to the offenses of conviction." DE1355:7. But that is not the standard. Esformes cannot choose a different set of Guidelines because they result in a lower sentence or comport with his view of the trial. His proposed methodologies are unsupported by law and the Guidelines, which require the Court to apply the highest offense level in the Group. The Guidelines for laundering the proceeds of kickbacks are not the highest offense level in the group, and therefore should not be used to calculate Esformes' sentence pursuant to the grouping rules in U.S.S.G. § 3D1.2.

### B. The Evidence Introduced at Trial Established that Esformes Led a Conspiracy to Launder the Proceeds of Health Care Fraud

#### 1. Legal Standard

Under the Guidelines, in determining the appropriate offense level, a court must employ a two-step process. *United States v. Saavedra*, 148 F.3d 1311, 1314 (11th Cir. 1998). The court must first determine the applicable Guidelines section based on "the offense of conviction." *Id.*; U.S.S.G. § 1B1.2(a). The Guidelines specify that the "offense of conviction" is "the offense conduct charged in the count of the indictment . . . of which the defendant was convicted." U.S.S.G. § 1B1.2(a). Once the correct Guidelines provision has been identified, the sentencing court must then select the appropriate base offense level from among those specified within that guideline. *Saavedra*, 148 F.3d at 1314-15; U.S.S.G. §§ 1B1.2(b), 1B1.3.

Money laundering offenses are covered by Section 2S1.1 of the Guidelines, which provides two different methods for calculating the base offense level.  Under U.S.S.G. §2S1.1(a)(1), the base offense level for the money laundering charge is the same as the base offense level for the underlying offense from which the laundered funds were derived if "(a) the defendant committed the underlying offense (or would be accountable for the underlying offense under [principles of relevant conduct] ); and (b) the offense level for that offense can be determined."  Under this method, a defendant who launders the proceeds of his crimes, and is only convicted of money laundering, can face punishment equivalent to the underlying criminal activity. *See United States v. Descent*, 292 F.3d 703, 708–09 (11th Cir. 2002) (per curiam) (explaining that the change in the Guidelines to make reference to the underlying offense was an effort to have the sentence better reflect the culpability of the defendant).[1]

At sentencing, the Government's burden of proving the elements of subsection (a)(1) is low:  simply a preponderance of the evidence.  *See United States v. White*, 663 F.3d 1207, 1216 (11th Cir. 2011).  Specifically, Section 2S1.1(a)(1) may apply to a money laundering conviction even if the defendant was not convicted of the underlying offense, either because the jury could not reach a verdict or because the jury acquitted the defendant of the underlying offense.[2]  *See United States v. Armstrong*, 165 F. App'x 768, 771 (11th Cir. 2006) (the district court properly

---

[1]  Prior to 2001, Section 2S1.1 set the base offense level for all money laundering convictions according to the amount of funds laundered, regardless of the culpability of the offender. *See* U.S.S.G. § 2S1.1 (2000). It was amended to its current form in 2001.  The amended Guideline is intended to account for the culpability of the offender by "[tying] offense levels for money laundering more closely to the underlying conduct that was the source of the criminally derived funds." U.S.S.G. App. C, Amend. 634, at 234 (2001); *see also United States v. Blackmon*, 557 F.3d 113, 119 (3d Cir. 2009) ("Not surprisingly, a defendant sentenced under subsection (a)(1) often gets a higher sentence than a less culpable offender sentenced under subsection (a)(2).").

[2]  Esformes argues that Section 2S1.1(a)'s cross reference is to the "underlying offense of conviction" (DE 1355:7), but this is incorrect; the cross reference, on its terms, is only to the "underlying offense from which the laundered funds were derived."  U.S.S.G. § 2S1.1(a)(1)(emphasis added).

applied U.S.S.G. § 2S1.1(a)(1) for defendant's money laundering conspiracy conviction where jury could not reach a verdict on defendant's involvement in underlying drug offense by "relying only on facts the government had proven by a preponderance of the evidence").[3]

### 2.    Application of U.S.S.G. §§ 2S1.1(a)(1) and 2B1.1 to Esformes

There is ample evidence to establish beyond a reasonable doubt—not merely by a preponderance—that Esformes committed the underlying offense of health care fraud, and that accordingly his Guidelines should be based on Sections 2S1.1(a)(1) and 2B1.1.  Esformes was convicted of conspiracy to commit money laundering (Count 16) and nine substantive money laundering counts (Counts 18-21, 25-28, and 30).  Although the verdict form did not require the jury to indicate which specified unlawful activity ("SUA") formed the basis for the conspiracy count, for each of the substantive money laundering charges for which Esformes was convicted, the jury consistently indicated that the laundered funds were the product of the SUA of:  1) health care fraud; and 2) conspiracy to commit health care fraud and wire fraud.  DE1245: Counts 18-21, 25-28, and 30.  In addition to these two SUA's, the jury also found an underlying SUA of receipt of kickbacks.  *Id*. at Counts 19-21, 25-26.

Therefore, the jury concluded beyond a reasonable doubt that Esformes laundered proceeds of his health care fraud scheme, especially given that the transactions in the substantive counts were part of the money laundering conspiracy.   Beyond the verdict, the trial record contains evidence to allow this Court to conclude well beyond a preponderance of the evidence that Esformes committed health care fraud, or would be accountable under the principles of relevant

---

[3] *See also United States v. Mata*, 409 F. App'x 740, 742-43 (5th Cir. Jan. 27, 2011) (district court properly applied USSG §§ 2S1.1(a)(1) and 2D1.1, even though defendant was acquitted of drug conspiracy that was the source of the laundered funds).

conduct, as detailed in the Government's Opposition to Esformes' Rule 29 Motion, and its Objection to the PSR.  DE1340, 1354.

Furthermore, the Eleventh Circuit has conclusively held that the jury's failure to reach a verdict on Count 1 (Conspiracy to Commit Health Care Fraud and Wire Fraud) has no bearing on whether Esformes committed the underlying offense of health care fraud by a preponderance of the evidence for the purposes of calculating his Guidelines range on the money laundering convictions.  *Armstrong*, 165 F. App'x at 771.  Indeed, this would be true even if Esformes were acquitted of the underlying offense.  *Mata*, 409 F. App'x at 742-43.  Moreover, the jury repeatedly chose health fraud as the SUA for the substantive money laundering counts; there can be no argument that the jury's selection of this SUA was undercut by a hung verdict on the health care fraud conspiracy, as it is a different charge with different elements.  This Court should find, based on the jury's verdict and trial evidence, that Esformes committed the underlying offense of health care fraud and, therefore, the Guidelines associated with that crime should be used to calculate his Guidelines range under section 2S1.1(a)(1).[4]

## II.   U.S.S.G. § 2S1.1(a)(2) Does Not Apply to Esformes.

Esformes insists that his base offense level should be governed by Section 2S1.1(a)(2), which focuses on the value of the laundered funds.  He is wrong.  Section 2S1.1 provides that the base offense level should be calculated according to the offense level for the underlying offense "if that offense level can be determined" or, otherwise, the value of the laundered funds.  The commentary to this Guideline provides that the second alternative applies to any case in which

---

[4]  Esformes' reliance on *United States v. Medina*, 485 F.3d 1291, 1298 (11th Cir. 2007), *United States v. Hill*, 745 F. App'x 806, 816-17 (11th Cir. 2018), and *United States v. Guerra*, 307 F. App'x 283, 285-87 (11th Cir. 2009) is misplaced.  These were cases where the government relied primarily on evidence of kickbacks to prove health care fraud. In this case, voluminous evidence was presented at trial that services were not medically necessary and/or not provided, and that Esformes knew it.

"the offense level for the underlying offense is impossible or impracticable to determine." U.S.S.G. § 2S1.1, cmt. n. 3(A). This Guideline has no applicability here because, as outlined in the Government's Objection to the PSR, the offense level for health care fraud, including the requisite loss amount, can be determined. DE1354.

In fact, given the extent and nature of Esformes' laundering activities, it is arguably *more* difficult to determine the value of the laundered funds. Esformes asserts that he should only be held accountable for $186,761, which is the amount of illegal proceeds traced to his criminal conduct in the substantive money laundering convictions. But in cases where the Guidelines are based on the value of the laundered funds, the court must consider the entire value of the funds involved in the convicted transactions, including a conspiracy conviction, not just the portion of funds that are illegitimate. *See United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1355 (D.C. Cir. 2002) (defendant was not entitled to have the district court consider "only some portion of that amount based on the proportion of illegitimate funds in [her company] account in calculating the value of the laundered funds for under § 2S1.1(b)(2) of the Guidelines" because "Section 2S1.1 measures the harm to society that the money laundering causes to law enforcement's efforts to detect the use and production of ill-gotten gains") (internal citations omitted).[5]

Here, Esformes was convicted of conspiring to commit money laundering between 2002 and 2016. The entire amount of the laundered funds must be determined, including the commingled funds. This amount was considerable, as would be the effort the Court would have to undertake to quantify the amount of laundered funds, given that the Government's investigation into Esformes' money laundering required the review of over 400 bank accounts with over $1

---

[5] *See also United States v. Owens*, 159 F.3d 221, 229 (6th Cir. 1998) (because financial transaction involving commingled funds is a money laundering offense, the commingled funds are included in the amount laundered for sentencing purposes); *see also United States v. Baker*, 227 F.3d 955, 970 (7th Cir. 2000) (same).

billion in checks.  Tr. 3/11/19 at 159.    This practical difficulty also counsels against using the amount of the laundered funds to calculate Esformes' base offense level.

III.    **Esformes Incorrectly Calculated the Value of the Benefit Conferred Under the Guideline Associated with Health Care Kickbacks.**

Esformes' alternate argument, that his Guidelines range should be calculated based on U.S.S.G. § 2B4.1, the Guideline attributable to the underlying offense of receipt of health care kickbacks, fares no better.  As explained above, the use of this Guideline is inappropriate because the underlying offense of health care fraud results in a higher offense level.  But even were the Court to apply U.S.S.G. § 2B4.1 based upon the underlying offense for receipt of health care kickbacks, Esformes' calculation of the offense level under that Guideline significantly underestimates the value of the benefit to be received from the kickbacks.  When the correct amount is used to calculate an offense level under U.S.S.G. § 2B4.1, Esformes' Guidelines range is not meaningfully different that one calculated pursuant to U.S.S.G. § 2B1.1.[6]

A.    **Legal Standard**

For kickback convictions, U.S.S.G. § 2B4.1 requires the Court to determine the "value of the bribe [or] kickback" and the value of "the improper benefit to be conferred [in exchange for the kickback]."  U.S.S.G. § 2B4.1(b)(1).    The Court must then take the greater of those two

---

[6] Calculating Esformes' Guidelines with an underlying offense of kickbacks may also implicate Esformes' previously-asserted challenge to constitutionality of the Affordable Care Act ("ACA").  ACA made limited changes to criminal enforcement of health care fraud, including redefining the term "federal health care offense" set forth in 18 U.S.C. § 24 to include violations of the Anti-Kickback Statute ("AKS").  That change, in turn, made violations of the AKS a form of specified unlawful activity for the offense of money laundering.  As the Government previously explained, any argument based upon the enforceability of the criminal provisions of the ACA is unavailable to Esformes because his convictions all stem from conduct that occurred long before January 1, 2019.  Nevertheless, any uncertainty as to the availability of a violation of the AKS as a form of specified unlawful activity further counsels in favor of the use of the Guideline applicable to health care fraud to calculate Esformes' advisory Guidelines range.  Indeed, the statutory definition of "federal health care offense" included the offense of health care fraud long before the ACA was passed, and therefore any challenge to the enforceability of the ACA does not implicate the validity of health care fraud as an SUA for Esformes' money laundering convictions.

numbers and refer to the table in Section 2B1.1(b)(1), and increase the offense level by the number of levels that correspond to that amount.  The Eleventh Circuit has settled the issue of what constitutes the "value of the improper benefit to be conferred" where a defendant is convicted of paying or receiving kickbacks: the value of the payments received from the federal health care benefit program that resulted from the kickbacks.  *See United States v. Terrero*, 571 F. App'x 778, 781 (11th Cir. 2014) (holding the "improper benefit" conferred in a Medicare kickback case is "the value of the Medicare payments used by Superstar to treat patients").  As the Eleventh Circuit explained, "[t]he impropriety comes from the illegitimacy of the means by which the payments were procured: a kickback."  *Id.*  The Eleventh Circuit has interpreted the Guidelines to require that direct costs are to be deducted from these improper payments to calculate the loss amount, but that the defendant bears the burden of establishing that such an offset is warranted.[7]

### B.    Application of U.S.S.G. §§ 2S1.1(a)(1) and 2B4.1 to Esformes

Esformes argues that his Guidelines range for the money laundering convictions should be calculated using an underlying offense of kickbacks because the money laundering counts of conviction "revolved around alleged payments for patient referrals."  DE1355:1.  As explained above, Esformes' argument ignores the fact that the jury concluded that Esformes laundered the proceeds of the health care fraud scheme.  But even if the Court were accept Esformes' argument

---

[7] Application Note 2 in the commentary to U.S.S.G § 2B4.1 explains that the "value of the improper benefit to be conferred" refers to the "value of the action to be taken or effected in return for the bribe." U.S.S.G § 2B4.1 cmt. n.2. This commentary cross references U.S.S.G. § 2C1.1, which states that the value of the improper benefit to be conferred is limited to the "net value of such benefit." U.S.S.G. § 2C1.1, cmt. n.3. Courts have concluded from this commentary that "the very use of the adjective 'net' before 'value' implies that some costs should be deducted" from the gross receipts received as a result of an unlawful bribe. *United States v. Landers*, 68 F.3d 882, 884 (5th Cir. 1995); *see also United States v. DeVegter*, 439 F.3d 1299, 1304 (11th Cir. 2006) ("We agree with the Fifth Circuit's approach [in *Landers*] which subtracts direct costs, but not indirect costs, from profits to determine the net improper benefit."); *see also id.* at 1305 ("[T]he defendants[ ] have the burden of proving what direct costs should be subtracted in determining the net improper benefit, and they have not satisfied this burden . . . .")

that Section 2B4.1 should be used as the correct Guideline for the "underlying offense," Esformes

still calculates the underlying offense level for kickbacks incorrectly.[8]

For example, Esformes claims that he should only be held responsible for the value of the

cash bribes and inflated lease payments he received from the Delgado Brothers and Nelson Salazar,

which total roughly $3.4 million.   However, the amount paid out by Medicare and Medicaid on

the submitted claims that resulted from these improper payments far exceeds the value of the

kickbacks, and therefore, under the express terms of U.S.S.G. § 2B4.1, that "improper benefit

conferred" figure must be used to calculate Esformes' offense level. *See Terrero*, 571 F. App'x at

781.   Moreover, even if Esformes could prove that he is entitled to an offset for direct costs, the

improper benefit conferred on Esformes and the other corrupt providers who billed Medicare and

Medicaid for patients procured through kickbacks is significant and would result in a Guidelines

range similar to the PSR's recommendation.   For example, during the time that his Skilled Nursing

Facilities ("SNFs") received these payments, Esformes' facilities submitted yearly "cost reports"

---

[8] There is a strong argument that this case calls for the use of U.S.S.G. § 2B1.1, and not U.S.S.G. § 2B4.1, to calculate Esformes' Guidelines range for the kickback scheme.  The Statutory Index to the Guidelines lists both U.S.S.G. § 2B1.1 and U.S.S.G. § 2B4.1 as the Guidelines applicable to violations of the AKS. U.S.S.G. App. A.  When two guidelines are referred to in the Statutory Index, the district court is required to use the guideline section most appropriate for the offense conduct charged in the count of conviction. *See, e.g.*, *United States v. Davidson*, 360 F.3d 1374, 1377 (11th Cir. 2004).  Esformes' claims that *United States v. Vallardes*, 544 F.3d 1257 (11th Cir. 2008), established a rule that conspiracies to obtain Medicare patients through kickbacks must be decided under Section 2B4.1.   But *Vallardes* held only that it is permissible for a district court, in its discretion, to use Section 2B4.1 in a kickback case, particularly in a case that involved fraud achieved through bribery and not "straight fraud."   *Id.* at 1266.  This case is different; evidence of health care fraud was presented throughout trial.  In such a case it is more appropriate to apply U.S.S.G. § 2B1.1 to calculate the advisory Guidelines range for a violation of the AKS.  *See United States v. Edet*, No. 08-10287, 2009 WL 552123544 at *2 (5th Cir. 2009) (per curiam) (concluding that U.S.S.G. § 2B1.1 "was the more appropriate guideline for [the] substantive offense of payment of illegal remuneration" when the kickback payments were part of "a larger scheme to commit health care fraud by soliciting Medicare beneficiaries, obtaining . . . power wheelchairs for the beneficiaries, and fraudulently billing Medicare for the . . . power wheelchairs").  Nevertheless, even assuming that U.S.S.G. § 2B4.1 is the proper Guideline to apply for the underlying kickback offense, as explained above, Esformes' application of this Guideline is flawed and should be rejected by the Court.

to Medicare documenting their direct costs.[9]  An analysis of these cost reports for the SNFs reveal

that—even by his own unverified admissions to Medicare—Esformes extracted an extraordinary

amount of profit from the SNFs after direct costs were deducted (ranging from 25 to 51 percent).

Applying the yearly profit margin from the cost reports to the payments made by Medicare and

Medicaid to the Esformes SNFs for that same year, results in the following quantification of the

improper benefit conferred as a result of Esformes' extensive kickback conspiracy:

| Providers | Conduct | Payments | Profit | Evidence |
|---|---|---|---|---|
| Esformes SNFs and ALFs – Scenario 1 | **Post-Certification Payments** | **$207,474,897** | **$66,599,879** | GX1CO |
| Esformes SNFs and ALFs – Scenario 2 | **Payments for Referrals by Kickback Physicians** | **$66,618,772** | **$24,386,507** | GX529O |
| Ancillary Providers | **Ancillary Provider Payments** | **$35,354,811** | **$35,354,811[10]** | GX6H |

## IV.   Esformes' Conviction for Conspiring to Defraud the United States Produces a Guidelines Range Similar to that Applicable to the Money Laundering Offenses.

Adopting Esformes' incorrect assessment of the nature of the underlying offense applicable

to the money laundering conviction would not significantly change the ultimate Guidelines.  If the

Court were to adopt Esformes' proposed (incorrect) money laundering guidelines calculation, then

his conviction on Count 6 for conspiracy to defraud the United States would yield the highest

advisory Guidelines range.

### A.   Legal Standard

U.S.S.G. Section 2C1.1 applies to a conviction for conspiracy to defraud the United States

under 18 U.S.C. § 371.  *See United States v. Trent*, 306 F. App'x 482, 490 (11th Cir. 2009) ("The

---

[9] Medicaid does not require similar cost reports for the Assisted Living Facilities ("ALFs").

[10] The Ancillary Providers were not owned by Esformes, and often times did not submit cost reports. Esformes would be hard pressed to argue that he should receive credit for the direct costs of the Ancillary Providers, however, given that a number of them pled guilty and admitted they engaged in wholesale fraud. *United States v. Morales*, 12-CR-20644-LENARD; *United States v. Butler*, 15-CR-20438-BLOOM.

district court did not err in sentencing Trent under Section 2C1.1 [for Trent's conviction of conspiracy to defraud by interference with governmental functions] because that guideline specifically covered her offense conduct under § 371."). However, where the count of conviction "was committed for the purpose of facilitating the commission of another criminal offense," section 2C1.1 directs a court to apply the sentencing Guideline applicable to that other offense. *See* U.S.S.G. § 2C1.1(c)(1)*; see also United States v. Clark*, 989 F.2d 447, 448–49 (11th Cir. 1993).

### B.   Application of U.S.S.G. § 2C1.1 to Esformes

Under any application of U.S.S.G. § 2C1.1, Esformes' Guideline calculation for his conviction to defraud the United States is in line with his Guideline calculation for laundering the proceeds of health care fraud. As noted above, if the conspiracy to impair governmental functions facilitated the commission of another offense, as here—health care fraud—section 2C1.1(c)(1)'s cross reference to the Guideline applicable to that offense would result in an advisory Guidelines range calculated under U.S.S.G. § 2B1.1. There was ample evidence to show that Esformes bribed an Agency for Health Care Administration ("AHCA") employee, and lied on his Medicare and Medicaid applications about paying or receiving kickbacks, to make the health care fraud possible. As a result, the cross reference in Section 2C1.1(c)(1) directs that the Guidelines for health care fraud apply. Under the Guideline applicable to a straight violation of health care fraud (without its incorporation into the money laundering Guideline), Esformes would still face a life sentence, including additional enhancements that did not apply to him under the money laundering Guideline. *See* U.S.S.G. § 3A1.1(b)(1),(2) (vulnerable victims).

But even if the cross reference set forth in Section 2C1.1(c)(1) was not applicable here, Esformes' advisory Guidelines range would remain the same. The total offense level under

Section 2C1.1 is the number of offense levels associated with the greatest of: "the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense." Here, the largest figure is the loss to the government from the offense. Indeed, even a conservative estimate of the loss that resulted from Esformes' repeated and widespread interference with the proper administration of Medicare and Medicaid can easily be quantified. For example, the amount of money that Esformes' SNFs and ALFs were paid by Medicare and Medicaid after Esformes falsely certified that he would comply with all applicable rules and regulations and not pay and receive unlawful kickbacks is **$207,474,897**. The evidence at trial made clear Medicaid and Medicare would not have paid Esformes if he was honest in those certifications. Even if the Court were to remove direct costs from this amount based on Esformes' own cost reports, that amount would still be **$66,599,879**.

Similarly, Esformes' bribery of an AHCA employee to tip him off about nursing home inspections designed to ensure his compliance with Medicare and Medicaid rules and regulations, conduct clearly supported by the jury's verdict, was a blatant interference with the administration of those programs, resulting in a loss to the Government which can be quantified under Section 2C1.1. Esformes could not bill Medicare and Medicaid without obtaining a license from AHCA and passing his yearly inspections. *See* Tr. 3/7/19 at 75; *see also* Tr. 2/22/19 at 125. Esformes passed these inspections by removing patients with psychiatric issues from his facilities and instructing his employees to fix the patient files before the AHCA inspectors showed up. Based on this evidence, absent the AHCA bribery, the Esformes Network could have been terminated andvlost is ability to bill. Indeed, once AHCA terminates a provider's license, AHCA also terminates other related providers with the same owners. In total, Esformes was paid

**$488,301,570** after he started bribing the AHCA employee and profited **$167,086,423** after removing the direct costs on the cost reports.  As a result, Esformes' conviction in Count 6 would result in a higher offense level than his proposed Guidelines for the money laundering conviction.

**V.     Esformes' Challenges to the Other Enhancements Should Be Rejected.**

**A.     Both the Sophisticated Means and Sophisticated Money Laundering Enhancements Apply to Esformes.**

Esformes argues that Probation engaged in impermissible double counting when it applied a two-level enhancement because the fraud involved sophisticated means, and another two-level enhancement because the money laundering was also sophisticated.  DE1355:12.  That argument misconceives the separate natures of the harm addressed by each enhancement, and has already been rejected by the Eleventh Circuit.

**1.     Legal Standard**

The sophisticated means enhancement in Section 2B1.1(b)(10)(C) is directed at the fraud itself and applies when the fraudulent scheme, in its totality, is especially complex or intricate.  *See* U.S.S.G. § 2B1.1, cmt. 9(B); *United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011).  Examples of sophisticated means include:  "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts."    U.S.S.G. § 2B1.1, cmt. 9(B); *see also United States v. Calimano*, 752 F. App'x 873, 876 (11th Cir. 2018) (upholding the application of sophisticated means where defendant concealed his role in certain companies and directed the falsification of medical records).

In contrast, the sophisticated laundering enhancement in Section 2S1.1(b)(3) covers the harm created from laundering the proceeds of the fraud.  *See* U.S.S.G. §2S1.1, cmt. 5(A).  Sophisticated laundering typically includes:  "fictitious entities; shell corporations; two or more

levels (i.e. layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate." *Id.*

The Eleventh Circuit upheld the application of both these enhancements to Mary Valera, Esformes' co-conspirator, who ran a fraudulent partial hospitalization program ("PHP") called American Therapeutic Corporation ("ATC"). *See United States v. Duran*, 620 F. App'x 687 (11th Cir. 2013); *see also United States v. Cabrera*, 635 F. App'x 801, 808 (11th Cir. 2015). Valera used a company called Medlink Professional Management Group (Medlink) as a vehicle to launder Medicare funds into cash for kickbacks and personal monetary gain. *Duran*, 620 F. App'x at 689. The Eleventh Circuit rejected Valera's claim the enhancement for sophisticated laundering was duplicative of the enhancement for sophisticated means, given that she "used shell corporations and sham transactions to transfer the funds involved" both in the "laundering of proceeds of the fraud" and "more globally [in the] fraudulent scheme itself." *Id*. at 692. The scale and relative sophistication of Esformes' conduct dwarfed Valera's; if each of these sophisticated means enhancements applied to Valera, they certainly apply to Esformes.

## 2.     Application of U.S.S.G. § 2B1.1(b)(10)(C) to Esformes

First, with respect to the sophisticated means enhancement, Esformes "hid transactions," by trying to make his kickbacks from the corrupt medical providers look like paychecks to the Delgado Brothers or Nelson Salazar. For example, as Nelson Salazar explained, ATC paid Esformes' kickbacks by giving Salazar a sham salary from an ATC shell company called Medlink. Tr. 2/15/19 at 186-189, 210-211. Esformes similarly accepted kickbacks from an army of corrupt providers in the form of sham paychecks to the Delgado Brothers. GX529O; Tr 2/20/19 at 90-91. Second, Esformes similarly hid the way he received his cut of the kickbacks by, for example, having the Delgado Brothers use the kickbacks to pay third parties for Esformes' benefit—

including to a basketball coach to cover basketball lessons for his son and to female companions. Third, Esformes bribed an AHCA employee and was recorded instructing his employees to fix the patient files and remove problematic patients before the AHCA inspectors showed up. *Calimano*, 752 F. App'x at 876.  Esformes employed sophisticated means at every level in his scheme.

### 3.    Application of U.S.S.G. § 2S1.1(b)(3) to Esformes

Esformes also laundered his proceeds from the scheme in a variety of sophisticated ways. First, as the Court previously found in denying Esformes' Motion for Judgment of Acquittal, Esformes used "fictitious entities" to make his transfers of laundered funds appear legitimate. DE1353:3 ("Esformes' operating companies gave his business a façade of legitimacy as he used them to hold bank accounts and operate the various SNFs and ALFs engaged in the elaborate money laundering and kickback scheme.").  Second, Esformes "layered" transactions by sweeping proceeds through multiple bank accounts of other co-conspirators, such as Nursing Home Administrator 1, before the money hit his accounts.    GX1011A.  Esformes also layered transactions by moving the proceeds of his crimes through multiple business accounts and multiple personal accounts.  GX27.  Third, Esformes used a bank account in the name of a "shell corporation" (Mahair Investments) with someone else's name on the bank account to buy a Ferrari with fraud proceeds.  *Id.*  This conduct is textbook sophisticated money laundering and distinct from the sophistication with which Esformes effectuated the underlying fraud scheme.

### B.    Esformes Was the Leader and Organizer of the Money Laundering Conspiracy.

#### 1.    Legal Standard

Section 3B1.1(a) directs a four-level upward adjustment "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  Section 3B1.1(b) provides for a three-level upward adjustment "[i]f the defendant

a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." *See also United States v. Salgado*, 745 F.3d 1135, 1138 (11th Cir. 2014) (when sentencing the defendant under § 2S1.1, role in the offense adjustments are based on the role in the money laundering offense, not the underlying crime).

### 2.     Application of U.S.S.G. § 3B1.1(a) to Esformes

The evidence at trial indisputably established that Esformes was in charge of every aspect of the money laundering scheme. Among the co-conspirators who laundered money for Esformes were: the Delgado Brothers, Nelson Salazar, Odette Barcha, Nursing Home Administrator 1, and the corrupt providers like Jose Carlos Morales who funneled kickbacks to Esformes by paying the Delgado Brothers as sham employees. These individuals helped hide Esformes' illicit profits, including by arranging his limousine travel and hotel reservations. They brokered access to his patients for ancillary providers. When Esformes told them to cut off one provider and find another, they did as he ordered. Days of testimony left no doubt of the complexity of the money laundering scheme in this case—and the fact that the defendant was behind it all.

### C.     The Obstruction Enhancement Applies to Esformes.

### 1.     Legal Standard

To obtain a two-level enhancement for obstruction of justice at sentencing, the burden is on the Government to show by a preponderance of the evidence that "the defendant willfully obstructed . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." *See* U.S.S.G. § 3C1.1. The Application Notes provides a non-exhaustive list of examples of covered conduct to which the adjustment applies, including: "unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1. cmt. n. 4(A); *see also United States v. Hobbs*, 619 F.

App'x 843, 845–46 (11th Cir. 2015) (finding the Government showed by a preponderance of the evidence that the defendant obstructed justice by trying to convince his girlfriend to alter her trial testimony, even though the defendant was acquitted of the witness tampering charge for the same conduct by the jury).   The Application Notes further provide that the adjustment applies to "other conduct prohibited by obstruction of justice provisions under Title 18, United States Code."). U.S.S.G. § 3C1.1. cmt. n. 4(I).

### 2.    Application of U.S.S.G. § 3C1.1 to Esformes

Esformes' conduct and conviction for violating 18 U.S.C. § 1503 are specifically contemplated by the Guidelines as a basis for the obstruction of justice enhancement under Section 3C1.1.   Furthermore, the Eleventh Circuit has previously affirmed the application of the enhancement to a less egregious attempt to obstruct justice than that present here, even when that conduct did not result in a conviction.   *See Hobbs*, 619 F. App'x at 845–46.   Here, the jury convicted Esformes of obstructing justice (Count 34), by attempting to help Guillermo Delgado flee the country to avoid trial in front of the Honorable Jose E. Martinez.   The jury's verdict provides evidence beyond a reasonable doubt that the enhancement applies.

Esformes claims that because Gabriel Delgado did not receive an obstruction enhancement, Esformes should not either.   This contention fails because the obstruction conduct Esformes was convicted of in this trial was distinct from Gabriel Delgado's conduct.   There was no argument at Gabriel Delgado's sentencing that he should receive an obstruction enhancement for the conduct that resulted in Esformes' conviction in Count 34.   Nor could there have been, given that the Delgado Brothers alerted the Government about the illegal plan, and cooperated by recording Esformes engaging the obstructive conduct.   Instead, the only discussion of the applicability of an obstruction enhancement during the Delgado Brothers' sentencing was Probation's

recommendation that Guillermo Delgado receive the obstruction enhancement because he allegedly verbally threatened a co-defendant to keep him from cooperating with the Government. *United States v. Delgado*, 14-CR-20359-MARTINEZ, DE246:4-10.  The failure to apply an enhancement for conduct the Delgado Brothers engaged in as cooperating witnesses does not have any bearing on whether Esformes should receive his enhancement of obstruction of justice conviction.

## **CONCLUSION**

Below is the Government's proposed calculation of Esformes' Guidelines range under three approaches: (1) the range applicable to money laundering using an underlying offense of health care fraud; 2) the range applicable to money laundering using an underlying offense of receipt of health care kickbacks; and 3) the range applicable to conspiracy to defraud the United States.  As explained above, the Guidelines instruct that Esformes' offense level should be determined based on an underling offense of health care fraud.  Even if the Court disagrees with that approach, Esformes' proposed alternatives offer him no appreciable benefit.  First, were the Court to calculate the offense level for money laundering using Section 2B4.1, based on Esformes' argument that the money laundering, an accurate calculation of the value of the benefit Esformes received from the illegal kickbacks results in a Guidelines range that is still 360 months to life.  Finally, even if Esformes were correct that the money laundering Guideline produces the low offense level he posits, the offense level associated his conviction for conspiracy to defraud the United States, which would also call for an advisory Guidelines range of life, would produce the highest offense level under the grouping rules:

| Applicable Guideline | Money Laundering: Health Care Fraud (Count 16) | Money Laundering: Kickbacks (Count 16) | Conspiracy to Defraud the United States (Count 6) |
|---|---|---|---|
| Base Offense Level | 6<br>(2S1.1(A)(1); 2B1.1(A)(2)) | 8<br>(2S1.1(A)(1); 2B4.1(a)) | 12<br>(2C1.1(1)(2)) |
| Loss | 30<br>((2B1.1(b)(1)(P))<br>(Over $550,000,000) | 24<br>(2B4.1(b)(1)<br>2B1.1(b)(1)(M))<br>(Over $65,000,000)[11] | 24<br>((2C1.1(b)(2);<br>2B1.1(b)(1)(M))<br>(Over $65,000,000) |
| More than one bribe | -- | -- | 2<br>(2C1.1(b)(1)) |
| Sophisticated Means | 2<br>(2B1.1(b)(10)(C)) | -- | |
| Money Laundering Conviction | 2<br>((2S1.1(b)(2)(B)) | 2<br>((2S1.1(b)(2)(B)) | |
| Sophisticated Money Laundering | 2<br>((2S1.1(b)(2)(B)) | 2<br>((2S1.1(b)(2)(B)) | |
| Role | 4<br>((3B1.1(a)) | 4<br>((3B1.1(a)) | 4<br>((3B1.1(a)) |
| Obstruction of Justice | 2<br>((3C1.1)) | 2<br>((3C1.1)) | 2<br>((3C1.1)) |
| Risk of Death or Bodily Injury | 2<br>((2B1.1(b)(16)(A)) | -- | -- |
| Mass Marketing | 2<br>((2B1.1(b)(2)(A)(ii)) | -- | -- |
| Offense Level | 43 (Adj. from 52)<br>LIFE | 42<br>360-LIFE | 43 (Adj. from 44)<br>LIFE |

As a result, the United States respectfully asks this Court to overrule Esformes' objections to the PSR, and conclude that the PSR correctly calculated Esformes' advisory Guidelines range using the health care fraud offense from which the laundered funds were derived, and applying

---

[11]  Even if the Court only applied the Kickback Physician Payments, minus costs (**$24,386,507),** and the payments to the Ancillary Providers (**$35,354,811**), Esformes' Total Offense Level is 40 (292-365 months).

sentencing enhancements for sophisticated means, sophisticated money laundering, aggravating role, and obstruction of justice.

Dated:  August 6, 2019

Respectfully submitted,

ROBERT ZINK, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

*/s/ Elizabeth Young*
Elizabeth Young (FL Bar #A5501858)
Allan Medina
James V. Hayes
Trial Attorneys
Elizabeth.Young@usdoj.gov
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 262-7650

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on August 6, 2019, a true and correct copy of the foregoing was filed and served on all counsel of record via the CM/ECF system.

<u>/s/ *Elizabeth Young*</u>
Trial Attorney