UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

16-CR-20549-SCOLA/OTAZO-REYES

UNITED STATES OF AMERICA,

vs.

PHILIP ESFORMES
_____/

### ESFORMES'S RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM REGARDING LOSS CALCULATION WITH SUPPORTING DECLARATION OF MICHELLE ATACK

In its Sentencing Memorandum filed Monday, the Government reports that the total paid by Medicare and Medicaid to *all* the Esformes facilities for so-called psychiatric patients was $36,838,565. DE#1374:10 (citing DE#1354, Ex. 2). That amount includes all patients (regardless of age), at all facilities (even those about which there was no testimony), for whom there was a "suspect diagnosis" of either "Gait" or "Mental/Psychiatric" or "Muscle Wasting."

In response, undersigned asked summary witness Michelle Atack to search Medicare claims data provided to the defense in discovery (Disc 73) to isolate Medicare payments (which does not include Medicaid) paid to *Oceanside and Harmony*, because those were the only two facilities about which there was any testimony alleging services not necessary or not rendered. And the Government's theory of prosecution at trial was that Esformes conspired to have patients falsely

qualify for the high-paying *Medicare* rates, not the barely-break-even *Medicaid* rates.[1]

Undersigned asked Ms. Atack to use the same parameters used by the Government to further isolate those paid claims relating to the so-called psychiatric patients *under 65 years of age*, as the Government's theory focused on the "younger" patients; there was no evidence of any fraud involving the geriatric population.

As reflected in her Declaration (attached), Ms. Atack found that for the years 2010 through 2016:

1. As to **Oceanside Extended Care**, the amount paid for patients under 65 years of age with a diagnosis of either Gait, Mental/Psychiatric, or Muscle Wasting totaled **$926,699**.

2. As to **Harmony Health Center**, the amount paid for patients under 65 years of age with a diagnosis of either Gait, Mental/Psychiatric, or Muscle Wasting totaled **$665,842**.

The sum of all the Medicare funds paid to Oceanside and Harmony for this subset of patients is **$1,592,541**. (The Government was notified of Ms. Atack's findings this afternoon at 4:00 p.m.)

These figures are over-inclusive, as they include *every* patient with a psychiatric diagnosis, even though there was only testimony about a handful of

---

[1] Toward that end, Government witness Stephen Quindoza testified about eligibility for Medicare, not Medicaid.

patients; and these figures include patients well into their 50's and 60's, even though the testimony at trial was that the suspect population was typically 35-45 years of age.

The testimony regarding Oceanside came largely from three mentally ill patients whose admissions to the SNF were approved by doctors not involved in the conspiracy and about whom the Court heard live testimony from independent, treating physicians who opined as to medical necessity. See *United States v. AseraCare*, ___ F.3d ___, 2019 WL 4251875 (11th Cir. Sept. 9, 2019) ("a clinical judgment … warranting … benefits under Medicare cannot be deemed false, for purposes of the False Claims Act, when there is only a reasonable disagreement between medical experts as to the accuracy of that conclusion, with no other evidence to prove the falsity of the assessment."). As for disgruntled nurse Eddie Bellew, a drug user who was terminated for dishonesty, his testimony regarding diaper shortages and the conditions of the facility was flatly contradicted by multiple witnesses.

And the testimony regarding Harmony came from witness Ginarte, who worked at Harmony more than a decade ago, and was an aspiring qui tam plaintiff who was forced to acknowledge, on cross examination, that the patients she suspected were bogus in fact suffered from illnesses and conditions that qualified them for Medicare-paid, SNF services. Years before Mr. Esformes's arrest, Ginarte

invited the United States to join her in pursuing a False Claims Act case against Harmony, but the United States declined.

Extrapolating from Ms. Atack's findings, Mr. Esformes submits that, even if the Court concludes that a segment of the psychiatric population did not need or receive the services for which Oceanside and/or Harmony were paid by Medicare, that amount must be *significantly less* than the sum of the totals for those two facilities, *i.e.*, less than **$1,592,541**. The guidelines assign a 14-level increase for a loss that is more than $550,000 but not more than $1,500,000. U.S.S.G. §2B1.1(b)(1)(H). Accordingly, Mr. Esformes submits that, if the Court intends to apply an increase for loss, it should not exceed 14 levels.

Added to the 20 levels that the Court has already found over objection, a 14-level upward adjustment for loss would produce a Total Offense Level of 34, with a corresponding guideline range of 151-188 months. In that event, Mr. Esformes would seek a downward departure / variance to a sentence under ten years of incarceration, consistent with the 97-121 guideline range that the Government agreed would apply to Gabriel Delgado, before any credit for acceptance of responsibility and cooperation.

Respectfully submitted,

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 South Biscayne Boulevard
Suite 1300
Miami, FL 33131
Tel: (305) 371-6421

/s/ Howard Srebnick
**HOWARD SREBNICK**
   Fla. Bar No. 919063
   HSrebnick@RoyBlack.com
**ROY BLACK**
   Fla. Bar No. 126088
   RBlack@RoyBlack.com
**JACKIE PERCZEK**
   Fla. Bar No. 0042201
   JPerczek@RoyBlack.com