UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CR-20549-SCOLA/Otazo-Reyes (s)(s)(s)

UNITED STATES OF AMERICA

vs.

PHILIP ESFORMES,

    Defendant.

    _____/

**GOVERNMENT'S SENTENCING MEMORANDUM IN SUPPORT OF RESTITUTION AND MEANINGFUL FINANCIAL PUNISHMENT FOR ESFORMES' CRIMES**

    For over a decade, Philip Esformes funded his lavish lifestyle with the money he stole from taxpayers. He bought himself a Ferrari and a $360,000 watch, bribed a basketball coach, lined his pockets, and kept his corrupt businesses afloat, all with taxpayer dollars. The taxpayers, meanwhile, paid for health care services that were not needed, were ordered by corrupt doctors, and only continued because Esformes bribed a state regulator to look the other way. Esformes has remained steadfast in his refusal to disclose his assets and therefore the extent to which Esformes enriched himself with taxpayer funds, and otherwise, is still unknown. Esformes' sentence must reflect the financial benefit he received and the financial harm he caused.

    This Court ruled earlier, in calculating loss from this offense for Sentencing Guidelines purposes, that Esformes is responsible for a loss with a paid amount of around $4.9 million. We objected to that figure, and respectfully still believe it is vastly understated. But what matters for present purposes is that the Court is ***not*** bound by that number in calculating restitution or forfeiture. Esformes can, and must, compensate the federal health care programs he victimized, relinquish his ill-gotten gains, and fund the cost to the Government of his sentence of imprisonment. To achieve these results, the Government asks the Court to order the following:

1) restitution in the amount of $207,474,897, to be paid to the Center for Medicare and Medicaid Services ("CMS"); and 2) a $38,700,795 forfeiture money judgment.

## BACKGROUND

Esformes is in a position to pay back the money he stole from the Centers for Medicare and Medicaid Services ("CMS"), and the Government justifiably has invested considerable time and resources into making sure he does so. Despite the Government's best efforts, however, the full extent of Esformes' wealth still remains unknown. Although askedto provide a fulsome asset disclosure to the United States Probation Office during the preparation of the Presentence Investigation Report ("PSI") in the criminal case, it is the Government's understanding that Esformes has yet not done so. Similarly, in the companion civil case freezing Esformes' assets, Esformes provided a six page list of assets that fails to assign any monetary value to most of the listed assets. *See* EX A. Many of these assets could be valuable. For example, Esformes enjoys a watch collection that is without a doubt high end, has a roughly 30 percent ownership interest in nursing homes in northern Florida, and owns a hospital in the Miami area.

Here is a summary of the estimated value of some the assets that are known to the Government at this time:

- $21,247,069: amount being held in escrow by CMS as part of the payment suspension on his skilled nursing homes
- $7,449,556: approximate value of Esformes' known interests in his businesses that have been sold
- $10,940,381.83: approximate value of equity in Esformes' residences
- $4,305,217.82: approximate amount in bank accounts restrained by the Indictment
- $360,000: purchase price of the watch restrained by the Indictment
- $52,800: purchase price of the Hermes Birken identified in the Indictment

**ARGUMENT**

**I.      The Court Should Order Esformes to Pay Restitution in the Amount of $207,474,897.**

The sentence imposed in this case should include an order of restitution to CMS in the amount of $207,474,897. This amount equals the amount that Medicare and Medicaid paid Esformes' SNFs and ALFs after he falsely certified that he was not paying or receiving kickbacks.[1] As the Government previously argued at length, Esformes also received this Medicare and Medicaid money as result of services that were not rendered and/or not needed, services that were ordered by corrupt physicians on the take, and service that only took place because Esformes bribed a state regulator to make sure his corrupt nursing homes kept their licenses. The amount of sheer profit Esformes extracted from these payments - $66,599,879 – speaks for itself. Esformes spent an extraordinary amount of the ill-gotten Medicare and Medicaid money on himself, not on his patients.

Further, Esformes has not shown that he entitled to an offset against his required restitution for services that were ordered because doctors were bribed or otherwise not needed or given. No such offset is justified where, as here, there is a *pervasive absence of legitimate physicians prescribing legitimate services. See United States v. Moran*, 778 F.3d 942, 985 (11th Cir. 2015) ("Because the district court found that Biscayne Milieu did not render proper PHP treatment, defendant Dr. Kushner has shown no evidence that the services he allegedly provided can somehow offset his restitution amount."). Indeed, Esformes' leading referral source, Arnaldo Carmouze, pleaded guilty to referring patients to him for unnecessary services in exchange for bribes. To be sure, not a single one of Esformes' referring physicians have stood behind the referrals to his facilities and Esformes certainly cannot meet his burden to show that the services

---

[1] This corresponds to a billed amount of $344,527,850.

were medically necessary and entitle him to an offset here. *See also United States v. Bane*, 720 F.3d 818, 828 (11th Cir. 2013) ("Bane must offer evidence about what goods or services he provided that were medically necessary and the value of them to receive an offset.").

Esformes argued that that his restitution should be the same as the paid amount the Court determined when calculating his sentencing Guidelines range. But different standards and different considerations govern the determination of intended loss for calculating a Sentencing Guidelines range as opposed to computing actual loss for purposes of restitution. Those differences are critical here, because a restitution award at or below the $4.9 million Guidelines loss figure determined by this Court would be, in our view, unconscionably at odds with the facts.[2] *Compare* U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n. 3(A) (2002), *with* 18 U.S.C.A. § 3663A(b)(1) (West 2000 & Supp.2007). Binding Eleventh Circuit precedent is crystal clear that a district court's restitution order does not have to be the same as its Guidelines loss calculation. *See, e.g., United States v. Souffrant*, 517 F. App'x 803, 827 (11th Cir. 2013) ("The amount of loss arrived at for sentencing purposes 'does not necessarily equal the amount of restitution to be paid because a defendant's culpability will not always equal the victim's injury.'") (citing *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010)); *United States v. Patterson*, 595 F.3d 1324, 1327 (11th Cir. 2010) ("While the Mandatory Victims Restitution Act requires a judge to order restitution to compensate the full amount of each victim's losses, it does not require restitution to match the loss figure used for sentencing."); *United States v. Barnette*, 10 F.3d 1553, 1556 (11th Cir. 1994) ("Damages measure the amount of compensable loss a victim has suffered. Restitution,

---

[2] The loss number used for sentencing was also based on an incorrect factual premise. Esformes claimed that less than 1 percent of the patients at Harmony and Oceanside had psychiatric diagnoses, and that the same percentage should be applied across the board at all his facilities to determine loss. In reality, eight percent of the patients had suspect diagnosis codes (4 percent were psychiatric codes and the remaining 4 percent were for gait disturbance/muscle wasting) and Medicare paid $37,221,156 based on those suspect diagnosis codes.

4

by contrast, is an equitable remedy, subject to the general equitable principle that it is granted to the extent and only to the extent that justice between the parties requires.") (internal citations omitted).

For example, when awarding restitution the Court must also consider the expenses incurred by the Government in the investigation or prosecution of Esformes' offense. *See* 18 U.S.C. § 3663A(b)(1) (the Mandatory Victim Restitution Act provides that, in all cases, a victim must be reimbursed "for . . . expenses incurred during participation in the investigation or prosecution of the offense.").[3] Here, the government incurred substantial expenses on the part of the agents, prosecutors, paralegals, and contract employees tasked with investigating and prosecuting the wide-ranging and complex fraud scheme masterminded by Esformes. Those expenses must be taken into account when awarding restitution.

We recognize that restitution may often be equal to or even below loss for Guidelines purposes, but as the case law makes clear, that is not always the situation, and there is no prohibition on a court using a higher number for restitution. *See United States v. Keller*, 236 F. App'x 274, 276 (9th Cir. 2007) (the defendant "fails to identify any authority that makes it improper for a district court to show leniency with respect to determining a defendant's prison sentence but not with respect to awarding restitution"). Simply put, this Court has the authority to find that the actual loss to the victims from Esformes' criminal conduct, for purposes of restitution, is a higher figure than the number it used for calculating the Guidelines range. The Court noted that the loss amount was "highly conservative" for the purposes of sentencing, but the Court has

---

[3] *United States v. Wells*, 873 F.3d 1241, 1270 (10th Cir. 2017) ("And we have specifically recognized that the government's investigatory costs can constitute actual losses subject to restitution," for example, upholding a restitution order of $300 for the services of a law enforcement officer in investigating damage to archaeological sites).

the discretion to rely on the "evidence that would support a higher number than that" for the purposes determining the victims' loss. Tr. 9/12/19 at 51. The idea of Esformes only paying $4.9 million (or less) in restitution is indefensible in light of the financial harm he caused to taxpayers. This Court can, and should, order restitution of $207,474,897.[4]

## II. Esformes Should Pay a $38,700,795 Forfeiture Money Judgment Regardless of Restitution.

The Government has filed a separate motion asking the Court to impose a forfeiture money judgment against the Defendant for $38,700,795, pursuant to 18 U.S.C. § 982(a)(1) and Fed. R. Crim. 32.2(b)(2)(A). *See* DE1372. We do not need to repeat those arguments here, but to be clear: this proposed forfeiture amount, equaling the sum that Esformes personally received from Medicare and Medicaid during the scheme, should not be reduced by any restitution ordered by the Court.[5] *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344–45 (11th Cir. 2009) (rejecting the defendant's argument that the forfeiture should be reduced by the restitution she paid, noting that "although this might appear to be a double dip, restitution and forfeiture serve

---

[4] Claims by counsel for Esformes to release assets to counsel's bank account instead of CMS should be rejected. Esformes has enjoyed multiple counsel of choice since the day of his arrest and there is no basis in the Sixth Amendment or case law interpreting it that supports Esformes' contention that his counsel should receive additional funds out of money that should be going back to the taxpayers. This is especially the case given that Esformes' current counsel of choice has not, and cannot, show that there is a need to pay fees out of the frozen assets. *See Luis v. United States*, 136 S. Ct. 1083, 1093 (2016) ("[I] our view, insofar as innocent (i.e., untainted) funds are *needed* to obtain counsel of choice, we believe that the Sixth Amendment prohibits the court order that the Government seeks.") (emphasis added). Indeed, by way of example, in the first two months after Esformes' indictment alone, Esformes' father paid $400,000 to Black, Srebnick, Kornspan & Stumpf, P.A., and the firm has continued to receive payments for the representation. *See* DE220. The Sixth Amendment in no way justifies Esformes' counsel keeping two years of legal fees to themselves, refusing to disclose the total amount that they have been paid, and then requiring the taxpayers to foot their outstanding bills (that have already been covered by Esformes' father).

[5] The Government proved during the Bifurcated Forfeiture Proceeding that this amount is a conservative sum of money equal in value to the property traceable to the property involved in the Defendant's money laundering offenses.

different goals" (internal citations omitted)). Esformes should be forced to disgorge all "dishonest profits," in addition to making Medicare and Medicaid whole. *Id.* (internal citations omitted).

In considering these issues, the Court should also bear in mind that it fined Esformes $0, presumably in anticipation of a very significant restitution and forfeiture award. Esformes could have been fined $250,000 per count of conviction[6] – plus the costs of his incarceration and supervision. *See United States v. Price*, 65 F.3d 903, 907 (11th Cir. 1995) (affirming the court's imposition of a fine of $880,752.40, comprised of $250,000 plus costs of incarceration and supervision). According to the PSI, the expected cost of Esformes' twenty years of incarceration is $36,300 per year (totaling $726,000) and the expected cost of his three years of supervised release is $4,369 (totaling $13,107). The Court could have asked Esformes to foot the bill of his own incarceration and supervision upon release. *Id.* at 907 ("[T]he uniform practice of fining criminals on the basis of their individualistic terms of imprisonment -- an indicator of the actual harm each has inflicted upon society -- is a rational means to assist the victims of crime collectively." (citing *United States v. Hagmann*, 950 F.2d 175, 187 (5th Cir. 1991)); *see also* 18 U.S.C. §3572(a)(6) (providing that courts in deciding upon a fine can consider "the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence"). It is our preference that Esformes pay money back to the taxpayers as restitution and forfeiture, but the Court should not forget that Esformes would have been subject to, and for sure with his massive ill-gotten wealth been able to pay, a substantial fine.

---

[6] Because Esformes was convicted of 20 counts, the statutory maximum fine is $5 million. The PSI incorrectly notes that the fine is twice the pecuniary gain or loss. Here, in the absence of a jury finding of that amount of pecuniary gain or loss, the maximum penalty per count is $250,000. *See. Bane*, 720 F.3d at 830.

## CONCLUSION

To compensate the victims of his crimes and punish Esformes financially, the Government asks the Court to order the following:  1) restitution in the amount of $207,474,897, to be paid to the CMS; and 2) a $38,700,795 forfeiture money judgment.

Dated:  November 15, 2019

Respectfully submitted,

ROBERT ZINK, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

*/s/ Elizabeth Young*
Elizabeth Young (FL Bar #A5501858)
James V. Hayes
Trial Attorneys
Allan Medina
Chief, Health Care Fraud Unit
Elizabeth.Young@usdoj.gov
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 262-7650

## CERTIFICATE OF SERVICE

I hereby certify that, on November 15, 2019, a true and correct copy of the foregoing was filed and served on all counsel of record via the CM/ECF system.

/s/ *Elizabeth Young*
Trial Attorney