# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**PHILIP ESFORMES** | **CASE NO. 16-20549-CR-SCOLA/OTAZO-REYES(s)(s)(s)** |

## EXPEDITED MOTION FOR RELEASE
## ON CONDITIONS PENDING APPEAL

**Howard Srebnick**
 Fla. Bar No. 919063
 HSrebnick@RoyBlack.com
**Jackie Perczek**
 Fla. Bar No. 042201
 JPerczek@RoyBlack.com
**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 S. Biscayne Boulevard,
Suite 1300
Miami, FL 33131
Telephone: 305.371.6421

**Laurie Webb Daniel**
 (pending admission pro hac vice)
 Georgia Bar No. 204225
 laurie.daniel@hklaw.com
**Nicholas R. Boyd**
 (pending admission pro hac vice)
 Georgia Bar No. 849842
 nicholas.boyd@hklaw.com
**HOLLAND & KNIGHT LLP**
1180 West Peachtree Street NW,
Suite 1800
Atlanta, Georgia 30309
Telephone: 404.817.8500

## I.   INTRODUCTION

Neither Philip Esformes nor the federal prison system is the same today as last month, and certainly neither are the same as a year or two ago. While Esformes has long suffered from pulmonary and upper respiratory problems and other serious medical conditions, these health risks are now acute—in fact life-threatening—given the coronavirus pandemic. This same pandemic threatens the capabilities of the prison system itself. Simply put, it is an undeniable reality that the deadly and highly contagious virus known as COVID-19 will reach almost all American communities—large and small, wealthy and poor, open and closed. And our prisons are no exception.

Esformes' medical condition puts him at the top of the at-risk category. And Esformes—unlike other inmates whose sentences have been affirmed—satisfies all the statutory criteria under 18 U.S.C. § 3143(b) for release on conditions pending appeal. Accordingly, the Court should grant this first-time motion for release pending appeal pursuant to § 3143(b). Esformes requests a hearing on this motion.

## II.   STATEMENT OF FACTS

### A.   Esformes' Health.

Philip Esformes has a long history of upper and lower respiratory problems, as well as a congestive heart condition. These conditions are documented in the letter of Esformes' treating physician, Dr. Michael Friedman, which is submitted in support of this motion. *See* Letter of Dr. Michael Friedman drafted 3/24/2020, Ex.

1; *see also* Ex. 2, Progress Notes dated 10/12/2015 documenting Esformes' history of asthma and recurrent bronchitis; Ex. 3, Dr. Friedman's CV; Ex. 4, treatment notes regarding congestive heart condition. In particular, Esformes has issues with asthma, shortness of breath, recurrent bronchitis, bronchial infections, and multiple allergies, which have resulted in the weakening of his respiratory system. *Id.* Asthma is a risk factor for severe outcomes from a COVID-19 infection, and asthmatic individuals have succumbed to the disease. *See, e.g.*, Glendora man, 34, dies after visiting Disney World, sources say, Los Angeles Times, available at https://www.latimes.com/california/story/2020-03-19/glendora-man-dies-coronavirus-disney-world (accessed Mar. 25, 2020).

Significantly, Dr. Friedman recently opined that "[w]ith the current concern of COVID-19 infections, I would consider Philip at very high risk in view of his age and his history of pulmonary problems." Ex. 1. Dr. Friedman advises that Esformes "should isolate in a home and not an institutional setting to avoid, and if necessary, manage what for him, would be a life-threatening or permanent injury outcome." *Id*.

## B.   The Pandemic.

The novel coronavirus pandemic is a global crisis of historic proportion that presents a severe threat to medically vulnerable individuals and a unique challenge to all branches of government. *See* President's Proclamation on Declaring a

National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Mar. 13, 2020, available at: www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. The virus is highly infectious and hard to control. Because it is often spread by asymptomatic individuals, the virus invades communities long before anyone is aware that a member of the community is infected. The virus has spread all over the United States, with the number of infected patients increasing by multiples every day. *See* Cases in the U.S., Centers for Disease Control & Prevention, Mar. 23, 2020, www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (accessed Mar. 24, 2020).

State and local governments have adopted sweeping measures in an effort to contain the spread of COVID-19. Miami-Dade County has ordered the closure of all parks, beaches, and all non-essential businesses. *See* Miami-Dade Emergency Order 06-20, available at: www.miamidade.gov/information/library/coronavirus-emergency-order-06-20-parks-beaches.pdf; Miami-Dade Emergency Order 07-20 ¶ 2, available at: www.miamidade.gov/information/library/coronavirus-emergency-order-07-20-businesses.pdf. Miami-Dade's emergency orders have also urged citizens to maintain social distancing. *See, e.g.*, Miami-Dade Emergency Order 07-20 ¶¶ 4–5. The Governor of Florida has banned restaurants and bars from serving customers onsite, ordered the closure of gyms, waived in-person meeting

requirements for public officials, and suspended non-emergency surgeries. Florida Executive Orders 2020-69, 2020-71, 2020-72, available at www.flgov.com/2020-executive-orders/. Numerous countries have enacted travel restrictions in an effort to combat the pandemic. *See* Coronavirus Travel Restrictions, Across the Globe, *New York Times*, Mar. 20, 2020, available at: https://nyti.ms.33ldpJb.

It also is widely recognized that individuals with Esformes' medical history of asthma and recurrent bronchitis are among the most at-risk of becoming gravely ill—in some cases resulting in death. *See* People with Asthma and COVID-19, Centers for Disease Control and Prevention, available at: www.cdc.gov/coronavirus/2019-ncov/specific-groups/asthma.html; *see also* Coronavirus Resource Center, Harvard Health Publishing, available at: www.health.harvard.edu/diseases-and-conditions/coronavirus-resource-center. Those who survive a COVID-19 infection may suffer long-term consequences, such as reduced lung capacity from tissue scarring. *See* Ex. 1.

### C.   The Prisons.

Prisoners at FCI Miami are at a high risk of being exposed to COVID-19 in the coming days and weeks. According to data released by the Florida Department of Health, there were 255 cases of COVID-19 in Miami-Dade County as of the morning of March 23, 2020—the most of any county in Florida. *See* Coronavirus: summary of persons being monitored, persons under investigation, and cases at 2,

Florida Department of Health, Mar. 23, 2020, 9:47a.m., available at:

https://floridadisaster.org/globalassets/covid19/dailies/covid-19-data---daily-

report-2020-03-23-0949.pdf. It also appears that there is significant community

transmission in Miami-Dade County, which has the highest number of Florida

cases involving patients with no known travel and no known contact with an

infected person. Coronavirus: summary of persons being monitored, persons under

investigation, and cases at 3, Florida Department of Health, Mar. 21, 2020, 10:00

a.m., available at https://floridadisaster.org/globalassets/covid19/dailies/covid-19-

data---daily-report-2020-03-21-1008.pdf. And it is now known that, due to the lack

of testing, large community infections already have significantly spread in

America's large cities like Miami, Los Angeles, and New York.

Indeed, COVID-19 has already been detected in the nation's federal and

state prisons. *See* 38 Positive for Coronavirus at Rikers, NYC jails, *Associated*

*Press*, Mar. 23, 2020, https://apnews.com/54dbc9d47f62cf0c0240314310cfe909.

Senior politicians have expressed concern that federal prisoners could be at

particular risk. *See* Letter of March 12, 2020, from House Judiciary Chairman

Jerrold Nadler to Attorney General William Barr, available at:

https://judiciary.house.gov/news/documentsingle.aspx?DocumentID=2874.

Recognizing that the COVID-19 pandemic poses a significant threat to

prison populations, a bipartisan group of 14 Senators expressed the importance of

protecting vulnerable inmates—such as Esformes—through "release[] or transfer[] to home confinement, if possible." Mar. 23, 2020 Letter from Senator Richard J. Durbin et al. to Attorney General William Barr and BOP Director Michael Carvajal ("Durbin Letter") at 1, available at www.durbin.senate.gov/newsroom/press-releases/durbin-grassley-colleagues-press-trump-administration-to-transfer-vulnerable-inmates-to-home-confinement. Additionally, numerous states have acted to protect inmates who are most vulnerable to COVID-19. *See, e.g.*, L.A. County Releasing Some Inmates from Jail to Combat Coronavirus, L.A. Times, Mar. 16, 2020, available at: http://www.latimes.com/california/story/2020-03-16/la-jail-population-arrests-down-amid-coronavirus; NYC Board of Correction Calls on City to Begin Process of Releasing Certain Prisoners in Response to COVID-19, Sentencing Law and Policy blog, available at: http://sentencing.typepad.com/sentencing_law_and_policy/2020/03/nyc-board-of-correction-calls-on-city-to-begin-the-process-of-releasing-certain-prisoners-asap-in-re.html.

It is true that the Federal Bureau of Prisons (BOP) has implemented some measures in reaction to the pandemic, such as restricting prison visitation, including legal visitation, through at least April 12, 2020. *See* Federal Bureau of Prisons COVID-19 Action Plan, Mar. 13, 2020, available at:

https://www.bop.gov/resources/news/20200313_covid-19.jsp (accessed Mar. 23, 2020). But without prison-wide testing—which has not occurred—these measures do not "include any measures to protect the most vulnerable staff and inmates," like Esformes. Durbin Letter at 1.

And the BOP's best efforts were unable to prevent COVID-19 from penetrating the walls of the federal prisons. As of March 26, 2020, BOP reports that 10 federal inmates and eight staff members have tested positive for COVID-19 at the following facilities: **Inmates** - MDC Brooklyn (isolation); FCC Oakdale (4 - isolation); USP Atlanta (2 - isolation); MCC New York (isolation); RRC Phoenix (isolation); RRC Brooklyn (isolation); **Staff** - Grand Prairie, TX; Leavenworth, KS (no inmate contact); Yazoo, MS; Atlanta, GA; Danbury, CT; Butner, NC; Ray Brook, NY; New York, NY.  https://www.bop.gov/coronavirus/.

Apparently alarmed by "the evolving nature of the Covid-19 pandemic, particularly in the greater New York City area," U.S. District Judge James Selna, *sua sponte*, recently issued an "Invitation to File an Ex Parte Request for Reconsideration" of the Court's order of four days earlier denying Michael Avenatti's motion seeking bail based on the pandemic. Initially, Judge Selna was unpersuaded that the pandemic warranted release of Avenatti, who was convicted of extortion and whose bail had been revoked by Judge Selna months earlier. In denying Avenatti release in the wake of the pandemic, Judge Selna wrote

> The Court is mindful of the Covid 19 pandemic. The Court accepts Avenatti's showing that []he had pneumonia about six months ago. (Docket No. 119-2, 119-3.) However, there is no showing that his cell mate was infected by the virus, and there have been no reported cases of Covid 19 at the New York MCC. As the Government points out, much of Avenatti's criticism about the facility relate to a different facility in Brooklyn. (See Opposition, p. 10.) There is no basis to release Avenatti on medical grounds. *United States v. Birbragher*, 2008 WL 1883504 at *2 (N.D. Iowa Apr. 25, 2008). The Bureau of Prisons and MCC specifically have taken substantial steps to mitigate the effects of the pandemic. MCC has moved "at risk" prisoners, which presumably includes Avenatti, to a separate unit.

*U.S. v. Avenatti*, 19-cr-00061-JVS (C.D. Cal. 3/21/20) at ECF#121 (Minute Order Denying Ex Parte Application for Reconsideration of Bail) (footnotes omitted). Days later, after the BOP announced a positive test for Covid 19 at the New York MCC, Judge Selna took the extraordinary step of inviting a further motion for reconsideration from Avenatti, sua sponte. *Id*. at ECF#123 (Invitation to File an *Ex Parte* Request for Reconsideration) (attached as Ex. 5).

Although there are no reported cases of infection at FCI Miami thus far, based on experience elsewhere, it must be assumed that visitors already have brought the virus into that facility, as well. At this point, sealing off the prisons from visitors is akin to the treatment of the passengers who were held captive on the cruise ships and exposed to infection from the crew and fellow passengers. And the BOP cannot restrict staff from entering and leaving the facility, which presents a continuing, serious risk of infection. *See* 38 Positive for Coronavirus at Rikers,

NYC jails, *Associated Press*, Mar. 23, 2020, available at:

https://apnews.com/54dbc9d47f62cf0c0240314310cfe909.

Further, there is no indication that the Bureau of Prisons has effectively implemented any of these essential safety precautions:

- Taking the temperatures of inmates and returning guards

- Testing all inmates and guards

- Providing masks to inmates who prepare or serve food

- Distancing inmates who work in factory conditions without masks

- Changing the practice of having inmates sit shoulder-to-shoulder as they eat in a dining hall with hundreds of other people.

Thus, the new BOP measures restricting an inmate's social and legal visits provide no meaningful safety benefits because inmates must still interact closely with each other and with staff. More troublingly, the prison's practices do not meet the standard of new rules that have been adopted to protect citizens across the country, including in Miami-Dade County.

Just yesterday, Attorney General Barr issued a directive to the BOP to "prioritize the use of BOP's various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic … [because] home confinement might be more effective in protecting their health." Memorandum for Director of Bureau of Prisons from The Attorney General,

3/26/20, available at: www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000. Given the non-violent nature of Esformes' offenses of conviction, coupled with his good behavior and designation to a low security facility, Esformes meets all the criteria set forth by Attorney General Barr for priority release on home confinement.

## III.   PROCEEDINGS

### A.   The Pre-Trial Detention Rulings.

The Government asked for pretrial detention of Esformes claiming that Esformes' financial resources made him "an especially high flight risk." ECF#9 at p. 12. Following two days of hearings in August 2016 (ECF#74, 75), Magistrate Judge Torres found that the conditions proposed by Esformes were sufficient to "ameliorate the serious risk of flight and allow for entry of a $1 million corporate surety bond." ECF#82. Those proposed conditions included:

- Providing a list of 22 individuals willing to collateralize a bond of at least $3 million;

- Home confinement with GPS monitoring;

- Around-the-clock monitoring by armed, off-duty/retired police officers, who would document all visitation and all telephone calls;

- Limited designated visiting hours with visitors restricted to close family members, attorneys and a rabbi, all pre-approved by the court;

- A ban on both internet access and cellular phone usage;

- Restricting his telephone access to a single land-line and a limited, pre-approved list of callers with all calls logged and recorded; and

- Unconditional Waiver of Extradition.

Magistrate Judge Torres nonetheless ordered Esformes detained as a "danger" to the community that none of the proposed conditions could ameliorate based entirely on the then-pending obstruction of justice allegations in Count 26 (procuring exculpatory affidavits from the Delgados) and Count 27 (funding Guillermo Delgado to flee). ECF#82. On September 28, 2016, without an evidentiary hearing, Judge Lenard affirmed Magistrate Judge Torres's detention order under 18 U.S.C. § 3142(f)(2)(A) & (B), based largely on the alleged obstruction of justice that the government claimed occurred when the government secretly recorded the conversations between the Delgado brothers and Esformes where the Delgados—not Esformes—brought up (set up) the possibility that Esformes might help one of them flee. ECF#33 at p. 27.

On November 26, 2018, Esformes filed a Renewed Motion for Pretrial Release Based on Duration of Pretrial Detention Exceeding 28 Months and Changed Circumstances ("Renewed Motion for Pretrial Release"). ECF#986. Esformes argued that the government was responsible for almost all of the delay in bringing him to trial because of prosecutorial misconduct, its decision to subpoena 1,600 medical files for use at trial (a move that was later abandoned), and its

amendment of the indictment three times to add allegations already known to the government. Esformes offered additional security for his appearance at trial:

- All of Esformes' assets would secure a personal surety bond, ECF#986 at p. 23;

- Defendant's father would co-sign a surety bond collateralized by his stock in nursing home facilities under restraint and any other property he owns, *id.*;

- Esformes' children would co-sign a bond "in an amount that would leave them destitute if Esformes were to abscond," *id.*; and

- Forty-seven friends and family members would pledge as security their houses and life savings, worth over $50,000,000, ECF#994.

The Court, however, denied the motion on the ground that the delay was not substantial enough to violate Due Process under circuit precedent. ECF#1000 at p. 54-55. That order was affirmed without meaningful discussion by the Court of Appeals (Case No. 18-15170).

### B.     The Trial, Verdict, and Sentencing.

The case was tried for over four weeks in 2019. The verdict, however, yielded mixed and ambiguous results. Although the jury was undecided with respect to Count One—"Conspiracy to Commit Health Care Fraud and Wire Fraud"—and some related counts, the jury did find Esformes guilty of other crimes based on claims of, *inter alia*, kickbacks, money laundering, and obstruction. The Court sentenced Esformes to 240 months in prison. *See* Amended Judgment,

ECF#1459. Esformes was also ordered to pay $5,530,207 in restitution, *see id.*, and to forfeit $38,700,795, *see* ECF#1455.

### C.    The Appeal.

Esformes timely appealed from the judgments, *see* ECF#1461, and his appeal is currently pending before the Eleventh Circuit. The initial brief on Esformes' appeal is due on June 15, 2020. *See* Order of March 9, 2020, *United States v. Esformes*, No. 19-13838.

Esformes has not previously applied for bail pending appeal. He does so now because the circumstances of the COVID-19 pandemic have created a desperate situation that threatens his life. And Esformes seeks only a release pending appeal subject to the stringent conditions offered earlier in the case.

Because the due date of the appellate brief is several months away, the arguments it will make cannot be conveyed here in detail. Suffice it to say that Esformes' appeal must be considered substantial given the unusual record in this case, which includes but is not limited to: (1) the lack of any competent evidence of any actual loss, much less a one billion dollar Medicare fraud, as claimed by the government when it filed the indictment; (2) the Magistrate Judge's factual findings and legal conclusions that there was serious prosecutorial misconduct, which the Magistrate concluded warranted suppression of the recordings between Esformes and the Delgado brothers and which Esformes submits warranted

disqualification of the tainted prosecutors; (3) the improper admission of so-called expert witness testimony without any pre-trial *Daubert* screening; (4) the undisputed fact that the purported "money laundering" was done with the government's full knowledge that the money was going to Esformes' accounts; and (5) inconsistencies in the verdict and sentencing. In sum, Esformes will present substantial arguments that could impact his conviction or at least reduce his sentence in several respects.

## IV.   ARGUMENT

### A.   Esformes satisfies the statutory criteria for release on conditions pending appeal.

Esformes is due to be released on conditions pending appeal because he meets the requirements of 18 U.S.C. § 3143(b): he does not present a risk of flight or danger to the community, and he raises substantial issues on appeal that are likely to result in a new trial.

#### 1.   There is no risk of flight or danger to the community.

Esformes does not present a risk of flight. Indeed, it would be unthinkable for anyone having Esformes' medical condition to leave the country at this time. Many nations around the world have closed their borders, and most others have imposed strict checks and entry criteria. Almost all international flights have been canceled, and the risk of infection from boarding the few that remain is severe. To leave the country would also be to risk contracting a life-threatening illness with no

ability to return to treating physicians and U.S. hospitals.  In addition, the
conditions of release proposed by Esformes in 2018 (as well as any others this
Court deems proper) remain available to guarantee Esformes' appearance. These
conditions include the pledge of all of Esformes' assets and those of his children
and father, as well as the home equities of 47 friends and family members. *See*
ECF#986 at 23; ECF#994. It is inconceivable that Esformes would both risk his
life and cause the ruin of his whole community by leaving the country.

 There can be no serious contention that Esformes' release would pose a
danger to anyone in the community. Esformes was charged with non-violent
offenses. As a practical matter, Esformes' health conditions will require him to
severely limit his contact with the outside world during his bail. Regardless, his
release will be subject to conditions imposed by this Court, which can ensure that
he does not have contact with, much less pose a threat to, others.

Significantly, the obstruction factor previously relied upon by Judge Lenard
to deny pre-trial release in 2016 does not apply in this context. *See* ECF#133 at
22–23. In considering pre-trial release, the Court was required to address "a serious
risk that [the defendant] will obstruct or attempt to obstruct justice." 18 U.S.C.
§ 3142(f)(2)(B). By contrast, the code provision governing release pending appeal
does not mention obstruction of justice. *See* 18 U.S.C. § 3143(b)(1)(A) (requiring a
finding that the defendant "is not likely to flee or to pose a danger to the safety of

any other person in the community if released under section 3142(b) or (c))." At this juncture, post-trial, there is no credible concern that Esformes, who engaged in no obstructive conduct during the last four years, will attempt to interfere with testimony in the future. Even in the event of a retrial, testimony from the first trial would ordinarily be admissible against Esformes. *See* Fed. R. Evid. 804(b)(1). Accordingly, concerns about obstruction of justice play no role here.

> ## 2.   The appeal is not for the purpose of delay and raises substantial issues of law that warrant relief.

As discussed above at § III.C, Esformes has substantial points for appeal. For example, if the appellate court were to hold that it was error for this court to overrule—without an evidentiary hearing—the Magistrate Judge's credibility findings of intentional prosecutorial misconduct in prosecutors reviewing privileged materials reflecting defense strategy (i.e., the "Descalzo documents"), the appellate court could well agree that the tainted prosecutor should have been disqualified, warranting a new trial. Or the appellate court could agree with the Magistrate Judge that the recordings should have been suppressed.

Indeed, the government's inability to obtain a conviction on Count 1—the centerpiece of its case—shows that this is not an open-and-shut matter. And there are other issues that warrant serious appellate scrutiny, such as whether the lay opinion evidence, even coupled with the improper testimony of Dr. Cifu, was

sufficient to support the government's fraud theory. These and other issues merit close review on appeal and cannot be characterized as a frivolous attempt to delay.

**B.    Even when more dangerous crimes are involved, release pending appeal may be granted due to a serious health threat.**

The lethal threat that COVID-19 poses to Esformes' health weighs heavily in favor of his release. While 18 U.S.C. § 3143 does not specifically require this Court to consider Esformes' medical conditions, the statutory scheme of post-conviction release makes clear that medical conditions are a relevant factor. If Esformes had been convicted of a *more* dangerous crime—such as a crime of violence or serious drug trafficking offense—or been sentenced to life, or death, this Court could order his release pending appeal on a finding of "exceptional reasons." 18 U.S.C. §§ 3142(f)(1)(A)–(C), 3143(b)(2), 3145(c). Such exceptional reasons include the potential impact of confinement upon the defendant's health condition. *U.S. v. Meister*, 744 F.3d 1236 (11th Cir. 2013) (per curiam) (holding that the district court was empowered to grant bail pending appeal upon its determination that the defendant's terminal cancer and chemotherapy treatment constituted "exceptional reasons"); *U.S. v. Garcia*, 340 F.3d 1013, 1019-20 (9th Cir. 2003) (recognizing illness, injury, and "exceptional risks . . . involving . . . physical or mental well-being" as "exceptional reasons" for release). "Exceptional reasons" also include an unusually long period of pre-trial detention, such as Esformes experienced. *U.S. v. Mutte*, 383 Fed. App'x 716 at **1, 3 (10th Cir.

2010) (period of three years). It would be absurd to conclude that Congress intended this Court to consider defendants' medical circumstances in determining whether to grant bail on appeal *only* for those convicted of the most serious crimes.

Given the situation presented by the coronavirus pandemic, Esformes' medical condition presents an exceptional circumstance: he is over the age of 50 with pre-existing pulmonary conditions including asthma, placing him at a "very high risk" of a "life-threatening or permanent injury outcome" should he contract COVID-19. Ex. 1. Numerous courts have recognized that the threat posed by COVID-19 to prisoners militates against custody. *See U.S. v. Stephens*, 2020 WL 1295155 at *2 (S.D.N.Y. Mar. 18, 2020) (granting pre-trial bail); *U.S. v. Barkman*, Case No. 19-cr-00052 (D. Nev. Mar. 17, 2020) at ECF#21 (order granting emergency motion to modify intermittent confinement as a condition of probation); *U.S. v. Raihan*, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12-19 (E.D.N.Y. Mar. 12, 2020) (continuing a defendant on pre-trial release).

The government cannot credibly oppose a secured release due to COVID-19 just because positive proof has not shown that the virus in fact has infiltrated the particular prison where the defendant is housed. *See In the Matter of the Extradition of Alejandro Toledo Manrique*, Case No. 19-mj-71055-MAG-1 (TSH), 2020 WL 1307109, at *1 (N.D. Cal., Mar. 19, 2020). As observed by the court in *Manrique* when rejecting that same argument, "COVID-19 can begin to appear 2-

14 days after exposure, so screening people based on observable symptoms is just a game of catch up. . . . By then it may be too late." *Id*. at \*1. Given the extreme likelihood that this disease will spread within FCI Miami (if it is not already doing so), Esformes' condition requires that he isolate at home. *Id*.

### C. Release on conditions pending appeal comports with the Eighth Amendment ban on excessive bail and punishment.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners against "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This is because failure to provide medical care to inmates "may actually produce physical 'torture or a lingering death.'" *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (quoting *Estelle*, 429 U.S. at 103).

Eighth Amendment concerns should inform this Court's bail decision. The Eighth Amendment requires that prison officials not stand idly by when an inmate with a known condition requires intervention. *See, e.g.*, *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989) (failure to investigate symptoms); *Steele v. Shah*, 87 F.3d 1266, 1270 (11th Cir. 1996), *as amended* (Sept. 6, 1996) (baseless discontinuation of medication). The Eighth Amendment also requires prisons to address known dangerous conditions. *See, e.g.*, *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (holding that alleged failure to maintain safety of jail constituted

deliberate indifference), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007).

The Bureau of Prisons knows the present and very serious risk to Esformes, whose age and medical conditions render him especially vulnerable to death from COVID-19. The BOP also knows that once the virus enters a prison, the virus spreads rapidly. Yet the Bureau's most recent action plan "notably does not include *any* measures to protect the most vulnerable staff and inmates." Durbin Letter at 1 (emphasis added). At FCI Miami, inmates still congregate in close quarters to eat and perform prison duties. Given the life-threatening risk that Esformes faces from COVID-19, Eighth Amendment concerns demand his release on bail pending appeal.

## V.    CONCLUSION

This Court should grant this motion for release on conditions pending appeal to mitigate the risk that Esformes will become infected during the pendency of his appeal. Esformes seeks expedited review. Counsel is available for an expedited hearing to further explain the grounds for this motion.

We have reached out to DOJ Prosecutors for the government's position on this motion but have not heard back yet.

Respectfully submitted,

*/s/ Howard Srebnick*
Howard Srebnick
 Fla. Bar No. 919063
Jackie Perczek
 Fla. Bar No. 042201
BLACK, SREBNICK, KORNSPAN &
STUMPF, P.A.
201 S. Biscayne Boulevard, Suite 1300
Miami, FL 33131
Telephone: 305.371.6421

Laurie Webb Daniel (pending admission pro
hac vice)
 Georgia Bar No. 204225
Nicholas R. Boyd (pending admission pro hac
vice)
 Georgia Bar No. 849842
HOLLAND & KNIGHT LLP
1180 West Peachtree Street NW, Suite 1800
Atlanta, Georgia 30309
Telephone: 404.817.8500
Facsimile: 404.881.0470
laurie.daniel@hklaw.com
nicholas.boyd@hklaw.com

*Counsel for Philip Esformes*