Exhibit 2

Nos. 19-13838, 19-14874

_____

In the

# United States Court Of Appeals

For the

# Eleventh Circuit

_____

United States of America,

*Plaintiff/Appellee*

vs.

Philip Esformes,

*Defendant/Appellant*

_____

On Appeal from the United States District Court
Southern District of Florida

_____

# Supplemental Brief of Philip Esformes Addressing Impact of Clemency on this Appeal

Laurie Webb Daniel
Nicholas Boyd
HOLLAND & KNIGHT LLP
1180 West Peachtree Street NW
Suite 1800
Atlanta, GA 30309
404-817-8533
laurie.daniel@hklaw.com
nicholas.boyd@hklaw.com

*Co-counsel for Defendant-Appellant Philip Esformes*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Plaintiff-Appellant Philip Esformes

submits the following Certificate of Interested Persons and Corporate Disclosure

Statement pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and

Rules 26.1-1 and 26.1-2 of the Rules of the United States Court of Appeals for the

Eleventh Circuit:

Adirhu Associates LLC

ADME Investment Partners LTD

ALF Holdings Inc.

Almovea Associates LLC

Arteaga-Gomez, Rossana

Ashcroft, John D.

Ayintove Associates LLC

Baker Botts, LLP

Barcha, Odette

Benczkowski, Brian A.

Bernstein, Daniel

Black, Roy

Boyd, Nicholas

Bradylyons, Drew

Carmouze, Arnaldo

Centers for Medicare and Medicaid Services

Christianson, Jennifer

Coffey, Kendall

Courtyard Manor Retirement Investors Ltd.

Courtyard Manor Retirement Living, Inc.

Crane, Paul T.

Crockett, Jeffrey

Cronan, John P.

Daniel, Laurie Webb

Descalzo, Marissel

Do Campo, Orlando

Eden Gardens LLC

Esformes, Philip

Fair Havens Center, LLC

Ferrer, Wilfredo A.

Flamingo Park Manor LLC

Freeh, Louis J.

Gonzales, Alberto R.

Goode, David

Gould, William

Grove, Daren

Hayes, James V.

Holland & Knight, LLP

Jene's Retirement Investors Ltd.

Jene's Retirement Living, Inc.

Kabirhu Associates LLC

Keller, Scott

Kuntz, Robert J.

La Hacienda Gardens LLC

Lake Erswin LLC

Lauderhill Manor LLC

Lehr, Alison Whitney

Lenard, The Hon. Joan A.

Locke, Ryan C.

Locke Law Firm, LLC

McFarlane, Ashlee

Medina, Allan J.

Meese III, Edwin

Meltzer, Ellen R.

Miner, Matthew S.

Morsey, LC

Mukasey, Michael B.

National Association of Criminal Defense Lawyers (NACDL)

Ogden, David W.

Orshan, Ariana Fajardo

Otazo-Reyes, The Hon. Alicia M.

Palchak, Jo Ann

Pasano, Michael S.

Perczek, Jackie

Quigley, Brendan

Rabbit, Brian C.

Rabin, Samuel J.

Rainbow Retirement Investors Ltd.

Rasco, Guy A.

Sanders, Jeremy R.

Scola, The Hon. Robert N. Jr.

Sefardik Associates, LLC

Shipley, John C., Jr.

Sierra ALF Management LLC

Smachetti, Emily M.

Sombuntham, Nalina

Srebnick, Howard M.

Srebnick, Scott

Starr, Kenneth W.

Takifhu Associates LLC

Tettlebaum, Harvey M.

The Pointe Retirement Investors, Ltd.

Thompson, Larry D.

Torres, The Hon. Edwin G.

Wagner, Catherine

Waxman, Seth P.

Weil, Amy Levin

Young, Elizabeth

The undersigned certifies that no publically held company has an interest in the outcome of this appeal.

*Signature on Next Page*

*/s/ Laurie Webb Daniel*
Laurie Webb Daniel
Nicholas Boyd
HOLLAND & KNIGHT LLP
1180 West Peachtree Street NW
Suite 1800
Atlanta, Georgia 30309
404-817-8533
laurie.daniel@hklaw.com
nicholas.boyd@hklaw.com

*Attorneys for Plaintiff-Appellant*
*Philip Esformes*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .......................................................................................1

STATEMENT OF FACTS ........................................................................3

ARGUMENT .............................................................................................7

I.    The Clemency Moots the Retrial and Sentencing Issues. ................7

II.   Because Esformes Has Served His Full Sentence as Commuted, any
      Retrial Is Barred by the Double-Jeopardy Clause. ..........................11

III.  Given the Clemency, a Retrial Would Be Vindictive Prosecution. .................14

CONCLUSION .........................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Warden*,
   958 F.3d 1072 (11th Cir. 2020) ....................................................7, 8, 9

*Blackledge v. Perry*,
   417 U.S. 21 (1974)........................................................................14, 15

*New Hampshire v. Maine*,
   531 U.S. 742 (2001)............................................................................16

*North Carolina v. Pearce*,
   395 U.S. 711 (1969)............................................................................14

*Yeager v. United States*,
   557 U.S. 110 (2009)......................................................................12, 13

**Other Authorities**

Fifth Amendment ....................................................................................12

Margaret Colgate Love, *The Twilight of the Pardon Power*, 100 J.
   Crim. L. & Criminology 1169, 1175–76 (2010) .................................8

ii

## INTRODUCTION

On December 22, 2020, Philip Esformes was serving a 20-year sentence—with this appeal pending—when President Trump granted him clemency with approval from the highest level of the Department of Justice ("DOJ"). The clemency warrant observed that "the ends of justice do not require the said Philip Esformes to remain confined . . . , and the safety of the community will not be compromised if he is released." Supplemental Appendix ("S.A.") Tab A. It went on to "commute the 240-month sentence imposed upon said Philip Esformes to time served[,] leav[ing] intact and in effect the remaining three year term of supervised release with all its conditions, the unpaid balance of his $5,530,207 restitution obligation, if any, and all other components of the sentence." *Id*. The President directed the DOJ Pardon Attorney and the Bureau of Prisons to effect immediate release of Esformes, which they did. S.A. Tabs C, C-1. The White House also issued a statement explaining that this is a merits-based clemency:

> This commutation is supported by former Attorneys General Edwin Meese and Michael Mukasey, as well as former Deputy Attorney General Larry Thompson. In addition, former Attorneys General Edwin Meese, John Ashcroft, and Alberto Gonzalez, as well as other notable legal figures such as Ken Starr, have filed in support of his appeal challenging his conviction on the basis of prosecutorial misconduct related to violating attorney-client privilege.

S.A. Tab B at 6–7. Indeed, Attorney General Barr himself approved the terms of this clemency. S.A. Tab D-1 at 1 (filed under seal).

The text and context of this grant of clemency reveal an intent to end the prosecution and incarceration of Esformes for the conduct at issue in this case, but leave intact the monetary penalties and terms of supervised release. What this means is that the clemency warrant has mooted some of the relief requested by Esformes' appeal, such as a new trial or new sentence due to procedural, structural, and substantive error. The clemency even bars any attempt to further prosecute Esformes on Count One, the hung count mentioned in Esformes' opening appellate brief, as Count One alleges conduct for which Esformes already has been convicted in other counts and punished by the sentence he now has fully served due to the commutation. Simply put, there can be no retrial of Philip Esformes.

Other relief remains for this Court to consider, however. Should the indictment be dismissed with prejudice due to prosecutorial misconduct as argued by the amici, which would eliminate the convictions? Alternatively, should Esformes be acquitted of the healthcare-related charges with vacatur of the $5 million restitution order because there was no proof of loss? Do the money laundering counts and also the $38 million forfeiture judgment fail as a matter of law? All this is discussed further below but oral argument also will aid the Court in its assessment of the impact of the clemency warrant on this appeal and the other issues raised by Esformes' opening brief.

## STATEMENT OF FACTS

The facts underlying this appeal are set out in Esformes' opening appellate brief. In a nutshell, the Government accused Esformes of a billion dollar Medicare fraud but in the end could not prove a single instance of billing for services not rendered or not needed. *See* Op. Br. at 8–9. The Government could not convict on Count One, Conspiracy to Commit Health Care and Wire Fraud, which was hung. So the Government resorted to an untenable theory of guilt and recovery—that Esformes could be convicted of healthcare fraud because of the Government's speculation that about 1% of the patients at his skilled nursing facilities appeared to have a mental health issue as their primary diagnosis. *Id.* at 10–12. This theory was based on the opinion of a purported but unqualified expert and is contradicted by unrefuted fact—every mental health patient at Esformes' facilities had received an independent certification of medical necessity under the auspices of a state agency pursuant to Medicare regulations. *Id.* at 11–12. Esformes, however, was convicted of and sentenced on healthcare-related counts anyway, and ordered to pay more than $5 million in restitution on top of a 20-year prison term. *Id.* at 10–12. He also was convicted of money laundering on counts he claims fail as a matter of law— and subjected to a $38 million forfeiture judgment he says should be overturned for that and other reasons. *Id.* at 11–12. Even worse, the entire proceedings below were tainted by serious prosecutorial misconduct. *Id.* at 4–7, 16–40.

3

There are additional facts, however, that are important for the Court to consider when assessing the impact of the Grant of Clemency to Esformes by the President on December 22, 2020.

*The Clemency Request.*  The allegations of serious prosecutorial misconduct in this case raised concerns among numerous high-ranking former government officials, who filed a brief urging that Esformes' prosecution be dismissed with prejudice.  *See* Brief of Former High-Ranking Department of Justice Officials as *Amici Curiae* in Support of Appellant. Three of these officials—former Attorneys General Edwin Meese and Michael Mukasey and former Deputy Attorney Larry Thompson—also submitted a Memorandum to the President. *See* S.A. Tabs D & D-1. The Memorandum, which discussed the issues of prosecutorial misconduct in this case and attached the amicus curiae brief, reported that Attorney General Barr supported Esformes' clemency application and had suggested a commutation to a sentence of five years (which, with good-time credits, Esformes had already served).  S.A. Tab D-1 at 2, 6 (filed under seal).

*The Clemency Warrant.* On December 22, 2020, President Trump issued an "Executive Grant of Clemency" to Esformes. S.A. Tab A. In this clemency warrant, the President found that "the ends of justice do not require [Esformes] to remain confined" and that "the safety of the community will not be compromised if he is released." *Id.* The President commuted Esformes' sentence to "time served,"

4

"le[aving] intact and in effect" Esformes' three-year term of supervised release and Esformes' restitution obligation. *Id.* The President directed the Bureau of Prisons to "effect the immediate release of [Esformes] with all possible speed." *Id.*

**The White House Statement.** The White House press release announcing Esformes' grant of clemency specifically referred to the amicus brief and its concern regarding prosecutorial misconduct. S.A. Tab B at 6–7.

**The DOJ's Implementation of the Warrant.** The Pardon Attorney of the DOJ implemented the clemency warrant, *see* S.A. Tab C-1, and the Bureau of Prisons understood the President's directive to "effect the immediate release" of Esformes—he was released that same day. S.A. Tab C, ¶ 4.

**The Love Declaration.** Margaret Love, the United States Pardon Attorney from 1990 through 1997, and a widely respected authority on executive clemency, reviewed the clemency warrant and associated documents. *See* S.A. Tab E. Given the President's order of Esformes' immediate release, his specific preservation of the restitution and supervised release components of Esformes' sentence without a corresponding preservation of the hung counts, and other contextual factors, Ms. Love concluded that the intended effect of the clemency warrant was to end Esformes' prosecution with no possibility of retrial or further imprisonment. *Id.* ¶ 19.

*The Vindictive Prosecution.* In clear contravention of the President's intent that Esformes' prosecution be discontinued and Esformes be immediately released, the trial-team prosecutors—the same prosecutors who already were irredeemably tainted by their violations of Esformes' attorney-client privilege and injection of their own personal interests into this case, *see* Op. Br. at 28–34—announced their intent to retry Esformes on Count One and other hung counts, DE#1565 at 3–4.

This announcement reflects a continuing pattern of prosecutorial vindictiveness. Although not convicted on the principal hung count, Count One, Esformes *has already been convicted and punished for the conduct it alleged as requested by these prosecutors after the first trial. See* DE#1362 at 2, 5–6 (arguing for sentence based on health care fraud based on convictions on other counts even though the jury hung on the fraud count); DE#1439 at 140 ("In imposing this sentence, I am relying on the jurors' unanimous finding . . . that the defendant committed conspiracy to commit health care fraud."). Apparently unaware of the Attorney General's support for Esformes' clemency, DE#1574 at 33, these prosecutors also have tried to circumvent the President's release order by requesting onerous conditions including an additional $10 million of bonds, home detention with electronic monitoring, no Internet or cellphone use, and landline use limited to a specified list of people—and with "immediate custody" if their list of conditions was impossible to meet. DE#1574 at 14, 20–21.

6

## ARGUMENT

### I.   The Clemency Moots the Retrial and Sentencing Issues.

This Court recently articulated the guiding principles for assessing a grant of clemency. *See Andrews v. Warden*, 958 F.3d 1072 (11th Cir. 2020). In *Andrews*, a prisoner argued that President Obama's commutation of his life sentence should include credit for a prior 37-month prison term he already had completed. *Id.* at 1076. The Court, however, rejected that interpretation based on the text of the clemency warrant and surrounding circumstances, including the application for clemency and the way the clemency was implemented by the Bureau of Prisons ("BOP"). *Id.* at 1076–1081.

> The Court began its analysis noting the President's pardon power.
>
> The Constitution grants the Executive the "Power to grant Reprieves and Pardons for Offences against the United States." U.S. Const. art. II § 2, cl. 1. Because the greater power ordinarily includes the lesser power, the President's pardon power includes the authority to commute a sentence to a lesser punishment. . . . So long as the President does not use the power to pardon to violate another provision of the Constitution, Congress and the Judiciary have no power to interfere with its exercise.

*Id.* at 1076. The Court also observed that the Attorney General through the BOP has the responsibility of administering a prison sentence. *Id.* "In other words, the Executive commutes the sentence that it executes. And again, absent a violation of the Constitution, the commutation order is insulated from congressional and judicial interference." *Id.*

7

Citing Margaret Colgate Love, *The Twilight of the Pardon Power*, 100 J. Crim. L. & Criminology 1169, 1175–76 (2010), the Court recognized that the Attorney General traditionally was the main advisor to the President on issues of clemency. *Andrews*, 958 F.3d at 1076–1077. Today, the President still relies on the Attorney General and Office of the Pardon Attorney to administer a clemency order. *Id*. at 1078. And the President is presumed to speak in terms that subordinates understand. *Id*. at 1081.

In *Andrews*, the Court upheld the BOP's reasonable understanding of the plain language of the clemency order. 958 F.3d at 1079. Here, the Court also should defer to BOP's treatment of the Esformes clemency order as ending Esformes' incarceration subject only to the conditions of supervised release that were to apply once Esformes had completed his sentence. This is what President Trump said in his Grant of Clemency; it is what the DOJ's Pardon Attorney implemented; and it is what the BOP understood. *See* S.A. Tab A ("direct[ing] the Bureau of Prisons, upon receipt of this warrant, to effect the immediate release of the said Philip Esformes, with all possible speed."); *see also* S.A. Tab C ¶ 4; S.A. Tab C-1 at 2 (letter from Pardon Attorney informing Esformes of his release without indicating any possibility of retrial or further pretrial detention).

In *Andrews*, the Court also looked to the prisoner's application for clemency when construing the scope of the commutation. *Andrews*, 958 F.3d at 1079. And

8

the clemency request submitted on Esformes' behalf fully supports the view that President Trump intended to end Esformes' incarceration, precluding any further prosecution for the conduct at issue in this case. Indeed, the clemency request was approved by the top DOJ official, Attorney General Barr, S.A. Tab D-1 at 1, and its concluding paragraph stressed that "Esformes has already served . . . ample punishment for what he actually did." *Id.* at 6.

Again, in *Andrews*, this Court cited to the work of Margaret Colgate Love as an authority on clemency issues. *Andrews*, 958 F.3d at 1077. Ms. Love has reviewed the Esformes clemency warrant and related documents and has studied President Trump's clemency practice in general. Her observations, therefore, can aid the Court's analysis here. See S.A. Tab E. Ms. Love's Declaration explains, inter alia:

> Notably, while the clemency warrant specifically listed several aspects of Esformes' sentence that would remain intact notwithstanding the commutation of his sentence, specifically the restitution award and the conditions of supervised release ordered by the trial judge to follow Esformes' completion of his prison term, the clemency warrant did not indicate that any other part of the case would remain pending. Instead, by directing the immediate release of Esformes, the warrant had the effect of setting aside the pretrial detention order under which Esformes had been incarcerated for years before his trial. The fact that the commutation order set aside the pretrial detention order indicates that the President intended to put an end to Esformes' punishment in the case.
>
> It is also significant in interpreting the scope of the commutation grant that the President's action appears to have taken into consideration the merits of Esformes' pending appeal. The White House released a

9

statement accompanying the grant of clemency to Esformes that expressly referred to the amicus curiae brief that "former Attorneys General Edwin Meese, John Ashcroft, and Alberto Gonzalez, as well as other notable legal figures such as Ken Starr, have filed in support of [Esformes'] appeal challenging his conviction on the basis of prosecutorial misconduct related to violating attorney-client privilege." The Memorandum submitted to the President also discussed the amicus curiae brief and detailed its concerns over prosecutorial misconduct.

In light of the statement of the White House describing the circumstances of the Esformes clemency and the Memorandum submitted to the President by the former Attorneys General and Deputy Attorney General, the commutation is best understood as intended to bring to an end Esformes' prosecution, leaving intact only the monetary provisions of Esformes' sentence and the previously ordered supervised release.

S.A. Tab E ¶¶ 16–18 (citation omitted; alteration in original).

In other words, *expressio unius est exclusio alterius*. The President could have carved out the hung counts from the clemency warrant but—though he carved out other aspects of the case—he did not preserve the possibility of any retrial. And the possibility of a retrial makes no sense given the context of the clemency request and the White House statement explaining the warrant. A review of those and other materials in Esformes' supplemental appendix leads to the inescapable conclusion that the clemency here was intended to eliminate any possible further incarceration or prosecution of Philip Esformes. And that conclusion moots the potential retrial and resentencing remedies addressed in Esformes' opening appellate brief.

II.   **Because Esformes Has Served His Full Sentence as Commuted, any Retrial Is Barred by the Double-Jeopardy Clause.**

It also is reasonable to conclude that Attorney General Barr's recommendation of clemency and the warrant signed by the President took into consideration the fact that the trial court, at the prosecution's request, sentenced Esformes to 20 years in prison based on the jury's conviction on several counts where the trial court found that the jury explicitly found Esformes guilty of the same conduct alleged in the hung Count One—"conspiracy to commit health care fraud and wire fraud." *See* DE#1245 at 5–11 (Counts 18 et seq.); *see also* DE#1365 at 74–75 ("I do agree with the government that the proper guidelines to use is using the underlying offense of health care fraud. I think the jury found beyond a reasonable doubt that the defendant committed conspiracy to commit health care fraud and the substantive offense of health care fraud in its findings supporting their guilty verdict as to the money laundering.").

Thus, because the conduct alleged in the hung Count One was integral to the conviction and sentence imposed on these other counts, the commutation of that sentence necessarily covered the conduct alleged in Count One. The President and the Attorney General must have understood this because the clemency Memorandum submitted to the President pointed out that the Government could not convict on Count One, S.A. Tab D-1 at 3, and the White House statement showed that the President was aware of Esformes' appeal, which made clear that

11

the jury had hung on Count One. See S.A. Tab B at 7; *see also* Op. Br. at 45 ("Esformes submits he is entitled to an acquittal on the counts involving healthcare services, including Count One which resulted in a hung-jury.").

Accordingly, given the warrant's order of immediate release despite the apparent knowledge of the hung count, it is reasonable to conclude that the warrant extinguished any remaining potency of the hung count. Any other conclusion makes no sense because it would allow a future prosecution for conduct that already had been punished through the initial sentence, as commuted by the President. Indeed, regardless of the President's intent, now that Esformes' sentence has been commuted and he has thus been fully punished for this conduct, any subsequent retrial and resentencing would be barred by the Double Jeopardy Clause. *See Yeager v. United States*, 557 U.S. 110, 118, 121–123 (2009).

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." *Id*., 557 U.S. at 117. The prohibition applies equally to fines and imprisonment. *Id*. And it serves the interest of "finality of judgments" as well as preventing the embarrassment, expense and ordeal of being subjected to multiple trials based on the same conduct. *Id*. at 118.

*Yeager* made clear that a hung count is a "non-event" in a Double Jeopardy analysis. *Id*., 557 U.S. at 118, 121, 122–23. The Double Jeopardy Clause precludes

the Government from relitigating any issue that was necessarily decided by a jury's verdict in a prior trial. *Id.* at 119 (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). "To identify what the jury necessarily determined at trial, courts should scrutinize a jury's decisions, not its failures to decide." *Id.* at 122. And if the jury necessarily decided a critical issue for which the defendant has been punished, the Double Jeopardy Clause prohibits a second punishment for that same conduct even if there is a hung count that might appear to be inconsistent. *See id.* at 123–25. This result is demanded by the two interests of the Double Jeopardy Clause—to promote the finality of verdicts and the need to avoid punishing the same conduct twice. *See id.* at 118–19, 125.

Under *Yeager*, the Double Jeopardy Clause prevents the Government from relitigating Count One because—according to the prosecutors themselves—the jury's convictions on the money laundering counts necessarily, indeed explicitly, found there was health care fraud and wire fraud. Moreover, the trial judge expressly sentenced Esformes to a 20-year prison term because "the jury found beyond a reasonable doubt that the defendant committed conspiracy to commit health care fraud." DE#1365 at 74–75. And the fact that the jury hung on Count One is meaningless; any apparent inconsistency between that hung count and the jury's finding Esformes guilty of that conduct in other counts has no place in this Double Jeopardy analysis. *Yeager*, 557 U.S. at 124–25.

In sum, because Esformes' sentence already punished him for the jury's finding of conspiracy to commit health care fraud—and Esformes has already served that sentence as commuted—Esformes cannot be retried or resentenced. Esformes' days of incarceration are done, and the only remaining issues in this appeal are: (1) whether Esformes' convictions should be set aside because of the prosecutorial misconduct, the failure of the government to prove its case, or counts that are not actionable; and (2) whether the restitution award and the forfeiture judgment should be set aside for the reasons stated in the opening appellate brief.

## III.    Given the Clemency, a Retrial Would Be Vindictive Prosecution.

The Due Process Clause prohibits vindictive prosecutions. *See Blackledge v. Perry*, 417 U.S. 21 (1974); *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). A prosecution is presumed to be vindictive if a prosecutor seeks to subject a defendant to increased punishment following the defendant's successful challenge to an initial sentence, whether by appeal or collateral means such as a commutation. *See Blackledge*, 417 U.S. at 28. That is precisely what Esformes faces now.

Following the commutation of Esformes' sentence and his release from prison, the trial-team prosecutors announced, at a routine status conference, their intent to retry Esformes on Count One. DE#1565 at 3–4. They made this

14

announcement even though their conflict-of-interest is a focal point of this appeal and has been condemned by the powerful amicus curiae brief filed by the former high-level DOJ officials. The trial-team prosecutors made this announcement even though the White House statement makes clear that the Esformes commutation was influenced by the amicus brief condemning the misconduct of this very same trial-team. It is remarkable that these prosecutors have threatened further prosecution under these circumstances.

This continuing pattern of prosecutorial misconduct should not be tolerated for several reasons. First, Esformes was entitled to but denied a disinterested prosecution, as the trial-team prosecutors injected structural error into the case when they put their personal self-interest ahead of that of the criminal defendant— not to mention their repeated disregard for Esformes' attorney-client privilege. This point is addressed in the first argument made in Esformes' opening brief and discussed in more depth in the amicus brief filed by the former DOJ officials. And there is nothing disinterested about the announcement of the trial-team prosecutors saying they would try to further prosecute and imprison Esformes on Count One now that the President has commuted Esformes' sentence. To seek an additional sentence on top of the initial 20-year sentence just because the President granted Esformes clemency is the epitome of vindictive prosecution, as recognized by the U.S. Supreme Court. *See Blackledge*, 417 U.S. at 28.

15

Second, the vindictiveness of the trial-team is exposed by the fact that they were the ones who sought the initial 20-year sentence in the first place based on the jury's explicit finding of a conspiracy to commit fraud. In other words, having obtained that ruling in their favor, the prosecutors are judicially estopped from taking an inconsistent position, i.e., that further prosecution is not barred by the Double Jeopardy Clause. *See New Hampshire v. Maine*, 531 U.S. 742, 750–51 (2001). And because these prosecutors already have subjected Esformes to punishment for this same conduct—conduct that was essential to convictions on other counts—the prosecutors' announced intent to further prosecute Esformes for this conduct not only violates the Double Jeopardy clause but the Due Process Clause as well, as it is patently vindictive.

Third, the vindictiveness of these prosecutors has reached a new, even more shocking level. At a hearing following the status conference where the prosecutors announced their intent to retry Esformes now that his sentence has been commuted, the trial-team prosecutors asked the court for onerous conditions of release that are contrary to the explicit terms of the clemency warrant and suggested that the trial court should reincarcerate him if he could not meet them. The President directed the BOP to immediately release Esformes with all possible speed subject only to those pre-existing conditions there were to apply once Esformes completed his sentence, which effectively occurred when it was commuted. S.A. Tabs A, C.

16

Instead of honoring the direction of the President and the apparent intent of Attorney General Barr, however, these prosecutors boldly asked the trial judge to subject Esformes to home confinement coupled with electronic monitoring, denial of access to the Internet, prohibition of cell phone use, and other needless restrictions, including an additional $10 million in bonds on top of the $30 million of Esformes' assets the Government currently is holding. DE#1574 at 20–21. And they did so despite the express finding in the clemency warrant—as implemented by the DOJ's Pardon Attorney—that Esformes is not a danger to society. They also asked for these outrageous post-clemency conditions of release despite knowing that Esformes had never attempted flight during the four months following his release from prison, and knowing that his probation officer had confirmed at the very same hearing that Esformes had demonstrated good behavior after his release. DE#1574 at 22. Vindictive is the only word that adequately describes this conduct.

In sum, the commutation of Esformes' sentence has had a further impact on this appeal because it has prompted the trial-team prosecutors to engage in even more egregious misconduct at a time when their conflict-of-interest already is under scrutiny. This continuing pattern of prosecutorial abuse further calls for the remedy advocated by the former United States Attorneys General, Solicitors General, Deputy Attorneys General and FBI Director who filed the amicus curiae brief—the indictment should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, retrial and resentencing are no longer remedies for the trial court errors. The Court, however, should consider whether the indictment should be dismissed with prejudice or in the alternative whether Esformes should be acquitted of the healthcare-related charges, and whether the money laundering counts fail as a matter of law. And, in any event, the restitution order and the forfeiture judgment cannot stand for the reasons discussed in Esformes' opening brief.

Respectfully submitted this May 17, 2021.

> _____/s/ Laurie Webb Daniel___
> Laurie Webb Daniel
> Nicholas Boyd
> HOLLAND & KNIGHT LLP
> 1180 West Peachtree Street NW, Suite 1800
> Atlanta, Georgia 30309
> 404-817-8533
> laurie.daniel@hklaw.com
> nicholas.boyd@hklaw.com
>
> *Co-counsel for Defendant-Appellant Philip*
> *Esformes*

## STATEMENT OF COMPLIANCE

1.      This brief complies with the word count specified by this Court's order of January 27, 2021 authorizing supplemental briefing because it contains 4,281 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14 point font.

May 17, 2021

*/s/ Laurie Webb Daniel*
Laurie Webb Daniel

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2021, I filed a copy of the foregoing brief with the Clerk of Court using the Appellate CM/ECF system, which distributes it to all counsel of record.

_____ */s/ Laurie Webb Daniel*_____
Laurie Webb Daniel