UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-Cr-20549-Scola(s)(s)(s)

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

PHILIP ESFORMES,

        Defendant.
_____/

re:

SHERRI ESFORMES,

        Third-Party Petitioner.
_____/

### STIPULATION AND SETTLEMENT AGREEMENT
### REGARDING CERTAIN ASSETS IN THE FIRST PRELIMINARY
### ORDER OF FORFEITURE OF SUBSTITUTE PROPERTY

      The United States of America (the "United States"), by and through the undersigned Assistant United States Attorney, and Third-Party Petitioner, Sherri Esformes, with undersigned counsel (the "Third-Party Petitioner") (collectively, the "Parties"), hereby agree to stipulate and settle their interest in property further described herein according to the following terms of this Stipulation and Settlement Agreement:

      1.    The Parties agree to resolve this matter consistent with the sound policy favoring settlement of legal disputes without resort to unnecessary litigation.

2. The Court has jurisdiction over the Parties and over the subject matter of this Stipulation and Settlement Agreement (the "Agreement").

3. On July 19, 2018, a federal grand jury sitting in the Southern District of Florida returned a thirty-six (36) count third superseding true bill of Indictment [ECF No. 869] (hereinafter, the "Third Superseding Indictment") charging Philip Esformes (the "Defendant"), among others, with the following offenses: Conspiracy to Commit Healthcare Fraud/Wire Fraud)(18 U.S.C. § 1349 (Count 1); Healthcare Fraud (18 U.S.C. § 1347) (Counts 2-3); False Statements Relating to Healthcare Matters (18 U.S.C. § 1035(a)(2)) (Counts 4-5); Conspiracy to Pay/Receive of Healthcare Kickbacks (18 U.S.C. § 371) (Count 6); Receipt of Healthcare Kickbacks) (42 U.S.C. § 1320a-7b(b)(1)(A)) (Counts 7-9); Payment of Healthcare Kickbacks (42 U.S.C. § 1320a-7b(b)(2)(A)) (Counts 10-15); Money Laundering Conspiracy (18 U.S.C. § 1956(h)) (Count 16); Money Laundering (18 U.S.C. § 1956(a)(1)(B)(i)) (Counts 17-30); Conspiracy to Commit Federal Program Bribery (18 U.S.C. § 371) (Count 31); Conspiracy to Commit Federal Program Bribery and Honest Services Wire Fraud (18 U.S.C. § 371) (Count 32); Federal Program Bribery (18 U.S.C. § 666)(Count 33); Obstruction of Justice (18 U.S.C. § 1503) (Count 34); Conspiracy to Make False Statement Relating to Healthcare Matters (18 U.S.C. § 371) (Count 35); and Obstruction of Justice (18 U.S.C. § 1503) (Count 36). *See* Third Superseding Indictment, ECF No. 869.

4. On April 5, 2019, the empaneled jury in the criminal case rendered its verdict finding the Defendant guilty of the offenses charged in Counts 6, 8-13, 16, 18-21, 25-28, 30-32, and 34 of the Third Superseding Indictment. *See* Verdict, ECF No. 1245.

5. On April 9, 2019, the Court conducted a bifurcated forfeiture proceeding pursuant to Fed. R. Crim. P. 32.2(b)(1)(A). *See* Minute Entry, ECF No. 1251. Upon conclusion of that proceeding

and subsequent deliberation, the same empaneled jury in the criminal case rendered its special verdict finding that certain of the Defendant's business interests listed in the Forfeiture Allegations of the Third Superseding Indictment were property involved in his money laundering conspiracy of which he was found guilty, or traceable to such property. *See* Forfeiture Verdict, ECF No. 1263, pp. 8-17. However, the empaneled jury did not reach a special verdict regarding whether the United States established the requisite nexus between the other assets listed in the Forfeiture Allegations of the Third Superseding Indictment and the Defendant's crimes. *See id.*; Fed. Crim. P. 32.2(b)(5).

6. On November 21, 2019, the Court imposed a forfeiture money judgment for $38,700,795 (US) (the "Forfeiture Money Judgment") against the Defendant as part of his sentence in the underlying criminal case. *See* Order of Forfeiture, ECF No. 1455; Amended Judgment, ECF No. 1459.

7. On August 4, 2021, the Court entered its First Preliminary Order of Forfeiture of Substitute Property [ECF No. 1583] ("Preliminary Order") pursuant to 21 U.S.C.§ 853(p) forfeiting the following as assets as substitute property in partial satisfaction of the Forfeiture Money Judgment (collectively, the "Substitute Property"):

    (a) <u>Bank Accounts</u> ("BA") (collectively, the "Bank Accounts"): All principal, deposits, interest, dividends, and/or any other funds credited to the following bank accounts:

        (BA1) Account number 898049003513 held at Bank of America, N.A. in the name of Sherri Beth Esformes and Philip Esformes;

        (BA2) Account number 003676209546 held at Bank of America, N.A. in the name of Philip Esformes and Julie Betancourt;

        (BA3) Account number 102747 held at 1st Equity Bank, N.A. in the name of Sherri Esformes, Jason Tennenbaum, and Philip Esformes;

3

(BA5)  Account number 204735 held at 1st Equity Bank, N.A. in the name of Philip Esformes Inc. (c/o Norman Knopf);

(BA7)  Account number 209882 held at 1st Equity Bank, N.A. in the name of Philip Esformes Inc. (c/o Norman Knopf);

(BA8)  Account number 312320 held at 1st Equity Bank, N.A. in the name of Philip Esformes Inc. Pension Plan & Trust;

(BA10) Account number 454362 held at 1st Equity Bank, N.A. in the name of Philip Esformes Inc. Pension Plan & Trust;

(BA14) Account number 1560024295 held at MB Financial Bank, N.A. in the name of Philip Esformes or Alvin Norman Knopf;

(BA16) Account number 1560025577 held at MB Financial Bank, N.A. in the name of Philip Esformes, Inc.;

(BA17) Account number 1560024473 held at MB Financial Bank in the name of Alvin Norman Knopf or Philip Esformes; and

(BA18) Account number 16021230 held at National Securities Bank, N.A. in the name of Philip Esformes Inc. Pension.

(b)　　Real Property ("RP") (collectively, the "Real Property"): Real property, together with all appurtenances, improvements, fixtures, easements, and attachments, therein and/or thereon, which are known and numbered as follows, or the remaining share of the net seller proceeds from any interlocutory sale of such assets ordered by the Court:

(RP1)  5077 N. Bay Road, Miami Beach, Florida 33140;

(RP2)  5069 N. Bay Road, Miami Beach, Florida 33140;

(RP3)  980 W. 48th Street, Miami Beach, Florida 33140;

(RP4)  180 E. Pearson, Unit 7201, Chicago, Illinois 60611;

4

(RP5) 6849-50 S. Clyde Avenue, Chicago, Illinois 60649; and

(RP6) 9427 Sawyer Street, Los Angeles, California 90035.

8. Notice of the criminal forfeiture was posted on an official government internet site (www.forfeiture.gov) for a period of thirty (30)-days from August 20, 2021, to September 18, 2021. *See* Decl. of Publication, ECF Nos. 1620, 1620-1; 21 U.S.C. § 853(n)(1); Fed. R. Crim. P. 32.2(b)(6).

9. Additionally, the United States either sent direct notice of the forfeiture to any person who reasonably appeared to be a potential claimant with legal standing to contest the forfeiture, or such person was on actual notice of the forfeiture. *See* Fed. R. Crim. P. 32.2(b)(6); *accord* 21 U.S.C. § 853(n)(1).

10.

10. On August 27, 2021, Third-Party Petitioner filed with the Court a Verified Petition [ECF No. 1597] claiming fifty percent (50%) ownership marital interest in the Substitute Property. *See* Verified Petition, ECF No. 1597.

11. On March 21, 2022, MSJ Family Trust, SMJ Family Trust, and RIW Family Trust filed with the Court separate petitions respectively claiming a one hundred percent (100%) ownership interest in RP3, RP2, and RP6. *See* Notices of Claim and Verified Petition, ECF Nos. 1634, 1635 and 1636.

12. Except for Third-Party Petitioner, MSJ Family Trust, SMJ Family Trust, and RIW Family Trust, no other person or entity has filed a petition claiming an ownership interest in the Substitute Property, and the statutory deadline for doing so has passed. *See* 21 U.S.C. § 853(n)(2).

13. In full settlement of all claims brought by Third-Party Petitioner as described herein, the Parties have agreed to settle, compromise, and otherwise resolve Third-Party Petitioner's claims to the Substitute Property according to the following terms:

(a) The United States agrees to the following (collectively, the "Settlement

Payment"):

 (1) The United States shall remit 50% of the funds seized from BA1 to Third-Party Petitioner.

 (2) The United States shall remit 100% of the funds seized from BA3 to Third-Party Petitioner.

 (3) The United States shall remit 14% of the funds seized from BA18 to Third-Party Petitioner.

 (4) The United States shall release 50% of the net seller proceeds derived from the prospective interlocutory sale of RP1 as further described in paragraph 18, below.

 (5) The United States shall not forfeit RP4 and shall release any restraint or blemish (*lis pendens*) on its title accordingly.

(b) In exchange for the Settlement Payment, Third-Party Petitioner agrees that she shall withdraw the Verified Petition [ECF No. 1597] with prejudice to re-file and shall waive any claim or interest she may have or could have brought relating to the Substitute Property.

(c) Additionally, Third-Party Petitioner agrees on behalf of herself, her representatives, agents, and assigns that the following property (collectively, the "Final Substitute Property") shall be finally forfeited to and shall vest in the United States for disposition according to law:

 (1) All the remaining funds in the United States' custody from BA1 and BA18 after the release of the above-specified proportions;

 (2) BA2, BA5, BA7, BA8, BA10, BA14, BA16, and BA17;

 (3) All remaining funds from the net seller proceeds derived from the interlocutory sale of RP1 as further described in paragraph 18, below; and

    (4)  RP5.

14. Third-Party Petitioner agrees to assist the United States and cooperate fully in the forfeiture proceedings involving the Final Substitute Property.

15. The United States shall remit the Settlement Payment relating to BA1, BA3, and BA18 in accordance with reasonable instructions provided by Third-Party Petitioner's counsel.

16. With respect to the interlocutory sale of RP1, the Parties agree to the following:

 (a) The Parties agree that no later than within ninety (90) days of the effective date of this Agreement, Third-Party Petitioner shall cause RP1 to be listed for sale with an independent listing agent and/or broker to solicit offers for its purchase for a period of no more than three hundred sixty (360) days.

 (b) The Parties agree that Third-Party Petitioner shall not be related in any way, financially or otherwise, to the listing agent and/or the broker, nor shall she derive any direct benefit from using the listing agent and/or broker to list RP1 for sale.

 (c) The Parties agree that the maximum total broker's fees allowed for the sale of RP1 shall be no greater than six percent (6%).

 (d) The Parties agree that RP1 shall not be sold for less than its estimated fair market value as of the date of execution for a proposed purchase and sale agreement as determined by an independent appraiser.

 (e) The Parties agree that upon receipt of an offer to purchase RP1, Third-Party Petitioner, through her undersigned counsel, shall provide such offer to the United States in writing within 48 hours of receipt, which the United States shall review and consider determining whether the amount as the offered purchase price for RP1 is consistent with its then-fair market value as determined by an independent appraiser. At that same time, Third-Party Petitioner shall also provide an affidavit attesting that she is not related in any way, financially or otherwise, to the proposed Buyer and that the proposed sale of RP1 is an arm's

length transaction. The United States shall respond to the Third-Party Petitioner within forty-eight (48) hours and failure means that the United States accepts the offer to purchase. The Parties agree that acceptance of an offer to purchase RP1 is contingent upon United States approval.

(f) If the Parties agree to accept the offer, then Third-Party Petitioner through her undersigned counsel shall promptly provide to the United States a copy of the TILA/RESPA Integrated Disclosures ("Settlement Statement") for the prospective sale for its review and consideration at least five (5) days prior to closing. The Parties agree that any legally valid mortgage, lien, fee, assessment, or other encumbrance that is recorded and/or perfected against RP1 shall be paid in full and shall be reflected on the Settlement Statement. Additionally, the Parties agree that the Settlement Statement is subject to United States approval.

(g) The Parties agree that upon closing of title to RP1, Third-Party Petitioner through her undersigned counsel shall cause to be delivered 50% of the net seller proceeds derived from the sale (as provided in the approved Settlement Statement) to the United States Marshals Service and that such proceeds shall be finally forfeited in lieu of RP1.

(h) The Parties agree that if the United States does not approve an offer to purchase RP1 consistent with subparagraph (e), above, within three hundred sixty (360)-days of RP1 being listed for sale pursuant to subparagraph (a), above, then the Parties agree that the United States Marshals Service shall have the right to take custody of RP1 to effectuate its interlocutory sale in accordance with applicable law and rules and that, as provided herein, the United States shall thereafter release 50% of the net seller proceeds derived from the interlocutory sale of RP1 to Third-Party Petitioner.

17. The Parties agree to bear their own attorney's fees, costs, and expenses incurred in or

related to the Substitute Property in this action.

18. Third-Party Petitioner on behalf of herself, her representatives, agents, and assigns, hereby releases, discharges and holds harmless the United States, and all its agents, employees, and other persons acting on its behalf, from any and all actions, claims and/or demands of whatever kind that might now exist or hereafter arise in connection with any matter relating directly or indirectly to the detention, handling and disposition of the interests in the Substitute Property pursuant to this Agreement except as otherwise permitted to enforce the terms of this Agreement. "Substitute Property" includes the proceeds from any sale of the Substitute Property.

19. Third-Party Petitioner understands and agrees that by entering into the Agreement, she waives any right to further litigate her interest in the Substitute Property against the United States, and to petition for remission or mitigation of any proceeds.

20. The Parties agree to execute any additional documents necessary to implement the terms of the Agreement.

21. Third-Party Petitioner acknowledges that the Debt Collection Improvement Act of 1996, as codified at 31 U.S.C. § 3716 and administered through the Treasury Offset Program ("TOP"), requires the United States Treasury to offset federal payments to collect certain delinquent debts owed by a payee to the United States, a United States agency, or a state. Accordingly, Third-Party Petitioner acknowledges that the amount of the Settlement Payment may be reduced by the amount of any such delinquent debt that the United States Treasury is required to collect through TOP.

22. The Parties agree that the Court shall retain jurisdiction in this action for the purpose of enforcing the terms of the Agreement.

23. The Parties agree that the Agreement may be executed and delivered in any number of counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument. A facsimile of a signature shall have the

same legal effect as an originally drawn signature.

24. The Parties acknowledge that this Agreement is subject to the requisite approval authority as provided by the Department of Justice.

25. The effective date of this Agreement is the date on which this Agreement is approved by the requisite approval authority as provided by the Department of Justice.

26. Third-Party Petitioner and the United States acknowledge that they read and fully understand each provision of the Agreement and have freely and voluntarily signed the Agreement.

27. The Agreement contains the entire agreement between the Parties.

FOR THIRD-PARTY PETITIONER:

4/5/24
Date

Sherri Esformes
Third-Party Petitioner

4/5/24
Date

Jacqueline Arango, Esquire
Akerman LLP
Counsel for Third-Party Petitioner

FOR THE UNITED STATES OF AMERICA:

MARKENZY LAPOINTE
United States Attorney

_____
Date

By

Daren Grove
Assistant United States Attorney