UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 16-CR-20549-SCOLA

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

PHILIP ESFORMES, et. al.,

     Defendants.

vs.

SHERRI BETH ESFORMES,

     Petitioner/Claimant.

_____/

## VERIFIED PETITION/CLAIM
## OF PETITIONER/CLAIMANT SHERRI ESFORMES

Petitioner/Claimant, Sherri Beth Esformes ("Ms. Esformes"), hereby asserts, pursuant to Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. Section 853(n) and (p), her legal interest in the property the Court has ordered forfeited pursuant to that certain Second Preliminary Order of Forfeiture of Directly Forfeitable Assets, dated February 28, 2024 [**ECF No. 1733**] (herein after, the "*Second Order of Forfeiture*") and 18 U.S.C. § 982(a)(1), and as grounds therefore, Ms. Esformes states:

### FACTUAL AND PROCEDURAL HISTORY

1.  On July 19, 2018, a federal grand jury charged Defendant Philip Esformes ("Defendant"), among others, with various offenses related to federal health care and money laundering offenses. *See Third Superseding Indictment*, [**ECF No. 869**].

1

2. On April 5, 2019, the jury empaneled in this case found Defendant guilty of some but not all of the charges in the Third Superseding Indictment. *See Verdict*, [**ECF No. 1245**].

3. On April 9, 2019, during a bifurcated forfeiture proceeding pursuant to FED. R. CRIM P. 32.2(b)(1)(A), the empaneled jury found that certain of the Defendant's business interests listed in the *Third Superseding Indictm*ent and special forfeiture verdict form, were properties involved in the Defendant's criminal enterprises and were traceable to the same (collectively, the "First Directly Forfeitable Assets"). *See Minute Entry*, [**ECF No. 1251**].

4. The empaneled jury did not reach a special verdict – however – regarding whether the requisite nexus existed between other certain assets belonging to the Defendant and the Defendant's crimes. *See Forfeiture Verdict*, [**ECF No. 1263**]; FED R. CRIM. P. 32.2.(b)(5).

5. The Court imposed sentence on the Defendant on September 12, 2019 for the crimes of which the empaneled jury found Defendant guilty. *See Judgment*, [**ECF No. 1387**]. During the sentencing hearing, the Court ordered forfeited – subject to third party interests – all interest held by, on behalf of, or for the benefit of Defendant in the First Directly Forfeitable Assets, consistent with the special forfeiture verdict form. *See Paperless Entry*, [**ECF No. 1385**]. The Court entered a *Preliminary Order of Forfeiture of Directly Forfeitable Assets* [**ECF No. 1456**] on November 21, 2019, reflecting its ruling. On January 11, 2021, Ms. Esformes filed a verified claim [**ECF No. 1535**] asserting her superior interest in the First Directly Forfeitable Assets which claim was resolved by way of a Stipulation and Settlement Agreement [**ECF No. 1645, Exh. A**].

6. Additionally, November 21, 2019, the Court entered an *Order of Forfeiture* [**ECF No. 1455**], imposing a forfeiture judgment for $38,700,795.00 (the "Forfeited Money Judgment") against Defendant as part of his sentence.

79686899;1

7. The *Order of Forfeiture* allowed the United States by motion to forfeit property of the Defendant having a value not to exceed the outstanding balance of the forfeited $38,700,795.00. *See Order of Forfeiture*, [**ECF No. 1455**].  The United States subsequently sought forfeiture of certain substitute property consisting of bank accounts and real property (the "First Substitute Property"), pursuant to 21 U.S.C. § 853(p), to be applied toward this outstanding Forfeiture Money Judgment.

8. On August 4, 2021, the Court entered its *First Preliminary Order of Forfeiture of Substitute Property*, [**ECF No. 1583**] in which the First Substitute Property was forfeited to the United States, subject to third party interests.

9. On August 27, 2021, Ms. Esformes filed her petition claiming a 50% martial interest in the First Substitute Property. *See Esformes Petition*, [**ECF No. 1597**].  Additionally, three third-party petitioners filed claim petitions on behalf of (i) the MJS Family Trust [*see* **ECF No. 1634**], (ii) the SMJ Family Trust, [*see* **ECF No. 1635**], and (iii) the RIW Family Trust, [*see* **ECF No. 1636**] (collectively, the "Family Trusts"), claiming interest in certain real properties contained within the First Substitute Property.

10. Collectively, Ms. Esformes, the Family Trusts and the United States (the "Parties") reached separate agreements on the terms for settlement of the various petitions for the First Substitute Property. Upon approval by the Department of Justice, and after entry of a final order of forfeiture for the First Substitute Property, in accordance with the settlement of the Parties' petitions, the final value of the First Substitute Property forfeited to the United States which may be applied to

the Forfeiture Money Judgment was estimated to be approximately $14,000,000.00.[1]  *See Plea*

*Agreement*, [**ECF No. 1727**]; *see Second Order of Forfeiture*, at ¶ 14.

11. On February 22, 2024, the Court accepted the Defendant's guilty plea to Count 1 of the

Third Superseding Indictment – the empaneled jury did not previously find Defendant guilty of

Count 1 at trial.  *See Paperless Minutes*, [**ECF No. 1729**]; *Plea Agreement*, [**ECF No. 1727**].

12. As part of the *Plea Agreement*, Defendant admitted that certain personal property

constitutes, or is derived, directly or indirectly, from gross proceeds traceable to the offense charge

in Count 1 (hereinafter, the "Second Directly Forfeitable Assets")[2]:

      (a)     All interest held by, on behalf of, or for the benefit of the Defendant in the following

business entities and their assets, including, but not limited to, real property and financial

accounts, or the remaining share of the net seller proceeds from any interlocutory sale of

such assets ordered by the Court:

**Oceanside Extended Care Center**
    (BI1A) {space left intentionally blank}
    (BI1B) A.D.M.E. Real Estate LLC (property company), which is or was the titled
    owner of real property located at 550 9th Street, Miami Beach, Florida 33139.

**North Dade Nursing and Rehabilitation Center**
    (BI2A) {space left intentionally blank}
    (BI2B) 1255 LLC (property company), which is or was the titled owner of real
    property located at 1235 N.E. 135th Street, North Miami, Florida 33161.

**Harmony Health Center**[3]

---

[1] This amount can change depending on the monies obtained by the government after sale of such properties.

[2] The subparagraphs in the list of Second Directly Forfeitable Assets are numbered as they appear in the *Third Superseding Indictment*. **In addition to those assets, this Petition also covers any funds held by the U.S. Marshal's Service or the DOJ which have been obtained in connection with this case or the related civil case, *U.S. v. Esformes*, 16-cv-23148-RLR. Ms. Esformes is entitled to 50% of any and all of those assets or proceeds from the sale of assets.**

[3] It appears that this asset, as well as others, has been improperly transferred to an entity controlled/owned by Bent Philipson in 2019 well after the issuance of the Indictment identifying this asset, as well as others, as being subject to forfeiture. *See* article attached as Exhibit 16.

(BI3A) {space left intentionally blank}
(BI3B) GBRE Associates LLC (property company), which is or was the titled owner of real property located at 9820 N. Kendall Drive, Miami, Florida 33176.

**Courtyard Manor**
(BI4A) Courtyard Manor Retirement Living, Inc. (operating company).
(BI4B) Courtyard Manor Retirement Investors Ltd. (property company), which is or was the titled owner of real properties located at 130, 140, 150 and 160 W. 28th Street and 141 W. 27th Street, Hialeah, Florida 33010.

**Eden Gardens**
(BI5A) {space left intentionally blank}
(BI5B) Adar Associates LLC (property company), which is or was the titled owner of real property located at 12221 W. Dixie Highway, Miami, Florida 33161.

**Fair Havens Center**
(BI6A) {space left intentionally blank}
(BI6B) Fair Havens Real Estate, LLC (property company), which is or was the titled owner of real property located at 201 Curtiss Parkway, Miami, Florida 33166.

**Flamingo Park Manor**
(BI7A) {space left intentionally blank}
(BI7B) The Pointe Retirement Investors Ltd. (property company), which is or was the titled owner of real property located at 3051 E. 4th Avenue, Hialeah, Florida 33010.

**South Hialeah Manor**
(BI8A) Lake Erswin LLC (operating company).
(BI8B) Morsey LC (property company), which is or was the titled owner of real properties located at 240, 250 and 260 E. 5th Street, Hialeah, Florida 33010.

**Golden Glades Nursing and Rehabilitation Center**
(BI9A) Kabirhu Associates LLC (operating company).
(BI9B) 220 Sierra LLC (property company), which is or was the titled owner of real property located at 220 Sierra Drive, Miami, Florida 33179.

**Lauderhill Manor**
(BI10A) Lauderhill Manor, LLC (operating company).
(BI10B) 2801 Holdings LLC (property company), which is or was the titled owner of real property located at 2801 N.W. 55th Avenue, Lauderhill, Florida 33313.

**La Serena Retirement Living, formerly known as La Hacienda Gardens**
(BI11A) La Hacienda Gardens LLC (operating company).
(BI11B) Rainbow Retirement Investors Ltd. (property company), which is or was the titled owner of real properties located at 59, 67, and 75 E. 7th Street, Hialeah, Florida 33010.

**The Nursing Center at Mercy**
(BI12A) {space left intentionally blank}

**South Dade Nursing and Rehabilitation Center**
(BI13A) Takifhu Associates LLC (operating company).
(BI13B) 17475 LLC (property company), which is or was the titled owner of real property located at 17475 S. Dixie Highway, Miami, Florida 33157.

**North Miami Retirement Living**
(BI14A) Jene's Retirement Living, Inc. (operating company).
(BI14B) Jene's Retirement Investors Ltd. (property company), which is or was the titled owner of real property located at 1595 N.E. 145th Street, Miami, Florida 33161.

**Southern Winds Health**
(BI15A) Southern Winds Health, LLC (operating company).
(BI15B) 4225 LLC (property company), which is or was the titled owner of real property located at 4225 W. 20th Avenue, Hialeah, Florida 33012.

13. The Court imposed sentence on Defendant as to Count 1 of the *Third Superseding Indictment* on February 22, 2024 – as part of its sentence, the Court imposed forfeiture on the Second Directly Forfeitable Assets, and – upon the United States' unopposed *ore tenus* motion – likewise imposed forfeiture on one Red Hermes Birkin Purse (the "Birkin").

14. On February 28, 2024, the Court ordered the Second Directly Forfeitable Assets and the Birken forfeited to the United States. *See Second Order of Forfeiture.*

15. On August 1, 2024, the United States served Ms. Esformes and the undersigned direct notice of the Court's *Second Order of Forfeiture* "condemning and forfeiting" the Second Directly Forfeitable Assets and the Birken.

**PETITION**

16. Ms. Esformes herein states her 50% interest in the Second Directly Forfeitable Assets and the Birken.

17. In December of 1992, Ms. Esformes married Defendant in Manhattan, New York. Their New York marriage license number is 24991.

18. Esformes and the Defendant were separated in 2015 and on October 1, 2015, Ms. Esformes filed for divorce. In the divorce case, the presiding judge bifurcated the Esformes divorce from equitable distribution of marital assets because of Philip Esformes' criminal indictment and the issuance of a federal restraining order against all of Philip Esformes' assets. On July, 30 2020, the Esformes' were granted a divorce but the court stayed equitable distribution because of the criminal indictment and restraining order. Ms. Esformes has retained her 50% ownership interest in all marital assets.

19. Assets acquired during the marriage were marital property with Ms. Esformes and Defendant each owning 50% of each asset acquired.

20. Under Florida law, Ms. Esformes retained her 50% ownership in all marital assets, including but not limited to the Second Directly Forfeitable Assets and Birkin, consistent with the mandates of Florida Statute §61.075 which provides in part:

> (1) In a proceeding for dissolution of marriage, in addition to all other remedies available to a court to do equity between the parties, or in a proceeding for disposition of assets following a dissolution of marriage by a court which lacked jurisdiction over the absent spouse or lacked jurisdiction to dispose of the assets, the court shall set apart to each spouse that spouse's nonmarital assets and liabilities, and in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors, including:
> . . .
> (6) As used in this section:
> (a)1. "Marital assets and liabilities" include:
> **a. Assets acquired and liabilities incurred during the marriage, individually by either spouse or jointly by them.**
> . . .
> **e. All vested and nonvested benefits**, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs.

***2. All real property held by the parties as tenants by the entireties***, whether acquired prior to or during the marriage, shall be presumed to be a marital asset. If, in any case, a party makes a claim to the contrary, the burden of proof shall be on the party asserting the claim that the subject property, or some portion thereof, is nonmarital.

***3. All personal property titled jointly by the parties as tenants by the entireties, whether acquired prior to or during the marriage, shall be presumed to be a marital asset***. In the event a party makes a claim to the contrary, the burden of proof shall be on the party asserting the claim that the subject property, or some portion thereof, is nonmarital. (Emphasis added).

21. The Second Directly Forfeitable Assets and the Birken were all acquired during Ms. Esformes' marriage to Defendant.

22. Each of the 15 entities in the Second Directly Forfeitable Assets were formed and registered with the Florida Division of Corporations during the marriage. *See* **Exhibits 1-15**. The date each entity was formed and registered is as follows:

**Oceanside Extended Care Center**
A Fictitious name was registered to A.D.M.E. INVESTMENT PARTNERS, LTD on December 20, 1996.
(BI1A) {space left intentionally blank}
(BI1B) A.D.M.E. Real Estate LLC (property company), which is or was the titled owner of real property located at 550 9th Street, Miami Beach, Florida 33139. Formed on June 19, 2006.
*See* Exhibit 1.

**North Dade Nursing and Rehabilitation Center**
Three different fictitious name registrations: (1) ALMOVEA ASSOCIATES LLC registered on July 9, 2014; (2) ND OPCO LLC registered on May 11, 2018 (3) NORTH DADE SNF OPERATING COMPANY LLC registered in on January 2, 2019.
(BI2A) {space left intentionally blank}
(BI2B) 1255 LLC (property company), which is or was the titled owner of real property located at 1235 N.E. 135th Street, North Miami, Florida 33161. Formed on August 12, 2014.
*See* Exhibit 2.

**Harmony Health Center**
Two different fictitious name registrations: (1) AYINTOVE ASSOCIATES, LLC registered on July 2, 2003; (2) HARMONY HEALTH OPCO, LLC registered on October 18, 2018. Harmony Health Center, Inc. was formed on June 28, 2005.
(BI3A) {space left intentionally blank}
(BI3B) GBRE Associates LLC (property company), which is or was the titled owner of real property located at 9820 N. Kendall Drive, Miami, Florida 33176.

Formed on July 2, 2003.
*See* Exhibit 3.

**Courtyard Manor**
(BI4A) Courtyard Manor Retirement Living, Inc. (operating company).
Formed on March 24, 1999.
(BI4B) Courtyard Manor Retirement Investors Ltd. (property company), which is or was the titled owner of real properties located at 130, 140, 150 and 160 W. 28th Street and 141 W. 27th Street, Hialeah, Florida 33010.
Formed on March 25, 1999.
*See* Exhibit 4.

**Eden Gardens**
Eden Gardens, LLC was formed on March 5, 2004.  A fictitious name was registered to Eden Gardens, LLC on April 3, 2012.
(BI5A) {space left intentionally blank}
(BI5B) Adar Associates LLC (property company), which is or was the titled owner of real property located at 12221 W. Dixie Highway, Miami, Florida 33161.
Formed on March 4, 2004.
*See* Exhibit 5.

**Fair Havens Center**
Two different fictitious name registrations: (1) FAIR HAVENS CENTER, LLC registered on March 8, 2000; (2) FAIR HAVENS OPCO, LLC registered on October 18, 2018.
(BI6A) {space left intentionally blank}
(BI6B) Fair Havens Real Estate, LLC (property company), which is or was the titled owner of real property located at 201 Curtiss Parkway, Miami, Florida 33166.
Formed on April 4, 2000.
*See* Exhibit 6.

**Flamingo Park Manor**
Flamingo Park Manor LLC formed on June 10, 2009.
(BI7A) {space left intentionally blank}
(BI7B) The Pointe Retirement Investors Ltd. (property company), which is or was the titled owner of real property located at 3051 E. 4th Avenue, Hialeah, Florida 33010.
Formed on January 7, 1999.
*See* Exhibit 7.

**South Hialeah Manor**
A fictitious name was registered to LAKE ERSWIN LLC on June 13, 2014.
(BI8A) Lake Erswin LLC (operating company).
Formed on January 12, 2007.
(BI8B) Morsey LC (property company), which is or was the titled owner of real properties located at 240, 250 and 260 E. 5th Street, Hialeah, Florida 33010.

9

Formed on July 31, 1997.
*See* Exhibit 8.

### Golden Glades Nursing and Rehabilitation Center

Three different fictitious name registrations:  (1) KABIRHU ASSOCIATES LLC registered on April 10, 2012; (2) GG OPCO LLC registered on August 14, 2018; (3) GOLDEN GLADES OPCO, LLC registered on December 28, 2018.

(BI9A) Kabirhu Associates LLC (operating company).
Formed on April 10, 2012.
(BI9B) 220 Sierra LLC (property company), which is or was the titled owner of real property located at 220 Sierra Drive, Miami, Florida 33179.
Formed on May 23, 2012.
*See* Exhibit 9.

### Lauderhill Manor

(BI10A) Lauderhill Manor, LLC (operating company).
Formed on September 24, 2013.
(BI10B) 2801 Holdings LLC (property company), which is or was the titled owner of real property located at 2801 N.W. 55th Avenue, Lauderhill, Florida 33313.
Formed on November 13, 2013.
*See* Exhibit 10.

### La Serena Retirement Living, formerly known as La Hacienda Gardens

La Serena Retirement Living LLC formed on June 10, 2009.
(BI11A) La Hacienda Gardens LLC (operating company).
La Hacienda Gardens LLC filed a name change on April 20, 2016 to La Serena Retirement Living LLC formed on June 10, 2009.
(BI11B) Rainbow Retirement Investors Ltd. (property company), which is or was the titled owner of real properties located at 59, 67, and 75 E. 7th Street, Hialeah, Florida 33010.
Formed on March 25, 1999.
*See* Exhibit 11.

### The Nursing Center at Mercy

Two different fictitious name registrations:  (1) SEFARDIK ASSOCIATES, LLC registered on October 21, 2002; (2) MERCY CENTER OPCO, LLC registered on October 18, 2018.

(BI12A) {space left intentionally blank}
*See* Exhibit 12.

### South Dade Nursing and Rehabilitation Center

Three different fictitious name registrations: (1) TAKIFHU ASSOCIATES LLC registered on April 10, 2012; (2) SD OPCO LLC registered on August 14, 2018; (3) SOUTH DADE OPCO LLC registered on December 28, 2018.

(BI13A) Takifhu Associates LLC (operating company).
Formed on April 10, 2012.

(BI13B) 17475 LLC (property company), which is or was the titled owner of real property located at 17475 S. Dixie Highway, Miami, Florida 33157.
Formed on May 23, 2012.
*See* Exhibit 13.

**North Miami Retirement Living**
A fictitious name was registered to JENE'S RETIREMENT LIVING, INC. on March 19, 2009.  NORTH MIAMI RETIREMENT LIVING LLC was formed on March 6, 2015.
(BI14A) Jene's Retirement Living, Inc. (operating company).
Formed on May 5, 1998.
(BI14B) Jene's Retirement Investors Ltd. (property company), which is or was the titled owner of real property located at 1595 N.E. 145th Street, Miami, Florida 33161.
Formed on May 6, 1998.
*See* Exhibit 14.

**Southern Winds Health**
(BI15A) Southern Winds Health, LLC (operating company).
Formed on March 9, 2016.
(BI15B) 4225 LLC (property company), which is or was the titled owner of real property located at 4225 W. 20th Avenue, Hialeah, Florida 33012.
Formed on May 25, 2016.
*See* Exhibit 15.

23. And, the Birken was purchased by Defendant for Ms. Esformes in June, 2015.

24. Any interest acquired by Defendant in these entities occurred during his marriage with Ms. Esformes and are marital assets owned 50% by Defendant and 50% by Ms. Esformes.

25. The United States has admitted that the violations that support Count 1 of the *Third Superseding Indictment* occurred during the marriage between Defendant and Ms. Esformes. *See Plea Agreement; see also Third Superseding Indictment.*

26. Defendant acquired his interest in many of the entities listed above on or about the date the entity was formed and registered and prior to any alleged illegal activity by the entity.

27. Ms. Esformes' interest in each entity was perfected and vested at the time Defendant acquired an interest in each entity.

28. Ms. Esformes' interest in the Birken was perfected and vested when Defendant purchased the Birken for Ms. Esformes during their marriage.

29. Ms. Esformes' interest in each entity – and the Birken – predates the date the United States acquired an interest in each of the assets.

30. Ms. Esformes' 50% interest in each of the assets is a superior interest to the United States' interest – and any/all other parties' interest – in the assets.

31. Ms. Esformes has a legal right, title, and interest in the above entities and the Birken set forth in the *Second Order of Forfeiture*, which renders the *Second Order of Forfeiture* invalid in whole or part, because 50% of the right, title, or interest of these assets was vested in Ms. Esformes, at the time of the commission of the acts which gave rise to the forfeiture of these assets.

32. Ms. Esformes, at all times relevant, was completely unaware of the Defendant's conduct that gave rise to the forfeiture of the Second Directly Forfeitable Assets and the Birken.

33. Ms. Esformes is entitled to and maintains 50% ownership in all marital assets pursuant to Florida law, including but not limited to those set forth in the *Second Order of Forfeiture*, even if she is not a record title holder of any such assets.

34. Thus, for example, Ms. Esformes is entitled to any monies, real property, or chattels that are marital property even if the record title holder is Philip Esformes and Ms. Esformes is not listed anywhere as being a record title holder.

35. This result is compelled by Florida law, which governs the property rights at issue in these forfeiture proceedings.

36. The Government is estopped from asserting that Ms. Esformes' right to any marital assets did not vest before the Government's rights in the same property vested, or that the Government's rights are superior to Ms. Esformes' rights in such property.

79686899;1

37. Alternatively, Ms. Esformes has a 50% ownership interest and a superior interest, right, and title to these assets, including but not limited to those set forth in the *Second Order of Forfeiture*, pursuant to the doctrine of constructive trust.

38. Defendant Philip Esformes, by not including Ms. Esformes as a record title holder or owner by operation of law, obtained these properties by a breach of trust of Ms. Esformes' confidence and through fraudulent or unlawful means, and at all times it was understood and conveyed to Ms. Esformes that she was the lawful owner of these properties and assets, including but not limited to those assets set forth in the *Second Order of Forfeiture*.

39. Ms. Esformes filed for divorce from Defendant in October 2015, but retained 50% ownership in all marital assets consistent with Florida Statutes, § 61.075.

40. The divorce became final on July 30, 2020.  *See Esformes Petition*, [**ECF No. 1597**], at Ex. "K".  The Divorce was finalized on July 30, 2020, and Ms. Esformes has retained her 50% ownership interest in all marital assets including those listed in the *Second Order of Forfeiture*.

41. Ms. Esformes thus gives notice that all assets acquired by Defendant during the marriage, including the Second Directly Forfeitable Assets and the Birken listed in the *Second Order of Forfeiture*, cannot be forfeited by the United States as substitute assets, as Ms. Esformes has a 50% ownership interest in the assets as marital property.

42. Alternatively, Ms. Esformes has superior title to the same assets by way of the doctrine of constructive trust.

## MEMORANDUM IN SUPPORT OF
## PETITIONER'S CLAIM AS TO SECOND
## DIRECTLY FORFEITABLE ASSETS AND BERKIN

The law and facts of this case compel three conclusions: (1) Florida law applies and entitles Ms. Esformes to 50% of all martial assets claimed by the government in the

*Second Order of Forfeiture*; (2) Ms. Esformes' interest in forfeitable assets is superior to the Government's interest; and (3) Ms. Esformes is entitled to 50% of all forfeitable assets under Florida law even if she is not a record title holder for any such assets.

**A.     Petitioner holds a Superior Interest in the Forfeited Property and is a Bona Fide Purchase for Value**

The United States seeks criminal forfeiture of certain assets allegedly belonging to Defendant, Philip Esformes in partial satisfaction of the forfeiture money judgment imposed against him as part of his sentence. Unlike civil forfeiture, which is an *in rem* action, criminal forfeiture is an *in personam* action in which only the defendant's interest in the property may be forfeited. *See* Rule 32.2(b) of the Federal Rules of Criminal Procedure and *United States v. Lester*, 85 F.3d 1409, 1413 (9111 Cir. 1996). However, 21 U.S.C. Section 853 incorporates into criminal forfeiture proceedings aspects of an in rem proceeding against property tainted by the defendant's criminal conduct. *See United States v. Daugerdas*, 892 F.3d 545, 548 (2nd Cir, 2018). It was the intent of Congress "to recover all of defendant's ill-gotten gains but not to seize legitimately acquired property." *United States v. Porcelli*, 865 F.2d 1352, 1365 (2d Cir. 1989).

To accomplish this objective, 21 U.S.C. Section 853(c) provides that, in some circumstances, the government's interest in the proceeds of a fraud vests at the commission of the crime giving rise to forfeiture.  In this case, Defendant's Factual Basis supporting his Plea Agreement states that his criminal activity occurred between September 2009 through July 2016.  **[ECF No. 1728].**[4]  A vast majority of the forfeited assets were obtained before

---

[4] Defendant has every interest in back-dating his criminal activity to encompass assets to forfeit to the Government in order to reduce his forfeiture judgment – assets that rightfully belong to Ms. Esformes and a forfeiture judgment for which she is not responsible.

September 2009 and after July 2016.  As such, at a minimum, Ms. Esformes' 50% interest in those assets vested before the Government's interest vested.

Under 21 U.S.C. s. 853(n)(6)(A) and (B), Ms. Esformes can establish by a preponderance of the evidence that she is has a superior interest in the forfeited assets and/or that she is a bona fide purchase for value without cause to believe that the assets were subject to forfeiture:

> (A) the petitioner has a legal right, title, or interest in the property, and  such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right,  title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

Additionally, Florida law compels a finding that Ms. Esformes owns and must retain 50% in the assets sought to be forfeited by the Government.

## B.     Florida Law Applies to Ms. Esformes' Entitlement to Marital Assets

State law, not federal law, determines whether a petitioner has a legal interest in property subject to forfeiture. *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir.2011). According to Florida Statute §61.075, Ms. Esformes holds at least a 50% interest in all marital property. Under this statute, marital assets include all "assets acquired . . . during the marriage, individually by either spouse or jointly by them." Marital assets specifically include "all vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs," "all real property held by the parties as tenants by the entireties, whether acquired prior to or during the marriage," and "all personal property titled jointly by the parties as tenants by the entireties,

whether acquired prior to or during the marriage." Further, as of the date of her divorce (July 30, 2020), Ms. Esformes owned her 50% share of the marital property as a tenant in common, independent of Mr. Esformes' (and consequently, the Government's) interest in the other half.

Additionally, according to Florida law, Ms. Esformes has a marital claim to more than 50% of the marital assets due to Mr. Esformes' depletion of assets. Fla. Stat. §61.075(1) begins with the "premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors, including:

> (i) The intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition.
> (j) Any other factors necessary to do equity and justice between the parties.

*See also, Bressler v. Bressler*, 914 So. 2d 1042, 1043 (Fla. 4th DCA 2005) ("Because of the husband's dissipation of other assets during the marriage due to criminal charges against him, we do not conclude that the court abused its discretion in making this lopsided award[.]"); *Niederkohr v. Kuselias*, 301 So. 3d 1112, 1113 (Fla. 5th DCA 2020) ("[I]f marital misconduct results in the depletion or dissipation of a marital asset, a trial court may make an unequal distribution of marital property, or may assign the asset to the dissipating spouse as part of that spouse's equitable distribution"); *Austin v. Austin*, 12 So. 3d 314, 316–17 (Fla. 2d DCA 2009) ("[w]hen a spouse depletes marital assets during the pendency of dissolution proceedings to pay for support, living expenses and litigation expenses, it is error to include the assets in the equitable distribution scheme in the absence of misconduct").

Ms. Esformes' right to assets depleted by Philp Esformes, includes, but is not limited to $2.8 million of marital assets for payment of attorney's fees in the criminal proceedings against Mr. Esformes.

79686899;1

Also under Florida law, Ms. Esformes is the true owner of her one-half interest in the marital property even if she is not listed as a record title holder of any such property, and the only record title holder for any such property is Philip Esformes. "Contributions between husband and wife during coverture toward jointly held property are presumed to be gifts. . . .That presumption can only be overcome by clear and convincing evidence[.]" *McCready v. McCready*, 356 So. 2d 337, 338 (Fla. 4th DCA 1978) (internal citations omitted); *see also* Florida Statute §61.075(6), which defines and describes marital assets.

### C.     Alternatively, Ms. Esformes Is Entitled to 50% of the Assets Pursuant to the Doctrine of Constructive Trust

If Ms. Esformes is not found to have superior title to the assets at issue here, unjust enrichment would result, which justifies the imposition of a constructive trust in her favor. This recovery by way of a constructive trust is requested in the alternative to the other theories set forth above under Florida marital law. Under federal criminal forfeiture law, "(1) a constructive trust, despite being an equitable remedy, constitutes a 'legal right, title, or interest in ... property' under § 853(n)(6)(A), and (2) . . . a constructive trust can render a forfeiture order invalid pursuant to that subsection." *United States v. Shefton*, 548 F.3d 1360, 1365 (11th Cir. 2008). Therefore, Ms. Esformes' rights to the assets by way of constructive trust would confer to her an interest in those assets that is superior to the Government's interest. *Id.* at 1366 ("[W]e agree with the majority of circuits that have held that a constructive trust can serve as a superior legal interest under § 853(n)(6)(A) and thus can serve as grounds for invalidating criminal forfeiture order.").

Under Florida law, the "elements of a constructive trust are: (1) a confidential relationship, by which (2) one acquires an advantage he should not, in equity and good conscience retain." *Bender v. Centrust Mortgage Corp.,* 51 F.3d 1027, 1030 (11th Cir. 1995); *Williams v. Dep't of Health & Rehabilitative Servs.*, 522 So.2d 951, 954 (Fla. 1st DCA 1988). A constructive trust

79686899;1

prevents the unjust enrichment of a culpable party and restores to the beneficiary of the trust the original interest that was wrongfully taken. *See Bender*, 51 F.3d at 1029:; *see also Wadlington v. Edwards*, 92 So.2d 629, 631 (Fla. 1957) ("[A] constructive trust is a relationship adjudicated to exist by a court of equity based on particular factual situations created by one or the other of the parties.... The trust is 'constructed' by equity to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem.").

Furthermore, under Florida law, "a constructive trust arises as a matter of law when the facts giving rise to the fraud occur." *In re Gen. Coffee Corp.*, 828 F.2d 699, 702 (11th Cir.1987). Ordinarily, the trust *res* must be specific and identifiable. *See Arduin v. McGeorge*, 595 So.2d 203, 204 (Fla.Dist.Ct.App.1992). Notwithstanding, a court may impose a constructive trust where funds have been converted into another type of asset and the claimant can trace and identify the transaction in which the conversion occurred. *See id.* Furthermore, under Florida law, "a constructive trust arises as a matter of law when the facts giving rise to the fraud occur." *In re Gen. Coffee Corp.*, 828 F.2d 699, 702 (11th Cir. 1987).

Here, all of the elements and circumstances for a constructive trust are satisfied, and Ms. Esformes' superior title pursuant to a constructive trust vested before the Government's interest vested in Mr. Esformes' property. Ms. Esformes had a confidential relationship and relationship of trust with Philip Esformes, and, through marriage and Ms. Esformes' support, Ms. Esformes acquired assets, including but not limited to the forfeited assets jointly with Philip Esformes. Those assets were acquired through Ms. Esformes' contributions and were expressly or impliedly promised to be Ms. Esformes' property or a gift to her, for which she owned a 50% interest. To the extent any such assets were titled only in the name of Philp Esformes, there was an understanding

that Mr. Esformes was holding record title for her benefit. Any failure by Philip Esformes to title or convey such property is fraud or a breach of a confidential relationship of trust between Philip Esformes and Ms. Esformes.

Philip Esformes, and the Government by stepping into his place, should not be entitled to retain the entirety of those assets because of the fraudulent or unlawful acquisition of such property by Philip Esformes and/or fraudulent or unlawful failure by Philip Esformes to legally include or establish Ms. Esformes as a record title holder. Allowing Philip Esformes to retain all such property would result in an injustice to Ms. Esformes and unjust enrichment to Philip Esformes, and any party who steps into his place as the owner of such property. All of the forfeited assets at issue, were intended for Ms. Esformes' ownership and benefit, and she was always considered to be an owner and continuously treated as a joint owner of those assets.

Because these assets were acquired during marriage, it was understood and conveyed either explicitly or implicitly that Ms. Esformes was an owner and had an interest in these assets. Ms. Esformes should have been listed as a record title holder or legal interest holder on all such property, and any failure to do so is unlawful, fraudulent, under duress, mistake, or without knowledge to Ms. Esformes, the result of abuse of confidence and trust, and results in an unjust enrichment.

**WHEREFORE,** Ms. Esformes respectfully petitions the Court for a hearing at which Ms. Esformes may testify and present evidence and witnesses on her behalf to establish by a preponderance of the evidence that she has a 50-percent interest in the subject assets in the *Second Order of Forfeiture*, and likewise establish that the Court should amend the Second Order of Forfeiture accordingly to account for this interest.

Date:  January 28, 2025.

Respectfully submitted,

*/s/ Jacqueline M. Arango*
Jacqueline M. Arango (FBN 664162)
**AKERMAN LLP**
Three Brickell City Centre, Suite 1100
98 Southeast Seventh Street
Miami, Florida 33131
Tel: (305) 374-5600
Fax: (305) 374-5095
jacqueline.arango@akerman.com

*Counsel for Petitioner/Claimant*
*Sherri Beth Esformes*

79686899;1

## VERIFICATION OF PETITIONER SHERRI ESFORMES

Under penalties of perjury, I hereby declare, certify, verify, and state under oath that the facts, statements, and exhibits contained in this verified Petition are true, accurate, and correct. Executed on this 28th day of January, 2025.

SHERRI ESFORMES

## NOTARY

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

The foregoing instrument was sworn to and subscribed before me by means of physical presence or online notarization this 28th day of January, 2025, by SHERRI ESFORMES, who is:

personally known to me; or

produced a driver's license issued by the Florida Department of Highway Safety and Motor Vehicles as identification; or

produced the following identification: FL DRIVER Lic

NOTARY PUBLIC, STATE OF FLORIDA

WINSLOW THOMPSON

WINSLOW THOMPSON
Notary Public - State of Florida
Commission # HH 158190
My Comm. Expires Nov 15, 2025
Bonded through National Notary Assn.

(Print, Type or Stamp Commissioned Name of Notary Public)

79686899;1

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 28, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. I also certify that a true and correct copy of the foregoing document will be served on all counsel of record via transmission of Notice of Electronic Filing generated by the CM/ECF system.

*/s/ Jacqueline M. Arango*
Jacqueline M. Arango