UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 16-CR-20549-SCOLA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

PHILIP ESFORMES, et. al.,

    Defendants.

vs.

SHERRI BETH ESFORMES,

    Petitioner/Claimant.

_____/

**PETITIONER/CLAIMANT SHERRI ESFORMES'
OPPOSITION TO UNITED STATES' MOTION TO DISMISS**

    Petitioner/Claimant, Sherri Beth Esformes ("Ms. Esformes"), by and through undersigned counsel, pursuant to Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853(n) and (p), responds to the Government's motion to dismiss her Verified Claim pursuant to her legal interest in the property the Court has ordered forfeited pursuant to that certain Second Preliminary Order of Forfeiture of Directly Forfeitable Assets, dated February 28, 2024 [**ECF No. 1733**] (hereinafter, the *"Second Order of Forfeiture"*). Ms. Esformes states:

**INTRODUCTION**

    The Government asks this Court to dismiss Ms. Esformes' Petition based on assertions unsupported by case law regarding the effect of a court order in divorce proceedings involving Ms. Esformes and the Defendant, her former husband. Specifically, the Government argues "a partial judgment dissolving a marriage but reserving jurisdiction for a later judicial determination regarding identification and division is certainly insufficient to establish a vested property interest under Florida law." (*See* [**ECF No. 1754**] at 15.) There is no legal authority cited or supporting this assertion because it is contrary to Florida law and federal law governing forfeiture

1

proceedings. The Court must look to Florida law to decide whether Ms. Esformes has a legal interest in any of the Assets, and therefore has statutory standing to assert her claim beyond the pleading stage. *United States v. Morales*, 36 F. Supp. 3d 1276, 1285 (M.D. Fla. 2014). Florida law is clear that a spouse owns marital property either by way of a tenancy in the entirety before the marriage is dissolved, and as a tenant in common after a marriage is dissolved. *Abella-Fernandez v. Abella*, 393 So. 2d 40, 40 (Fla. 3d DCA 1981). Whether any of the property is "marital property" owned by Ms. Esformes, is a fact-bound state law inquiry that this Court must resolve before forfeiting the property, and it cannot be resolved on a motion to dismiss, particularly in this complex and procedurally-unique case. *See United States v. Tardon*, 493 F. Supp. 3d 1188, 1208 (S.D. Fla. 2020).

Plaintiff has also sufficiently alleged a legal interest to the Second Directly Forfeitable Assets (also referred to herein as the "Assets") by way of a constructive trust, a doctrine which is indisputably recognized in Florida law and courts in the 11th Circuit. *United States v. Shefton*, 548 F.3d 1360, 1365 (11th Cir. 2008); *Williams v. Dep't of Health & Rehabilitative Servs.*, 522 So.2d 951, 954 (Fla. 1st DCA 1988)**.** The Government asks the Court to ignore Ms. Esformes' clear and express allegations that she owns the Assets by way of a constructive trust: [**ECF No. 1753**] at 18-19. At the pleading stage, however, the Court must assume all facts alleged are true. The Government further argues that there can be no constructive trust, because the Government had a superior interest in the Assets by way of the relation back doctrine. This argument, however, is inappropriate at the pleading stage. Whether the Government has a superior interest is decided after a hearing and not at the pleading stage, per the plain language of the controlling criminal forfeiture statute: "[i]f *after the hearing*, the court determines that the petitioner *has established by a preponderance of the evidence* . . the petitioner has a legal . . . interest in the property . . because the right, title, or interest *was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property*[.]" 21 U.S.C. § 853(n)(6)(A) (emphasis added). Whether Ms. Esformes owns any property by way of a constructive trust is a factually intensive inquiry requiring discovery, and inappropriate for dismissal out of hand at the pleading stage, especially in a case like this one involving widespread, unprecedented fraud by the Defendant. Accordingly, Ms. Esformes respectfully requests that the Court deny the Government's motion and allow Ms. Esformes, after years of being deprived of her rightful interest in the Assets, to conduct discovery,

be heard on the merits, and establish by a preponderance of the evidence her rightful interest to the Assets.

**FACTUAL AND PROCEDURAL HISTORY**

**DEFENDANT'S CRIMINAL HISTORY**

1. Defendant was charged and convicted with fraud, money laundering, and obfuscating and concealing his ownership in assets, which informs the need for further discovery in this case into Ms. Esformes' asserted rights to the property by way of superior interest or constructive trust, a doctrine which seeks to remedy inequities caused by fraud.

2. On July 19, 2018, a federal grand jury charged Defendant Philip Esformes ("Defendant"), among others, with various offenses related to federal health care fraud and money laundering offenses. *See Third Superseding Indictment*, [**ECF No. 869**].

3. On April 5, 2019, the jury empaneled in Defendant's criminal case found Defendant guilty of 19 counts of the Third Superseding Indictment. *See Verdict*, [**ECF No. 1245**].

4. On April 9, 2019, during a bifurcated forfeiture proceeding pursuant to FED. R. CRIM P. 32.2(b)(1)(A), the empaneled jury found that certain of the Defendant's business interests listed in the *Third Superseding Indictm*ent and special forfeiture verdict form, were properties involved in the Defendant's criminal enterprises and were traceable to the same (collectively, the "First Directly Forfeitable Assets"). *See Minute Entry*, [**ECF No. 1251**].

5. The empaneled jury did not reach a special verdict – however – regarding whether the requisite nexus existed between other certain assets belonging to the Defendant and the Defendant's crimes. *See Forfeiture Verdict*, [**ECF No. 1263**]; FED R. CRIM. P. 32.2.(b)(5).

6. The Court imposed a sentence on the Defendant on September 12, 2019 for the crimes of which the empaneled jury found Defendant guilty. *See Judgment*, [**ECF No. 1387**]. During the sentencing hearing, the Court ordered forfeited – subject to third party interests – all interest held by, on behalf of, or for the benefit of Defendant in the First Directly Forfeitable Assets, consistent with the special forfeiture verdict form. *See Paperless Entry*, [**ECF No. 1385**]. The Court entered a *Preliminary Order of Forfeiture of Directly Forfeitable Assets* [**ECF No. 1456**] on November 21, 2019, reflecting its ruling. On January 11, 2021, Ms. Esformes filed a verified claim [**ECF No. 1535**] asserting her superior interest in the First Directly Forfeitable Assets which claim was resolved by way of a Stipulation and Settlement Agreement [**ECF No. 1645, Exh. A**].

3

7. Additionally, on November 21, 2019, the Court entered an *Order of Forfeiture* [**ECF No. 1455**], imposing a forfeiture judgment for $38,700,795.00 (the "Forfeited Money Judgment") against Defendant as part of his sentence.

8. The United States subsequently sought forfeiture of certain substitute property consisting of bank accounts and real property (the "First Substitute Property"), pursuant to 21 U.S.C. § 853(p), to be applied toward the outstanding Forfeiture Money Judgment.[1]

9. On August 4, 2021, the Court entered its *First Preliminary Order of Forfeiture of Substitute Property*, [**ECF No. 1583**] in which the First Substitute Property was forfeited to the United States, subject to third party interests.

10. On August 27, 2021, Ms. Esformes filed her petition claiming a 50% martial interest in the First Substitute Property. *See Esformes Petition*, [**ECF No. 1597**]. Additionally, three third-party petitioners filed claim petitions on behalf of (i) the MJS Family Trust [*see* **ECF No. 1634**], (ii) the SMJ Family Trust, [*see* **ECF No. 1635**], and (iii) the RIW Family Trust, [*see* **ECF No. 1636**] (collectively, the "Family Trusts"), claiming interest in certain real properties contained within the First Substitute Property.

11. Ms. Esformes and the United States entered into a Stipulation and Settlement Agreement with respect to the First Substitute Property ([**ECF No. 1737-2**]).[2] And a Final Order of Forfeiture of Substitute Property was entered by this Court ([**ECF No. 1738**]).

12. On February 22, 2024, the Court accepted the Defendant's guilty plea to Count 1 of the Third Superseding Indictment – the empaneled jury had not found Defendant guilty of Count 1 at trial. *See Paperless Minutes*, [**ECF No. 1729**]; *Plea Agreement*, [**ECF No. 1727**].

### THE PROPERTY AT ISSUE

13. As part of the *Plea Agreement*, Defendant claimed that certain personal property – also belonging to Ms. Esformes – was traceable to the offense charge in Count 1. In doing so, Defendant

---

[1] 21 U.S.C. §853(p) allows the Government to seek forfeiture of a defendant's non-criminal assets only where the defendant's criminal property cannot be located as a result of being spent, transferred or dissipated. Despite representing to the Court that it could not locate Defendant's assets in this case warranting a substitute asset forfeiture, three years later, the Government is taking the contradictory position that Defendant's criminal assets are indeed locatable. This is being accomplished through negotiation of a plea deal with Defendant who has every incentive to forfeit his ex-wife's assets to the Government in order to avoid prison.

[2] The Family Trusts reached separate agreements for settlement of the various petitions for the First Substitute Property. (*See* [**ECF No. 1754**] at 15.)

saved himself from returning to prison by relinquishing assets to the Government that belonged to Ms. Esformes.[3] Those assets are hereinafter the "Second Directly Forfeitable Assets"[4]:

(a) All interest held by, on behalf of, or for the benefit of the Defendant in the following business entities and their assets, including, but not limited to, real property and financial accounts, or the remaining share of the net seller proceeds from any interlocutory sale of such assets ordered by the Court:

**Oceanside Extended Care Center**

(BI1A) {space left intentionally blank}

(BI1B) A.D.M.E. Real Estate LLC (property company), which is or was the titled owner of real property located at 550 9th Street, Miami Beach, Florida 33139.

**North Dade Nursing and Rehabilitation Center**

(BI2A) {space left intentionally blank}

(BI2B) 1255 LLC (property company), which is or was the titled owner of real property located at 1235 N.E. 135th Street, North Miami, Florida 33161.

**Harmony Health Center**[5]

(BI3A) {space left intentionally blank}

(BI3B) GBRE Associates LLC (property company), which is or was the titled owner of real property located at 9820 N. Kendall Drive, Miami, Florida 33176.

**Courtyard Manor**

(BI4A) Courtyard Manor Retirement Living, Inc. (operating company).

---

[3] Additionally, Ms. Esformes entered into a settlement agreement with the Government to resolve the substitute asset forfeiture under the theory that the Government could not locate any additional criminal assets belonging to Defendant.

[4] The subparagraphs in the list of Second Directly Forfeitable Assets are numbered as they appear in the *Third Superseding Indictment*. **In addition to those assets, this Opposition to United States' Motion to Dismiss also covers any funds held by the U.S. Marshal's Service or the DOJ which have been obtained in connection with this case or the related civil case,** *U.S. v. Esformes,* **16-cv-23148-RLR. Ms. Esformes is entitled to 50% of any and all of those assets or proceeds from the sale of assets.**

[5] It appears that this asset, as well as others, has been improperly transferred to an entity controlled/owned by Bent Philipson in 2019 well after the issuance of the Indictment identifying this asset, as well as others, as being subject to forfeiture. *See* article attached as Exhibit 16 to [**ECF No. 1753**].

80183374;1

(BI4B) Courtyard Manor Retirement Investors Ltd. (property company), which is or was the titled owner of real properties located at 130, 140, 150 and 160 W. 28th Street and 141 W. 27th Street, Hialeah, Florida 33010.

**Eden Gardens**

(BI5A) {space left intentionally blank}

(BI5B) Adar Associates LLC (property company), which is or was the titled owner of real property located at 12221 W. Dixie Highway, Miami, Florida 33161.

**Fair Havens Center**

(BI6A) {space left intentionally blank}

(BI6B) Fair Havens Real Estate, LLC (property company), which is or was the titled owner of real property located at 201 Curtiss Parkway, Miami, Florida 33166.

**Flamingo Park Manor**

(BI7A) {space left intentionally blank}

(BI7B) The Pointe Retirement Investors Ltd. (property company), which is or was the titled owner of real property located at 3051 E. 4th Avenue, Hialeah, Florida 33010.

**South Hialeah Manor**

(BI8A) Lake Erswin LLC (operating company).

(BI8B) Morsey LC (property company), which is or was the titled owner of real properties located at 240, 250 and 260 E. 5th Street, Hialeah, Florida 33010.

**Golden Glades Nursing and Rehabilitation Center**

(BI9A) Kabirhu Associates LLC (operating company).

(BI9B) 220 Sierra LLC (property company), which is or was the titled owner of real property located at 220 Sierra Drive, Miami, Florida 33179.

**Lauderhill Manor**

(BI10A) Lauderhill Manor, LLC (operating company).

(BI10B) 2801 Holdings LLC (property company), which is or was the titled owner of real property located at 2801 N.W. 55th Avenue, Lauderhill, Florida 33313.

**La Serena Retirement Living, formerly known as La Hacienda Gardens**

(BI11A) La Hacienda Gardens LLC (operating company).

(BI11B) Rainbow Retirement Investors Ltd. (property company), which is or was the titled owner of real properties located at 59, 67, and 75 E. 7th Street, Hialeah, Florida 33010.

**The Nursing Center at Mercy**

(BI12A) {space left intentionally blank}

**South Dade Nursing and Rehabilitation Center**

(BI13A) Takifhu Associates LLC (operating company).

(BI13B) 17475 LLC (property company), which is or was the titled owner of real property located at 17475 S. Dixie Highway, Miami, Florida 33157.

**North Miami Retirement Living**

(BI14A) Jene's Retirement Living, Inc. (operating company).

(BI14B) Jene's Retirement Investors Ltd. (property company), which is or was the titled owner of real property located at 1595 N.E. 145th Street, Miami, Florida 33161.

**Southern Winds Health**

(BI15A) Southern Winds Health, LLC (operating company).

(BI15B) 4225 LLC (property company), which is or was the titled owner of real property located at 4225 W. 20th Avenue, Hialeah, Florida 33012.

14. As part of its sentence on Count 1 of the *Third Superseding Indictment*, the Court imposed forfeiture on the Second Directly Forfeitable Assets, and – upon the United States' unopposed *ore tenus* motion – likewise imposed forfeiture on a red Hermes Birkin bag (the "Birkin") Defendant purchased for Ms. Esformes in 2015. [**ECF No. 1729**].  On February 28, 2024, the Court ordered the Second Directly Forfeitable Assets and the Birkin forfeited to the United States.  *See Second Order of Forfeiture*.  [**ECF No. 1742**].

15. On January 28, 2024, Ms. Esformes timely filed her Verified Petition/Claim, asserting her 50% interest in the Second Directly Forfeitable Assets and the Birkin. [**ECF No. 1753**]. There, Ms. Esformes emphasized that the Second Directly Forfeitable Assets and the Birkin were all acquired during Ms. Esformes' marriage to Defendant. Each of the 15 entities therein were formed and registered with the Florida Division of Corporations during the marriage. *Id.* at ¶¶ 22-24.

### THE DIVORCE

16. Ms. Esformes married Philip Esformes ("Defendant") in New York in December 1992.

17. Ms. Esformes and the Defendant were separated in 2015 and on October 1, 2015, Ms. Esformes filed for divorce[6] in Miami-Dade County. [**ECF No. 1597-1**].

18. Even though Ms. Esformes filed for divorce in October 2015, well before Defendant's criminal prosecution, the Government's Emergency *Ex Parte* Application for a Restraining Order in a federal civil case related to Defendant's criminal case froze Defendant's assets.[7]

19. On July 24, 2018, pursuant to the Government's Motion for a Restraining Order, this Court entered an *Ex Parte* Restraining Order prohibiting Mr. Esformes from selling, transferring, or hypothecating any of his assets, including assets that are jointly owned with Ms. Esformes. [**ECF No. 877**].

20. Because the Government's actions against Defendant also strained Ms. Esformes' resources, she made several filings in the divorce court to protect her legitimate financial interests.

21. First, on August 6, 2019, Ms. Esformes filed a Verified Urgent Motion for Determination of an Early Equitable Distribution and for Financial Relief Attorney's Fees and Costs and for Other Relief in her divorce.

22. Second, on March 12, 2020, Ms. Esformes filed a Motion for Award of Temporary Attorney's Fees, Accounting Fees, and Costs in her divorce. The divorce court granted that order the same day.

23. Finally, on March 17, 2020, Ms. Esformes filed a Motion to Intervene in the civil case (Case No. 16-23148-CIV-Rosenberg), seeking to protect her marital interests.

24. On March 31, 2020, the divorce court entered an Agreed Order on Ms. Esformes' Verified Urgent Motion for Determination of an Early Equitable Distribution and for Financial Relief, Attorney's Fees and Costs and for Other Relief, acknowledging the "unusual circumstances" of Ms. Esformes' situation and validating her need to "preserve marital assets" and attain financial security.

25. On July 29, 2020, the divorce court entered an Order on Pending Motions, granting the Government's Motion to Bifurcate, staying any fee or costs awards to Ms. Esformes, denying her temporary support, and most importantly, denying her the early equitable distribution that the divorce court had previously entered an agreed order on.

---

[6] *Esformes v. Esformes*, Case No. 2015-024496-FC-04.
[7] *U.S. v. Esformes*, Case No. 16-23148-CIV-Rosenberg.

80183374;1

26. The next day, July 30, 2020, Ms. Esformes was finally granted her divorce. However, that court's bifurcation of the divorce from equitable distribution, based on the Government's actions, alienated Ms. Esformes from her legitimate interest her marital property.

27. Now, nearly a decade after Ms. Esformes filed for divorce, she is still fighting to vindicate her interest in her marital property.

### Ms. Esformes' Verified Petition

28. On January 28, 2025, Ms. Esformes filed her Verified Petition [**ECF No. 1753**], asserting her 50% marital interest in the Second Directly Forfeitable Assets and the Birkin. Ms. Esformes emphasized that the Second Directly Forfeitable Assets and the Birkin were all acquired during Ms. Esformes' marriage to Defendant.

29. **Additionally, Ms. Esformes points out that by entering into a plea agreement to avoid going to prison, Defendant has every interest in back-dating his criminal activity to encompass assets to forfeit to the Government in order to reduce his forfeiture judgment – assets that rightfully belong to Ms. Esformes and a forfeiture judgment for which she is not responsible.**

30. Ms. Esformes alleges that she owns an outright interest in all the properties listed below because Defendant acquired an interest in those properties during the Esformes' marriage. Alternatively, Ms. Esformes alleges that she is entitled to the imposition of a constructive trust protecting her interests in those assets because Defendant deceived Ms. Esformes regarding the nature of his interests long before the Government acquired any interest in the property. [**ECF No. 1753**] at 19. Further, Ms. Esformes requests an evidentiary hearing and further discovery to the assets' ownership because discovery is necessary to determine her ownership interest in each asset. Ms. Esformes has clearly alleged 50% marital interest in the Assets. [**ECF No. 1753**] ¶¶ 20-24.

## **MEMORANDUM IN SUPPORT OF PETITIONER'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS**

### Legal Standards

"On a motion to dismiss, a § 853(n) petition is evaluated on the same standard as a civil complaint on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018); *United States v. Rothstein*, No. 09-60331-CR-COHN, 2010 WL 2927490, at *3 (S.D. Fla. July 21, 2010). Pursuant to Rule 32.2 of the Federal

Rules of Criminal Procedure, "the facts set forth in the petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(A)' *cf. United States v. Avila-Torres*, No. 17-20148-CR, 2019 WL 2177342, at *4 (S.D. Fla. May 20, 2019) ("In adjudicating such a motion, the facts set forth in the petition are assumed to be true and the scope of review is limited to the four corners of plaintiff's pleading." (emphasis added)). A district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.*, 493 Fed. Appx. 994, 995 (11th Cir. 2012) (citing *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. for the proposition that a dispute over the material facts of a case precludes a district court from granting a motion to dismiss).

The Government is correct that the Court may consider matters outside of the pleadings; however, that converts the Government's motion to a Rule 56 motion for summary judgment (*see* [**ECF No. 1754**] at 12), which should be denied before Ms. Esformes is given the opportunity to conduct discovery. *See Murdock v. Am. Mar. Officers Union Nat'l Exec. Bd.*, No. 19-62687-CIV, 2022 WL 18024476, at *1 (S.D. Fla. July 13, 2022) ("Nonetheless, as a general rule, summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." (internal quotation omitted)); *see also Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("[S]ummary judgment may only be decided upon an adequate record.") (quoting *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988)).

To the extent the Government challenges subject matter jurisdiction by way of challenging Article III standing as would be done in a factual challenge to Article III standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure (*see* [**ECF No. 1754**] at 12), jurisdictional discovery or further briefing is typically warranted to elucidate factual disputes regarding standing. *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1207 (S.D. Fla. 2022) ("Thus, in a factual challenge [to Article III standing], the Court ordinarily must give plaintiffs an opportunity for discovery and for an appropriate hearing.")

The Government, however, does not expressly state whether it seeks dismissal for lack of Article III standing or statutory standing. The Government's motion appears to request only dismissal for lack of statutory standing, as the Government argues Mrs. Esformes does not hold

10

80183374;1

any legal interest in the Second Directly Forfeitable Assets pursuant to Florida state law.[8] (*See, e.g.*, [**ECF No. 1754**] at 13-20.)

## ARGUMENT

### I. Ms. Esformes Has Standing

Ms. Esformes has sufficiently alleged a legal interest in the Assets to obtain statutory standing. The controlling statutory provision for standing in ancillary forfeiture proceedings, 21 U.S.C. § 853(n)(2), provides that: "*[a]ny person*, other than the defendant, *asserting a legal interest in property* which has been ordered forfeited to the United States pursuant to this section *may . . . petition the court for a hearing* to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2) (emphasis added). Ms. Esformes has asserted over and over again in the Verified Petition that she has a legal interest in the property, as marital property, to satisfy this initial requirement before the hearing on her petition. [**ECF No. 1753**] ¶¶ 16, 19-24, 27-31, 33, 37, 39-42. She has described how and when she acquired her interest in the Second Directly Forfeited Assets in her petition. (*Id.* ¶¶ 19-21, 23, 27, 31.) For each of the 15 entities listed among the Second Directly Forfeitable Assets, Ms. Esformes identified when her marital interest began, and to the best of her abilities, what interest she was claiming in them–50%. *See id.*; [**ECF No. 1753**] ¶¶ 20-24.

The Government argues, without citing to a single Florida case or other state law authority, that a "a partial judgment dissolving a marriage but reserving jurisdiction for a later judicial determination regarding identification and division is certainly insufficient to establish a vested property interest under Florida law." (*See* [**ECF No. 1754**] at 15.) **This argument is unsupported by the facts and Florida law.**

The judgment on its face denotes itself as a partial "Final Judgment for Dissolution of Marriage." The Court found that the marriage has been dissolved and therefore a "final" judgment for dissolution, and there is no dispute Ms. Esformes and Defendant are no longer married. Divorce proceedings do not divest property rights of a spouse while the proceedings are pending; rather,

---

[8] The bar for Article III standing is low: "[a] petitioner does not need to own forfeited property to obtain Article III standing¬; a mere possessory interest is sufficient." *See Via Mat*, 446 F.3d at 1262-64. There is no argument here directed to Article III standing, but for the sake of completeness, the facts would not support an argument that Ms. Esformes failed to allege any possessory interest or any dominion or control whatsoever over the Second Directly Forfeitable Assets such that she lacks Article III standing.

Florida law is clear that a spouse owns property as a tenant in the entirety for property acquired during marriage, and as a tenant in common once the marriage is dissolved. *Abella-Fernandez v. Abella*, 393 So. 2d 40, 40 (Fla. 3d DCA 1981) ("[W]e reiterate that, upon dissolution of a marriage, the parties become tenants in common."); *Ebanks v. Ebanks*, 198 So. 3d 712, 714 (Fla. 2d DCA 2016) ("By operation of Florida statute, a tenancy by the entireties becomes a tenancy in common upon the divorce of the owners."). The marriage was dissolved, and the dissolution was ordered to be final by the state court, so Ms. Esformes owns the marital property as a tenant in common under Florida law. *See id.* Ms. Esformes alleges as a matter of fact the Assets are marital property and acquired through marriage, a fact which must be assumed to be true on a motion to dismiss. Therefore, she has plausibly alleged a legal interest in the Assets as a tenant in common.

As a tenant in common, she is clearly afforded a legal interest in the property at issue here, which was obtained during her marriage with Mr. Esformes. *See United States v. Mosca*, No. 21-1209, 2023 WL 6799293, at *2 (2d Cir. Oct. 16, 2023); *Cf. United States v. Bangiyeva*, 75 F.4th 445, 456 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 1120, 218 L. Ed. 2d 354 (2024) (spouse entitled to her share of a property as tenant in common, but not entire property). The Government cannot take the whole of any property for which Ms. Esformes is a tenant in common under Florida law. *See, e.g.*, *United States v. One Single Fam. Residence With Out Buildings Located at 15621 S.W. 209th Ave., Miami, Fla.*, 894 F.2d 1511, 1516 (11th Cir. 1990)("[T]he government cannot deprive [an innocent spouse] of any interest she has in the property" and observing that the innocent spouse would have a legal right as a tenant in common, but that right would be different than her legal right if she owned property in a tenancy by the entirety); *United States v. Stern*, No. 16-CR-525 (JGK), 2021 WL 3474040, at *4 (S.D.N.Y. Aug. 5, 2021) ("The Government cannot take, and Mr. Stern cannot forfeit, an interest that does not belong to Mr. Stern. . . . Ms. Stern has raised a plausible claim pursuant to Section 853(n)(6) that the Government's requested relief would cause Ms. Stern to forfeit a right that vested in Ms. Stern rather than the defendant.").

The Government argues that the Assets are not marital property, but whether a property is marital or not is a fact-bound question under Florida law requiring a discovery as to whether assets were acquired during marriage, and whether the assets were acquired individually or jointly. Fla. Stat. § 61.075(6)(a); *see also Sanford v. Sanford*, 508 So. 2d 516, 518 (Fla. 4th DCA 1987) (noting disputes of fact in deciding marital property dispute that judge had to resolve at trial by a preponderance of the evidence: "the trial judge found that the preponderance of the evidence

favored the husband"). The mere fact that no court has undertaken this factual inquiry does not mean that the property is entirely Defendant's (and therefore the Government's) property. Rather, what constitutes marital property that Ms. Esformes has a legal interest is governed by state law, and it is an open factual question under Florida that precludes dismissal. *See United States v. Tardon*, 493 F. Supp. 3d 1188, 1208 (S.D. Fla. 2020) ("The Court looks to state law to determine the nature of a petitioner's interest in the property.").

Notably, the Government's restraining order caused the state court to postpone equitable distribution of the marital assets, given these federal proceedings in which this Court is tasked in deciding Ms. Esformes' and Defendant's respective interests in the properties under state law. [**ECF No. 1597-1**] The Government, contrary to the efforts that caused a delay of the state court divorce proceedings, now asks this Court to avoid making the state law determinations the Government contends the state court has not made. That is contrary to well-settled law, which requires this Court to determine whether Ms. Esformes has an interest in the Assets by looking to state law. *United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) ("The parties agree that we apply state law to determine the nature of the Fund's interest in the Forfeited Property.").

Ms. Esformes does not, as the Government argues, invite the Court "to substitute itself for the Florida Circuit Court in her marital dissolution action and determine for the first time what is, or is not, a marital asset." ([**ECF 1754**] at 15.) Rather, Ms. Esformes merely asks the Court to follow and apply state law (which the Court must do, *see Tardon*, 493 F. Supp. 3d at 1208) in deciding Ms. Esformes' interest, and that state law is clear that Ms. Esformes does have a legal right and interest to property obtained during marriage. Fla. Stat. § 61.075(6)(a). Whether the property was obtained during marriage or is wholly the property of Mr. Esformes is a fact-bound determination that cannot be decided on a motion to dismiss.

It is the Government that invites error here, because the Government asks the Court to reject Ms. Esformes' express, unequivocal factual allegations that the Assets are marital property acquired in marriage, [**ECF No. 1753**] ¶ 24, and decide as a matter of law that certain properties were or were not acquired during a marriage such that Ms. Esformes has no right to them by either a tenancy in the entirety or tenancy in common. The Court cannot skip this step in forfeiture proceedings merely because a state court has not yet decided under state law whether property is a marital asset. *United States v. Morales*, 36 F. Supp. 3d 1276, 1285 (M.D. Fla. 2014) ("Federal law decides what interests are subject to forfeiture*, but state property law defines what those*

*interests are in the first instance. . . . Thus, once it is determined under state law that a third-party petitioner has a legal interest in the forfeited property*, the court looks to federal law to determine whether the third-party petitioner's interest in the forfeited property is superior to the defendant's interest."). The Court must first look to state law to determine whether Ms. Esformes has alleged a legal interest in the Assets, and it is plausibly alleged at the pleading stage that the Assets are marital property acquired during the marriage for which Ms. Esformes has an interest.

Ultimately, the Government cites no legal authority that pending and unfinished divorce proceedings relieve a federal court from looking to state law in forfeiture proceedings to determine a third party's legal interest in a property and, in turn, that third party's statutory standing to survive a motion to dismiss. The federal case law cited to support this proposition is inapposite. The Government cites *United States v. Barber* and *United States v. Lima* for the proposition that a spouse has no legal interest in marital assets until a divorce judgement vests those interests, but these decisions are limited to 401k accounts established during a marriage or other properties where a spouse is merely a beneficiary of the property and lacks any direct interest in the property as a tenant in common or owner by way of tenancy in the entirety. [**ECF No. 1753**] at 13 (citing *United States v.* Barber, No. 8:13-CR-28-T-24TBM, 2014 WL 5473570, at *3 (M.D. Fla. Oct. 28, 2014) and *United States v. Lima*, No. 8:09-CR-377-T-17TBM, 2011 WL 5525339, at *4 (M.D. Fla. Oct. 19, 2011), *report and recommendation adopted,* No. 8:09-CR-377-T-17TBM, 2011 WL 5525354 (M.D. Fla. Nov. 14, 2011)). These cases are inapposite as the circumstances here do not involve property for which Ms. Esformes is merely beneficiary; rather she expressly alleges that she has a direct interest in the Assets as a part owner, not a mere beneficiary to the Assets. The Government cites no case involving property like the Assets here or property in which the spouse was a direct owner instead of a mere beneficiary. Accordingly, the Government's motion to dismiss should be denied.

## II. Ms. Esformes Has Sufficiently Alleged a Constructive Trust

Ms. Esformes has alleged sufficient facts giving rise to a constructive trust theory, requiring denial of the Government's motion. The Government's argument misses the mark as it cites 21 U.S.C. § 853(n)(6) in its motion (*e.g.*, [**ECF No. 1754**] at 16) asking the Court to go beyond the threshold question of standing under *Section 853(n)(2)* and proceed to decide whether Ms. Esformes' interest was superior to the government's interest *under Section 853(n)(6)*, but that inquiry—per the plain language of § 853(n)(6)—occurs "[i]f *after the hearing*, the court

determines that the petitioner *has established by a preponderance of the evidence . .* the petitioner has a legal . . . interest in the property." 21 U.S.C. § 853(n)(6). This inquiry does not take place at the pleading stage. "To have standing, a claimant need not prove the underlying merits of the claim." *United States v. Premises Known as 7725 Unity Ave. N., Brooklyn Park, Minn.*, 294 F.3d 954, 957 (8th Cir. 2002). "The claimant *need only show a colorable interest in the property, redressable, at least in part, by a return of the property*." *Id.* (emphasis added).

Ms. Esformes has alleged much more than a colorable interest in the Assets and that the doctrine of constructive trust applies here. She has alleged that, through a theory of constructive trust, she acquired a superior interest, she had a confidential relationship with Defendant, she had been expressly or impliedly promised interests in marital property, and the Defendant's failure to protect her interests gave rise to a constructive trust. **[ECF No. 1753]** at 18-19. The Government, under the guise of standing, asks this Court to decide, prematurely and before the hearing required in Section 853(n)(6), whether Ms. Esformes' interest is superior to the Government's interest. The Government also asks the Court to disregard Ms. Esformes' allegations as conclusory. Her allegations, however, are facts, not legal conclusions, and the Court must assume the facts pleaded by Ms. Esformes are true for purposes of the government's motion, including the facts that she had a confidential relationship and Defendant's unlawful behavior or fraud created a constructive trust under Florida law. Accordingly, the government's motion should be denied.

The Eleventh Circuit has repeatedly and unambiguously recognized constructive trust theories in third-party forfeiture cases. *See e.g. United States v. Shefton*, 548 F.3d 1360, 1365 (11th Cir. 2008); *cf. United States v. Ramunno*, 599 F.3d 1269, 1272 (11th Cir. 2010). Additionally, Florida state law, which the Court must consider in the first instance to determine whether Ms. Esformes has a legal interest, indisputably recognizes the doctrine of constructive trust, especially in cases involving fraud. *In re Gen. Coffee Corp.*, 828 F.2d 699, 702 (11th Cir. 1987) ("Florida courts have consistently applied the majority view on when constructive trusts arise. We are convinced that, if presented with this issue, the Florida Supreme Court would reaffirm the majority approach that a constructive trust arises when the facts giving rise to the fraud occur."); *Mayer v. Cianciolo*, 463 So.2d 1219, 1221 (Fla. 3d DCA) ("Where there is 'a confidential relation, a transaction induced by the relation, and a breach of the confidence reposed,' a constructive trust may arise even in the absence of fraud.") Imposing a constructive trust is also left to this Court's discretion, which militates in favor of denying the motion to dismiss so that the Court can exercise

15

its discretion with a full factual record in this case. *Uniq Branch Office Mexico, S.A. de C.V. v. Steel Media Group, LLC*, No. 22-23876-CIV, 2023 WL 6294841, at *7 (S.D. Fla. Sept. 27, 2023).

The Government asserts that this Court is precluded from exercising its discretion, and in support of this argument, cites a single Florida District Court of Appeals case for the contention that to plead a constructive trust, a petitioner must flatten their case into a four-element analysis in the pleadings. [**ECF No. 1754**] at 16 (citing *Castetter v. Henderson*, 113 So. 3d 153, 155 (Fla. 5th DCA 2013)). A closer analysis of the federal caselaw reveals that, as a tools of equity, courts' abilities to impose constrictive trusts are not so constrained. *See ABM Fin. Services, Inc. v. Express Consol., Inc.*, No. 07-60294-CIV, 2007 WL 4218989, at *2 (S.D. Fla. Nov. 29, 2007) ("ABM has established a colorable basis for claiming a constructive trust over the portion of customer fees that Express was obligated to set aside as residual payments to ABM".).

Indeed, in the very same paragraph the Government attempts to limit this Court's discretion, it cites a case exemplifying the discretion courts enjoy when considering constructive trusts. [**ECF No. 1754**] at 16 (citing *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1030 (11th Cir. 1995) (where the Eleventh Circuit did not use the four element analysis employed in *Castetter*). For example, actual fraud, the abuse of confidence, or other questionable behavior giving rise to undue enrichment are all grounds upon which a court may impose a constructive trust. *Id.* (citing *American Nat'l Bank of Jacksonville v. Fed. Dep. Ins. Corp.,* 710 F.2d 1528, 1541 (11th Cir. 1983).

Petitioner emphasizes the guidance found in *Uniq Branch*–constructive trusts are deployed at a court's discretion. The Government cannot preclude this Court from exercising that discretion by insisting on a standard that does not actually constrain this Court. While the four element analysis employed in *Castetter* might have been useful to that court in that particular case, federal courts in this district have used a more flexible two-element evaluation, namely whether (1) there existed a confidential relationship and (2) by which one acquires an advantage he or she should not, *in equity and good conscience* retain. *See United States v. Rothstein*, No. 09-60331-CR-COHN, 2010 WL 2943315, at *3 (S.D. Fla. July 26, 2010); *see also Bender v. Centrust Mortgage Corp.*, 51 F.3d 1027, 1030 (11th Cir. 1995) (citing *Williams v. Dep't of Health & Rehabilitative Servs.*, 522 So.2d 951, 954 (Fla. 1st DCA 1988).

Procedurally, the ownership interests of the Second Directly Forfeitable Assets as described by the Government are disputed, and that factual dispute is so intertwined with Ms.

16

Esformes' request for a constructive trust that discovery is needed. Beyond that, this Court will be unable to make informed, discretionary decision about Ms. Esformes' entitlement to a constructive trust without further discovery. What is alleged is that the Esformeses were married for nearly thirty years, [**ECF No. 1753**] ¶¶ 17, 40 , and through that confidential relationship acquired joint interest in several properties and entities. Impliedly, and in some cases expressly, Ms. Esformes was promised that she had an interest in that property by virtue of her marriage and owning marital property, which is presumed to be shared equally when acquired during a marriage. [**ECF No. 1753**] at 18. Defendant's fraud, unbeknownst to Ms. Esformes, is exactly the kind of breach of confidence constructive trusts are meant to remedy. *See, e.g.*, *Silvas v. Silvas*, 334 So. 3d 630, 633 (Fla. 3d DCA 2022) (affirming imposition of constructive trust over marital property to avoid unjust enrichment to husband, and observing that "[a] court should impose a constructive trust where one party acquired property by fraud or when it is against equity that someone who acquired property without fraud should continue to retain possession." (internal quotation omitted)); *Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1024 (Fla. 4th DCA 1996) (reversing dismissal based on lack of standing and finding that the plaintiff had alleged standing by way of constructive trust theory, because the plaintiff alleged "the [defendants] held 50% of the shares in a constructive trust for Provence due to their intentional non-delivery of the settlement papers and deceptive purchase of the outstanding stock at the auction sale.").

The Government's reliance on *United States v. Hooper* is unpersuasive. *Hooper* applies California law, is not binding in this circuit, and rests on the relation back doctrine to hold that no third-party but a bona fide purchaser can successfully challenge the government's interest. *See* 229 F.3d 818 at 822. But as outlined above, this inquiry goes too far at the pleading stage and beyond Section 853(n)(2)'s directive on standing to merely determine whether Ms. Esformes has "assert[ed] a legal interest in property". Once a petitioner asserts a legal interest, the relation back doctrine then looks at whether the government's interest is superior to the petitioner's legal interest, but as noted above, that occurs: "after a hearing" and if the petitioner fails to carry its burden "by a preponderance of the evidence . . . the petitioner has a legal . . . interest in the property." 21 U.S.C. § 853(n)(6). *Hooper* is therefore distinguishable on the facts, the controlling state law applied, and the procedural posture.

Defendant abused Ms. Esformes' confidence when he positioned their marital assets to be dissipated by his criminal behavior, completely unbeknownst to Ms. Esformes and these facts are

17

detailed in the Verified Petition. **[ECF No. 1753]** ¶ 31. There are more than enough allegations presented in the Petition to raise a constructive trust and for this Court to permit further discovery as necessary for Ms. Esformes to present her case for the imposition of a constructive trust. Accordingly, the Government's motion should be denied.

## CONCLUSION

For the foregoing reasons, Ms. Esformes respectfully requests that this Court deny the Government's Motion to Dismiss her Verified Petition. Further, Ms. Esformes requests that this Court enter a case management order allowing for discovery to take place concerning Ms. Esformes' claims to the properties at issue.

Date:  February 25, 2025.                              Respectfully submitted,

*/s/ Jacqueline M. Arango*  
Jacqueline M. Arango (FBN 664162)  
**AKERMAN LLP**  
Three Brickell City Centre, Suite 1100  
98 Southeast Seventh Street  
Miami, Florida 33131  
Tel: (305) 374-5600  
Fax: (305) 374-5095  
jacqueline.arango@akerman.com  

*Counsel for Petitioner/Claimant*  
*Sherri Beth Esformes*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 25, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. I also certify that a true and correct copy of the foregoing document will be served on all counsel of record via transmission of Notice of Electronic Filing generated by the CM/ECF system.

*/s/ Jacqueline M. Arango*
Jacqueline M. Arango